UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

CASE NO. 1:19-CV-593

ZION WILLIAMSON,

        Plaintiff,

v.

PRIME SPORTS MARKETING, LLC, and GINA FORD,

        Defendants.

COMPLAINT

## COMPLAINT

Plaintiff Zion Williamson, by and through his attorneys, for his Complaint against Defendants Prime Sports Marketing, LLC ("Prime Sports") and Gina Ford (collectively, "Defendants") hereby alleges as follows:

## NATURE OF THE CLAIMS

1. Floridians Gina Ford and Prime Sports came to North Carolina seeking to cash in on a supremely talented collegiate student-athlete, Zion Williamson. Specifically, on April 20, 2019, Defendants entered the state for the sole purpose of signing Mr. Williamson to a "marketing agreement." This agreement contained draconian terms, such as that it purports not to be terminable for any reason for five years, and thereafter is terminable by Mr. Williamson only "for cause." Moreover, Defendants chose not to inform Mr. Williamson that, by signing their draconian "marketing agreement," he would

- 1 -

immediately forfeit his remaining college eligibility, despite Defendants being bound by North Carolina law to do so.

2. Fortunately, the North Carolina General Assembly had the foresight to enact legislation to prohibit individuals and their businesses, like these Defendants, from seeking to exploit this State's pool of talented young men and women. Specifically, the General Assembly enacted legislation to protect Mr. Williamson, who is eighteen years old, from precisely the kind of unscrupulous behavior giving rise to this action. First, North Carolina's Uniform Athlete Agent Act, N.C. Gen. Stat. § 78C-85 et seq. (the "UAAA") forbids an individual from acting as an athlete agent without holding a certificate of registration from the Athlete Agent Registration Office of the North Carolina Secretary of State, and specifically provides that any agency contract is void if made with an individual who is not so registered. Neither Ms. Ford nor anyone associated with Prime Sports is registered as an agent in North Carolina. Therefore, as a matter of law, the "marketing agreement" is null, void, and has no legal effect.

3. Moreover, the UAAA also prevents agents and would-be agents from inducing a student athlete to lose his or her eligibility unwittingly. The UAAA requires that any contract contain a conspicuous notice provision, set out in boldface type and capital letters, near the athlete's signature line that, among other things, discloses that, by signing the agreement, the athlete loses eligibility to compete as a student-athlete in his or her sport and that he or she may cancel the contract within 14 days after signing it. Any contract that does not have such a disclaimer is voidable by the student-athlete. The agreement

Defendants presented to Mr. Williamson included neither the notice provision nor the disclaimer the UAAA requires.

4. Upon realizing that Defendants had misled him, Mr. Williamson promptly sent notice to Defendants that the agreement was void as a matter of law and, out of an abundance of caution, that he was voiding the agreement, as was his right under North Carolina law. Defendants' response highlights that they were not only unqualified to act on Mr. Williamson's behalf, but that they actually intended to act only in *Defendants'* best interests. Shockingly, Defendants insisted that Mr. Williamson had already forfeited his college eligibility, that he had done so five days before signing the marketing agreement when he announced his intention to participate in the National Basketball Association ("NBA") draft. Defendants' characterization of Mr. Williamson's intention to participate in the NBA draft has neither a factual nor legal basis and ignores applicable NCAA and Division I rules authorizing a student-athlete to test his "draft stock." To make matters worse, Defendants threatened that if Mr. Williamson terminated their draconian "marketing agreement," they would sue Mr. Williamson for damages ***in excess of one hundred million dollars***.

5. Defendants' explicit threats necessitate filing this action to obtain a judicial determination that the marketing agreement Mr. Williamson signed is void as a matter of law and of no force and effect. Mr. Williamson seeks only to be freed from the draconian agreement Defendants induced him to sign in total disregard of his legal rights.

## THE PARTIES

6. Plaintiff Zion Williamson is, and at all times relevant herein was, a citizen and resident of the State of North Carolina, residing in Durham County, since August 2018.

7. Defendant Prime Sports Marketing, LLC is a Florida limited liability company with its principal place of business in Miami, Florida. Upon information and belief, Defendant Prime Sports Marketing, LLC's members include only Defendant Gina Ford.

8. Defendant Gina Ford is, and at all times relevant herein was, a citizen and resident of the State of Florida.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this is an action between citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interests and costs.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because Defendants are subject to personal jurisdiction in this forum and a substantial part of the events giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

### I. Background on Mr. Williamson

11. Over the past year, Zion Williamson has become a household name. Known best for his electrifying slam dunks and abounding energy, Mr. Williamson is projected to be the first overall pick in the 2019 NBA draft.

