## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

### CASE NO. 1:19-CV-593

| | |
|---|---|
| ZION WILLIAMSON, <br><br>                 Plaintiff, <br><br>      v. <br><br> PRIME SPORTS MARKETING, LLC, and <br> GINA FORD, <br><br>              Defendants. | **FIRST AMENDED COMPLAINT** |

### FIRST AMENDED COMPLAINT

Plaintiff Zion Williamson, by and through his attorneys, for his First Amended Complaint against Defendants Prime Sports Marketing, LLC ("Prime Sports") and Gina Ford (collectively, "Defendants") hereby alleges as follows:

### NATURE OF THE CLAIMS

1.      Floridians Gina Ford and Prime Sports came to North Carolina beginning in approximately early January 2019, seeking to cash in on a supremely talented collegiate student-athlete, Zion Williamson. After initiating a multitude of contacts with Mr. Williamson and his family, Defendants, on April 20, 2019, entered the state for the sole purpose of signing Mr. Williamson to a "marketing agent agreement." This agreement contained draconian terms, such as that it purports not to be terminable for any reason for five years, and thereafter is terminable by Mr. Williamson only "for cause." Moreover, in

- 1 -

flagrant disregard of their clear obligations under North Carolina law, Defendants chose not to inform Mr. Williamson that, by signing their draconian marketing agent agreement, he would immediately forfeit his remaining eligibility as a collegiate athlete.

2.      In an effort to entice Mr. Williamson to choose Defendants to represent him, Defendants also made numerous misrepresentations to portray Ms. Ford as a highly successful and experienced marketing agent with the requisite expertise to maximize Mr. Williamson's "brand." Ms. Ford held herself out as the "lead global brand marketer" for the sprinter and Olympic athlete Usain Bolt, and other highly successful athletes, failing to portray honestly the limited scope of her work for some of the athletes, and misrepresenting the existence of a business relationship with others.

3.      Fortunately, the North Carolina General Assembly had the foresight in 2003 to enact legislation to prohibit individuals and their businesses, like these Defendants, from seeking to exploit the State's pool of talented young men and women. Specifically, the General Assembly enacted legislation to protect Mr. Williamson, a teenager, from precisely the kind of unscrupulous behavior giving rise to this action. First, North Carolina's Uniform Athlete Agent Act, N.C. Gen. Stat. § 78C-85 et seq. (the "UAAA") forbids an individual from acting as an athlete agent without holding a certificate of registration from the Athlete Agent Registration Office of the North Carolina Secretary of State, and specifically provides that any purported agency contract resulting from actions taken without registration is void. Neither Ms. Ford nor anyone associated with Prime

Sports is registered as an agent in North Carolina. Therefore, as a matter of law, the "marketing agent agreement" is null, void, and has no legal effect.

4.     Moreover, the UAAA also precludes agents and would-be agents, like Gina Ford, from inducing a student-athlete to lose his or her eligibility unwittingly. The UAAA requires that any contract contain a conspicuous notice provision, set out in boldface type and capital letters, near the athlete's signature line. The prominent notice must, among other things, disclose that, by signing the agreement, the athlete loses eligibility to compete as a student-athlete in his or her sport. The notice provision also must indicate that the student-athlete may cancel the contract within 14 days after signing it. Any contract that does not have such a disclaimer is voidable by the student-athlete. The agreement Defendants presented to Mr. Williamson did not include the notice provision the UAAA requires.

5.     Additionally, although one would *expect* honesty from would-be agents like Gina Ford, the UAAA specifically mandates that, under the law, agents must be honest with student-athletes when seeking to induce them to enter into a representation agreement. Defendants, however, intentionally and materially misrepresented their experience and roles in representing professional athletes for the purpose of enticing Mr. Williamson to sign their marketing agent agreement.

