IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ZION WILLIAMSON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:19-cv-593 |
| PRIME SPORTS MARKETING, LLC and GINA FORD, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff, Zion Williamson, a professional basketball player, is suing Prime Sports Marketing, LLC and its President, Gina Ford ("Defendants"), his former agents, seeking a declaration voiding the agency contract he signed with Defendants and related damages. (ECF No. 14.) Before the Court is Defendants' Motion to Dismiss brought pursuant to Rules 12(b)(1) and 12(b)(7) of the Federal Rules of Civil Procedure and the doctrine of *forum non conveniens*.[1] (ECF No. 17.) For the reasons that follow, Defendants' motion will be denied.

I. BACKGROUND

Plaintiff, a native of South Carolina, began to attend and play basketball at Duke University in Durham, North Carolina during the 2018–2019 academic year. (*See* ECF No. 14 ¶¶ 14–15; 20-5 at 3.) Plaintiff excelled during his one season playing for Duke, earning many

---

[1] Defendants' Motion to Dismiss also mentions Rule 12(b)(6)—failure to state a claim upon which relief can be granted—as a basis for dismissal. (ECF No. 17.) As Defendants do not address Rule 12(b)(6) in their opening or reply brief, (*see* ECF Nos. 19; 24), this argument has been waived. *See, e.g.*, *Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174 (10th Cir. 2005) ("The failure to raise an issue in an opening brief waives that issue.").

1

awards and helping his team reach the NCAA's Elite Eight. (*See* ECF No. 14 ¶ 15.) According to Plaintiff's complaint, "[d]uring the first few months of 2019," the heart of Plaintiff's freshmen season, "Defendants repeatedly initiated contact with Mr. Williamson's family in an effort to recruit Mr. Williamson . . . to sign an agency contract with them." (*Id.* ¶ 17.) On April 20, 2019, five days after posting a public video announcing his intention to declare for the 2019 NBA draft, Plaintiff "entered into a marketing agent agreement with Defendants" ("the Agreement"). (*Id.* ¶¶ 19, 21.)

Plaintiff's lawsuit alleges that Defendants made "materially false and misleading" representations about their "marketing experience and capabilities" in order to induce Plaintiff to sign a contract with them. (*Id.* ¶ 18.) On May 31, after learning of Defendants' alleged misrepresentations, Plaintiff emailed Defendants to terminate and void the contract and to direct Gina Ford to "cease all efforts and outreach on [his] behalf." (ECF Nos. 14 ¶ 48; 14-4 at 2.) Two days later, Plaintiff's attorneys wrote to Defendants, asserting that the Agreement violated North Carolina's Uniform Athlete Agents Act (the "UAAA") and therefore was "invalid and unenforceable." (ECF No. 14-5 at 2.) Counsel for Defendants replied, "reject[ing] [Plaintiff's] claims that the Agreement is void and/or voidable," proposing a "privately negotiated resolution of th[e] dispute," and warning that Defendants could suffer more than one hundred million dollars in "injuries, losses, damages[,] and harm" from Plaintiff's attempt to void the Agreement. (*See* ECF No. 14-1 at 2–3.) The parties did not reach a negotiated resolution of their dispute, and on June 13, 2019, Plaintiff filed this suit. (ECF No. 1.) As amended, Plaintiff's complaint seeks to recover damages pursuant to the common law and North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq.*, while also "request[ing] a judicial declaration that the Agreement is void as a

2

matter of law and that Defendants engaged in conduct prohibited by the UAAA."[2]  (ECF No. 14 ¶¶ 54–77.)

