## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

## CASE NO. 1:19-CV-593-LCB-JLW

ZION WILLIAMSON,

                    Plaintiff,

      v.

PRIME SPORTS MARKETING, LLC, and
GINA FORD,

                    Defendants.

## MEMORANDUM IN SUPPORT OF PLAINTIFF ZION WILLIAMSON'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Plaintiff Zion Williamson submits this Memorandum in support of his Motion for

Partial Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure (the "Motion") as to Count I of the First Amended Complaint, seeking a

declaration that the Joint Marketing and Branding Agreement is void or voidable (and has

been voided) under North Carolina law.

# TABLE OF CONTENTS

NATURE OF THE CASE ................................................................................................. 1

STATEMENT OF ADMITTED FACTS .......................................................................... 3

PROCEDURAL HISTORY .............................................................................................. 6

LEGAL STANDARD ...................................................................................................... 7

ARGUMENT .................................................................................................................... 8

    A.    The Agreement Is Void Under the UAAA as a Result of Defendants'
        Actions as Unregistered Athlete Agents. ........................................................ 9

        1.    The UAAA Renders Void Any Agency Contract Entered into
            as a Result of Contact by an Unregistered Athlete Agent ................. 9

        2.    The Undisputed Facts Show That Ford Was (and Is) an
            Unregistered Athlete Agent ............................................................. 12

        3.    Other Courts Have Construed the UAAA To Invalidate
            Agency Contracts Under Analogous Circumstances ...................... 16

    B.    The Agreement Is Void Under the UAAA Due to Defendants'
        Failure To Include the Requisite Disclosures. ........................................... 18

        1.    The UAAA Mandates a Prominent Warning .................................. 18

        2.    The Agreement Lacks the Required Warning
            and Has Been Voided ..................................................................... 199

    C.    Defendants' Conclusory Assertion that Mr. Williamson Is Not
        Protected by the UAAA Is Both Incorrect and Legally Irrelevant ............. 20

CONCLUSION ............................................................................................................. 23

LR 7.3(d)(1) Word Count Certification ....................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Elsayed v. Family Fare LLC*,
    2020 WL 780701 (M.D.N.C. Feb. 18, 2020) (Biggs, J.) ..............................................7

*Guessford v. Pennsylvania Nat. Mut. Cas. Ins. Co.*,
    918 F. Supp. 2d 453 (M.D.N.C. 2013) ..........................................................................7

*Hibbs v. Winn*,
    542 U.S. 88 (2004).........................................................................................................21

*Howard v. Mississippi Sec'y of State*,
    184 So. 3d 295 (Miss. Ct. App. 2015) .........................................................................17

*Med-Trans Corp. v. Benton*,
    581 F. Supp. 2d 721 (E.D.N.C. 2008)............................................................................7

*Nat'l Life Ins. Co. v. Kiser*,
    2010 WL 11622623 (E.D.N.C. Jan. 19, 2010) ..............................................................4

*Nat'l Quarry Servs., Inc. v. First Mercury Ins. Co., Inc.*,
    372 F. Supp. 3d 296 (M.D.N.C. 2019) .......................................................................7, 8

*Robinson v. Am. Honda Motor Co.*,
    551 F.3d 218 (4th Cir. 2009) .........................................................................................4

*Sloane v. Tenn. Dep't of State*,
    2019 WL 4891262 (Tenn. Ct. App. Oct. 3, 2019).......................................................17

**Statutes**

North Carolina Uniform Athlete Agents Act, N.C. Gen. Stat. Ann. § 78C-
    85 et seq. (2003)....................................................................................................*passim*

15 U.S.C.A. § 7807 (2004).....................................................................................................8

**Other Authorities**

Joshua Lens, *Application of the UAAA, RUAAA, and State Athlete-Agent
    Laws to Corruption in Men's College Basketball and Revisions
    Necessitated by NCAA Rule Changes*, 30 Marq. Sports L. Rev. 47
    (2019) ...........................................................................................................................12

Nat'l Basketball Ass'n – Nat'l Basketball Players Ass'n, Collective
Bargaining Agreement (July 1, 2017) .......................................................... 22

Nat'l Collegiate Athletic Ass'n, Division I Manual (Aug. 1, 2019) .................... 14, 21, 22

Nat'l Collegiate Athletic Ass'n, Need for and Benefits of the Uniform
Athlete Agents Act (UAAA), http://www.ncaa.org/enforcement/agents-
and-amateurism/need-and-benefits-uniform-athlete-agents-act-uaaa (last
visited May 20, 2020) ................................................................................. 11

N.C. Sec'y of State, List of Athlete Agents
https://www.sosnc.gov/divisions/athlete_agents/List_of_Athlete_Agents
(last visited May 20, 2020) ........................................................................... 5

Robert N. Davis, *Exploring the Contours of Agent Regulation: The Uniform
Athlete Agents Act*, 8 Vill. Sports & Ent. L.J. 1, 22 (2001) .......................... 12

*Sports Agent Responsibility and Trust Act: Hearing on H.R. 361 Before the
Subcomm. on Commercial and Administrative Law of the H. Comm. on
the Judiciary*, 108th Cong. (2003) (prepared statement of the Honorable
Tom Osborne) .......................................................................................... 15, 16

Uniform Athlete Agents Act (Nat'l Conference of Comm'rs on Uniform
State Laws 2000) ................................................................................. *passim*

iii

## NATURE OF THE CASE

Zion Williamson was a standout student-athlete at Duke University ("Duke") and later the first selection in the 2019 National Basketball Association ("NBA") Draft. Gina Ford is the President and Manager for Prime Sports Marketing LLC ("Prime Sports"), and an agent who began recruiting Mr. Williamson directly and through his family during the 2018-2019 regular Duke basketball season when he was only eighteen years old. The culmination of that effort was that Defendants executed a certain Joint Marketing and Branding Agreement—an agency contract—with Mr. Williamson (the "Agreement").

