# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF NORTH CAROLINA

### Civil Action No.:  1:19-cv-00593-LCB-JLW

ZION WILLIAMSON,

                    **Plaintiff,**

      v.

PRIME SPORTS MARKETING, LLC,
and GINA FORD,

              **Defendants.**

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT PURSUANT TO FRCP 12(C)

Defendants PRIME SPORTS MARKETING, LLC AND GINA FORD (hereinafter "Defendants"), by their Attorneys, respectfully submit this Memorandum of Law in Opposition to Plaintiff's motion seeking partial judgment pursuant to Federal Rules of Civil Procedure 12(c).

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| 1. | Preliminary Statement……………………….....……………….… | 1 |
| 2. | UAAA/NCAA Definition of a "Student-athlete"…..……………… | 2 |
| 3. | Plaintiff's First Amended Complaint……………………………. | 3 |
| 4. | Defendants' Answer, Affirmative Defenses And Counterclaims…………………………………………………. | 4 |
| 5. | Plaintiff's Motion and Discovery as to His Ineligibility to Be a "Student-athlete"…………………………………………………. | 7 |
| 6. | Disputed Facts in Opposition to Plaintiff's "Undisputed Facts"…….. | 7 |
| 7. | Argument………………………………………………………….. | 9 |
|  | This Court Should Deny Plaintiff's Motion For Partial Judgment…… | 9 |
| 8. | Conclusion……………………………………………………….. | 20 |

i

| Cases | Page(s) |
|---|---|
| Alexander v. City of Greensboro,<br>No. 1:09 CV-293, 2011 WL 3360644 (M.D.N.C 2011)…………….……….. | 9 |
| Alexander, et al. v. City of Greensboro,<br>801 FSupp2d 429, 433 (MDNC 2011)……………………………………. | 10 |
| Austad v. United States,<br>336 F.2d 47, 149 (9th Cir. 1967)……………………………………………… | 2,9,11 |
| Burbach Broad. Co., of Del. V. Elkins Radio Corp.,<br>278 F.3d 401, 405-06 (4th Cir. 2002)………………………………………… | 9 |
| Doleman v. Meiji Mutual Life Ins. Co.,<br>727 F.2d 1480, 1482 (9th Cir. 1984)……………………………………….. | 2,9,11 |
| Edwards v. City of Goldsboro,<br>178 F.3d 231, 243 (4th Cir. 1999)…………………………………………… | 9 |
| EEOC v. Circuity City Stores, Inc.,<br>No. 1:04 CV 00183…………………………………………………………….. | 10 |
| Hibbs v. Winn,<br>542 U.S. 88, 89-90 (2004)…………………………………………………… | 13 |
| Hishon v. King & Spalinding,<br>467 U.S. 69, 73 (1984)…………………………………………………………. | 10 |
| Howard v. Mississippi Sec'y of State,<br>184 So.3d 295 (Miss. Ct. App. 2015)……………………………………….. | 13,15 |
| Jadoff v. Gleason,<br>140 FRD 330, 331 (MDNC 1991)…………………………………………… | 10,20 |
| Lefkoe v. Jos. A. Bank Clothiers,<br>No WMN-06-1892, 2008 WL 7275126…………………………………… | 10 |
| Med-Trans Corp. v. Benton,<br>581 F.Supp2d 721, 728 (E.D.N.C. 2008)……………………………………. | 2,10 |
| Mendenhall v. Hanesbrands,<br>856 F.Supp2d 717 (2012)……………………………………………………. | 9,10 |

<u>Nat'l Quarry Servs., Inc., First Mercury Ins. Co., Inc.,</u>
372 F.Supp.3d 296, 301 (M.D.N.C. 2019)……………………………..     2

<u>Papasan v. Allain,</u>
478 U.S. 265, 268 (1986)……………………………………………..     10

<u>Rinaldi v. CCX, Inc.,</u>
No. 3.05-cv-108, 2008 WL 2622971 (W.D.N.C. 2008)……………………     9

<u>Sloane v. Tenn. Dep't of State,</u>
2019 WL 4891262, at * 2 n. 3 (Tenn. Ct. App, 2019)…………………….     13,14

<u>Smith v. McDonald,</u>
562 F.Supp 829, 842 (M.D.N.C. 1983), aff'd, 737 F.2d 427 (4th Cir. 1984),
aff'd 472 U.S. 479 (1985)……………………………………………     2,10

<u>US v. Esquivel,</u>
88 F3d 722, 726-27 (1996)……………………………………………..     13


**<u>Federal Rules of Civil Procedure</u>:**

FRCP 8(b)(6)……………………………………………………

FRCP 12(c)…………………………………………………...     2


**<u>Federal Rules of Evidence:</u>**

FRE 201………………………………………………………     13


**<u>Statutes:</u>**

N.C. Gen. Stat. Ann. Section 78C-86(6)……………………………………     3,11

N.C. Gen. Stat. Ann. Section 78C-86(11)…………………………………..     3,11,14

Tenn. Code Ann. §49-7-2102(2(A), (12)(A)………………………………..     14


**<u>Miscellaneous:</u>**

NCAA 2018-2019 NCAA Division I Manual §12.1.2……………………..     16

NCAA 2018-2019 NCAA Division I Manual §12.7.2……………………..     15

iii

"*Definition of student-athlete at stake in North Carolina case*",
https://www.news-press.com/story/sports/columnist/david-
moulton/2017/08/19/definition-student-athlete-stake-north-carolina-
case/582696001/.................................................................... 9

"*Louisville Isn't the First NCAA Champion to Vacate a Championship – Here are the
Rest*", https://www.cbssports.com/college-basketball/news/louisville-isnt-the-1st-ncaa-
champion-to-vacate-a-championship-here-are-the-rest/...................................... 9

"*Phone call allegedly discussing requests from Zion Williamson's family brought up at
trial*", https://charlotteobserver.com/sports/college/article220131085.html........ 9

"*Shocker!!!! Two More UNC layers ruled permanently ineligible – State Fans Nation*",
https://www.statefansnation.com/2010/11/shocker-two-more-UNC-players-ruled-
permanently-ineligible/.......................................................................... 9

"*University of North Carolina academic-athletic scandal*",
https://en.wikipedia.org/wiki/University   of   North   Carolina   academic-athletic
scandal……………………………………………………………………… 9

