UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

CASE NO. 1:19-CV-593-LCB-JLW

ZION WILLIAMSON,

                      Plaintiff,

      v.

PRIME SPORTS MARKETING, LLC, and
GINA FORD,

                      Defendants.

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF ZION
WILLIAMSON'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT..................................................................................................................... 3

    A.    The Undisputed Facts Warrant Entry of Judgment as a Matter of Law ................................................................................................................. 3

    B.    The Undisputed Facts Yield the Legal Conclusion that Williamson Was a "Student-Athlete" ................................................................................ 3

    C.    A Student-Athlete Cannot Retroactively Lose Protection Under the UAAA ............................................................................................................ 6

CONCLUSION ............................................................................................................... 12

LR 7.3(d)(1) Word Count Certification............................................................................. 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................... 4, 11

*Berry v. Indianapolis Life Ins. Co.*,
    600 F.Supp.2d 805 (N.D. Tex. 2009) ..................................................................... 5

*Bostock v. Clayton Cty., Ga.*,
    No. 17-1618 (June 15, 2020) .................................................................................. 4

*Direct Tech. Int'l, Inc. v. Maxum Indem. Co.*,
    418 F.Supp.3d 112 (W.D.N.C. 2019) ................................................................... 11

*Estate of Weeks v. Advance Stores Co., Inc.*,
    2004 WL 1191792 (4th Cir. 2004) ........................................................................ 8

*Howard v. Miss. Sec'y of State*,
    184 So. 3d 295 (Miss. Ct. App. 2015) ................................................................. 10

*McAdoo v. Univ. of N.C. at Chapel Hill*,
    736 S.E.2d 811 (N.C. Ct. App. 2013) ................................................................... 7

*Med-Trans Corp. v. Benton*,
    581 F. Supp. 2d 721 (E.D.N.C. 2008) ............................................................. 4, 11

*Nat'l Quarry Servs., Inc. v. First Mercury Ins. Co.*,
    372 F.Supp. 3d 296 (M.D.N.C. 2019) ................................................................. 11

*Oliver v. Baity*,
    208 F. Supp. 3d 681 (M.D.N.C. 2016) .................................................................. 8

*Sloane v. Tenn. Dep't of State*,
    2019 WL 4891262 (Tenn. Ct. App. Oct. 3, 2019) ............................................... 10

*Torres v. Johnston Cty.*,
    184 N.C.App. 191 (N.C. Ct. App. 2007) .............................................................. 9

**Statutes**

North Carolina Uniform Athlete Agents Act, N.C. Gen. Stat. Ann. § 78C-85 et seq. (2003) ...................................................................................................*passim*

**Other Authorities**

Nat'l Collegiate Athletic Ass'n, Division I Manual (Aug. 1, 2019) ............................... 5, 7

Nat'l Conference of Comm'rs on Uniform State Laws, Uniform Athlete Agents Act Policy Statement (last visited June 21, 2020) https://www.uniformlaws.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=2e62491f-2e49-c696-707a-98327e605894&forceDialog=0 ...................................................................................... 9

N.C. Sec'y of State, *UAAA Frequently Asked Questions "Who is a student-athlete?"* (last visited June 21, 2020), https://www.sosnc.gov/frequently_asked_questions/by_title/_athlete_agents ...................................................................................................................... 4

Steve Wiseman, *Zion's ex-agent repeats claims of NCAA violations; His attorney says they're 'baseless,'* The News & Observer (June 10, 2020) https://www.newsobserver.com/sports/college/acc/duke/article243423601.html ........................................................................................................... 12

Transcript of Proceedings at 38-42, U.S. v. Gatto et al, No. 1:17-cr-00686-LAK (S.D.N.Y. Nov. 2, 2018), DE 259 ..................................................... 11

Uniform Athlete Agents Act (Nat'l Conference of Comm'rs on Uniform State Laws 2000) ........................................................................................ 7