12. In high school in Spartanburg, South Carolina, Mr. Williamson led his team to three consecutive state championships from 2016-2018, earned South Carolina "Mr. Basketball" recognition in 2018, was recognized as a McDonald's All-American in 2018, finished runner-up for "Mr. Basketball USA" in 2018, and was a *USA Today* All-USA first team honoree in 2018.

13. Mr. Williamson enrolled as a student-athlete at Duke University ("Duke") in 2018. During the 2018-2019 academic year, Mr. Williamson played collegiate basketball for Duke as a true freshman. During his freshman year, Mr. Williamson helped Duke win the 2019 Atlantic Coast Conference (the "ACC") men's basketball tournament, and was named the tournament's most valuable player. Mr. Williamson also led Duke to the Elite Eight of the 2019 National Collegiate Athletic Association (the "NCAA") men's basketball tournament. As a result of his on-the-court play during the 2018-2019 collegiate basketball season, Mr. Williamson earned the ACC's Player of the Year and Rookie of the Year honors, was awarded AP Player of the Year and *Sporting News* Men's College Basketball Player of the Year honors, and won the Wayman Tisdale Award as National Freshman of the Year.

14. On April 15, 2019, Mr. Williamson declared for the 2019 NBA draft. Mr. Williamson's declaration did not cause him to forgo his ability to return to college and continue playing collegiate basketball. Indeed, under applicable NCAA and Division I rules, after the completion of their collegiate basketball season, collegiate student-athletes are afforded the ability to assess their "draft stock" by declaring for the NBA draft and still

return to school to compete in collegiate basketball. During this process, collegiate student-athletes are allowed to be represented by agents, but *only* those agents who are certified by the National Basketball Players Association (the "NBPA"). At this time, Mr. Williamson was a student-athlete at Duke and he had until May 29, 2019 to withdraw from the NBA draft and return to school.

## II.  Background on Defendants

15.  Prime Sports is a Florida limited liability company that has been in existence since April 1, 2018. Gina Ford is the President, Manager, and Registered Agent for Prime Sports. Upon information and belief, Ms. Ford is ***not***: (i) an agent certified by the NBPA, (ii) a registered athlete agent in the State of North Carolina, or (iii) a registered athlete agent in the State of Florida.

## III.  Defendants Contact Mr. Williamson with the Intent of Entering Into an Agency Contract with Him

16.  During the first half of 2019, Defendants initiated contact with Mr. Williamson's family in an effort to persuade Mr. Williamson to sign an agency contract with them.

17.  After their initial contact, Defendants sent numerous text messages to Mr. Williamson's family and physically travelled to Durham, North Carolina on approximately four separate occasions during the Spring of 2019 to meet with Mr. Williamson and/or his family.

## IV.     North Carolina's Uniform Athlete Agents Act

18.     In recognition of the vulnerability of collegiate student-athletes during their year(s) in school and when they are transitioning into professional sports, state legislatures have enacted legislation aimed at deterring manipulative agent conduct. In 2003, North Carolina enacted the UAAA to protect student-athletes and schools from the profound consequences that can arise from signing an agency contract, including specifically issues relating to amateur status and collegiate eligibility. The UAAA sets forth provisions governing particular aspects of the student-athlete/agent relationship, including an agent's registration requirements and a required form of contract.

An Agent's Registration Requirement

19.     Section 78C-88 of the UAAA mandates that "an individual may not act as an athlete agent in [North Carolina] without holding a certificate of registration under G.S. 78C-90 or G.S. 78C-92." Section 78C-86 of the UAAA defines an "athlete agent" as "[a]n individual who enters into an agency contract with a student-athlete or, directly or indirectly, recruits or solicits a student-athlete to enter into an agency contract. The term includes an individual who represents to the public that the individual is an athlete agent."

20.     The Section defines an "agency contract" as "[a]n agreement in which a student-athlete authorizes a person to negotiate or solicit on behalf of the student-athlete a professional-sports-services contract or an endorsement contract." The statute goes on to define an "endorsement contract" as "[a]n agreement under which a student-athlete is employed or receives consideration to use on behalf of the other party any value that the

- 7 -

student-athlete may have because of publicity, reputation, following, or fame obtained because of athletic ability or performance."

21. A "student-athlete" is defined as "[a]n individual who engages in, is eligible to engage in, or may be eligible in the future to engage in any intercollegiate sport."

22. Section 78C-88 provides only two limited exceptions to the general certification rule. The first exception states: "Before being issued a certificate of registration, an individual may act as an athlete agent in this State for all purposes except signing an agency contract if: (i) a student-athlete or another person acting on behalf of the student-athlete initiates communication with the individual; and (ii) within seven days after an initial act as an athlete agent, the individual submits an application for registration as an athlete agent in this State." The second exception provides that "[a] North Carolina licensed and resident attorney may act as an athlete agent in this State for all purposes without registering pursuant to this section if the attorney neither advertises directly for, nor solicits, any student-athlete by representing to any person that the attorney has special experience or qualifications with regard to representing student-athletes and represents no more than two student-athletes." There are no other exceptions to the UAAA's rule that no individual may act as an athlete agent in North Carolina without holding a statutorily authorized certificate of registration under the UAA.