6.     Upon realizing that Defendants had misled him, Mr. Williamson promptly sent notice to Defendants that the agreement was void as a matter of law and, out of an abundance of caution, that he was voiding the agreement, as was his right under North

Carolina law. Defendants' response highlights that they were not only unqualified to act on Mr. Williamson's behalf, but that they actually intended to act only in *Defendants'* best interests. Shockingly, Defendants insisted that Mr. Williamson had already forfeited his college eligibility five days before signing the marketing agent agreement when he posted a video indicating that he intended to participate in the National Basketball Association ("NBA") draft. Defendants' characterization of Mr. Williamson's intention to participate in the NBA draft has neither a factual nor legal basis and ignores applicable NCAA and Division I rules. To make matters worse, Defendants threatened that if Mr. Williamson terminated their draconian "marketing agent agreement," they would sue Mr. Williamson for damages *in excess of one hundred million dollars*.

7. Defendants' explicit threats necessitate filing this action to obtain a judicial determination that the marketing agent agreement Mr. Williamson signed is void as a matter of law and of no force and effect. Mr. Williamson seeks a declaration that he is free from the draconian agreement Defendants induced him to sign in total disregard of his legal rights and also brings claims of fraudulent inducement and violations of the North Carolina Unfair and Deceptive Trade Practices Act.

## THE PARTIES

8. Plaintiff Zion Williamson, beginning in August 2018 and at all times relevant herein, was a citizen and resident of the State of North Carolina, residing in Durham County. Mr. Williamson currently resides in the State of Louisiana.

- 4 -

9.     Defendant Prime Sports Marketing, LLC is a Florida limited liability company with its principal place of business in Miami, Florida. Upon information and belief, Defendant Prime Sports Marketing, LLC's members include only Defendant Gina Ford.

10.     Defendant Gina Ford is, and at all times relevant herein was, a citizen and resident of the State of Florida.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this is an action between citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interests and costs.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because Defendants are subject to personal jurisdiction in this forum and a substantial part of the events giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

### I.     Background on Mr. Williamson

13.     Over the past year, Zion Williamson has become a household name. Known best for his electrifying slam dunks and abounding energy, Mr. Williamson was a standout student-athlete and, following the events that gave rise to the litigation, was selected as the first overall pick in the 2019 NBA draft.

14.     In high school in Spartanburg, South Carolina, Mr. Williamson led his team to three consecutive state championships from 2016-2018, earned South Carolina "Mr.

Basketball" recognition in 2018, was recognized as a McDonald's All-American in 2018, finished runner-up for "Mr. Basketball USA" in 2018, and was a *USA Today* All-USA first team honoree in 2018.

15. Mr. Williamson enrolled as a student-athlete at Duke University ("Duke") in 2018. During the 2018-2019 academic year, Mr. Williamson played collegiate basketball for Duke as a true freshman. During his freshman year, Mr. Williamson helped Duke win the 2019 Atlantic Coast Conference (the "ACC") men's basketball tournament, and was named the tournament's most valuable player. Mr. Williamson also led Duke to the Elite Eight of the 2019 National Collegiate Athletic Association (the "NCAA") men's basketball tournament. As a result of his on-the-court play during the 2018-2019 collegiate basketball season, Mr. Williamson earned the ACC's Player of the Year and Rookie of the Year honors, was awarded AP Player of the Year and *Sporting News* Men's College Basketball Player of the Year honors, and won the Wayman Tisdale Award as National Freshman of the Year.

## II.   **Background on Defendants**

16. Prime Sports is a Florida limited liability company that has been in existence since April 1, 2018. Gina Ford is the President, Manager, and Registered Agent for service of process for Prime Sports. Ms. Ford is ***not***: a registered athlete agent in the State of North Carolina, as evidenced through the publicly available list on the North Carolina Secretary of State's website (https://www.sosnc.gov/divisions/athlete_agents/List_of_Athlete_Agents). Upon

- 6 -

information and belief, Ms. Ford also is not: (i) an agent certified by the National Basketball Players Association (the "NBPA") or (ii) a registered athlete agent in her home state of Florida.

## III.    Defendants Contact Mr. Williamson with the Intent of Entering Into an Agency Contract with Him

17.    During the first few months of 2019, Defendants repeatedly initiated contact with Mr. Williamson's family in an effort to recruit Mr. Williamson and persuade him to sign an agency contract with them. Mr. Williamson was playing college basketball for Duke during Defendants' solicitation of him.