Defendants offer a different interpretation of these events.  (*See* ECF Nos. 20-1; 20-2.)  According to Defendants, sometime between April 20 and May 29, 2019, Plaintiff was contacted by an entertainment and sports agency, Creative Artists Agency, LLC ("CAA"), and its agents Austin Brown ("Brown") and Lisa Joseph-Metelus ("Joseph-Metelus").  (*See* ECF No. 20-1 ¶ 84.)  Defendants claim that CAA, Brown, and Joseph-Metelus "induced [Plaintiff] to break . . . his contract with . . . Prime Sports Marketing" by deprecating Defendants and promoting themselves.  (*See id.*)  Furthermore, Defendants state that on May 30, 2019, the day before Plaintiff emailed Defendants to terminate and void the Agreement, CAA, Brown, and Joseph-Metelus "announced to the world that [they] had signed [Plaintiff] to a contract for all purposes including to serve as [his] Global Marketing Firm/Agent."  (*Id.* ¶ 85.)  As a result, on June 19, about a week after Plaintiff filed this suit, Defendants sued Plaintiff, CAA, Brown, and Joseph-Metelus in Florida state court for "breach of contract, breach of the implied duty of good faith and [fair] dealings, fraud, tortuous [sic] interference with a contract, civil conspiracy, unjust enrichment, [misappropriation of trade secrets], Declaratory Judgment, Injunctive Relief[,] and Punitive Damages."  (ECF Nos. 20-1 ¶ 1; 20-2 at 15.)  That litigation is ongoing.  (*See* ECF No. 28 ¶ 11.)  Finally, on September 12, 2019, Defendants filed their Motion to Dismiss that is now before the Court.  (ECF No. 17.)

---

[2] In the alternative, Plaintiff seeks a declaration that "Defendants engaged in conduct prohibited by the UAAA, that the Agreement fails to meet the required form of contract under the UAAA, is therefore voidable, and that Mr. Williamson voided the Agreement."  (ECF No. 14 ¶ 60.)

3

## II. DISCUSSION

Defendants offer three reasons for seeking to dismiss Plaintiff's complaint. First, Defendants argue that the Court lacks subject-matter jurisdiction because "Plaintiff was not a citizen/domiciliary of North Carolina at the commencement of [this action]." (ECF No. 19 ¶¶ 21–30.) Second, Defendants contend the Court "should dismiss Plaintiff's action as Plaintiff failed to join [CAA, Brown, and Joseph-Metelus[3]] to the . . . action." (*Id.* ¶ 31.) Finally, Defendants ask that this action be dismissed on *forum non conveniens* grounds "as Florida is the more appropriate and convenient forum" in which to litigate. (*Id.* ¶¶ 32–38.)

### A. The Parties are Diverse

Diversity jurisdiction exists when a case is between "citizens of different States" and the amount in controversy exceeds $75,000. *See, e.g.*, *Gateway Residences at Exch., LLC v. Ill. Union Ins. Co.*, 917 F.3d 269, 272 (4th Cir. 2019) (citing 28 U.S.C. § 1332(a)); *McAdoo v. Univ. of N.C. at Chapel Hill*, 248 F. Supp. 3d 705, 709 (M.D.N.C. 2017) (same). These elements are met here as the amount in controversy in this case clearly exceeds the $75,000 threshold in that it appears to be valued in the millions of dollars. In addition, Defendants are citizens of Florida while Plaintiff appears to have been a citizen of either North or South Carolina at the time this suit was filed. (*See* ECF No. 19 ¶¶ 20, 22.) Defendants, however, argue that diversity jurisdiction requires Plaintiff to have been a citizen of or domiciled in the forum state—North Carolina—which, they contend, he was not. (*See, e.g.*, ECF No. 19 at 6.) This novel theory of diversity jurisdiction is not the law. *See, e.g.*, *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) ("Under 28 U.S.C. § 1332, a federal district court has

---

[3] Hereinafter, "the Absentees."

original jurisdiction over all civil actions where the amount in controversy exceeds $75,000 . . . and is between citizens of different states."); *Leab v. Streit*, 584 F. Supp. 748, 755 (S.D.N.Y. 1984) (dismissing the idea that diversity jurisdiction required a party to be a citizen of the forum state as "preposterous").