The undisputed facts in the pleadings establish that the Agreement is void under the North Carolina Uniform Athlete Agents Act (the "UAAA"). The UAAA, like its parallel statutes in the more than 40 states and territories that have enacted the model statute on which the UAAA is based, protects student-athletes during and after the agent recruitment and negotiation process. These statutes recognize the vulnerability of young student-athletes and attempt to aid their transition to professional sports by preventing manipulative, underhanded behavior from athlete agents who prey on student-athletes' youth, and the athletes' and their families' inexperience in the industry.

The Agreement is void for two independent reasons under the UAAA. First, the statute requires that athlete agents hold a certificate of registration in North Carolina. N.C. Gen. Stat. Ann. § 78C-88. An agent is required to register before: (1) holding oneself out as an athlete agent; (2) initiating contact with a student-athlete; (3) directly or indirectly recruiting or soliciting a student-athlete; or (4) entering into an agency contract

with a student-athlete. *See* N.C. Gen. Stat. Ann. §§ 78C-86(2); 78C-88(a); 78C-98(b)(1). Any contract resulting from improper contact with a student-athlete before registering with the State is void. N.C. Gen. Stat. Ann. § 78C-88(d). Defendants concede that they do not hold, and at all relevant times did not hold, a certificate of registration in North Carolina. Indeed, they were not registered when they first held themselves out as athlete agents, when they were directly or indirectly recruiting and soliciting Mr. Williamson, *or* when they signed the Agreement. The Agreement is thus void as a matter of law.

Second, the Agreement is independently void because it lacked a required written warning. The UAAA requires that any agency contract contain a prominent, all-caps, and bold warning to the student-athlete that he/she will lose his/her eligibility to participate in intercollegiate sports if he/she signs the contract. N.C. Gen. Stat. Ann. § 78C-94(c). A contract lacking such a warning is voidable by the student-athlete. N.C. Gen. Stat. Ann. § 78C-94(d). Here, the undisputed facts in the pleadings establish both that the Agreement lacks that warning and that Mr. Williamson properly exercised his right to void the Agreement on May 31, 2019. (*See* Answer ¶ 51.) It is therefore void.

Defendants attempt to divert attention from this straightforward argument by repeatedly asserting the legal conclusion that Mr. Williamson—one of the most prominent student-athletes in the country in recent years—was not actually a "student-athlete" entitled to the protections of the UAAA. (*See, e.g.*, Answer ¶¶ 13, 15, 22, 24, 27, 28, 30.) But asserting the legal conclusion, even repeatedly, does not make it so. The UAAA defines a "student-athlete" as a person who "engages in" or is "eligible to engage

2

in" intercollegiate sports. N.C. Gen. Stat. Ann. § 78C-86(11). Here, it is undisputed that Mr. Williamson played basketball for Duke during the entire 2018-2019 basketball season, during which time the undisputed facts in the pleadings show that Defendants were unregistered, yet acting as athlete agents soliciting Mr. Williamson, culminating in his signing of the Agreement without the required warning.

By Defendants' own admissions contained within the pleadings, the Agreement is void or voidable (and voided) as a matter of law under the UAAA. On that basis, the Court should grant this Motion and enter judgment on the pleadings in favor of Mr. Williamson as to Count I.

## STATEMENT OF ADMITTED FACTS

The UAAA is straightforward, and few facts are necessary to adjudicate Mr. Williamson's request for a declaration that the Agreement is void: (i) Defendants contacted Mr. Williamson in 2019 while he was playing college basketball; (ii) Defendants do not hold, and at all relevant times did not hold, a certificate of registration in North Carolina; (iii) Defendants did not include the required notice provision in the Agreement; and (iv) Mr. Williamson voided the Agreement. Defendants have admitted each relevant fact in the pleadings, such that Count I turns solely on a legal question and is ripe for judgment as a matter of law.

3

Defendants admit that Mr. Williamson is a standout basketball athlete. (FAC/Answer[1] ¶ 13.) They admit that he was enrolled at Duke and, during the 2018-2019 academic year, played collegiate basketball as a freshman. (*Id.* ¶ 15.) It is, therefore, undisputed that Mr. Williamson was enrolled at Duke and played basketball for that NCAA member university throughout the 2018-2019 season. Defendants further admit that Mr. Williamson's decision not to return to Duke for the 2019-2020 basketball season was voluntary. (*See id.* ¶ 19.)