"*Zion    Williamson's    Parents:    5    fast    Facts    you    Need    to    Know*",
https://heavy.com/sports/2019/03/zion-williamson-parents-mom-dad-family/.... 9

https://www.zillow.com/homedetails/▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
SC-▮▮▮▮▮▮▮▮▮▮_zpid/................................................................. 9

https://www.zillow.com/homedetails/▮▮▮▮▮▮▮▮▮▮▮▮▮▮-NC-
▮▮▮▮▮▮▮▮_zpid/................................................................. 9

iv

## PRELIMINARY STATEMENT

As pleaded by Defendants in their Answer, Affirmative Defenses and Counterclaims to Plaintiff's pleading (hereinafter "Defendants' Pleadings"), Plaintiff Zion Williamson (hereinafter "Plaintiff"), was **not** a "Student-athlete" as defined by the North Carolina Uniform Athlete Agents Act (hereinafter "UAAA") and/or National Collegiate Athletic Association (hereinafter "NCAA"). (DE #32, Defendants' Answer/Counterclaims). As alleged in Defendants' Pleadings, Plaintiff entered into a valid contract with Defendants on April 20, 2019 in which Plaintiff agreed that the laws of the State of Florida would govern any dispute and/or interpretation therefor. (DE #32 at CC ¶43, CC Exhibit "B"). After signing the Contract, Plaintiff demanded $100,000.00 as an advancement from Defendants which they wired from Florida to Plaintiff, and/or to a third party acting on Plaintiff's behalf (hereinafter "third party"). In addition, Defendants secured for Plaintiff a nationally televised commercial for which he travelled to California with Ms. Ford and for which Plaintiff received compensation consistent with their Contract.

Between April 20, 2019 and May 29, 2019, as admitted by Plaintiff in his Answer to Defendants' Counterclaims, Creative Artists Agency ("CAA" - Defendant in the Florida Action) and its Marketing Agent, knowing that Plaintiff was in contract with Defendants, contacted and met with Plaintiff and/or his parents during which CAA obtained from Plaintiff a copy of the Contract and Plaintiff's Letter of Authorization appointing Ms. Ford as his [e]xclusive marketing agent—admissions of compelling evidence of Defendants' claim against CAA for tortious interference with Defendants' contract with Plaintiff. (DE #33, Plaintiff's Answer to Defendants' Counterclaims at ¶¶ 73-78, 124-128). During the foregoing meetings Plaintiff, and/or a third party, was in possession of Defendants' Proprietary Strategic Marketing Plan that Defendants created for Plaintiff pursuant to their Contract. (DE #33 at ¶ 122, 134).

On a Rule 12(c) motion, the allegations of the non-moving party must be accepted as true,

1

while the allegations of the moving party which have been denied are assumed to be false. See Austad v. United States, 336 F.2d 47, 149 (9th Cir. 1967); Doleman v. Meiji Mutual Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984); FRCP 12(c). Defendants have denied the allegation that Plaintiff is a "Student-athlete" **more than ten times** in their Pleadings. (DE #32). Defendants have raised genuine issues of material fact about the critical issue --whether Plaintiff was a "Student-athlete" as defined by the UAAA/ NCAA at all relevant times herein. Plaintiff's conclusory assertion that he was a "Student -athlete" just because he was playing basketball at Duke cannot defeat Defendants' allegations that Plaintiff was ineligible/permanently ineligible to participate in collegiate sports while playing for Duke.

Denial of a Rule 12(c) motion is required when genuine issues of material fact are raised by the non-moving party. See Smith v. McDonald 562 F.Supp 829, 842 (M.D.N.C. 1983, *aff'd*, 737 F.2d 427 (4th Cir. 1984) *aff'd* 472 U.S. 479 (1985); Med-Trans Corp. v. Benton, 581 F.Supp.2d 721, 728 (E.D.N.C. 2008). As Defendants have "pleaded facts demonstrating the plausibility" of their defense, judgment on the pleadings is improper. *Cf* Nat'l Quarry Servs., Inc., First Mercury Ins. Co., Inc., 372 F.Supp.3d 296, 301 (M.D.N.C. 2019). Here, Plaintiff's motion should be denied and discovery allowed for Defendants to demonstrate that Plaintiff was not a "Student-athlete" at the time he entered Duke nor at the time he had any contact/conversation with Defendants relative to any representation. As such, the UAAA does not void/render voidable the parties' Contract herein.

### UAAA/NCAA Definition of a "Student-athlete":

The legislative intent behind the UAAA was: (1) to protect student athletes and (2) to prohibit anyone from seeking shelter under the Statute by claiming to be a "Student- athlete" when they have engaged in prohibited conduct as defined by the NCAA. Plaintiff fails to address the

2

critical component of defining a "Student-athlete", to wit: the *eligibility* to be/remain a "Student Athlete" and the conduct that forfeits same. More is required than mere enrollment in college and playing intercollegiate sport to be deemed, as a matter of law, a "Student-athlete". This very first factual inquiry must be resolved to determine whether the UAAA even applies to this action. If it is determined that Plaintiff is not a "Student-athlete", then the inquiry stops there and the UAAA cannot void/render voidable the parties' Contract. "Student-athlete", as defined by the UAAA is:

> "An individual who engages in, is eligible to engage in, or may be eligible to engage in any intercollegiate sport. **If an individual is permanently ineligible to participate in a particular intercollegiate sport, the individual is not a student-athlete for the purposes of the sport**." N.C. Gen. Stat. Ann. Section 78C-86(11).

"Intercollegiate Sport" is defined as:

> "**A sport played at the college level for which [e]ligibilty [r]equirements for participation by a [s]tudent [a]thlete are established by a national association for the promotion or regulation of collegiate athletics**. N.C. Gen. Stat. Ann. Section 78C-86(6).

The UAAA refers to the NCAA to define conduct that renders an individual **ineligible** to be/remain a "Student-athlete" and/or causes one to permanently lose and/or forfeit his/her eligibility to maintain his/her "Student-athlete" status including, but not limited to: (1) agreeing orally or in writing to be represented by any individual other than a NCAA–certified agent; (2) accepting any benefits from an individual other than a NCAA-certified agent and/or (3) accepting any benefits from a NCAA-certified agent that are not expressly permitted by the NCAA legislation or outside of the permissible timeframe allowed by NCAA legislation. (DE #32 at Exhibit "A").