# PRELIMINARY STATEMENT

Nothing in Defendants' Opposition (the "Opposition") to Williamson's Motion for Partial Judgment on the Pleadings (the "Motion") undermines the conclusion that, as matter of law, the Agreement is void because Defendants violated clear statutory requirements governing athlete agents in North Carolina. The North Carolina Uniform Athlete Agents Act (the "UAAA") requires an individual to register with the State before acting as an athlete agent and requires athlete agents to include a prominent warning in any agency contract. Defendants admit all of the facts necessary to determine that they violated both requirements. It is undisputed that (1) Williamson played basketball for Duke University during the 2018-2019 season; (2) Defendants never registered as athlete agents; (3) Defendants held themselves out as agents and recruited or solicited Williamson while he was playing basketball for Duke; (4) Defendants did not include the statutorily required notice provision in the Agreement; and (5) Williamson notified Defendants that the Agreement is void and voided. That is enough to decide this case.

Rather than defend their conduct, Defendants seek to shift the focus with salacious and false rumors from unreliable "sources" outside the pleadings. Defendants cite to Wikipedia articles, Zillow estimates, and hearsay ruled inadmissible by other federal judges. They even embrace rank speculation that Duke intentionally violated NCAA regulations in certifying Williamson's eligibility. Defendants' allegations are baseless but, more importantly for purposes of this Motion, irrelevant.

Defendants' sole argument in opposition—that Williamson *should* never have been eligible—has no bearing on whether the Agreement is void. The UAAA makes it unlawful for an unregistered athlete agent to recruit, solicit, or sign a "student-athlete" (and unlawful to fail to include the required warning in a contract). The statutory definition of "student-athlete" protects any person considered a "student-athlete" in plain English: Any student who, at the time in question, "engages in [or] is eligible to engage in" intercollegiate sports. Here, it is undisputed that Williamson played basketball for Duke at the time Defendants recruited him. That is sufficient to make him a "student-athlete" and, because of Defendants' admitted violations of the statute, render the Agreement void.

Defendants' approach would turn the legislative purpose on its head. The UAAA is designed *to protect* student-athletes by regulating the conduct of overreaching agents, but Defendants' approach would instead protect would-be *agents* from liability by allowing *ex post facto*, retroactive victim-blaming. That is fundamentally backwards and contrary to the statutory text and purpose. Accordingly, the Court should reject Defendants' efforts as an unfounded attempt to shame Plaintiff and his family, all to divert the Court from Defendants' flouting the law. This record provides a sound foundation for the Court to rule, as a matter of law, that the Agreement is void.

# ARGUMENT

### A. The Undisputed Facts Warrant Entry of Judgment as a Matter of Law

The UAAA renders "void" any agency contract entered into with a student-athlete if the agent failed to register. N.C. Gen. Stat. Ann. § 78C-88(d). It is undisputed that Defendants never registered. The UAAA also declares voidable any agency contract that is missing a required warning. N.C. Gen. Stat. Ann. § 78C-94(d). It is undisputed that the Agreement lacks that warning and that Williamson voided the Agreement. The UAAA defines a "student-athlete" to include any person who "engages in" intercollegiate sports. N.C. Gen. Stat. Ann. § 78C-86(11). It is undisputed that Williamson was playing basketball for Duke when Defendants held themselves out as agents and undertook efforts to recruit him.[1] Those undisputed facts render the Agreement void.

### B. The Undisputed Facts Yield the Legal Conclusion that Williamson Was a "Student-Athlete"

Defendants make only a single argument in defense. They contend that, because they "denied the allegation that Plaintiff is a 'Student-athlete,'" there is a genuine dispute of material fact. (Opp'n at 2.) But their denial is irrelevant, because whether Williamson qualifies as a "student-athlete" under the UAAA is a legal conclusion, not an issue of fact. Although factual allegations are taken as true at the pleadings stage, legal

---

[1] Defendants assert that Williamson initiated contact with Defendants. Although that assertion is untrue, the distinction is a red herring. Even if Williamson initiated contact, the law required Defendants to register within seven days of Defendants' "initial act as an athlete agent." *See* N.C. Gen. Stat. Ann. § 78C-88(b). Athlete agent acts include direct or indirect solicitation of a student-athlete. *Id*. § 78C-86(2). As Defendants admit, they have *never* registered. (FAC/Answer ¶ 16.)