23. Pursuant to Section 78C-88 of the UAAA, "[a]n agency contract resulting from conduct in violation of this section [78C-88] is void, and the athlete agent shall return any consideration received under the contract."

- 8 -

Case 1:19-cv-00593-LCB-JLW   Document 1   Filed 06/13/19   Page 8 of 15

Required Form of Contract

24. Section 78C-94 of the UAAA sets forth certain requirements of an agency contract between an athlete agent and a student-athlete. Specifically, Section 78C-94(c) states:

> (c) An agency contract must contain, in close proximity to the signature of the student-athlete, a conspicuous notice in boldface type in capital letters stating:
>
> **WARNING TO STUDENT-ATHLETE**
> **IF YOU SIGN THIS CONTRACT:**
> **(1) YOU SHALL LOSE YOUR ELIGIBILITY TO COMPETE AS A STUDENT-ATHLETE IN YOUR SPORT;**
> **(2) IF YOU HAVE AN ATHLETIC DIRECTOR, WITHIN 72 HOURS AFTER ENTERING INTO THIS CONTRACT, BOTH YOU AND YOUR ATHLETE AGENT MUST NOTIFY YOUR ATHLETIC DIRECTOR;**
> **(3) YOU WAIVE YOUR ATTORNEY-CLIENT PRIVILEGE WITH RESPECT TO THIS CONTRACT AND CERTAIN INFORMATION RELATED TO IT; AND**
> **(4) YOU MAY CANCEL THIS CONTRACT WITHIN 14 DAYS AFTER SIGNING IT. CANCELLATION OF THIS CONTRACT SHALL NOT REINSTATE YOUR ELIGIBILITY.**

25. Section 78C-94 of the statute states that, "[a]n agency contract that does not conform to this section is voidable by the student-athlete. If a student-athlete voids an agency contract, the student-athlete is not required to pay any consideration under the contract or to return any consideration received from the athlete agent to induce the student-athlete to enter into the contract."

## V. Defendants Unlawfully Entered Into an Agency Contract with Mr. Williamson

26. On April 20, 2019, Defendants again met with Mr. Williamson and his family at his residence in Durham, North Carolina. Defendants unlawfully entered into a certain Consulting and Joint Marketing and Branding Agreement (the "Agreement"), with Mr. Williamson, who was then a student-athlete under the UAAA. A copy of the Agreement is attached hereto as Ex. A and incorporated herein by reference. Paragraph 7(a) of the Agreement identifies Gina Ford as the Prime Sports "designated individual for all purposes" of the Agreement.

27. The Agreement is an agency contract under the UAAA.

28. At the time of entering into the Agreement, neither Defendant—acting as athlete agents under the UAAA—held a certificate of registration under G.S. 78C-90 or G.S. 78C-92, as is required under Section 78C-88 of the UAAA. Also, upon information and belief, neither Defendant met either of the two limited exceptions espoused in Section 78C-88, Subsections (b) and (c). The Agreement, therefore, is void under Section 78C-88(d) of the UAAA.

29. In addition to being void for failure of Defendants to meet the UAAA's registration requirements, the Agreement is also voidable under Section 78C-94 of the UAAA because the Agreement does not include the conspicuous notice in boldface type in capital letters that Section 78C-94, Subsection (c) requires, let alone in the proximity of Mr. Williamson's signature:



[Image of contract page with signatures of Gina Ford (President) and Zion Williamson, containing paragraphs 10-13 of the Agreement and signature block dated April 2019, Firm: Prime Sports Marketing LLC]

30. On May 31, 2019, Mr. Williamson's family sent a note to Defendants on Mr. Williamson's behalf terminating and voiding the Agreement effective immediately. A copy of this e-mail is attached hereto as Ex. B and incorporated herein by reference.

## VI. <u>Defendants Threaten Mr. Williamson with Litigation</u>

31. On June 2, 2019, attorneys for Mr. Williamson sent a letter to Defendants, attached hereto as Ex. C and incorporated herein by reference (the "Williamson Cease and Desist Letter"), reiterating that the Agreement was void under the UAAA, and notifying them that that they should cease and desist from:

> (1) holding yourselves out as Mr. Williamson's Global Marketing Consultant to any and all third parties; (2) holding yourselves out to any third party as an agent or representative, in any way, of Mr. Williamson; (3) contacting or responding to any third parties on behalf of Mr. Williamson; (4) contacting Mr. Williamson (or his family) to introduce any endorsement opportunities; (5) overseeing any marketing opportunities brought to or available to Mr. Williamson; (6) defining, analyzing, or costing the benefit size to Mr.