18.    After making initial contact in approximately early January 2019, Defendants sent numerous text messages to Mr. Williamson's family, approached Mr. Williamson's family before and after Duke Basketball games (despite requests to refrain from doing so), and physically travelled to Durham, North Carolina on approximately four separate occasions during the first few months of 2019 to meet with Mr. Williamson and/or his family. At least two of these meetings occurred during the 2018-2019 collegiate regular basketball season. During these meetings, Defendants provided materially false and misleading information about their alleged marketing experience and capabilities in order to induce Mr. Williamson to enter into a marketing agent agreement.

19.    On April 15, 2019, Mr. Williamson posted a video on Instagram thanking his teammates and coach for an incredible year and indicating that he intended to pursue his dream and declare for the 2019 NBA draft. Although a public statement, an Instagram

posting does not cause a student-athlete to forgo his ability to return to college and continue playing collegiate basketball.

20.     Ms. Ford knew and understood that Mr. Williamson was a student-athlete at least during the months that Defendants attempted to recruit him. Indeed, in a letter from her attorneys dated June 4, 2019, Ms. Ford argued that Mr. Williamson had forfeited his student-athlete status when he "declared eligible for the 2019 NBA draft *on or about April 15, 2019*" (emphasis added). A copy of this letter is attached hereto as Ex. A and incorporated herein by reference. As such, by their own admission, Defendants knew that Mr. Williamson was a student-athlete in the preceding months during which they recruited him and concede that he maintained that student-athlete status until at least April 15, 2019.

21.     On April 20, 2019, Mr. Williamson entered into a marketing agent agreement with Defendants. At the time that he signed the marketing agent agreement, Mr. Williamson was a student-athlete.

## IV.     North Carolina's Uniform Athlete Agents Act

22.     In recognition of the vulnerability of collegiate student-athletes during their year(s) in school and when they are transitioning into professional sports, state legislatures have enacted legislation aimed at deterring charlatans and manipulative agent conduct. In 2003, North Carolina enacted the UAAA to protect student-athletes and schools from the profound consequences that can arise from signing an agency contract, including specifically issues relating to amateur status and collegiate eligibility. The UAAA sets forth provisions governing particular aspects of the student-athlete/agent relationship, including

- 8 -

an agent's recruitment and solicitation of student-athletes, registration requirements, and a required form of contract.

<u>An Agent's Registration Requirement</u>

23.     The UAAA explicitly regulates the recruitment and solicitation of student-athletes, in addition to the signing of contracts. Section 78C-88 of the UAAA mandates that "an individual may not act as an athlete agent in [North Carolina] without holding a certificate of registration under G.S. 78C-90 or G.S. 78C-92." Section 78C-86 of the UAAA defines an "athlete agent" as "[a]n individual who enters into an agency contract with a student-athlete *or, directly or indirectly, recruits or solicits a student-athlete to enter into an agency contract*. The term includes an individual who represents to the public that the individual is an athlete agent." (emphasis added).

24.     The UAAA defines the term "agency contract" to mean "[a]n agreement in which a student-athlete authorizes a person to negotiate or solicit on behalf of the student-athlete a professional-sports-services contract or an endorsement contract." The statute further defines an "endorsement contract" as "[a]n agreement under which a student-athlete is employed or receives consideration to use on behalf of the other party any value that the student-athlete may have because of publicity, reputation, following, or fame obtained because of athletic ability or performance." The agreement that Defendants enticed Mr. Williamson to sign is clearly an agency contract under the UAAA.

25.     Mr. Williamson also was a "student-athlete" because he was, at all relevant times, "[a]n individual who engages in, is eligible to engage in, or may be eligible in the

future to engage in any intercollegiate sport." Indeed, as described above, Mr. Williamson was playing basketball for Duke during the time period in which Defendants were soliciting him.

26. Thus, Defendants recruited and solicited Mr. Williamson, a student-athlete, to enter into an agency contract. Defendants were required under North Carolina law to hold a certificate of registration in North Carolina to do so. Yet, Defendants lacked a North Carolina certificate of registration.