### B. Plaintiff Did Not Fail to Join a Necessary Party

Next, Defendants argue that Plaintiff's action should be dismissed pursuant to Rule 12(b)(7) for his "fail[ure] to join materially necessary parties herein, to wit: [the Absentees.]" (ECF No. 19 ¶ 31.) Rule 12(b)(7) provides that an action may be dismissed for failure to join a required party under Rule 19. *See* Fed. R. Civ. P. 12(b)(7). "The inquiry contemplated by Rule 19 is a practical one" which is left "to the sound discretion of the trial court." *Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1108 (4th Cir. 1980). First, the court must determine whether an absent party is "necessary" to the action, as detailed in Rule 19(a). *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005). If joinder is necessary, but infeasible, the court must then determine whether the party is "indispensable" under Rule 19(b), such that the action cannot continue in that party's absence. *See id.* "In general, federal courts are extremely reluctant to grant motions to dismiss based on nonjoinder, and dismissal will be ordered only when the defect cannot be cured, and serious prejudice or inefficiency will result." *RPR & Assocs. v. O'Brien/Atkins Assocs., P.A.*, 921 F. Supp. 1457, 1463 (M.D.N.C. 1995), *aff'd*, 103 F.3d 120 (4th Cir. 1996). On consideration of a 12(b)(7) motion, the movant bears the burden of "show[ing] that the [absentee] is needed for just adjudication." *Am. Gen. Life & Accident Ins. Co.*, 429 F.3d at 92 (citation omitted).

Here, Defendants have not met their burden of showing that the Absentees are needed for a just adjudication. Indeed, they barely attempt to do so; Defendants' opening brief raises

5

the issue in a cursory manner unsupported by discussion of, or citation to, the relevant law and their reply brief does little better. (*See* ECF Nos. 19 ¶ 31; 24 ¶¶ 22–29.) Furthermore, to the extent that Defendants argue that the Absentees have an interest in the outcome of this action that will be impaired or impeded by their absence, *see* Fed R. Civ. P. 19(a)(1)(B)(i), the Absentees' lack of effort to intervene in this case strongly suggests that they disagree. *See United States v. Juan Bay Marina*, 239 F.3d 400, 406–07 (1st Cir. 2001) (concluding that an absentee that was aware of a lawsuit and chose not to intervene was "apparently of the view that its interests either were not at stake or were aligned with those of the [plaintiff]"). The Court will not "second-guess" a potential party's determination that "its own interests [are not] substantially threatened" by the litigation to which it is absent. *See id.* at 407.

### C. Dismissal Based on *Forum Non Conveniens* is Not Warranted

Finally, to the extent that Defendants seek dismissal on *forum non conveniens* grounds so that the dispute between the parties can be resolved in Florida state court, they have failed.[4] (*See* ECF No. 19 ¶¶ 32–38; 24 ¶¶ 30–34.) "[T]he ancient doctrine" of *forum non conveniens* permits federal district courts to dismiss cases that would best be tried "in a different judicial system." *See* Charles Alan Wright & Arthur R. Miller, 14D Federal Practice & Procedure § 3828 (4th ed., Apr. 2020 update). Given that federal courts can now easily transfer cases to other federal courts through 28 U.S.C. § 1404, "the harsh step of dismissing on the basis of *forum non conveniens*" is appropriate "only when the superior forum is in a foreign country or

---

[4] The exact nature of Defendants' argument is frustratingly unclear. However, because dismissal on the basis of *forum non conveniens* is clearly not warranted here, the Court need not consider whether the doctrine is ever applicable when the action at issue could be transferred to state court or to another federal court.

6

perhaps, under rare circumstances, a state court or a territorial court." *Id.*; *see also Sinochem Int'l Co., Ltd. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) ("The common-law doctrine of *forum non conveniens* has continuing application in federal courts only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best." (internal citation omitted)).