Defendants admit that they traveled to Durham, North Carolina in 2019 and that Ms. Ford attended at least one Duke basketball game that year. (*Id.* ¶ 18.) Defendants also admit that there are multiple text messages between them and Mr. Williamson's family between January and April 2019, and that they met with Mr. Williamson and his family to discuss the prospect of entering into a marketing agreement. (*Id.* ¶¶ 18, 36.)[2] Ms. Ford began texting Mr. Williamson's family as early as January 20, 2019, and

---

[1] Citation references to "FAC/Answer" identify the allegations in the First Amended Complaint ("FAC") (ECF No. 14) and the corresponding admissions thereto in Defendants' Answer and Counterclaims (ECF No. 32).

[2] Text messages between Mr. Williamson's family and the Defendants make clear that the recruitment of Mr. Williamson began as early as January 2019, during which period Mr. Williamson was actively playing basketball for Duke. (Plaintiff's Answer to the Counterclaims, Ex. 1, ECF No. 33.) The Court may consider "documents that 'were integral to and explicitly relied on in the complaint,' when all parties agree that the documents 'provided are authentic.'" *Nat'l Life Ins. Co. v. Kiser*, 2010 WL 11622623, at *3 (E.D.N.C. Jan. 19, 2010); *see also Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222-23 (4th Cir. 2009) (considering documents not attached to the complaint where the documents "were integral to and explicitly relied on in the complaint" and where the parties agreed the documents were authentic).

4

communicated with Mr. Williamson through his family throughout the remainder of the season. (*See* Answer to the Counterclaims, Ex. 1.) For example, on February 17, 2019, Mr. Williamson's mother texted Ms. Ford asking, "what [is] the name of your company? I couldn't remember. [Zion] wanted to look it up." (*Id.*) Similarly, on March 31, 2019, Ms. Ford texted Mr. Williamson's mother, "Usain just asked me to send a message to Zion. He said to tell him this game does not define who he is." (*Id.*) Indeed, Defendants admit that, following those contacts, Mr. Williamson signed the Agreement, which is a contract that Defendants assert authorized them to negotiate or solicit endorsement contracts on behalf of Mr. Williamson. (FAC/Answer ¶¶ 21, 42; FAC Ex. B.)

Defendants also admit that they do not hold, and at all relevant times did not hold, a certificate of registration in North Carolina. Nor did they apply for registration as an athlete agent in North Carolina. Nor has Ms. Ford ever held a certificate as a registered athlete agent under the UAAA. (FAC/Answer ¶¶ 3, 16, 29, 45.)[3]

The Agreement, on its face, shows that it does not contain the prominent, statutorily required warning that signing it will cause Mr. Williamson to lose his eligibility, or that he had a 14-day window within which he could cancel the contract. (FAC Ex. B.) Finally, Defendants admit that, "[o]n May 31, 2019, Mr. Williamson's

---

[3] The Court may further take judicial notice that Defendants are not registered athlete agents in North Carolina, as the Secretary of State of North Carolina maintains and publishes a list of registered athlete agents, and Defendants still are not listed. N.C. Sec'y of State, List of Athlete Agents
https://www.sosnc.gov/divisions/athlete_agents/List_of_Athlete_Agents (last visited May 20, 2020).

family sent a note to Defendants on Mr. Williamson's behalf terminating and voiding the Agreement effective immediately." (FAC/Answer ¶ 51; FAC Ex. D.)

## PROCEDURAL HISTORY

Mr. Williamson filed a Complaint in this Court on June 13, 2019, requesting a declaratory judgment that the Agreement is void or voidable (and voided). (ECF No. 1). Mr. Williamson filed his First Amended Complaint on August 21, 2019, asserting additional causes of action for fraudulent inducement and violations of the North Carolina Unfair and Deceptive Trade Practices Act. (ECF No. 14). Defendants filed a Motion To Dismiss on September 12, 2019. (ECF Nos. 17-20). This Court rejected Defendants' Motion To Dismiss in its entirety on April 24, 2020. The Court stated that Defendants' "novel theory of diversity is not the law," their argument seeking joinder of other parties was "unsupported by discussion of, or citation to, the relevant law," and their efforts to seek dismissal on the basis of *forum non conveniens* in favor of a subsequently filed Florida proceeding were "frustratingly unclear" and "clearly not warranted here." (ECF No. 31 at 4, 6, 6 n. 4).

Defendants filed an Answer and Counterclaims on May 8, 2020. (ECF No. 32). Mr. Williamson filed his Answer to the Counterclaims on May 20, 2020. (ECF No. 33). Mr. Williamson now moves for judgment on the pleadings as to Count I of the First Amended Complaint, his request for a declaratory judgment that the Agreement is either void, or voidable and voided, as a matter of law under the UAAA.

6

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(c), any party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." The court considers the Complaint, any documents attached to or incorporated into the Complaint, and the Answer, and applies the standard for considering a motion to dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). *Elsayed v. Family Fare LLC*, 2020 WL 780701, at *2 (M.D.N.C. Feb. 18, 2020) (Biggs, J.). Documents attached to the Answer are considered "part of the pleadings if such documents are central to the plaintiff's claim and the authenticity is not challenged." *Guessford v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 918 F. Supp. 2d 453, 459 (M.D.N.C. 2013). The court may also consider "matters of public record susceptible to judicial notice." *Nat'l Quarry Servs., Inc. v. First Mercury Ins. Co., Inc.*, 372 F. Supp. 3d 296, 301 (M.D.N.C. 2019).