### Plaintiff's First Amended Complaint:

Plaintiff's conclusory assertion that he is a "Student-athlete", as the moving party, which is repeatedly denied by Defendants, cannot be accepted as true. Plaintiff attaches nothing to his

3

pleading nor to his within motion to factually establish that it is undisputed that he was a "Student-athlete". Mere conclusions are not enough and Plaintiff's incomplete definition of "Student-athlete" warrants denial of his motion as same is a material **fact** in dispute between the parties that must be factually answered through discovery.

### Defendants' Answer, Affirmative Defenses and Counterclaims:

Defendant repeatedly <u>deny</u> that, at all times relevant, Plaintiff was a "Student- athlete" and repeatedly claim/allege that, at all relevant times, Plaintiff was **not** a "Student-athlete". (DE # 32). Even Plaintiff concedes that Defendants' Pleadings are riddled with repeated denials as to his allegation that he is a "Student-athlete", with repeated allegations, affirmative defenses and counterclaims that he was not a "Student-athlete" herein. (DE #32); (DE #35, Plaintiff's Memorandum of Law). As pleaded by Defendants, Plaintiff was **not** a "Student athlete" as defined by the UAAA/NCAA based upon his engaging in, and/or the engaging by third party(ies) in, conduct specifically prohibited by the NCAA including, but not limited to: Plaintiff and/or a third party accepting benefits from an individual other than a NCAA-certified agent. (DE #32). As Plaintiff was not a "Student-athlete", the UAAA does **not** protect Plaintiff as a shield nor is it for Plaintiff to use as a sword to try to void/invalidate the parties' Contract herein. <u>Id.</u> As Plaintiff was not a "Student-athlete", **the inquiry stops there**, the UAAA does not apply and Ms. Ford was not required to be a registered agent herein. <u>Id</u>.

Among other answers/denials, in response to Plaintiff's allegations in paragraph "13", Defendants answer as follows: "...specifically deny the allegations...in paragraph no. 13 that Plaintiff was a "student athlete". <u>Id</u>. In response to Plaintiff's allegations in paragraph "15", Defendants answer as follows:

> "...deny the allegations...in paragraph no. 15 that allege that ...Plaintiff enrolled at Duke ...in 2018 he was a "student athlete" as defined by the NCAA...UAAA

4

…expressly denied that…he was a student athlete as…defined by the NCAA…UAAA.". Id.

In response to Plaintiff's allegations in paragraph "19", Defendants answer as follows:

"…deny the allegations…in paragraph no. 19 …that at the time Plaintiff posted the video on Instagram, Plaintiff was a "student athlete" as defined by the NCAA …UAAA." Id.

In response to Plaintiff's allegations in paragraph "21", Defendants answer as follows:

"…deny the allegations …in paragraph no. 21 that …at the time Plaintiff signed the Contractual Agreement …Plaintiff was a "student athlete"." Id.

In response to Plaintiff's allegations in paragraph "22", Defendants answer as follows:

"…admit that…UAAA is only applicable to a "student athlete"…not to an "athlete" like Plaintiff …who was not a "student athlete" at all relevant times herein." Id.

Defendants further deny and dispute Plaintiff's conclusory allegations that he is a "Student-athlete" in their answers to Plaintiff's allegations in paragraphs including, but not limited to: "23", "24", "27", "28", "30", "31", "32", "35", "45" and "46" in his pleading. See id. Defendants also asserted/alleged seventeen (17) Affirmative Defenses, the first two of which state/allege:

### "AS AND FOR MS. FORD'S AND PRIME SPORTS MARKETING, LLC'S FIRST AFFIRMATIVE DEFENSE

…Plaintiff entered Duke…Plaintiff was not a "student athlete" as defined by the NCAA and/or…UAAA as…Plaintiff and/or third parties…had violated…NCAA and/or UAAA rules that voided …Plaintiff's eligibility …rendered him ineligible to be a "student athlete" …rendered his eligibility voidable under the NCAA and/or…UAAA…

### AS AND FOR MS. FORD'S AND PRIME SPORTS MARKETING, LLC'D SECOND AFFIRMATIVE DEFENSE

…prior to …meeting Ms. Ford and Prime Sports Marketing, LLC and/or having any discussions with Ms. Ford and/or Prime Sports Marketing, PLLC … prior to April 20, 2019, Plaintiff, and/or third parties …engaged in conduct that rendered …renders him ***ineligible to be or remain a student-athlete*** including, but not limited to:

(a) He agrees orally or in writing to be represented by any individual other than a NCAA-certified agent;

(b) He accepts any benefits from an individual other than a NCAA-certified agent; and
(c) He entered the NBA Draft AND did not intend to and did not take the appropriate steps

5

to withdraw and declare any intention of resuming intercollegiate participation and, in fact, repeatedly and publicly declared and made it abundantly clear that he was **not** ever returning to intercollegiate basketball." See id.

Defendants also pleaded eleven (11) Counterclaims against Plaintiff with detailed factual allegations contained therein and with eleven (11) Exhibits attached thereto. See id. In paragraphs 25-28 of their Counterclaims, Defendants plead that:

> "… NCAA issued a Memorandum to …Men's Basketball Head Coaches detailing…NCAA rules related to …NCAA eligibility… rules governing men's basketball "student-athlete" eligibility and ineligibility…men's basketball student-athlete will **lose** his eligibility IF… He agrees orally or in writing to be represented by any individual other than a NCAA–certified agent…accepts any benefits from an individual other than a NCAA-certified agent…accepts any benefits from a NCAA-certified agent that are not expressly permitted by the NCAA legislation… NCAA rules for…eligibility and ineligibility of …men's basketball "student-athletes"…provided to Duke…to Duke University's men's basketball head Coach who was …coach of Plaintiff…provided a copy to … Plaintiff…" Id. at ¶25-28 & Exhibit "A".