conclusions are not. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (finding that mere legal conclusions are "not entitled to the assumption of truth"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (similar); *Med-Trans Corp. v. Benton*, 581 F. Supp. 2d 721, 729 (E.D.N.C. 2008) ("Whether or not plaintiff's operations fall within North Carolina's narrow statutory definition is not, as presented, a genuine issue of material fact. It is an issue of law."). Defendants' denial thus carries no weight.

Critically, the undisputed facts necessary to reach that legal conclusion establish that Williamson was a "student-athlete." A person qualifies if he or she is a student who: (1) "engages in;" (2) "is eligible" to engage in; **or** (3) may be eligible in the future to engage in any intercollegiate sport. N.C. Gen. Stat. Ann. § 78C-86(11). As the United States Supreme Court recently emphasized, courts interpret "a statute in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton Cty., Ga.*, No. 17-1618 (June 15, 2020). Here, the undisputed facts establish that Williamson qualified as a "student-athlete."

A student who "engages in" intercollegiate sports is a "student-athlete," full stop. N.C. Gen. Stat. Ann. § 78C-86(11); *see also* N.C. Sec'y of State, *UAAA Frequently Asked Questions "Who is a student-athlete?"* (last visited June 21, 2020), https://www.sosnc.gov/frequently_asked_questions/by_title/_athlete_agents. Defendants admit that Williamson played basketball for Duke. (*See* Counterclaims ¶¶ 19, 27; Opp'n

4

Case 1:19-cv-00593-LCB-JLW   Document 40   Filed 06/22/20   Page 8 of 18

at 8.) He thus was "engage[d] in" an intercollegiate sport when they recruited him.[2] Indeed, Williamson was one of the most well-known student athletes in the country. Nonetheless, Defendants failed to register and failed to provide the required warning in the Agreement.

Defendants contend that a person cannot be a "student-athlete" merely because he was playing college sports. (Opp'n at 12.) This argument requires rewriting the statute or ignoring the first category of the definition, which applies to any person who "engages in" a college sport without any further inquiry into eligibility. Moreover, a student cannot play a college sport unless the school first certifies his or her eligibility under NCAA rules. *See* Nat'l Collegiate Athletic Ass'n, Division I Manual §§ 3.2.4.4; 12.1.1 (Aug. 1, 2019) [hereinafter the "NCAA Bylaws"];[3] *see also* NCAA Bylaws § 12.7.2.1 (requiring a student to share information bearing on eligibility, including that "related to eligibility, recruitment, financial aid, amateur status"). Thus, the admitted fact that Williamson played college basketball for Duke renders unnecessary further inquiry.

---

[2] Despite admitting the existence of text messages between Ford and Williamson's family, (FAC/Answer ¶ 36), Defendants "do not admit herein" the authenticity of text messages attached to Williamson's Answer to Defendants' Counterclaims. (Opp'n at 8.) Defendants provide no basis for their refusal to admit, did not move to strike the exhibit, and the text messages should be considered as part of the pleadings absent any proper challenge. *See Berry v. Indianapolis Life Ins. Co.*, 600 F.Supp.2d 805, 812 (N.D. Tex. 2009) (considering a document where the party moving to strike had "not [actually] argued that it is not in fact authentic"). Regardless, Defendants admit to attending a Duke basketball game, texting and meeting with Williamson and his family, and unlawfully acting as unregistered athlete agents when they signed the Agreement. (FAC/Answer ¶ 18, 36.)

[3] https://web3.ncaa.org/lsdbi/reports/getReport/90008

### C. A Student-Athlete Cannot Retroactively Lose Protection Under the UAAA

1. Defendants assert that Williamson was *never* a "student-athlete" at any point in his college career, because he should have been ineligible. Defendants cite no support for the contention that the applicability of the UAAA's regulation of athlete agents provides for a retroactive inquiry into student-athlete eligibility. It does not.