Williamson of any endorsement opportunity; (7) recommending to Mr. Williamson or his family the negotiation fee parameters for any endorsement opportunity; (8) forwarding draft contracts to Mr. Williamson or his family to facilitate Mr. Williamson's review and his negotiation of the same with any endorsement entity or third party; (8) facilitating or negotiating in any way with any third party any contract, endorsement, or opportunity on behalf of Mr. Williamson; (9) joining, enabling, or facilitating Mr. Williamson or his family in any way in Mr. Williamson's negotiation of any contract, endorsement, or opportunity; (10) negotiating in any way with any third party to resolve any problems or disputes between the third party and Mr. Williamson; and (11) providing any advice to Mr. Williamson or his family on the building of Mr. Williamson's brand domestically or internationally.

32. In response, on June 4, 2019, attorneys for Defendants sent a letter stating that they believed a valid and enforceable contract still exists between the parties based on Mr. Williamson's declaring himself eligible for the NBA draft, and that they are prepared to seek court intervention, if necessary, to protect their client's supposed rights (the "Response Letter"). A copy of the Response Letter is attached hereto as Ex. D and incorporated herein by reference.

### COUNT I
### (Declaratory Judgment)
### (Against All Defendants)

33. Mr. Williamson re-alleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 32 above.

34. Mr. Williamson contends that the Agreement is void due to Defendants' failure to register as an athlete agent in North Carolina and voidable due to Defendants' failure to include the required notice provision in the Agreement, and, further, that he has voided the Agreement.

- 12 -

Case 1:19-cv-00593-LCB-JLW   Document 1   Filed 06/13/19   Page 12 of 15

35. Defendants dispute that the Agreement is void or has been voided.

36. Defendants' position is set forth in their Response Letter.

37. By virtue of the foregoing, including Defendants' explicit threats contained in their Response Letter, there now exists an actual, justiciable controversy of sufficient immediacy between Mr. Williamson and Defendants relating to their respective legal rights, duties, and obligations, which controversy is ripe for adjudication.

38. Declaratory relief will resolve the legal issues between the parties pertaining to the enforceability of the Agreement.

39. Mr. Williamson thus requests a judicial declaration that the Agreement is void.

## **PRAYER FOR RELIEF**

WHEREFORE, based upon the foregoing, Mr. Williamson hereby respectfully requests that the Court:

a) Declare that the Agreement is void.

b) Enjoin Defendants from (1) holding themselves out as Mr. Williamson's Global Marketing Consultant to any and all third parties; (2) holding themselves out to any third party as an agent or representative, in any way, of Mr. Williamson; (3) contacting or responding to any third parties on behalf of Mr. Williamson; (4) contacting Mr. Williamson (or his family) to introduce any endorsement opportunities; (5) overseeing any marketing opportunities brought to or available to Mr. Williamson; (6) defining, analyzing, or costing the benefit size to Mr. Williamson of any endorsement opportunity;

(7) recommending to Mr. Williamson or his family the negotiation fee parameters for any endorsement opportunity; (8) forwarding draft contracts to Mr. Williamson or his family to facilitate Mr. Williamson's review and his negotiation of the same with any endorsement entity or third party; (8) facilitating or negotiating in any way with any third party any contract, endorsement, or opportunity on behalf of Mr. Williamson; (9) joining, enabling, or facilitating Mr. Williamson or his family in any way in Mr. Williamson's negotiation of any contract, endorsement, or opportunity; (10) negotiating in any way with any third party to resolve any problems or disputes between the third party and Mr. Williamson; and (11) providing any advice to Mr. Williamson or his family on the building of Mr. Williamson's brand domestically or internationally.

    c)    Grant to Mr. Williamson such other and further relief as the Court deems just and appropriate.

*[Signatures Follow]*

This 13th day of June 2019.

        /s/ John R. Wester
        John R. Wester
        N.C. Bar No. 4660
        jwester@robinsonbradshaw.com
        Robert E. Harrington
        N.C. Bar No. 26967
        rharrington@robinsonbradshaw.com
        Fitz E. Barringer
        N.C. Bar No. 42679
        fbarringer@robinsonbradshaw.com

        ROBINSON, BRADSHAW & HINSON, P.A.
        101 N. Tryon St., Ste. 1900
        Charlotte, North Carolina  28246
        Telephone:    704.377.2536
        Facsimile:    704.378.4000

        Jeffrey S. Klein*
        Jeffrey.Klein@weil.com

        WEIL, GOTSHAL & MANGES LLP
        767 Fifth Avenue
        New York, NY 10153
        Telephone: 212.310.8790
        Facsimile: 212.310.8007

        *Local Rule 83.1(d) Special Appearance
        to be filed.

        *Attorneys for Plaintiff*

12185671