27. Pursuant to Section 78C-88 of the UAAA, "[a]n agency contract resulting from conduct in violation of this section [78C-88] is void, and the athlete agent shall return any consideration received under the contract." Thus, Defendants' purported agreement with Mr. Williamson is void because they were not permitted under the law to enter into an agency agreement with him.

28. Defendants cannot rely on any exception to the rule to somehow save their unlawful conduct. Section 78C-88 provides only two limited exceptions to the general certification rule. Neither applies to Defendants. The first exception states: "Before being issued a certificate of registration, an individual may act as an athlete agent in this State for all purposes except signing an agency contract if: (i) a student-athlete or another person acting on behalf of the student-athlete initiates communication with the individual; and (ii) within seven days after an initial act as an athlete agent, the individual submits an application for registration as an athlete agent in this State." The second exception provides that "[a] North Carolina licensed and resident attorney may act as an athlete agent in this

- 10 -

State for all purposes without registering pursuant to this section if the attorney neither advertises directly for, nor solicits, any student-athlete by representing to any person that the attorney has special experience or qualifications with regard to representing student-athletes and represents no more than two student-athletes."

29.     Defendants are not licensed agents in North Carolina or resident North Carolina attorneys, nor did they apply for registration as an athlete agent in North Carolina.

30.     There are no other exceptions to the registration requirement under Section 78C-88 of the UAAA.

Required Form of Contract

31.     Section 78C-94 of the UAAA sets forth certain requirements of an agency contract between an athlete agent and a student-athlete. Specifically, Section 78C-94(c) states:

> (c) An agency contract must contain, in close proximity to the signature of the student-athlete, a conspicuous notice in boldface type in capital letters stating:
>
> **WARNING TO STUDENT-ATHLETE**
> **IF YOU SIGN THIS CONTRACT:**
> **(1)     YOU SHALL LOSE YOUR ELIGIBILITY TO COMPETE AS A STUDENT-ATHLETE IN YOUR SPORT;**
> **(2)     IF YOU HAVE AN ATHLETIC DIRECTOR, WITHIN 72 HOURS AFTER ENTERING INTO THIS CONTRACT, BOTH YOU AND YOUR ATHLETE AGENT     MUST     NOTIFY     YOUR     ATHLETIC DIRECTOR;**
> **(3)     YOU WAIVE YOUR ATTORNEY-CLIENT PRIVILEGE WITH RESPECT TO THIS CONTRACT AND CERTAIN INFORMATION RELATED TO IT; AND**

- 11 -

**(4)  YOU MAY CANCEL THIS CONTRACT WITHIN 14 DAYS AFTER SIGNING IT. CANCELLATION OF THIS CONTRACT SHALL NOT REINSTATE YOUR ELIGIBILITY.**

32.  Section 78C-94 of the statute states that, "[a]n agency contract that does not conform to this section is voidable by the student-athlete. If a student-athlete voids an agency contract, the student-athlete is not required to pay any consideration under the contract or to return any consideration received from the athlete agent to induce the student-athlete to enter into the contract."

33.  The agreement at issue in this case does not contain the statutorily required language.

34.  Mr. Williamson notified Defendants that the agreement was voided.

Prohibited Conduct

35.  Section 78C-98 of the UAAA sets forth nine categories of conduct that agents are prohibited from undertaking. The categories of prohibited conduct include the following four: (1) giving materially false or misleading information with the intent to induce a student-athlete to enter into an agency contract; (2) intentionally initiating contact with a student-athlete unless the athlete agent is registered as required by the UAAA; (3) intentionally failing to register as required under the UAAA; and (4) failing to notify a student-athlete before he or she signs or otherwise authenticates an agency contract that such signing or authentication shall make the student-athlete ineligible to participate in that sport. As set forth in this First Amended Complaint, Defendants engaged in all four categories of prohibited conduct.