"The *forum non conveniens* determination is committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Renyo*, 454 U.S. 235, 257 (1981). The Supreme Court, however, "has established an analytical framework . . . [to] guide the district court's analysis." *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011). This framework assigns a "defendant invoking *forum non conveniens* [the] heavy burden [of] opposing the plaintiff's chosen forum." *See Sinochem*, 549 U.S. at 430. To decide whether a defendant has carried that burden, "[a] district court must determine whether the alternative forum is 1) available; 2) adequate; and 3) more convenient in light of the public and private interests involved." *Jiali Tang*, 656 F.3d at 248. In order to dismiss this case, the Court must find that "when weighed against [Plaintiff's] choice of forum, the relevant public and private interests strongly favor" resolution of this dispute in Florida state court rather than in North Carolina federal court. *Id.* at 246 (quoting *Kontoulas v. A.H. Robins Co.*, 745 F.2d 312, 315 (4th Cir. 1984)). The private interests potentially relevant to this case include: "relative ease of access to sources of proof . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *See Piper*, 454 U.S. at 241 n.6 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The public interests potentially relevant to this case include: "the 'local interest in having localized controversies decided at home'; [and] the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action." *Id.* (citing *Gilbert*, 330 U.S. at 509).

Here, the Court need not determine whether Florida state courts are an available and adequate alternative forum because the relevant public and private interests do not weigh so strongly against Plaintiff's choice of forum as to warrant the highly unusual dismissal of an action from federal to state court on grounds of *forum non conveniens*.

Starting with the public factors, the key events in the case—Defendants' pre-contract solicitations of Plaintiff—took place in North Carolina and Plaintiff's lawsuit alleges violations of North Carolina law. Thus, North Carolina has a substantial interest in this case. It is less clear, however, whether Florida or North Carolina would be more at home with the law to be applied in this case. While Defendants appear to be correct that the Agreement contains a choice of law clause stating that the Agreement will be governed by Florida law, (*see* ECF Nos. 24 ¶ 33(10); 20-2 at 36), as Plaintiff argues, North Carolina law is still likely to feature heavily in any determination of whether a contract was formed between the parties and thus will likely play an important role in resolving this case, (*see* ECF No. 23 at 21). The Court finds that this factor does not favor dismissal as the Court has experience applying both North Carolina law and the law of other jurisdictions. *See Washington v. Trinity Indus.*, No. 1:15-cv-517, 2017 WL 752166, at *9 (M.D.N.C. Feb. 27, 2017) ("[T]he Court is often called upon to apply the law of states other than the one in which the Court sits and thus can apply either [out-of-state] or North Carolina law with the same degree of ease.").

Regarding the private factors, it may be somewhat less convenient for Defendants to access proof in North Carolina than in Florida. However, this consideration weighs only slightly in favor of dismissal. Generally speaking, depriving a plaintiff of their choice of forum "is inappropriate" if moving the action to the defendant's desired forum "simply shifts the inconvenience from one party to the other." *See Rebel Debutante LLC v. Forsythe Cosmetic Grp.,*

8

*Ltd*, 799 F. Supp. 2d 558, 565 (M.D.N.C. 2011) (analyzing a motion to transfer). Dismissing this action to save Defendants the inconvenience of litigating in North Carolina would be especially inappropriate here as Defendants have proven capable of repeatedly traveling to North Carolina for business. Defendants' remaining argument for dismissal consists of their concern that Plaintiff's status as a star for the Duke Blue Devils will make it impossible for Defendants to receive a fair trial in North Carolina. (ECF Nos. 19 ¶ 37(6); 24 ¶ 30.) While prejudice against Defendants could potentially constitute a practical problem with trying this case in North Carolina, Defendants' conclusory protestations that North Carolina is prejudiced against them are too insubstantial to support dismissal. The Court concludes that dismissal of this action on *forum non conveniens* grounds is not warranted, as Defendants have failed to carry the heavy burden required to oppose Plaintiff's choice of forum.

For the reasons outlined herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss, (ECF No. 17), is DENIED.

This, the 24th day of April 2020.

/s/Loretta C. Biggs
United States District Judge