"The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law." *Med-Trans Corp. v. Benton*, 581 F. Supp. 2d 721, 728 (E.D.N.C. 2008) (quoting *Smith v. McDonald*, 562 F. Supp. 829, 842 (M.D.N.C. 1983)). "Judgment on the pleadings is appropriate where the case turns on a legal question and the pleadings demonstrate that the moving party is entitled to judgment as a matter of law." *Elsayed*, 2020 WL 780701, at *2 (quoting *Fed. Ins. Co. v. S. Lithoplate, Inc.*, 7 F. Supp. 3d 579, 583 (E.D.N.C.

2014)). The court grants judgment on the pleadings "when the opposing party has not pleaded facts demonstrating the plausibility of its claim or defense." *Nat'l Quarry Servs.*, 372 F. Supp. 3d at 301.

Here, based on the clear mandate of the UAAA and Defendants' admissions, Mr. Williamson is entitled to judgment on the pleadings as to his request in Count I for a declaratory judgment that the contract is void, or voidable and voided.

## ARGUMENT

In 2003, North Carolina enacted the UAAA. N.C. Gen. Stat. Ann. § 78C-85 et seq. (2003). The UAAA adopts a model statute (the "Model Act") drafted by the National Conference of Commissioners on Uniform State Laws (the "Committee") and recommended for passage in all 50 states. Uniform Athlete Agents Act (Nat'l Conference of Comm'rs on Uniform State Laws 2000) [hereinafter "Model Act"];[4] *see also* 15 U.S.C.A. § 7807 (2004) (noting Congress's encouragement of all States to enact the Model Act "to protect student-athletes and the integrity of amateur sports from unscrupulous sports agents"). Today, more than 40 states and territories have enacted some form of the Model Act. The purposes of the UAAA, and the Model Act on which it is based, include protecting student-athletes and educational institutions from the "serious problems" that "would-be agents" cause. Model Act, Prefatory Note Comment, at 1.

---

[4]https://www.uniformlaws.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=fbc54541-eb71-44d7-d9ee-dd6f3b851697&forceDialog=0

The plain language of the UAAA provides that agency contracts in violation of two key provisions of the statute are void or voidable by the student-athlete. Defendants were required under the UAAA to hold a certificate of registration in North Carolina prior to and in order to: (1) recruit Mr. Williamson, (2) directly or indirectly solicit him to enter into an agency contract, (3) enter into an agency contract with him, and (4) hold themselves out as an athlete agent. Defendants were also required under the UAAA to include a specific notice provision in the Agreement, alerting Mr. Williamson to his rights under the UAAA and to the potential consequences of entering into the Agreement.

The uncontested facts in the pleadings clearly establish that Defendants contacted Mr. Williamson's family as part of a solicitation and recruitment effort while he was playing basketball for Duke, and then solicited Mr. Williamson directly and through his family to enter into an agency contract with Defendants, all without proper registration as athlete agents. Defendants also failed to include the statutorily required disclosure in the Agreement, and it is undisputed that Mr. Williamson exercised his right to void the contract. Each failing thus independently renders the contract void as a matter of law.

A. The Agreement Is Void Under the UAAA as a Result of Defendants' Actions as Unregistered Athlete Agents.

1. *The UAAA Renders Void Any Agency Contract Entered into as a Result of Contact by an Unregistered Athlete Agent*

The UAAA mandates that "an individual may not act as an athlete agent in [North Carolina] without holding a certificate of registration under G.S. 78C-90 or G.S. 78C-92." N.C. Gen. Stat. Ann. § 78C-88(a). The UAAA defines "athlete agent" expansively

as a person who (1) "enters into an agency contract with a student-athlete;" (2) "directly or indirectly, recruits or solicits a student-athlete to enter into an agency contract;" or (3) "represents to the public that" he or she "is an athlete agent." N.C. Gen. Stat. Ann. § 78C-86(2). The UAAA defines "agency contract" to encompass "a professional-sports-services contract or an endorsement contract." N.C. Gen. Stat. Ann. § 78C-86(1). Thus, the UAAA requires a person to obtain a certificate of registration before entering into (or soliciting the entry into) an endorsement contract with a student-athlete, or before holding oneself out to the public as an athlete agent.

The UAAA defines "student-athlete" broadly as "[a]n individual who engages in, is eligible to engage in, or may be eligible in the future to engage in any intercollegiate sport," but not an individual who is "permanently ineligible." N.C. Gen. Stat. Ann. § 78C-86(11). Thus, anyone who is, in fact, engaged in or eligible to engage in intercollegiate athletics at the time of being recruited or solicited is a "student-athlete" for purposes of the statute.

Critically, the UAAA explicitly sets forth the consequences of failing to register: "[a]n agency contract resulting from conduct in violation of this section is void." N.C. Gen. Stat. Ann. § 78C-88(d).