In paragraph "29" of their Counterclaims, Defendants plead that:

> "…prior to April 20, 2019 Plaintiff …engaged in conduct/acts that rendered and renders him ***ineligible to be or remain a "student-athlete"*** including, but not limited to:
>
> (a) He agrees orally or in writing to be represented by any individual other than a NCAA-certified agent;
> (b) He accepts any benefits from any individual other than a NCAA-certified agent; and
> (c) He entered the NBA Draft AND did not intend to and did not take the appropriate steps to withdraw and declare any intention of resuming intercollegiate participation…publicly declared and made it abundantly clear that he was **not** ever returning to intercollegiate basketball." Id. at ¶29.

As Plaintiff was not a "Student-athlete", Ms. Ford was not under any obligation to register as an Athlete Agent in North Carolina as the UAAA is only applicable when an agent contracts with a "Student-athlete" as defined by the UAAA/ NCAA who has not permanently lost his/her eligibility to remain a "Student-athlete" by engaging in prohibited conduct like Plaintiff did herein -- as pleaded by Defendants. (DE #32).

6

**Plaintiff's Motion and Discovery as to His Ineligibility to Be a "Student-athlete":**

The timing of Plaintiff's motion is not a coincidence as he filed same <u>two weeks after</u> being

served by Defendants with Requests for Admissions under oath that Plaintiff was not a "Student-

athlete" in the related Florida Action including that he admit that:

> (1) before he "…became a student at Duke University, you, or person(s) acting on
> your behalf, "including, but not limited to Sharonda Sampson and Lee Anderson" received
> gifts, money and/or other benefits from persons other than NCAA certified agent between
> 1-1-2014 and 04-14-2019.";
> (2) before he "… became a student at Duke University, you knew that Lee
> Anderson demanded and received gifts, money and/or other benefits from persons acting
> on behalf of Adidas "directly and/or indirectly" to influence you to attend a college that
> endorsed Adidas shoes"; and
> (3) "you … knew that Sharonda Sampson demanded and received gifts, money
> and/or other benefits from persons on behalf of Duke University "directly and/or
> indirectly" to influence you to attend Duke University to play basketball; admit that
> "Plaintiff… knew that Sharonda Sampson demanded and receive gifts, money and/or other
> benefits from persons on behalf of Nike "directly and/or indirectly" to influence you to
> attend Duke University to play basketball."

<u>See</u> attached hereto as Exhibit "A", true copies of Defendants' Request for Admissions.

The foregoing are the same material factual issues as to whether Plaintiff was a "Student-athlete"

as defined by the UAAA/ NCAA and, whether he was **<u>eligible</u>** to be a "Student-athlete"  -- material

**<u>factual</u>** issues that are disputed herein for which, at this pleading stage, partial judgment should

not be granted.

## DISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S "UNDISPUTED FACTS"

1.      Defendants dispute/deny Plaintiff's assertion that Defendants contacted/solicited

Plaintiff.   It is further disputed/denied that any contact between the parties occurred at any time

while Plaintiff was a "Student-athlete" as defined by the UAAA and/or NCAA as, at all relevant

times herein, as pleaded by Defendants, Plaintiff was not a "Student-athlete".   It is further

disputed/denied that the UAAA is applicable to the within Contract, as pleaded by Defendants, as

the parties agreed that the Contract is governed by Florida law. (DE #32 at ¶¶ 1, 3, 4, 7, 13, 15,

7

19, 21-24, 27, 28, 30-32, 35, 42, 45, 46, 2nd Aff Def, 5th Aff Def, CC 29, CC 43, CC Exhibit "B")

2.      While it is admitted that Plaintiff played basketball at Duke University, it is disputed/denied by Defendants, that Plaintiff was and/or that same rendered him to be a "Student-athlete" eligible to participate in collegiate sports as defined by the UAAA/NCAA. That Plaintiff is not a "Student-athlete" is repeatedly pleaded by Defendants in their Pleadings which Plaintiff concedes. (DE #32 at ¶¶ 1, 3, 4, 7, 13, 15, 19, 21-24, 27, 28, 30-33, 35, 42, 45, 46, 2nd Aff Def, 5th Aff Def, CC 29); (DE #35).

3.      While Defendants admit that there may be text messages between the parties, Defendants never admitted and do not admit herein that the text messages Plaintiff attaches to his Answer to Defendants' Counterclaims are text messages between the parties nor that they are authentic and, Defendants did not and do not admit that the content contained in same attached text messages are true or accurate. (DE #32 at ¶¶ 18, 36).

4.      While Defendants admit that Ms. Ford is not a registered agent in North Carolina, Defendants denied and pleaded that her status is immaterial to the within action and that the UAAA does not apply as, given that Plaintiff was and is not a "Student-athlete" at the relevant times herein, the UAAA does not apply and Ms. Ford was/is not required to be a registered agent herein. (DE #32 at ¶¶ 1, 3, 4, 7, 13, 15, 16, 19, 21-24, 26- 28, 30-33, 35, 42, 45, 46, 2nd Aff Def, 5th Aff, Def, CC 29).

5.      While Defendants admit that the Contract does not contain the UAAA statutory disclaimer language, Defendants denied and pleaded that same language was/is not required as the UAAA does not apply because Plaintiff was and is not a "Student-athlete" at the relevant times herein and, as such, the Contract does not require same language. (DE #32 at ¶¶ 1, 3, 4, 7, 13, 15, 19, 21-24, 26- 28, 30-33, 35, 42, 45, 46, 2nd Aff Def, 5th Aff Def, CC 29).

8

6.      While Defendants admit that they received communication from Plaintiff and/or someone acting on his behalf alleging to terminate and void the contract, the admission is as to their receipt of the correspondence and receipt of same does not, by matter of law, serve to legally void the Contract herein.  (DE #32 at ¶34).

## ARGUMENT

**THIS COURT SHOULD DENY PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT.**

Plaintiff's motion should be denied as whether Plaintiff was a "Student-athlete" at the relevant times herein is a disputed [m]aterial factual issue that has been denied in Defendants' Pleadings.  A 12(c) motion is analyzed under the same standard as a FRCP 12(b)(6) motion to dismiss.  See Burbach Broad. Co., of Del. V. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002); Mendenhall v. Hanesbrands, 856 F.Supp.2d 717 (2012); Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).    However, unlike on a Rule 12(b)(6) motion, on a Rule 12(c) motion the Court should consider the Answer as well.  See Alexander v. City of Greensboro, No. 1:09 CV-293, 2011 WL 3360644 (M.D.N.C 2011); Rinaldi v. CCX, Inc., No. 3.05-cv-108, 2008 WL 2622971 (W.D.N.C. 2008)(finding that as it relates to Rule 12(b)(6), key difference under Rule 12(c) is "[C]ourt to consider [A]nswer as well as [C]omplaint").