The UAAA could have been drafted to exclude an individual who "should have been ineligible" or "is found in the future to have been retroactively ineligible." But the UAAA instead defines a student-athlete broadly and in the present indicative: "An individual who *engages in*, is eligible to engage in, or may be eligible in the future to engage in any intercollegiate sport." N.C. Gen. Stat. Ann. § 78C-86(11). Williamson qualifies because he was playing college basketball when Defendants began recruiting him.

The second sentence of the definition does not alter that analysis for one-sport athletes like Williamson. It provides that, "[i]f an individual is permanently ineligible to participate in a particular intercollegiate sport, the individual is not a student-athlete for purposes of that sport." *Id.* A one-sport athlete who is permanently ineligible is not a "student-athlete" because, by definition, he or she will no longer be playing, is not eligible, and will not be eligible in the future. That sentence has no impact here. As the Commentary to the UAAA explains, the sentence was drafted to address "a two-sport athlete who has eligibility remaining in one sport," making clear, for example, that "an individual who has signed a contract to play professional basketball is not a student-

6

athlete in basketball, but is a student-athlete in baseball." Uniform Athlete Agents Act, Section 2 Comment (Nat'l Conference of Comm'rs on Uniform State Laws 2000) [hereinafter "Model Act"].[4] The statute could have been drafted such that the individual ceased to be a student-athlete at all, but the second sentence expands the UAAA's protection by providing that he retains "student-athlete" protection for baseball.

Defendants point to instances in which the NCAA has retroactively stripped universities of titles after subsequent findings of improper conduct. The NCAA is a private body, not a state actor, which has authority to strip titles from schools solely as a matter of agreements with its member institutions. It would be altogether different for the NCAA to deprive retroactively an individual of *statutory* protections granted by the North Carolina legislature.[5] In any event, the UAAA does not countenance such a retroactive deprivation of rights, because it applies to any person who "engages in" a college sport without further inquiry into eligibility.

By providing a readily-discernable definition of "student-athlete" to cover any person who is playing, or is or may be eligible to play, at the time of solicitation, the UAAA provides clear warning to agents about what conduct is prohibited (and backed by

---

[4] https://www.uniformlaws.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=fbc54541-eb71-44d7-d9ee-dd6f3b851697&forceDialog=0

[5] The NCAA bylaws also provide robust procedural protections that Defendants overlook. "[V]iolation of eligibility rules . . . is not automatic and does not occur until a determination has been made by the educational institution or the national association." Model Act, Section 10 Comment. Among other things, if a school determines that a student is ineligible, the student has a right to appeal. NCAA Bylaws § 10.4; *see McAdoo v. Univ. of N.C. at Chapel Hill*, 736 S.E.2d 811, 818 (N.C. Ct. App. 2013).

7

criminal sanctions): If the individual is playing, an unregistered agent must stay away. By contrast, under Defendants' approach, an athlete agent can never know at the time whether his or her conduct is unlawful, because that may depend on facts that do not yet exist.

Moreover, Defendants' theory that Williamson was *never* a "student-athlete" is contrary to their own admissions. In a letter to Williamson's counsel dated June 4, 2019, Defendants alleged that Williamson forfeited his student-athlete status when he "declared eligible for the 2019 NBA draft on or about April 15, 2019." (FAC Ex. A). As discussed in the Motion, an Instagram post is insufficient to declare for the NBA Draft and does not affect student-athlete eligibility. *See* Motion at 22. Defendants did not dispute this point in their Opposition and, accordingly, have waived any argument that Williamson lost student-athlete status at that time. *Oliver v. Baity*, 208 F. Supp. 3d 681, 690 (M.D.N.C. 2016) ("[A] party's failure to address an issue in its opposition brief concedes the issue."); *cf. Estate of Weeks v. Advance Stores Co., Inc.*, 2004 WL 1191792, at *4 (4th Cir. 2004) (unpublished). Their position now rests entirely on the theory that Williamson was *never* a "student-athlete," and their counsel's letter makes clear that Defendants believed Williamson was a student-athlete until at least April 15, 2019. Nevertheless, they failed to register during that time. That is, Defendants' admissions show they knowingly engaged in conduct that violates the UAAA. Defendants should be estopped from now arguing, *ex post facto*, that they did not violate the law.