- 12 -

## V.  Defendants Unlawfully Entered Into an Agency Contract with Mr. Williamson

36.    As alleged above, as early as January 2019, *during the 2018-2019 college basketball season*, Defendants aggressively pursued Mr. Williamson, both directly and through his family. Defendants approached Mr. Williamson's family before and after basketball games, texted them repeatedly about a potential business relationship, and eventually met with Mr. Williamson and his family to discuss the prospect of entering into a marketing agent agreement.

37.    At the time that Defendants first initiated contact with Mr. Williamson and his family, and at least until the date on which he entered into the marketing agent agreement, Mr. Williamson was a student-athlete, as that term is defined in the UAAA.

38.    In order to induce Mr. Williamson to enter into a marketing agent agreement with Defendants, Ms. Ford made a number of representations during her recruitment, many of which Mr. Williamson later learned were untrue.

39.    For example, Ms. Ford held herself out as Usain Bolt's "lead global brand marketer," responsible for (among other things) Usain Bolt's electric scooter launch in London. Ms. Ford promised Mr. Williamson and his family that she could provide the same type of global recognition for Mr. Williamson. This representation appealed to Mr. Williamson. However, as Mr. Williamson later learned, Ms. Ford's representation was untrue.

40.     Upon information and belief, although Ms. Ford does, in fact, participate as a member of a team that represents Mr. Bolt, Ms. Ford is not, and never has been, Mr. Bolt's lead global brand marketer.

41.     Ms. Ford also sought to induce Mr. Williamson to engage her by representing that she had served as the primary marketing agent for a number of other first and second round NBA draft picks. Mr. Williamson later found out that these representations were inaccurate and that Ms. Ford had exaggerated the nature of her business relationship with these NBA athletes. Mr. Williamson relied on Ms. Ford's materially false and misleading representations about her qualifications in choosing to engage her services.

42.     On April 20, 2019, Defendants again met with Mr. Williamson and his family at his residence in Durham, North Carolina. Defendants' purpose in meeting with Mr. Williamson was to induce him to sign a certain Consulting and Joint Marketing and Branding Agreement (the "Agreement"). At this meeting, Defendants unlawfully entered into the Agreement with Mr. Williamson, who was then a student-athlete under the UAAA. A copy of the Agreement is attached hereto as Ex. B and incorporated herein by reference. Paragraph 7(a) of the Agreement identifies Gina Ford as the Prime Sports "designated individual for all purposes" of the Agreement.

43.     Defendants made additional materially untrue and misleading statements and materially false promises and representations to Mr. Williamson during this April 20th meeting to induce him to sign the Agreement. During the meeting, prior to deciding to sign with Defendants, in the presence of both his mother and stepfather, Mr. Williamson asked

Ms. Ford whether he would forfeit his eligibility to return to Duke to play basketball if he signed a marketing agent agreement with Prime Sports and her. Ms. Ford assured Mr. Williamson that his signing the Agreement would have no impact on his eligibility because she was a "marketing agent not a player agent." At the time, based on his conversation with Ms. Ford, he believed that he could sign the Agreement without forfeiting his eligibility. In reliance on this representation, which, unbeknownst to Mr. Williamson at the time, was patently wrong and incorrect, Mr. Williamson signed the Agreement.

44.     The Agreement is an agency contract governed by the UAAA.

45.     At the time of initiating contact with Mr. Williamson and his family to recruit Mr. Williamson and solicit him to enter into a marketing agent agreement with the Defendants, and at the time of entering into the Agreement, neither Defendant—though acting as athlete agents under the UAAA—held a certificate of registration under G.S. 78C-90 or G.S. 78C-92, as is required under Section 78C-88 of the UAAA. Also, upon information and belief, neither Defendant met either of the two limited exceptions contained in Section 78C-88, Subsections (b) and (c). The Agreement, therefore, is void under Section 78C-88(d) of the UAAA.

46.     In addition to being void for failure of Defendants to meet the UAAA's registration requirements, the Agreement is also voidable under Section 78C-94 of the UAAA because the Agreement does not include the conspicuous notice in boldface type in capital letters that Section 78C-94, Subsection (c) requires, let alone in the proximity of Mr. Williamson's signature:

- 15 -

PRIME SPORTS MARKETING LLC

PRIME SPORTS MARKETING LLC

related to the matters of this Agreement. Such information includes but is not limited to, any trade secrets, business plans, strategies, and private and/or Personal information concerning the Client, his family, friends, relations, handlers, etc. Further, both parties agree that any rights, licenses, or privileges not expressly granted by this Agreement are exclusively reserved to Client.