The NCAA has underscored the importance of this athlete agent registration requirement as a means to protect student-athletes from "damage caused by impermissible and illegal inducements" by "unscrupulous individuals . . . who are willing to use any means necessary to ensnare a student-athlete." Nat'l Collegiate Athletic Ass'n,

Need for and Benefits of the Uniform Athlete Agents Act (UAAA),

http://www.ncaa.org/enforcement/agents-and-amateurism/need-and-benefits-uniform-athlete-agents-act-uaaa (last visited May 20, 2020). The NCAA goes on to say that "[t]here is a real need to have access to information about the individuals who become involved with [] student-athletes." *Id.* To achieve this goal, the UAAA, like the Model Act on which it is based, requires athlete agents to apply for registration and "provide important information, both professional and criminal in nature," which "enables student-athletes, their parents and family, and university personnel to better evaluate the prospective agent." *Id.* (discussing the Model Act).[5] For that reason, any contract entered into following contact by an unregistered agent is void, protecting student-athletes from the potential harms associated with negotiating and entering into an agreement with an athlete agent who has circumvented the vetting process put in place by the State of North Carolina.

The Prefatory Note to the Model Act clearly states, "[r]egistration is required *before initiating contact* with a student-athlete to induce the signing of an agency contract." Model Act, Prefatory Note, at 2 (emphasis added). "[T]he Committee did intend to include within the definition of 'contact' communications intended to induce a

---

[5] The Secretary of State may consider certain conduct by the applicant when determining whether to grant the application for registration, such as criminal history, conduct that would disqualify the applicant from serving in a fiduciary capacity, or conduct prohibited under the statute (which includes providing false or misleading information to a student-athlete to induce the student-athlete to enter into an agency contract, as well as initiating contact with a student-athlete without registration). N.C. Gen. Stat. Ann. § 78C-90(b).

11

student-athlete to sign an agency contract." Robert N. Davis, *Exploring the Contours of Agent Regulation: The Uniform Athlete Agents Act*, 8 Vill. Sports & Ent. L.J. 1, 22 (2001). This section was designed to "discourage[] *contact* with a student-athlete by an individual who has not registered as an athlete agent," and thus a resulting agency contract is "*void, not merely voidable*." Model Act, Section 4 Comment, at 8 (emphasis added).

The UAAA also makes clear that "acting" as an athlete agent is not limited to direct contact with a student-athlete, but also encompasses "indirect" recruiting or solicitation efforts. N.C. Gen. Stat. Ann. § 78C-86(2). "In [the Model Act], the ULC defined recruit and solicit as attempting to influence a student-athlete or her or his parent or guardian on the choice of an athlete-agent." Joshua Lens, *Application of the UAAA, RUAAA, and State Athlete-Agent Laws to Corruption in Men's College Basketball and Revisions Necessitated by NCAA Rule Changes*, 30 Marq. Sports L. Rev. 47, 67 (2019). The official Comments to the Model Act make clear that "[t]he intent of this section is to make the registration requirement as broad as constitutionally possible." Model Act, Section 4 Comment, at 7.

### 2. *The Undisputed Facts Show That Ford Was (and Is) an Unregistered Athlete Agent*

Here, the Agreement "is void" because it is "[a]n agency contract resulting from conduct in violation of" the UAAA's registration requirements. N.C. Gen. Stat. Ann. § 78C-88(d). It is undisputed that Defendants do not hold, and at all relevant times did not hold, a certificate of registration to act as an athlete agent in North Carolina, nor did they

apply for registration as an athlete agent in North Carolina, nor has Ms. Ford ever held a certificate as a registered athlete agent under the UAAA. (FAC/Answer ¶¶ 3, 16, 29, 45.)

It is also undisputed that Defendants entered into the Agreement with Mr. Williamson. (FAC/Answer ¶ 21.) In that Agreement, Defendants agreed to act as Mr. Williamson's agents for purposes of endorsements, namely, as Mr. Williamson's "Global Marketing Consultant for identifying branding and endorsement opportunities." (FAC Ex. B ¶ 1.) The pleadings, therefore, demonstrate that the Agreement is an "agency contract," as defined by the UAAA.

The pleadings also demonstrate that the agency contract "result[ed] from conduct in violation of" the UAAA's registration requirements. N.C. Gen. Stat. Ann. § 78C-88(d). First, the UAAA requires registration before "directly or indirectly, recruit[ing] or solicit[ing] a student-athlete to enter into an agency contract." *See* N.C. Gen. Stat. Ann. §§ 78C-88(a); 78C-86(2). It is undisputed that, in early 2019, while Mr. Williamson was playing basketball for Duke, Defendants attended Duke Basketball games, texted Mr. Williamson and his family, and met with Mr. Williamson and his family in North Carolina. (FAC/Answer ¶¶ 18, 36, 42; Counterclaims ¶¶ 33-35; Answer to the Counterclaims, Ex. 1.) All of that undisputed conduct involves direct or indirect recruitment or solicitation of Mr. Williamson. At no time therein were Defendants registered athlete agents in North Carolina. (FAC/Answer ¶¶ 3, 16, 29, 45.) Thus, this conduct alone, which took place while Mr. Williamson was playing basketball for Duke, violated the UAAA and rendered the resulting contract void as a matter of law.

13

Second, the UAAA prohibits unregistered agents from "representing to the public" that they are "athlete agent[s]." *See* N.C. Gen. Stat. Ann. §§ 78C-88(a); 78C-86(2). Again, the undisputed facts show that Defendants did so. (*See, e.g.*, Answer ¶ 41 ("Ms. Ford admits that Ms. Ford and Prime Sports Marketing, LLC have served as Marketing Agent for other NBA draft picks, including first round and other round draft picks.")).