**For the purpose of a Rule 12(c) motion, the [a]llegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false.**  See Austad v. United States, 336 F.2d at 149; Doleman v. Meiji Mutual Life Ins. Co., 727 F.2d at 1482.  Defendants, as the non-moving parties, have not only denied Plaintiff's allegations that he is a "Student-athlete" and pleaded denials with Affirmative Defenses that he is not a "Student-athlete", but, have also sufficiently pleaded eleven Counterclaims with attached Exhibits alleging that Plaintiff was not "Student-athlete" -- all of which this Court must accept as

9

true. (DE #32). This Court must draw all reasonable inferences in favor of the Defendants and should not grant Plaintiff's motion as it is <u>not</u> beyond doubt that Defendants are unable to prevail herein. Judgment on the pleadings is only appropriate when, unlike here, taking all of the non-moving party's factual allegations as true, no genuine issues of material fact remain, and the case can be determined as a matter of law. See <u>Smith v. McDonald</u>, 562 F.Supp at 842, *aff'd* 737 F.2d 427, *aff'd* 472 U.S. 479; <u>Med-Trans Corp. v. Benton</u>, 581 F.Supp.2d at 728. **Dismissal is [i]nappropriate here as Defendants allege facts, which this Court must accept as true, sufficient to support their claims for relief**. See <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).

Further, this Court may consider documents attached to the Complaint/Answer for Rule 12(c) purposes without converting the motion into a motion for summary judgment, if: (1) the documents are central to the claim and (2) the authenticity of the document is not challenged. See <u>Mendenhall v. Hanesbrands</u>, 856 F.Supp.2d at 724; <u>Lefkoe v. Jos. A. Bank Clothiers</u>, No WMN-06-1892, 2008 WL 7275126. This Court may also take notice of facts that are part of the public record without converting the motion to a summary judgment motion. See <u>EEOC v. Circuity City Stores, Inc.</u>, No. 1:04 CV 00183; <u>Papasan v. Allain</u>, 478 U.S. 265, 268 (1986). Moreover, as Defendants herein are not required to respond to Plaintiff's Answer to Defendants' Counterclaims, the allegations contained in Plaintiff's Answer are considered denied or avoided as a matter of law. See <u>Jadoff v. Gleason</u>, 140 FRD 330, 331 (MDNC 1991); FRCP 8(b)(6). As Plaintiff is the moving party, his Answer to Defendants' Counterclaims and the Exhibit attached thereto are not to be considered by this Court herein. *Compare against* <u>Alexander, et al. v. City of Greensboro</u>, 801 FSupp2d 429, 433 (MDNC 2011); <u>Jadoff v. Gleason</u>, 140 FRD at 332; <u>Lefkoe v. Jos. A. Bank Clothiers</u>, *supra* at *3; <u>Mendenhall v. Hanesbrands, Inc.</u>, *supra* at 724.

The UAAA unequivocally states that: "**If an individual is permanently [i]neligible to participate in a particular intercollegiate sport, the individual is not a student-athlete for purposes of that sport**." N.C. Gen. Stat. Ann. Section 78C-86 (11). **The UAAA defines Intercollegiate sport as a collegiate sport "…for which [e]ligibility requirements … are established by a national association for the promotion or regulation of collegiate athletics**." N.C. Gen. Stat. Ann. Section 78C-86 (6). The NCAA eligibility standard defines prohibited conduct, as pleaded by Defendants, that would preclude Plaintiff from ever attaining the title/status of "Student-athlete" and from ever being protected by the UAAA including, but not limited to: "…agrees orally or in writing to be represented by any individual other than a NCAA–certified agent…accepts any benefits from an individual other than a NCAA-certified agent…accepts any benefits from a NCAA-certified agent that are not expressly permitted by the NCAA legislation or outside of the permissible timeframe allowed by NCAA legislation." (DE #32 at 2nd & 5th Affirmative Defenses, Counterclaims ¶¶ 13, 15, 22, 24-30 & Exhibit "A").

Defendants repeatedly deny that Plaintiff was a "Student-athlete" and counterclaim that he is not, was not prior to meeting Defendants and he is not protected by the UAAA – all allegations that this Court must accept as true and from which all reasonable inferences must be drawn in their favor. See id.; Austad v. United States, *supra* at 149 (**[a]llegations of non-moving party must be accepted as true, while allegations of moving party which have been denied are assumed to be false)**; Doleman v. Meiji Mutual Life Ins. Co., *supra* at 1482. Plaintiff concedes that this material factual issue is denied and disputed by Defendants as Plaintiff writes: "**[Defendants….repeatedly asserting [in the Answer that] Mr. Williamson…. was not actually a "student-athlete" entitled to the protections of the UAAA**. (DE #35 at p. 2 at ¶3).

An individual's conduct determines whether or not he/she is a "Student-athlete". The logic

11

here is elementary, if Plaintiff, at all times relevant herein, was not a "Student athlete" as pleaded repeatedly by Defendants, then the UAAA does not apply and Ms. Ford's was not required to register as an agent in North Carolina. The UAAA does not protect a party who pretends to be a "Student-athlete" nor one who may have concealed prohibited conduct that renders him/her ineligible and/or permanently ineligible but, yet, continues to play in a collegiate sport undetected. If merely playing basketball at Duke was enough to be eligible, then there would be no need for any NCAA rules regarding eligibility and/or conduct that permanently forfeits eligibility. If Plaintiff and/or any third party accepted any NCAA prohibited compensation/benefits at any stage prior to attending Duke, such would render Plaintiff permanently ineligible to ever be a "Student-athlete", irrespective of how many games he played for Duke, and the UAAA would not apply.