8

2. Defendants' interpretation would contravene the UAAA's statutory purpose. It would transform a shield to protect student-athletes against overreaching agents into a sword by which those agents could avoid liability by attacking students' reputations. Indeed, in Defendants' view, those agents can unleash a muckraking endeavor to probe into the intimate details of the lives of the player and his or her family, on the bet that their expedition might reveal evidence of a single transgression of the NCAA's rules. "[J]udicial construction must be grounded in the statute's perceived intent or purpose" and the Court should "adopt the construction and practical interpretation which best expresses the intention of the Legislature." *Torres v. Johnston Cty.*, 2007 WL 1745894, at *2 (N.C. Ct. App. 2007) (table). If Defendants could retroactively challenge Williamsons' protection as a "student-athlete"—notwithstanding that he was playing basketball for Duke—their approach would eviscerate the UAAA's protections.

This case vividly illustrates the point: Defendants do not deny that they recruited a prominent college athlete in North Carolina without registering and without providing the required warning. Their *entire brief* instead consists of an effort to point the finger at Williamson and his family, levying a stream of offensive and baseless insinuations.

Defendants assert that a purpose of the UAAA is to police student-athlete behavior, but fail to provide any support for this contention. (*See* Opp'n at 2, 12.) None exists. The UAAA was enacted to protect *student-athletes* from the predatory conduct of athlete agents at the time of their recruitment. (*See* Motion at 8, 10-11, 15); *see also* Nat'l Conference of Comm'rs on Uniform State Laws, Uniform Athlete Agents Act Policy

9

Statement (last visited June 21, 2020) https://www.uniformlaws.org/HigherLogic/
System/DownloadDocumentFile.ashx?DocumentFileKey=2e62491f-2e49-c696-707a-
98327e605894&forceDialog=0. Reflecting that purpose, the statute regulates the conduct
of athlete agents, not student-athletes: It is called the Uniform *Athlete Agent* Act, *not* the
Uniform Student Athlete Code of Conduct. *Athlete agents* must register with the State,
but there is no registration requirement for students. *See* N.C. Gen. Stat. Ann. § 78C-88.
*Athlete agents* must warn students before signing an agreement, but there is no
requirement that the *student* provide any warning to the agent. *See* N.C. Gen. Stat. Ann.
§ 78C-94. The "student-athlete" provision at issue is also merely definitional; it does not
regulate the student's conduct. *See* N.C. Gen. Stat. Ann. § 78C-86(11). Instead, the
definition is plugged into other provisions of the Act *that regulate agents' conduct*. The
statutory focus is thus on governing the conduct of agents, and Defendants do not dispute
that their own conduct violated the UAAA.

*Sloane* and *Howard* offer no support for the proposition that an athlete-agent can
avoid the consequences for their conduct by retroactively second-guessing whether a
student-athlete should have been playing. In those cases, the court found the agents'
belated attempts to deny that the athletes were "student-athletes" to have been waived by
earlier statements. *See Sloane v. Tenn. Dep't of State*, 2019 WL 4891262 (Tenn. Ct. App.
Oct. 3, 2019); *Howard v. Miss. Sec'y of State*, 184 So. 3d 295 (Miss. Ct. App. 2015). In
fact, the teaching of *Sloane* and *Howard* is that athlete-agent agreements are void in

circumstances where, as here, the agent has violated nearly identical statutes' registration requirements.

For the reasons set forth above, the Agreement is void: Defendants failed to register as athlete agents and to include the required warning in the agency contract, during which time Williamson was "engage[d] in" college basketball and therefore a "student-athlete." Those undisputed facts decide the case.