11. Neither party may assign the rights or duties of this Agreement without the other party's prior written consent.

12. The Validity, interpretation, and performance of this Agreement shall be controlled by and construed under the laws of the State of Florida.

13. All prior understandings and negotiations between Firm and Client, both written and oral, are void. This Agreement represents the final understanding and entire agreement between the parties. No other representation, inducement or promise has been made or relied upon by either party. This Agreement may only be altered or modified by a written mutually agreed upon and signed by both parties.

AGREED to and accepted as of this ___ day of April, 2019

Client: Zion Williamson (Athlete)

By: _____

Name: Zion Williamson

Firm: Prime Sports Marketing LLC

By: _____

Name: Gina Ford

Title: President

47.     In addition, Defendants' conduct as described in this First Amended Complaint is prohibited under Section 78C-98 of the UAAA. Specifically, Defendants provided materially false and misleading information about their qualifications, and made materially false promises and representations that Mr. Williamson would not forfeit his eligibility, to induce him to sign the Agreement. Moreover, the Defendants intentionally initiated contact with Mr. Williamson when they did not hold certificates of registration, as required under the UAAA, and they failed to notify Mr. Williamson before he signed the Agreement that such signing would render him ineligible to participate as a student-athlete in collegiate basketball. To the contrary, they promised him that he could maintain his eligibility as a student-athlete if he signed their Agreement.

- 16 -

## VI.    Mr. Williamson Terminates the Agreement

48.     After signing the Agreement, Mr. Williamson and his family became aware of Defendants' misrepresentations. Mr. Williamson and his family received feedback about Defendants from contacts in the sports industry. These contacts told Mr. Williamson and his family that Ms. Ford did not represent some of the individuals she had held herself out as representing, and that some of her representations as to the nature and scope of her prior accomplishments as a marketing agent were either grossly exaggerated or untrue. For example, Ms. Ford had misrepresented the scope of her representation of Usain Bolt, which, upon information and belief, consisted of serving as one support member of a large marketing team, rather than as the lead marketing agent. Mr. Williamson and his family also heard from industry contacts that Ms. Ford did not live up to representations and promises she made to another NBA player regarding marketing activities to be undertaken on his behalf. Mr. Williamson also learned that, contrary to Defendants' representations, he would be deemed to have forfeited his eligibility as a result of signing the Agreement.

49.     Mr. Williamson and his family also became aware of the legal deficiencies in the Agreement under the North Carolina statute.

50.     In early May, Mr. Williamson's family called Ms. Ford and instructed her to cease all efforts to pursue marketing opportunities for Mr. Williamson. Mr. Williamson's family confirmed this conversation and repeated this instruction in an e-mail dated May 24, 2019. A copy of this e-mail is attached hereto as Ex. C and incorporated herein by reference.

- 17 -

51.     On May 31, 2019, Mr. Williamson's family sent a note to Defendants on Mr. Williamson's behalf terminating and voiding the Agreement effective immediately. A copy of this e-mail is attached hereto as Ex. D and incorporated herein by reference.

## VII.     Defendants Threaten Mr. Williamson with Litigation

52.     On June 2, 2019, attorneys for Mr. Williamson sent a letter to Defendants, attached hereto as Ex. E and incorporated herein by reference (the "Williamson Cease and Desist Letter"), reiterating that the Agreement was void under the UAAA, and notifying them that that they should cease and desist from:

> (1) holding yourselves out as Mr. Williamson's Global Marketing Consultant to any and all third parties; (2) holding yourselves out to any third party as an agent or representative, in any way, of Mr. Williamson; (3) contacting or responding to any third parties on behalf of Mr. Williamson; (4) contacting Mr. Williamson (or his family) to introduce any endorsement opportunities; (5) overseeing any marketing opportunities brought to or available to Mr. Williamson; (6) defining, analyzing, or costing the benefit size to Mr. Williamson of any endorsement opportunity; (7) recommending to Mr. Williamson or his family the negotiation fee parameters for any endorsement opportunity; (8) forwarding draft contracts to Mr. Williamson or his family to facilitate Mr. Williamson's review and his negotiation of the same with any endorsement entity or third party; (8) facilitating or negotiating in any way with any third party any contract, endorsement, or opportunity on behalf of Mr. Williamson; (9) joining, enabling, or facilitating Mr. Williamson or his family in any way in Mr. Williamson's negotiation of any contract, endorsement, or opportunity; (10) negotiating in any way with any third party to resolve any problems or disputes between the third party and Mr. Williamson; and (11) providing any advice to Mr. Williamson or his family on the building of Mr. Williamson's brand domestically or internationally.

53.     In response, on June 4, 2019, attorneys for Defendants sent a letter stating that they believed a valid and enforceable contract still exists between the parties based on

Mr. Williamson's declaring himself eligible for the NBA draft, and that they are prepared to seek court intervention, if necessary, to protect their client's supposed rights (the "Response Letter"). A copy of the Response Letter is attached hereto as Ex. A and incorporated herein by reference.

**COUNT I**
**(Declaratory Judgment)**
**(Against All Defendants)**

54.     Mr. Williamson re-alleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 53 above.

55.     Mr. Williamson contends that because the Defendants did not hold the proper certification in the State of North Carolina, the Agreement is void under the UAAA. Mr. Williamson further contends that the Agreement does not comply with the required form of the UAAA and is voidable because, at a minimum, it does not include the required notice provision. Mr. Williamson further contends that he has voided the Agreement. Finally, Mr. Williamson contends that Defendants have engaged in conduct specifically prohibited under the UAAA.

56.     Defendants dispute that the Agreement is void or has been voided.

57.     Defendants' position is set forth in their Response Letter.

58.     By virtue of the foregoing, including Defendants' explicit threats contained in their Response Letter, there now exists an actual, justiciable controversy of sufficient immediacy between Mr. Williamson and Defendants relating to their respective legal rights, duties, and obligations, which controversy is ripe for adjudication.

59.     Declaratory relief will resolve the legal issues between the parties pertaining to the enforceability of the Agreement, and pertaining to Defendants' conduct in inducing Mr. Williamson to sign the Agreement.

60.     Mr. Williamson thus requests a judicial declaration that the Agreement is void as a matter of law and that Defendants engaged in conduct prohibited by the UAAA. Alternatively, Mr. Williamson seeks a judicial declaration that Defendants engaged in conduct prohibited by the UAAA, that the Agreement fails to meet the required form of contract under the UAAA, is therefore voidable, and that Mr. Williamson voided the Agreement.

<u>**COUNT II**</u>
**(Violation of North Carolina's Unfair and Deceptive Trade Practices Act N.C. Gen. Stat. § 75-1.1, *et seq.*)**
**(Against All Defendants)**

61.     Mr. Williamson re-alleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 60 above.

62.     N.C. Gen. Stat. § 75-1.1 (the "NC UDTPA") declares unlawful "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

63.     Defendants' conduct was in and affecting commerce and constitutes an unfair or deceptive trade practice under the NC UDTPA.

64.     Specifically, Defendants' violation of the UAAA constitutes a *per se* violation of the NC UDTPA.

- 20 -

65.     In addition, Defendants' material misrepresentations and false promises during the formation of the Agreement constitute an unfair act or practice prohibited by the NC UDTPA. Defendants' actions were immoral, unethical, and unscrupulous.

66.     Moreover, Defendants' actions had the capacity and tendency to deceive and mislead, created the likelihood of deception, and did, in fact, deceive Mr. Williamson.

67.     Defendants willfully, knowingly, intentionally, and voluntarily engaged in the aforementioned unfair and deceptive practices.

68.     As a direct and proximate result of Defendants' unfair and deceptive practices, Mr. Williamson has suffered injury, including damage to his reputation as a result of association with Defendants and the threat of suit by Defendants for damages in the amount of $100,000,000 or more.