Third, the UAAA expressly prohibits an unregistered athlete agent from "entering into an agency contract" at all. *See* N.C. Gen. Stat. Ann. §§ 78C-88(a); 78C-86(2). On April 20, 2019, Defendants again met with Mr. Williamson and his family in North Carolina before unlawfully entering into the Agreement. (FAC/Answer ¶¶ 21, 42; Counterclaims ¶¶ 33-35.) Here, it is undisputed that Defendants were unregistered at the time they entered into the Agreement.

The undisputed facts also show that Mr. Williamson was a "student-athlete." The UAAA's definition encompasses any person who "engages in, is eligible to engage in, or may be eligible in the future to engage in" an intercollegiate sport. N.C. Gen. Stat. Ann. § 78C-86(11). The NCAA Division I Manual (the "NCAA Bylaws") also require Duke and the NCAA Eligibility Center to certify a student-athlete's amateur status, including prior to engaging in practice and competition. Nat'l Collegiate Athletic Ass'n, Division I Manual §§ 12.1.1.1.2.1, 12.1.1.1.3 (Aug. 1, 2019) [hereinafter "NCAA Bylaws"].[6] Here, it is undisputed that Mr. Williamson was, in fact, playing basketball for Duke during the

---

[6] https://web3.ncaa.org/lsdbi/reports/getReport/90008

2018-2019 basketball season. (*See* Counterclaims ¶ 19 (alleging that Mr. Williamson sustained a physical injury while playing for Duke in February 2019); ¶ 27 (alleging that Mr. Williamson was a member of the Duke men's basketball team on or about March 13, 2019).) Defendants attended Duke Basketball games, texted Mr. Williamson and his family, and met with Mr. Williamson and his family in North Carolina while he was playing basketball for Duke. (FAC/Answer ¶¶ 18, 36, 42; Counterclaims ¶¶ 33-35; Answer to the Counterclaims, Ex. 1.) Thus, Defendants directly and indirectly recruited and solicited Mr. Williamson to enter into the Agreement while he either "engage[d] in" or was "eligible to engage in" an intercollegiate sport (and when Defendants were holding themselves out to Mr. Williamson and the public as athlete agents).

Declaring the Agreement void is not only compelled by the statutory text, but also advances its core purpose of protecting student-athletes from overreaching agents. As the Honorable Tom Osborne, a representative of Congress from the State of Nebraska and himself a former college athlete, professional football player, and head football coach for the University of Nebraska, testified in support of adopting a federal version of the Model Act, the Sports Agent Responsibility and Trust Act:

> Unscrupulous agents often take advantage of students who have little or no experience in contract negotiations, potentially causing financial harm for student-athletes… Unethical sports agents, often motivated purely by greed, will use any means necessary to represent a student-athlete who has even a remote chance of playing professional sports… I saw too many student-athletes taken advantage of by sports agents looking out for their own bottom lines.

*Sports Agent Responsibility and Trust Act: Hearing on H.R. 361 Before the Subcomm. on Commercial and Administrative Law of the H. Comm. on the Judiciary*, 108th Cong. (2003) (prepared statement of the Honorable Tom Osborne).[7]

Mr. Williamson, a standout athlete expected to be the first NBA Draft selection, was clearly at risk of unscrupulous behavior by agents seeking to attach themselves to his success. The Model Act and its State progeny were designed to protect student-athletes like Mr. Williamson from agents taking advantage of a student-athlete less knowledgeable about the industry and convincing him to enter into an ill-advised, invalid, and onerous agreement.

Quite simply, the UAAA declares void any agency contract entered into by an unregistered athlete agent and a student-athlete, and the undisputed facts here clearly establish that the Agreement fits the bill: it is an agency contract, Defendants were not (and have not) registered, and Mr. Williamson was a student-athlete. The Agreement is therefore void.

### 3. Other Courts Have Construed the UAAA To Invalidate Agency Contracts Under Analogous Circumstances

Courts interpreting state statutes nearly identical to the UAAA have similarly invalidated agency contracts that fail to comply with applicable law. For example, in 2014, an agent (David Sloane) recruited and came to an oral agreement in Tennessee with

---

[7] https://www.govinfo.gov/content/pkg/CHRG-108hhrg87094/html/CHRG-108hhrg87094.htm

a young baseball player, Justus Sheffield. Sloane was registered as an athlete agent in Florida and Alabama, but not in Tennessee where he recruited Sheffield, and Sloane did not submit a registration application in Tennessee until after he entered into an oral agreement with Sheffield. Sloane sued Sheffield for failure to pay his full commission, but the court dismissed the case after finding that Sloane's failure to register as an athlete agent rendered the contract void under Tennessee's enactment of the Model Act. *See Sloane v. Tenn. Dep't of State*, 2019 WL 4891262, at *2 n.3 (Tenn. Ct. App. Oct. 3, 2019). The Tennessee Secretary of State became aware of Sloane's violations and assessed civil penalties against Sloane for representation of Sheffield without registration. *Id.* at 2. The Administrative Law Judge, affirmed by the Tennessee Court of Appeals, found that "Mr. Sloane violated the Act when he *initiated contact with Justus* and represented a student athlete prior to registering as an athlete agent." *Id.* (emphasis added).