Under Plaintiff's misinterpretation of the UAAA, as long as one successfully conceals prohibited conduct and plays at least one collegiate game, then one would be deemed a "Student-athlete"—the antithesis of the legislative intent of the USAA. Under Plaintiff's illogical reasoning, if Plaintiff received prohibited gifts/compensation/benefits even up to and including One Billion Dollars in exchange for him to attend Duke, and if Plaintiff somehow successfully concealed this prohibited conduct and manages to play at least one game for Duke, then he would be deemed a "Student-athlete" entitled to the protection of the UAAA. The Plaintiff is wrong.

The NCAA has retroactively stripped colleges of titles and has retroactively stripped athletes of titles after it was subsequently discovered that the college and/or student had engaged in prohibited conduct. See "*University of North Carolina academic-athletic scandal*", https://en.wikipedia.org/wiki/University_of_North_Carolina_academic-athletic_scandal (players determined permanently ineligible because they received improper benefits); "*Definition of student-athlete at stake in North Carolina case*", https://www.news-

12

press.com/story/sports/columnist/david-moulton/2017/08/19/definition-student-athlete-stake-north-carolina-case/582696001/ (NCAA stripped University of Louisville's 2013 men's basketball national championship title for recruitment violation); *"Shocker!!!! Two More UNC layers ruled permanently ineligible – State Fans Nation"*, https://www.statefansnation.com/2010/11/shocker-two-more-UNC-players-ruled-permanently-ineligible/ (Two more UNC players ruled permanently ineligible for receipt of improper gifts).[1]

Here, Plaintiff improperly relies upon Hibbs v. Winn, 542 U.S. 88, 89-90 (2004), which supports Defendants' position that this Court should interpret the UAAA to ensure that no part of same becomes superfluous. As the integral component of the definition of "Student-athlete" is eligibility, the UAAA/NCAA require that **an individual nor anyone acting on his/her behalf must not have engaged in prohibited conduct including accepting prohibited gifts/benefits/compensation in exchange for attending a particular college.** Where, as here, the [m]aterial issue of whether Plaintiff was a "Student-athlete" is denied and/or disputed, this Court should not grant judgment on the pleadings.

Plaintiff's reliance on Sloane v. Tenn. Dep't of State, 2019 WL 4891262, at * 2 n. 3 (Tenn. Ct. App, 2019) and Howard v. Mississippi Sec'y of State, 184 So.3d 295 (Miss. Ct. App. 2015), is profoundly misplaced. In Sloane, an unregistered sport agent admitted that he initiated contact with high school baseball player Justus to represent him which resulted in the parties' contract. A dispute arose and Sloane initiated legal action against Justus. Sloane was not registered in Tennessee at the time he initiated contact with Justus and the State of Tennessee initiated an Order against Sloane for violating Tennessee's Athletic Agent Reform Act. A contested hearing was

---

[1] Pursuant to FRE 201, this Court may take judicial notice of public facts, facts contained in public records, in court records, in government documents and various other sources. See US v. Esquivel, 88 F3d 722, 726-27 (1996).

held at which all parties presented witnesses and exhibits. Sloane argued that: (1) the State "selectively" and "unlawfully" enforced the Act against him; (2) the Judge denied his Due Process Rights by denying his motions seeking compliance with several subpoenas; and (3) the penalties assessed against him were excessive and unreasonable.

Sloane <u>never</u> raised the defense that Justus was not a "Student- athlete" but, rather, admitted that he violated the Act. <u>On appeal for the first time</u>, Sloane sought to have the Court determine that Justus was not a "Student- athlete" when Sloane initially contacted Justus. In denying Sloane's appeal, the court reasoned that:

> **"…the Act is only violated when an athlete agent, who is not registered…with the State of Tennessee, recruits or solicits a student athlete to enter into an agency contract…If an athlete agent recruits or solicits an individual who is not a student-athlete then the Act does not apply…Sloane stipulated that he violated the Act…admitting that Justus was a student athlete when he initiated contact … Sloane …concedes that Justus was a student athlete, and his argument, now…that Justus was not an eligible student athlete …is completely without merit."**

Sloane v. Tenn. Dep't of State, 2019 WL 4891262, at * 2 n. 3.

In <u>Sloane,</u> the Tennessee Statute definition of a "Student-Athlete" is identical to that of the UAAA, to wit: "an individual who engages in, is eligible to engage in or may be eligible in the future to engage in any intercollegiate sport". Tenn. Code Ann. §49-7-2102(2(A),(12)(A), N.C. Gen. Stat. Ann. §78C-86 (11). Had Sloane, as Defendants do herein, alleged that Justus was not a "Student-athlete" at the pleading stage of his proceedings, he could have advanced that defense-- just as Defendants do herein.

In <u>Howard v. Mississippi Sec'y of State</u>, just as Sloane and unlike Defendants herein, when called upon to show cause why he was not in violation of Mississippi's Athlete Agents Act, Howard admitted/conceded that Robinson was a "Student-athlete" and never denied or disputed same until on appeal when it was untimely. In denying Howard's appeal, the court reasoned that:

14

**"…Howard did not qualify his admission by stating that Robinson was not a 'student-athlete'… as he now contends".**

Howard v. Mississippi Sec'y of State, 184 So.3d at 295.

Here, Plaintiff's citation to the NCAA Bylaws concedes that NCAA rules/definitions/prohibited conduct on eligibility to be or remain a "Student-athlete" are to be considered along with his conduct in order to determine whether he is a "Student-athlete" herein. As per the NCAA Bylaws, college/university certification of student eligibility to participate in intercollegiate sport requires the student to submit truthful information to the university regarding eligibility, recruitment, amateur status and other related areas.  See NCAA 2018-2019 NCAA Division I Manual §12.7.2.  Here, if Plaintiff and/or any third party had successfully hidden any prohibited conduct from Duke, then any such "certification" of Plaintiff by Duke is without merit and cannot be relied upon.

Discovery in this matter should be allowed to determine whether, even if Duke was to have discovered that Plaintiff and/or a third party had engaged in NCAA prohibited conduct, Duke would have an incentive to withhold same from the NCAA, to continue to play Plaintiff despite knowing that he is ineligible and/or to submit false and/or misleading certification(s) about Plaintiff's eligibility.  In a statement attributed to Plaintiff as to promises made by Coach K to induce him to, and what convinced him to, attend Duke, Plaintiff states:

> "When Coach K came to my house and spoke to me and my family, it wasn't just about basketball and what he could do for me in one year…It was how he can build Zion as a brand on and off the court for like the next 20 years or the rest of my life".