3. Finally, even if Defendants could rewrite the statute to authorize retroactive review of student-athlete eligibility, Defendants raise nothing more than unsubstantiated conjecture. For example, Defendants offer an excerpt from a taped phone conversation between two individuals ostensibly discussing Williamson, but Defendants neglect to include the portion of the trial transcript in which the Court rules the excerpt inadmissible. *Compare* Opp'n Ex. C, *with* Transcript of Proceedings at 38-42, U.S. v. Gatto et al., No. 1:17-cr-00686-LAK (S.D.N.Y. Nov. 2, 2018), DE 259.

In assessing a motion for judgment on the pleadings, a court must "base its decision solely on information obtained from the pleadings," *Med-Trans Corp*, 581 F.Supp.2d at 728, and "the Court 'need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Direct Tech. Int'l, Inc. v. Maxum Indem. Co.*, 418 F.Supp.3d 112, 116-17 (W.D.N.C. 2019) (citation omitted). Such allegations do not create even a "conceivable," much less a "plausible," basis for their defense. *See Twombly*, 550 U.S. at 570; *Nat'l Quarry Servs., Inc. v. First Mercury Ins. Co.*, 372

F.Supp. 3d 296, 301 (M.D.N.C. 2019) (requiring pleading facts that "demonstrat[e] the plausibility of . . . a defense").

Defendants hypothesize that "*[i]f* Plaintiff . . . accepted any NCAA prohibited compensation/benefits" before attending Duke, it "would" have rendered him ineligible. (Opp'n at 12) (emphasis added). Similarly, they posit that "*if* Plaintiff . . . had successfully hidden any prohibited conduct from Duke," then Duke's certification of his eligibility could not "be relied upon." (Opp'n at 15) (emphasis added). Notwithstanding Defendants' insinuations about owning cars and renting homes, they nowhere allege that he or his family actually engaged in any conduct in violation of NCAA rules.[6]

In any event, Defendants' speculations are irrelevant. Defendants admit that Williamson played college basketball during the 2018-2019 season. At that time, Defendants failed to register as athlete agents and failed to include the required warning in the Agreement. Those undisputed facts are sufficient to establish that the Agreement was void, and Defendants cannot escape the consequences of their own illegal conduct.

## CONCLUSION

For the foregoing reasons and those submitted in his opening brief, Williamson respectfully asks this Court to enter judgment as a matter of law in his favor on Count I.

---

[6] Defendants' suggestion that a Duke alumnus gave the Williamson family a favorable deal on a home (Opp'n at 19) is not only untrue, it is reckless and not based on a reasonable inquiry. Indeed, a news article posted only hours after Defendants' filing suggests that, based on the News and Observer's investigation, public records easily disprove Defendants' assertions. *See* Steve Wiseman, *Zion's ex-agent repeats claims of NCAA violations; His attorney says they're 'baseless,'* The News & Observer (June 10, 2020) https://www.newsobserver.com/sports/college/acc/duke/article243423601.html.

This 22nd day of June 2020.

/s/ John R. Wester
John R. Wester
N.C. Bar No. 4660
jwester@robinsonbradshaw.com
Robert E. Harrington
N.C. Bar No. 26967
rharrington@robinsonbradshaw.com
Fitz E. Barringer
N.C. Bar No. 42679
fbarringer@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON, P.A.
101 N. Tryon St., Ste. 1900
Charlotte, North Carolina 28246
Telephone: 704.377.2536
Facsimile: 704.378.4000

Jeffrey S. Klein*
Jeffrey.Klein@weil.com
Pravin R. Patel*
Pravin.Patel@weil.com
Lauren E. Richards*
Lauren.Richards@weil.com

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: 212.310.8790
Facsimile: 212.310.8007

*Local Rule 83.1(d) Special Appearance filed.

*Attorneys for Plaintiff*

13

## LR 7.3(d)(1) Word Count Certification

I hereby certify that this brief contains 3,122 words as reported by Microsoft Word word count feature and is in compliance with Local Rule 7.3(d)(1).

/s/ John R. Wester
John R. Wester