## COUNT III
### (Fraudulent Inducement and Rescission)
### (Against All Defendants)

69.     Mr. Williamson re-alleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 68 above.

70.     As alleged above, Defendants made specific and material misrepresentations to Mr. Williamson and his family that were knowingly false when made, including statements as to Ms. Ford's marketing experience and current and past representation of a number of prominent athletes.

71.     Defendants made these misrepresentations with the intent to deceive Mr. Williamson and to induce him to enter into the Agreement.

72.     Defendants' misrepresentations were reasonably calculated to deceive Mr. Williamson.

73.     Defendants' representations did in fact deceive Mr. Williamson and induce him to enter into the Agreement.

74.     Mr. Williamson reasonably relied on Defendants' statements in making his decision to enter into the Agreement.

75.     If Mr. Williamson had been aware of the falsity of the misrepresentations set forth by Defendants, he would not have entered into the Agreement.

76.     As a direct and proximate result of the misrepresentations made by Defendants, Mr. Williamson has suffered injury, including damage to his reputation as a result of association with Defendants and the threat of suit by Defendants for damages in the amount of $100,000,000 or more.

77.     Mr. Williamson seeks recovery of these damages and requests a judicial declaration that the Agreement is unenforceable against Mr. Williamson as a matter of law because it was obtained through fraudulent inducement.

## PRAYER FOR RELIEF

WHEREFORE, based upon the foregoing, Mr. Williamson hereby respectfully requests that the Court:

a)     Declare that the Agreement is void.

b)     Declare that the Agreement is unenforceable as a matter of law.

c) Enjoin Defendants from (1) holding themselves out as Mr. Williamson's Global Marketing Consultant to any and all third parties; (2) holding themselves out to any third party as an agent or representative, in any way, of Mr. Williamson; (3) contacting or responding to any third parties on behalf of Mr. Williamson; (4) contacting Mr. Williamson (or his family) to introduce any endorsement opportunities; (5) overseeing any marketing opportunities brought to or available to Mr. Williamson; (6) defining, analyzing, or costing the benefit size to Mr. Williamson of any endorsement opportunity; (7) recommending to Mr. Williamson or his family the negotiation fee parameters for any endorsement opportunity; (8) forwarding draft contracts to Mr. Williamson or his family to facilitate Mr. Williamson's review and his negotiation of the same with any endorsement entity or third party; (8) facilitating or negotiating in any way with any third party any contract, endorsement, or opportunity on behalf of Mr. Williamson or seeking to collect any monies owed to Mr. Williamson on his behalf; (9) joining, enabling, or facilitating Mr. Williamson or his family in any way in Mr. Williamson's negotiation of any contract, endorsement, or opportunity; (10) negotiating in any way with any third party to resolve any problems or disputes between the third party and Mr. Williamson; and (11) providing any advice to Mr. Williamson or his family on the building of Mr. Williamson's brand domestically or internationally.

d) Grant to Mr. Williamson all allowable damages and treble damages including pursuant to N.C. Gen. Stat. § 75-16.

e) Grant to Mr. Williamson all allowable pre-judgment and post-judgment interest as provided by law.

f) Grant to Mr. Williamson reasonable attorneys' fees and costs.

g) Grant to Mr. Williamson such other and further relief as the Court deems just and appropriate.

*[Signatures Follow]*

This 23rd day of August 2019.

/s/ John R. Wester
John R. Wester
N.C. Bar No. 4660
jwester@robinsonbradshaw.com
Robert E. Harrington
N.C. Bar No. 26967
rharrington@robinsonbradshaw.com
Fitz E. Barringer
N.C. Bar No. 42679
fbarringer@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON, P.A.
101 N. Tryon St., Ste. 1900
Charlotte, North Carolina 28246
Telephone:    704.377.2536
Facsimile:     704.378.4000

Jeffrey S. Klein*
Jeffrey.Klein@weil.com

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone:  212.310.8790
Facsimile:  212.310.8007

*Local Rule 83.1(d) Special Appearance
filed.

*Attorneys for Plaintiff*