Similarly, in *Howard v. Mississippi Sec'y of State*, an athlete agent signed two student-athletes without first registering as an athlete agent. 184 So. 3d 295, 297 (Miss. Ct. App. 2015). The court there noted that the Mississippi Secretary of State's Regulation and Enforcement Division sent a letter to the agent stating that, under Mississippi's Athlete Agents Act (Mississippi enacted the Model Act in 2001), the lack of registration rendered those contracts automatically void and the agent was subject to a civil penalty. *See id.* As in *Sloane* and *Howard*, the Agreement here is similarly void.

B. The Agreement Is Void Under the UAAA Due to Defendants' Failure To Include the Requisite Disclosures.

   1. *The UAAA Mandates a Prominent Warning*

The UAAA sets forth very precise requirements for a warning that must be included in an agency contract. Specifically, an agency contract "must contain, in close proximity to the signature of the student-athlete, a conspicuous notice in boldface type in capital letters" stating:

**WARNING TO STUDENT-ATHLETE**

**IF YOU SIGN THIS CONTRACT:**

**(1) YOU SHALL LOSE YOUR ELIGIBILITY TO COMPETE AS A STUDENT-ATHLETE IN YOUR SPORT;**

**(2) IF YOU HAVE AN ATHLETIC DIRECTOR, WITHIN 72 HOURS AFTER ENTERING INTO THIS CONTRACT, BOTH YOU AND YOUR ATHLETE AGENT MUST NOTIFY YOUR ATHLETIC DIRECTOR;**

**(3) YOU WAIVE YOUR ATTORNEY-CLIENT PRIVILEGE WITH RESPECT TO THIS CONTRACT AND CERTAIN INFORMATION RELATED TO IT; AND**

**(4) YOU MAY CANCEL THIS CONTRACT WITHIN 14 DAYS AFTER SIGNING IT. CANCELLATION OF THIS CONTRACT SHALL NOT REINSTATE YOUR ELIGIBILITY.**

N.C. Gen. Stat. Ann. § 78C-94(c).

The statute further states the consequences of failing to include this conspicuous warning: "[a]n agency contract that does not conform to this section is voidable by the student-athlete. If a student-athlete voids an agency contract, the student-athlete is not required to pay any consideration under the contract or to return any consideration

18

received from the athlete agent to induce the student-athlete to enter into the contract." N.C. Gen. Stat. Ann. § 78C-94(d).

As with the registration requirement, this notice is aimed at preventing predatory conduct and ensures that student-athletes are: (1) alerted to the potential loss of their student-athlete eligibility prior to entering into the agreement, and (2) notified of their right to cancel the agency contract within 14 days after the contract is signed, which right to cancel cannot be waived. *See* N.C. Gen. Stat. Ann. § 78C-96(b).

The intent of the notice provision in the Model Act was "to provide protection to the student-athlete by requiring a form of agency contract similar to those required in some consumer transactions," in which the consumer must be informed of certain warranty and disclaimer information. Model Act, Section 10 Comment, at 17. Similarly, "[b]ecause of the disparity in the sophistication of the parties, this section gives the student-athlete or former student-athlete the right to cancel an agency contract within 14 days even if the athlete agent has complied with the provisions of Section 10 regarding the form of the contract . . . [thus providing] relief to the student-athlete who has entered into an ill-considered agency contract." Model Act, Section 12 Comment, at 19.

### 2. *The Agreement Lacks the Required Warning and Has Been Voided*

Here, it is undisputed that the Agreement does not contain the notice provision anywhere, much less in "close proximity" to Mr. Williamson's signature in conspicuous, bold, and all-caps type:

19

PRIME SPORTS MARKETING LLC

PRIME SPORTS MARKETING LLC

related to the matters of this Agreement. Such information includes
but is not limited to, any trade secrets, business plans, strategies,
and private and/or personal information concerning the Client, his
family, friends, relations, handlers, ect. Further, both parties
agree that any rights, licenses, or privileges not expressly granted
by this Agreement are exclusively reserved to Client.

   11. Neither party may assign the rights or duties of this Agreement
without the other party's prior written consent.

   12. The validity, interpretation, and performance of this Agreement
shall be controlled by and construed under the laws of the State of
Florida.

   13. All prior understandings and negotiations between Firm and
Client, both written and oral, are void. This Agreement represents
the final understanding and entire agreement between the parties. No
other representation, inducement or promise has been made or relied
upon by either party.  This Agreement may only be altered or modified
by a written mutually agreed upon and signed by both parties.



By:
Name: Gina Ford
Title: President

AGREED to and accepted as of this ___ day of April, 2019

   Client: Zion Williamson (Athlete)

By:

   Name: Zion Williamson

   Firm:  Prime Sports Marketing LLC

(FAC Ex. B.)

For the reasons set forth above, the Agreement is an "agency contract," and Mr.

Williamson was a "student-athlete," so the lack of a warning, let alone a prominent one,

rendered the Agreement "voidable" by him. *See* N.C. Gen. Stat. Ann. § 78C-94(d). It is

also undisputed that, on May 31, 2019, Mr. Williamson's family sent a note to

Defendants on Mr. Williamson's behalf expressing his intent to terminate and void the

Agreement. (FAC/Answer ¶ 51; FAC Ex. D.) The Agreement is accordingly void.