See "Zion Williamson's Parents: 5 fast Facts you Need to Know", https://heavy.com/sports/2019/03/zion-williamson-parents-mom-dad-family/.[1]

The foregoing promise alone, violates NCAA eligibility rules and rendered Plaintiff ineligible to ever be a "Student-athlete" as, pursuant to the NCAA, Plaintiff loses his amateur

15

status and is ineligible for intercollegiate basketball if he, among other things: "…Accepts a promise of pay even if such pay is to be received following completion of intercollegiate athletics participation…"  See NCAA 2018-2019 NCAA Division I Manual §12.1.2.   This warrants discovery from Plaintiff, his parents, Coach K and Duke as to what was promised to Plaintiff "for the rest of his life" that convinced him to attend Duke.

Testimony from Coach K is warranted regarding his statements about the NCAA "pay to play" scandal as, when questioned about same and any alleged involvement by Duke, he stated that the scandal was just a "blip"/"minute", and, that giving a job to a player's family member is "just a business decision".  See "*Phone call allegedly discussing requests from Zion Williamson's family brought up at trial*", https://charlotteobserver.com/sports/college/article220131085.html.[1] Collegiate sports is indeed replete with corruption by universities/colleges knowingly violating NCAA eligibility rules and playing students who are ineligible/permanently ineligible based on their conduct/receiving prohibited benefits/compensation.  See "*Louisville Isn't the First NCAA Champion to Vacate a Championship – Here are the Rest*", https://www.cbssports.com/college-basketball/news/louisville-isnt-the-1st-ncaa-champion-to-vacate-a-championship-here-are-the-rest/ (20 prior national college champion titles retroactively taken away after NCAA deemed improper benefits took place and colleges played ineligible players)[1].

Further, information in public records as to Plaintiff and/or his parents receiving monies, benefits and/or other prohibited benefits, should be and are allowed to be considered by this Court as to whether Plaintiff was ever eligible to be a "Student-athlete" without converting the motion to one for summary judgment.  In documents filed with the United States District Court, Southern District of New York, text messages dated in **February 2017**, prior to Plaintiff attending Duke and prior to meeting Ms. Ford, by and between Nike EYBL men's basketball executives Carlton

DeBose and Jamal James and Nike Recruiting Coordinator John Stovall, discuss alleged financial offerings made by Nike to Plaintiff. On February 11, 2017, a text message to Stovall writes to James:

> "…just remember that…Zion deals are NOT done yet. We are still in it. Just want u to remember that possible financial obligation also".

See attached hereto as Exhibit "B", true and accurate copies of publicly filed text messages from Southern District of New York Docket, Case No.: 1:19-cr-00373-PGG[1].

In addition, in a February 11, 2017 text message from James to Debose, James advises that he:

> "…just told them we could do the 30k too." See id.

In response, on February 11, 2017, it was texted:

> "…We're still in there for Zion…??! I thought that ship had sailed". Id.

James receives a text on same date stating:

> "Nope. Still at the dock. Hoping to have news next week". Id.

On February 12, 2017, Stovall texts:

> "…Are we willing to do …whatever may be needed for the Zion…situations…"Id.

On same February 12, 2017, James receives a text confirming:

> "…Zion – 35 plus…" Id.

On same date, Stovall texts that he is:

> "…willing to spend to cripple adidas…is more than worth me spinning the approximate 100k to support the efforts…I will figure out the money part." Id.

On February 28, 2017, it was texted:

> "…Update on Williamson?" Id.

On same date, James receives a response stating:

17

"Nothing yet. Norm had not talked to them directly in a couple of days. Still has not presented our new offer. Only hinted at it. He did not want to put it in print which I agreed with." Id.

Further, upon information and belief based upon public news[1], in and around 2016-2017 before Plaintiff attended Duke and before he ever had any contact/meeting with Defendants, it is alleged that Nike paid Plaintiff's mother for alleged "consulting services". Duke is a Nike sponsored university and Plaintiff's mother's background is as a middle school teacher[1]. As such, discovery on this allegation is warranted.

This Court should also consider the publicly filed trial transcript in Case No.: 1:17-cr-686-LAK filed with the United States District Court, Southern District of New York, in which wiretap conversation(s) were being offered as evidence regarding benefits being offered by Kansas Assistant Coach Kurtis Townsend to Plaintiff in **2017-2018** -- before Plaintiff attended Duke and before he met Ms. Ford. In those filings, a wiretap conversation between Mr. Merl Code of Adidas and Kurtis Townsend discussed allegedly paying Plaintiff to attend Kansas:

> "In this call between Mr. Code and Mr. Townsend, Mr. Townsend says…when they are referring to … Zion Williams: '…between me and you…he asked about some stuff…I said, well, we'll talk about that you decide.' …Mr. Code says: 'I know what he's asking for.' This is the player. 'He's asking for opportunities from an occupational perspective. He's asking for money in the pocket. And he's asking for housing for him and his family.'…Mr. Townsend says: 'so, I've got to just try to work and figure out a way. Because if that's what it takes to get him for ten months, we're going to have to do it some way.'"

See attached as Exhibit "C", true and correct copy of relevant pages of official Court trial transcript, Case No.: 1:17-cr-686-LAK[1].

In addition, pursuant to public records, SSA Enterprises LLC was registered in South Carolina on April 12, 2019 (three days before Plaintiff declared for the 2019 NBA Draft and eight days before Plaintiff entered into the Contract herein) with Plaintiff's mother as the registered agent[1]. Pursuant to public records, **on May 28, 2019, three days before Creative Artists**

18

**Agency announced that it had signed Plaintiff to an all-inclusive contract including to serve**
**as his marketing agent in interference with and breach of Plaintiff's April 20, 2019 Contract**
**with Defendants,** SSA Enterprises LLC purchased a house in South Carolina for $730,000.00.
See attached hereto as Exhibit "D", true and accurate copy of registration of SSA Enterprises and
deed/title to and picture of the house[1].    Based upon the Recorder of Deeds, the purchase of the
foregoing house may have been a cash purchase as there is no mortgage recorded for same[1].
Discovery should be allowed as to the foregoing purchase because **at that time, Plaintiff was not**
**yet drafted to the NBA.**

Prior to attending Duke, Plaintiff and his family resided in a South Carolina property
which, upon a search of public records, in or about the time they first rented the property, the rent
was approximately $895.00 a month, and, which property is currently valued at approximately
$153,000.00[1]. See attached hereto as Exhibit "E" is a picture of the property with estimated market
value; https://www.zillow.com/homedetails/████████████████████████SC-
███████████ _zpid/.[1]    After Plaintiff selected Duke and moved to North Carolina, he and his
family resided in a property which was valued at approximately $950,000.00 at that time and for
which the monthly rent was listed at $4,9995.00. See https://www.zillow.com/homedetails/███
███████████████-NC-███████████ zpid/.[1] This property is owned by Thomas Morris
who, upon information and belief, is an alumnus of Duke[1]. See attached hereto as Exhibit "F",
true and accurate copy of deed/title to and picture of property[1].