   C.   Defendants' Conclusory Assertion That Mr. Williamson Is Not Protected by
        the UAAA Is Both Incorrect and Legally Irrelevant.

Defendants' only apparent counterargument is to deny repeatedly that Mr.

Williamson was a "student-athlete," as defined by the statute. (*See, e.g.*, Answer ¶ 22.)

But his categorization as a "student-athlete" covered by the UAAA is a legal conclusion,

and the undisputed facts are sufficient to establish that he was a "student-athlete." As

20

discussed above, the definition of "student-athlete" is straightforward and expansive, covering (a) an individual who engages in any intercollegiate sport, (2) an individual who is eligible to engage in any intercollegiate sport, or (3) an individual who may be eligible in the future to engage in any intercollegiate sport. N.C. Gen. Stat. Ann. § 78C-86(11). As the "or" in the statute makes clear, an individual need only fit into one of the three categories to be a "student-athlete" under the statute. *See Hibbs v. Winn*, 542 U.S. 88, 89-90 (2004) ("the rule against superfluities instructs courts to interpret a statute to effectuate all provisions, so that no part is rendered superfluous").

Mr. Williamson played basketball for Duke during the 2018-2019 basketball season. (*See* Counterclaims ¶¶ 19, 27.) Thus, he was engaged in intercollegiate basketball as a "student-athlete" at the time that Defendants began recruiting him. Defendants attended Duke Basketball games, texted Mr. Williamson and his family, and met with Mr. Williamson and his family in North Carolina. (FAC/Answer ¶¶ 18, 36, 42; Counterclaims ¶¶ 33-35; Answer to the Counterclaims, Ex. 1.) This alone is enough to end the inquiry and afford Mr. Williamson the protections of the UAAA.

Moreover, Mr. Williamson is also protected under the UAAA because he meets the second prong of the definition, as he was eligible to engage in intercollegiate basketball at this time and remained so until at least April 20, 2019 when he entered into the Agreement with Defendants. The NCAA Bylaws require Duke and the NCAA Eligibility Center to certify a student-athlete's amateur status, including prior to engaging in practice and competition. NCAA Bylaws §§ 12.1.1.1.2.1, 12.1.1.1.3. The undisputed

21

fact that Mr. Williamson played basketball for Duke during that season thus also illustrates that Duke and the NCAA both determined he was eligible.

Defendants point to a video that Mr. Williamson posted on Instagram, in which he stated that he intended to register for the 2019 NBA Draft. (*See* Answer ¶ 19.) But, as Defendants appear to recognize, *see id.*, a student-athlete does not become ineligible merely by making a social media post. Declaring for the draft is a formal process, in which a player must ask in writing to be placed on the draft list. *See* NCAA Bylaws § 12.2.4.2 (noting that a player must "as[k] to be placed on the draft list"); Nat'l Basketball Ass'n – Nat'l Basketball Players Ass'n, Collective Bargaining Agreement Art. X(1)(b)(ii)(F), (July 1, 2017) (requiring a player to "express[] his desire to be selected in the Draft in a writing received by the NBA at least sixty (60) days prior to such Draft").[8] The Instagram video thus does not create a question of material fact as to whether Mr. Williamson was a "student athlete," because a social media post cannot and did not affect Mr. Williamson's eligibility.

Quite simply, Defendants have admitted facts sufficient to establish that Mr. Williamson was a "student-athlete" during the basketball season when they were directly and indirectly recruiting or soliciting him and holding themselves out to be athlete agents without having registered as such. Such conduct is sufficient to—and did—void the Agreement. Defendants further violated the UAAA when they entered into the

---

[8] https://nbpa.com/cba

Agreement, which lacked the required notice provision. The Agreement is accordingly void.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Williamson respectfully asks this Court to grant this Motion and to issue a declaratory judgment as to Count I, stating that the Agreement is void, or voidable and voided by Mr. Williamson, and of no legal force and effect.

*[Signatures Follow]*

This 20th day of May 2020.

/s/ John R. Wester
John R. Wester
N.C. Bar No. 4660
jwester@robinsonbradshaw.com
Robert E. Harrington
N.C. Bar No. 26967
rharrington@robinsonbradshaw.com
Fitz E. Barringer
N.C. Bar No. 42679
fbarringer@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON,
P.A.
101 N. Tryon St., Ste. 1900
Charlotte, North Carolina 28246
Telephone: 704.377.2536
Facsimile: 704.378.4000

Jeffrey S. Klein*
Jeffrey.Klein@weil.com
Pravin R. Patel**
Pravin.Patel@weil.com
Lauren E. Richards**
Lauren.Richards@weil.com

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: 212.310.8790
Facsimile: 212.310.8007

*Local Rule 83.1(d) Special Appearance
filed.
**Local Rule 83.1(d) Special Appearance
forthcoming.

*Attorneys for Plaintiff*

24

## LR 7.3(d)(1) Word Count Certification

I hereby certify that this brief contains 5,737 words as reported by Microsoft Word count feature and is in compliance with Local Rule 7.3(d)(1).

/s/ John R. Wester
John R. Wester