Further, based upon DMV records[1], Plaintiff's parents have the following vehicles, among
others, registered to them for which discovery is warranted to determine whether these vehicles
impacted Plaintiff's eligibility to be/remain a "Student-athlete":

1.      A 2018 Mercedes Benz G Wagon: registered in <u>April 2019</u> to Plaintiff's stepfather

without record of lien holder;

2.    A 2016 GMC Yukon: registered to Plaintiff's stepfather <u>in December 2017</u>;

3.    A 2015 Cadillac Escalade: registered to Plaintiff's mother <u>in February 2018</u>.

Lastly, as the text messages Plaintiff attached to his Answer to Defendants' Counterclaims are disputed by Defendants and are not authenticated, this Court should not consider them in deciding this motion as Defendants are not required to respond to Plaintiff's Answer. As such, Plaintiff's allegations and the attached Exhibit are deemed denied as a matter of law. <u>See</u> <u>Jadoff v. Gleason</u>, *supra;* FRCP 8(b)(6).

<div align="center"><b><u>CONCLUSION</u></b></div>

**WHEREFORE,** Defendants respectfully request that this Honorable Court deny Plaintiff's motion in its entirety, hold that Florida law governs the Contract herein, and, for such other and further relief as this Court deems just and proper.

Dated:   June 9, 2020

<div style="margin-left:40%">

/s/ Willie E. Gary
WILLIE E. GARY, ESQ.*
GARY, WILLIAMS, PARENTI, WATSON
& GARY, PLLC
Attorneys for Defendants
PRIME SPORTS MARKETING, LLC
and GINA FORD
221 E. Osceola Street
Stuart, Florida 34994
(772) 283-8260
weg@williegary.com
*Local Rule 83.1(d) Special Appearance

</div>

/s/ Larry A. Strauss
LARRY A. STRAUSS, ESQ.*
GARY, WILLIAMS, PARENTI, WATSON
& GARY, PLLC
Attorneys for Defendants
PRIME SPORTS MARKETING, LLC
and GINA FORD
221 E. Osceola Street
Stuart, Florida 34994
(772) 283-8260
weg@williegary.com
*Local Rule 83.1(d) Special Appearance

/s/ Alvin L. Pittman
ALVIN L. PITTMAN, ESQ. (N.C. Bar No. 8460)
office@apittman-law.com
Law Offices of Alvin L. Pittman
Attorneys for Defendants
PRIME SPORTS MARKETING, LLC
and GINA FORD
Airport Center Building
5901 W Century Boulevard, Suite 412
Los Angeles, California 90045
(310) 337-3077
(310) 337-3080(fax)

/s/ Stephen L. Drummond
STEPHEN L. DRUMMOND*
sdrummond@dswinlaw.com
DRUMMOND & SQUILLACE, PLLC
Attorneys for Defendants
PRIME SPORTS MARKETING, LLC
and GINA FORD
175-61 Hillside Avenue, Suite 205
Jamaica, New York 11432
Tel: (718) 298-5050
Fax: (718) 298-5554
*Local Rule 83.1(d) Special Appearance

21

/s/ JoAnn Squillace
JOANN SQUILLACE*
jsquillace@dswinlaw.com
DRUMMOND & SQUILLACE, PLLC
Attorneys for Defendants
PRIME SPORTS MARKETING, LLC
and GINA FORD
175-61 Hillside Avenue, Suite 205
Jamaica, New York 11432
Tel: (718) 298-5050
Fax: (718) 298-5554
*Local Rule 83.1(d) Special Appearance

.

## CERTIFICATE OF SERVICE

We certify that the foregoing was filed with the Clerk of the Court using the CM/ECF system and, as such, the foregoing was served on all parties via ECF.

Dated: June 9, 2020

/s/ Willie E. Gary*_____

/s/ Larry A. Strauss*_____

/s/ Alvin L. Pittman_____

/s/ Stephen L. Drummond*___

/s/ JoAnn Squillace*_____

*Local Rule 83.1(d) Special Appearance

23

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
------------------------------------------------------------X
ZION WILLIAMSON,

                           Plaintiff,

      -against-


PRIME SPORTS MARKETING, LLC AND
GINA FORD,

                          Defendants.
------------------------------------------------------------X


## CERTIFICATE OF WORD COUNT

      1.     The within Memorandum of Law was prepared on a computer and has a total word

count, as per the computer, of 6,233 words not including, pursuant to Local Rule 7.3, any words

contained in the Memorandum of Law covers/blueback, Table of Contents, Table of Authorities

and/or any Signature blocks.

Dated: June 9, 2020

                                  /s/ Willie E. Gary*_____

                                  /s/ Larry A. Strauss*_____

                                  /s/ Alvin L. Pittman_____

                                  /s/ Stephen L. Drummond*\_\_\_

                                  /s/ JoAnn Squillace*_____

                                  *Local Rule 83.1(d) Special Appearance*

Civil Action No.:  1:19-cv-00593-LCB-JLW

ZION WILLIAMSON,

> Plaintiff,

v.

PRIME SPORTS MARKETING, LLC,
and GINA FORD,

> Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT PURSUANT TO FRCP 12(C)

Defendants PRIME SPORTS MARKETING, LLC AND GINA FORD (hereinafter "Defendants"), by their Attorneys, respectfully submit this Memorandum of Law in Opposition to Plaintiff's motion seeking partial judgment pursuant to Federal Rules of Civil Procedure 12(c).