IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ZION WILLIAMSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19-cv-593 |
| | ) | |
| PRIME SPORTS MARKETING, | ) | |
| LLC and GINA FORD, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Before the Court are two motions. First, Plaintiff has filed a Motion for Partial Judgment on the Pleadings as to his claim for declaratory judgment only, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (ECF No. 34.) Second, Defendants have filed a motion seeking to supplement their Response to Plaintiff's Motion for Partial Judgment on the Pleadings. (ECF No. 41.)

This action arises out of a marketing agreement ("the Agreement") between Plaintiff and Defendants. (ECF No. 14 ¶ 1.) Plaintiff, Zion Williamson, is a former basketball player for Duke University in Durham, North Carolina. (*Id.* ¶ 8.) Defendants are Gina Ford, a marketing agent from Florida, and Prime Sports Marketing, LLC ("Prime Sports"), a Florida-based marketing agency. (*Id.* ¶¶ 9–10.) The parties entered into the Agreement on or about April 20, 2019, at the time Plaintiff was still a student at the university. (*See id.* ¶¶ 15, 21). In the Complaint, Plaintiff seeks, among other things, a "judicial declaration that the Agreement

is void as a matter of law and that Defendants engaged in conduct prohibited by [North Carolina's Uniform Athlete Agent Act ("UAAA")]." (*Id.* ¶¶ 54–77.) In the alternative, Plaintiff seeks a declaration that "Defendants engaged in conduct prohibited by the UAAA, that the Agreement fails to meet the form of contract under the UAAA, [and] is therefore voidable, and that Mr. Williamson voided the Agreement." (*Id.* ¶ 60.) Defendants answered and alleged counterclaims requesting, among other things, a judicial declaration that the Agreement is valid. (*See* ECF No. 32 at 116–17.) On May 20, 2020, Plaintiff moved for judgment on the pleadings as to the declaratory judgment claim ("Count I") of his Complaint. (ECF No. 34.) Following the completion of briefing on Plaintiff's motion, on July 9, 2020, Defendants filed a motion, requesting permission to supplement their response to Plaintiff's Motion for Partial Judgment on the Pleadings. (ECF No. 41.) For the reasons stated below, Defendants' motion will be denied, and Plaintiff's motion will be granted.

## I. THE DECLARATORY JUDGMENT ACT

The Federal Declaratory Judgment Act ("Declaratory Judgment Act") provides that, "[i]n a case of actual controversy within its jurisdiction," a federal district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In deciding a declaratory judgment action, a threshold question is whether a district court should decide to hear the case given that the Declaratory Judgment Act "does not impose a mandatory obligation upon the federal courts" to do so. *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421 (4th Cir.1998). "Rather, a district court's decision to entertain a claim for declaratory relief is discretionary." *Id.; see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 287 (1995) ("We have

repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952))).

In exercising this discretion, the Fourth Circuit has noted that it is appropriate to hear a declaratory judgment action "'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir.1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)); *see also Safety Nat'l Cas. Ins. Corp. v. City of Burlington*, No. 1:04CV00619, 2006 WL 399675, at *4 (M.D.N.C. Feb. 17, 2006). In making its determination of whether to hear a declaratory action, whereas here[1] there is a parallel proceeding[2] in a state court, a deciding court is to be guided by the considerations of federalism, efficiency, and comity, which have traditionally guided a federal court's decision exercise jurisdiction over state-law claims. *Centennial Life*, 88 F.3d at 257 (citing *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir.1994)).

The Fourth Circuit has identified the following four considerations to determine whether to proceed with a declaratory judgment action when there is a pending parallel state action:

---

[1] Currently, the parties are involved in litigation in the state of Florida where Defendants have sued Plaintiff, Creative Artists Agency, LLC ("CAA"), Austin Brown, and Joseph-Metelus in Florida state court for "breach of contract, breach of the implied duty of good faith and [fair] dealings, fraud, interference with a contract, civil conspiracy, unjust enrichment, [misappropriation of trade secrets], Declaratory Judgment, Injunctive Relief[,] and Punitive Damages" ("Florida Action"). (ECF No. 20-1 at 2–3.)

[2] A parallel proceeding is a "criminal, civil, or administrative proceeding that runs concurrently or simultaneously with another relating to the same core facts." *Proceeding, Black's Law Dictionary* (11th ed. 2019).

3

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law"; and (iv) whether the declaratory judgment action is being used merely as a device for "procedural fencing"–that is, "to provide another forum in a race for res judicata" or "to achieve a federal hearing in a case otherwise not removable."

*Id.* (quoting *Nautilus Ins. Co.*, 15 F.3d at 377 (4th Cir.1994)). Of these four considerations, the Court can easily dispense with factors one, two, and four.

First, while neither party has addressed this issue, the Court determines, and the Florida Third District Court of Appeals acknowledges, that the action in this Court is the first filed of the two actions. (*Compare* ECF No. 1, *with* ECF Nos. 20-1 & 20-2.) In addition, the key events in the case—Defendants' pre-contract communications with Plaintiff and the signing of the Agreement—took place in North Carolina. (ECF No. 14 ¶ 1.) Also, Plaintiff's lawsuit and Defendants' countersuit now before this Court both allege violations of a North Carolina statute. (*Id.* ¶¶ 3, 54–60; ECF No. 32 at 33.) Thus, North Carolina's interest and the need for involvement of this Court to protect that interest is substantial. Second, while the claims in the Florida Action are related to the Agreement, it does not appear that the issue of whether the Agreement is void under North Carolina law is, or could be, an issue in the Florida Action. Further, with respect to the fourth factor, the Court determines that there is no indication that Plaintiff has engaged in procedural fencing, which includes forum shopping and races to the courthouse. Nor is there any indication that this declaratory action was filed in an effort to obtain a federal forum in a case not otherwise removable.

It is the third factor—whether permitting the federal action to go forward would result in unnecessary entanglement between state and federal court systems because of overlapping issues of fact or law—which requires greater consideration by this Court. The Court acknowledges that resolving the issue of the Agreement's validity at the very least may impact a subsequent decision in the Florida state court or, worse, raises the potential of resulting inconsistent rulings related to the Agreement. The Court recognizes that, in promoting comity between state and federal courts, "[a]n important element in fostering that spirit of cooperation and respect must be a reluctance on the part of federal courts to entertain a declaratory action that could result in entanglement between the two court systems." *Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992). Nevertheless, given the posture of this case as the first filed action, the inability of the Florida Action to resolve the issue before this Court presently, and the connection of the issue to North Carolina law, the Court determines that these factors outweigh any potential entanglement with Florida's state court and that it is appropriate to hear this declaratory action. Moreover, should the Court decline to decide the declaratory judgment issue, Plaintiff would suffer prejudice in being denied the opportunity to pursue relief based on the North Carolina statute that is the heart of the first count in his Complaint.

Thus, the Court concludes that it will exercise its discretion under the Declaratory Judgment Act to address Plaintiff's claim for declaratory relief at this time. Before examining Plaintiff's claim for declaratory relief, the Court will first address Defendants' Motion to Supplement.

## II. MOTION TO SUPPLEMENT DEFENDANTS' RESPONSIVE BRIEF

Defendants seek permission to supplement their responsive brief with evidence they contend is "materially significant, relevant, dispositive, compelling and readily establishes" that Plaintiff was not a student-athlete at the time that Defendants initially came into contact with him. (ECF No. 45 at 1–2.) The information Defendants wish to provide includes: (1) a sworn affidavit from one Donald Kreiss indicating that Plaintiff had committed to have Maximum Management Group, Inc. ("MMG") serve as his marketing agency[3]; (2) a copy of an alleged marketing agreement between Plaintiff and MMG; and (3) a copy of an alleged letter from Plaintiff to the president of MMG promising to repay a loan that was allegedly accompanied by a color copy of Plaintiff's state identification. (*Id.* at 2–3.) Defendants assert that this information was obtained after the parties had completed the full briefing on Plaintiff's motion. (*Id.* at 3.) Plaintiff opposes Defendants' request to supplement their brief and argues that Defendants' motion is procedurally improper and substantively irrelevant, and that the documents and allegations upon which Defendants rely are false or fraudulent. (ECF No. 46 at 6, 11.)

The information Defendants wish to introduce to the Court through their proposed supplement is not proper for consideration at the motion for judgment on the pleadings stage as the documents and information are not referenced anywhere in the Answer, affirmative defenses, or counter claims. While Defendants style their motion as one to amend their responsive brief, it appears as though they are in fact attempting to make a backdoor

---

[3] While Defendants state that copies of the documents and other supplemental materials they wish to provide are attached to their motion, (ECF No. 41 at 1), these materials are in fact attached to an affidavit filed by Defendants' attorney, (*see* ECF No. 42-1).

amendment to their pleadings. A "[d]efendant may not amend his pleading by the use of a Response." *United States v. Appelbaum*, 47 F. Supp. 3d 370, 374 (W.D.N.C. 2014). To hold otherwise would permit a party to unilaterally amend its pleading at will simply by raising a new argument in a brief. *Cf. Marsh v. Virginia Dep't of Transp.*, No. 6:14-CV-00006, 2014 WL 6833927, at *8 (W.D. Va. Dec. 3, 2014) (citations omitted) (internal quotations omitted). If a party does not amend its pleading as a matter of course, it "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15. Here, Defendants have neither.

Even if the Court were to permit Defendants to supplement their responsive brief, it would not alter the Court's analysis of whether Plaintiff is entitled to partial judgment on the pleadings. As discussed further below, in considering a motion for judgment on the pleadings, the proper scope of materials a court is to consider does not include anything outside of the pleadings and documents attached to or incorporated by reference into the pleadings. *See Guessford v. Penn. Nat'l Mut. Cas. Ins. Co.*, 918 F. Supp. 2d 453, 459 (M.D.N.C. 2013); *see also Mendenhall v. Hanesbrands, Inc.*, 856 F. Supp. 2d 717, 724 (M.D.N.C. 2012). Notwithstanding this, a district court may consider a document that was not attached to or expressly incorporated in a pleading if the document is integral to a pleading and there is no dispute over the document's authenticity. *Cf. Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted).

The proposed supplemental information Defendants wish to provide is not referenced in the pleadings. Nor can it be said that the pleadings rely upon this information in light of the fact that according to Defendants such information or purported evidence was unknown

7

at the time the pleadings were filed.  Therefore, the information and documents are not integral to their pleadings.  *Cf. Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (explaining that a document is integral to a complaint "where the complaint relies heavily upon its terms and effect." (citation and quotation omitted)).  Moreover, there is meaningful dispute over the authenticity of the Kreiss Affidavit's supporting exhibits.  (*See* ECF No. 46 at 11–18.)

Granting a party leave to file supplemental materials is within the Court's discretion. *See Dietz v. Bouldin*, 136 S. Ct. 1885, 1892, (2016) (stating that "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases").  Further, the scope of the district court's discretion to manage such matters is wide-ranging, including the admission of purported evidence such as the affidavit and exhibits presented by Defendants.  *See United States v. Janati*, 374 F. 3d 263, 273-74 (4th Cir. 2004).  Accordingly, because the Court concludes that the information Defendants seek to add to their response is immaterial to the resolution the Court must make here, Defendants' Motion to Supplement will be denied.

The Court now proceeds to Plaintiff's Motion for Partial Judgment on the Pleadings.

### III.     MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

In his Motion for Partial Judgment on the Pleadings, Plaintiff contends that he is entitled to judgment in his favor on Count I of his Complaint because the pleadings establish as a matter of law that the Agreement at issue is either void or was voidable and subsequently voided pursuant to North Carolina's Uniform Athlete Agent Act ("UAAA").  (ECF No. 35 at 1, 5.)  Defendants argue that judgment on the pleadings is not appropriate because there is a genuine dispute of material fact as to whether Plaintiff was in fact a student-athlete during the

relevant time period, which they argue would mean that the UAAA is not applicable. (ECF No. 37 at 6–7.)

### A. Legal Standard

A motion for judgment on the pleadings is brought pursuant to Federal Rule of Civil Procedure 12(c). Rule 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[W]hen the plaintiff moves for judgment on the pleadings, the motion should be granted if, 'on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law.'" *Lowden v. Cnty. of Clare*, 709 F. Supp. 2d 540, 546 (E.D. Mich. 2010) (quoting *United States v. Blumenthal*, 315 F.2d 351, 352, (3d Cir. 1963)). A court should not grant a motion for judgment on the pleadings "unless there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Zinzow v. World Ins. Co.*, No. 1:00CV00544, 2002 WL 737775, at *2 (M.D.N.C. Mar. 19, 2002) (citations omitted); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368 (3d ed. 2004) (stating that federal courts have been "unwilling to grant a motion under Rule 12(c) unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.").

A court reviewing a motion for judgment on the pleadings applies the same standards that apply to motions brought pursuant to Rule 12(b)(6), *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (citations omitted). A motion made under Rule 12(b)(6) examines, among other things, whether the pleading satisfies the standards set forth in Rule 8. *Francis v.*

9

*Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A pleading will satisfy Rule 8(a)(2) only when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Relevant here is Rule 8(b) which requires that a party responding to a pleading make a short and plain statement of its defenses to each claim and admit or deny the claims asserted against it by the opposing party or state whether it has insufficient knowledge from which to form a belief as to the claim. Fed. R. Civ. P. 8(b)(1)–(5).

"In considering a motion for judgment on the pleadings under [Rule 12(c)], this court must view facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the non-moving party." *Prime TV, LLC v. Travelers Ins. Co.*, 223 F. Supp. 2d 744, 748–49 (M.D.N.C. 2002) (citing 5A Wright & Miller, *supra*, at § 1386 at 590 (Supp. 2002)). While the legal standard for reviewing a 12(c) motion is the same as that of a 12(b)(6) motion, unlike a review of a 12(b)(6) motion, the Court may consider pleadings outside of the complaint. *See Alexander v. City of Greensboro*, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011)

Thus, in considering a Rule 12(c) motion, the Court considers the complaint, the answer, and any exhibits attached to the pleadings. *Mendenhall*, 856 F. Supp. 2d at 724. Documents attached to pleadings are considered a part of the pleadings for 12(c) purposes. *Id.* Going "beyond these documents . . . converts the motion into one for summary judgment," and "[s]uch conversion is not appropriate where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637

F.3d 435, 448–49 (4th Cir. 2011) (citation omitted). As such, "judgment on the pleadings is appropriate if, taking the non-moving party's allegations as true, the movant clearly establishes that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law." *Prime TV*, 223 F. Supp. 2d at 749.

### B. The North Carolina Uniform Athlete Agent Act ("UAAA")

The North Carolina General Assembly enacted into law its version[4] of the UAAA in 2003. 2003 N.C. Sess. Laws 375. The UAAA provides requirements for the conduct of individuals acting as athlete agents in North Carolina and for contracts entered into between athlete agents and student-athletes. Under the statute, an individual is required to register with the North Carolina Secretary of State before acting as an athlete agent in the state, unless the individual is a North Carolina licensed and resident attorney. N.C. Gen. Stat. § 78C-88(a)–(c).

The UAAA defines "athlete agent" as a person who (1) "enters into an agency contract with a student-athlete;" (2) "directly or indirectly. . . recruits or solicits a student-athlete to enter into an agency contract;" or (3) "represents to the public that" he or she "is an athlete agent." *Id.* § 78C-86(2). Those seeking certification as an athlete agent must submit an application that provides, among other things, a description of their formal training, practical experience, and educational background relating to agent activities. *Id.* § 78C-89. The UAAA provides that an agency contract resulting from conduct that violates Section 78C-88 of the act is void. *Id.* § 78C-88(d).

---

[4] The Uniform Law Commission ("ULC") promulgated the Uniform Athlete Agents Act in 2000. *See* Unif. Athlete Agents Act (Unif. L. Comm'n 2000). The North Carolina Act, as well as versions in more than 40 states, is modeled after the ULC's UAAA. *See* https://www.uniformlaws.org/committees/community-home?CommunityKey=86324d0a-17fe-4325-85bc-17d11b46f84d for a list of states that have enacted a version of the ULC's 2000 version of Uniform Athlete Agents Act (last visited January 18, 2021).

11

The UAAA also provides requirements for contracts between athlete agents and student-athletes, and its definition of an "agency contract" incorporates any agreement which grants an individual the authority to negotiate or solicit "a professional-sports-services contract or an endorsement contract" on behalf of a student-athlete. *Id.* § 78C-86(1). These requirements include, among other things, that the contract include a "conspicuous" warning to the potential client that his signature will result in a loss of intercollegiate eligibility as well as the date of execution of the contract. *Id.* § 78C-94(a)–(c). An agency contract that does not meet the express terms of the statute is voidable by the student-athlete. *Id.* § 78C-94(d).

## C. Discussion

Defendants' primary argument against the appropriateness of judgment on the pleadings is that they have made sufficient allegations to call into question Plaintiff's status as a student-athlete, which would mean that the UAAA did not apply to Plaintiff and Defendants' relationship, or the resulting Agreement. (ECF No. 37 at 7–8.) Defendants have raised a question of Plaintiff's status as a student-athlete, as an affirmative defense, (ECF No. 32 at 24), and alleged the same within a counterclaim, (*Id.* at 40–41). According to Defendants, "[a]t the time Plaintiff [entered] Duke University as a Freshman in 2018, the Plaintiff was not a 'student athlete' as define[d] by the [National Collegiate Athletic Association ("NCAA")] and/or as defined by [the] UAAA." (ECF No. 32 at 24.) This is because, allegedly, "the Plaintiff and/or third parties acting on the Plaintiff's behalf had violated one or more of the NCAA and/or UAAA rules that . . . rendered him ineligible to be a student athlete." (*Id.* (internal quotations omitted).) The Court will first consider the pleadings, and their

12

attachments, that are relevant to whether Plaintiff was a student-athlete as defined by the UAAA.

### 1. *Plaintiff Was a Student Athlete Under the UAAA*

Before determining this issue, the Court first addresses Defendants' argument that the Court must accept Defendants' allegations, that Plaintiff was not a student-athlete at all relevant times, as true. (*See* ECF No. 37 at 6–7.) Simply asserting a legal conclusion does not create an issue of fact precluding judgment on the pleadings, especially in the face of contradicting facts and law. The principle that a Court must accept allegations in a pleading as true is inapplicable to legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Cf. Iqbal*, 556 U.S. at 678. While the Court considers the facts contained in the pleadings in the light most favorable to the non-moving party, the Court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." *See E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (reviewing a district court's order dismissing a complaint under Rule 12(b)(6)); *see also* 5C Wright & Miller, *supra*, § 1368 ("Although a court will not grant a Rule 12(c) motion if a material issue of fact exists, federal judges have been firm in requiring that the issues be genuine and not based on mere pro forma denials or sham or patently false assertions in the pleadings.").

Turning to the statute, the UAAA defines "student-athlete" broadly as "[a]n individual who engages in, is eligible to engage in, *or* may be eligible in the future to engage in any intercollegiate sport," but not an individual who is "permanently ineligible to participate" in the sport. N.C. Gen. Stat. § 78C-86(11) (emphasis added). Defendants argue that Plaintiff

13

alleged a conclusory assertion that he was a student-athlete just because he was playing basketball at Duke and that allegation cannot defeat Defendants' allegations that Plaintiff was ineligible/permanently ineligible to participate in collegiate sports while playing for Duke. (ECF No. 37 at 7.)  The Court disagrees.  Plaintiff's allegation that he was a student-athlete is more than merely a conclusory allegation.  Plaintiff has affirmatively and specifically alleged that he enrolled as a student at Duke University in 2018 and played basketball for Duke as a true freshman during the 2018–2019 collegiate basketball season.  (ECF No. 14 ¶ 15.)

Though Defendants deny Plaintiff's eligibility to be a student-athlete, they nevertheless acknowledge that Plaintiff did "engage in" intercollegiate sports at Duke during the relevant period.  (ECF No. 32 at 9 (admitting to "Plaintiff's basketball accomplishments while playing for Duke University").)  They have additionally attached exhibits to their pleadings that refer to Plaintiff's engagement in collegiate athletics.  For instance, one attachment dated May 13, 2019 states that, at one time, "the whole world was telling [Plaintiff] that there was no reason for him to even finish off the basketball season with the team."  (ECF No. 32-4 at 7.)  The attachment goes on to state that after a game "on February 20, when [his] left foot famously blew through his sneaker while spraining his right knee in the process, current and former NBA players encouraged [Plaintiff] to shut it down for the season."  (*Id.*)  Despite this, according to the document, Plaintiff had "every intention of playing with his team 'til the very last whistle, he also had every bit of intention to remain a regular student on campus 'til the very last final exam/presentation."  (*Id.* at 9.)  Given that the UAAA merely requires that an individual "engages in" an intercollegiate sport in order to be considered a student-athlete, it appears uncontested that Plaintiff meets this bar.

14

Even so, Defendants argue that, even if Plaintiff did engage in the intercollegiate sports, he was permanently ineligible to do so and thus would be precluded from any protections offered by the UAAA. (ECF No. 32 at 24.) More specifically, in their affirmative defenses and Counterclaims, Defendants allege that, prior to April 20, 2019, Plaintiff:

> engaged in conduct/acts that rendered and renders him ineligible to be or remain a "student-athlete" including, but not limited to:
>
> a) He agrees orally or in writing to be represented by any individual other than a NCAA-certified agent;
>
> b) He accepts any benefits from an individual other than a NCAA-certified agent; and
>
> c) He entered the NBA Draft AND did not intend to and did not take the appropriate steps to withdraw and declare any intention of resuming intercollegiate participation and, in fact, repeatedly and publicly declared and made it abundantly clear that he was not ever returning to intercollegiate basketball.

(*Id.* at 24–25, 40–41) (emphasis omitted).

Yet this list is merely a recitation of purported offenses that could have led to ineligibility, permanent or otherwise, of any student player and does not serve as allegations specific to Plaintiff. Defendants have not alleged that Plaintiff had, in fact engaged in any of those activities or had been deemed permanently ineligible by the NCAA or under the UAAA at the time of the Agreement or even subsequently.

Defendants' affirmative defenses and counter claims that Plaintiff was not a student-athlete do not rely on material allegations of fact, rather a conclusion of law that flies in the face of their own pleadings as well as attachments to their pleadings. Although Defendants assert that their pleadings make clear that they contest Plaintiff's status as a student-athlete at the time that the Agreement was entered, this assertion is in direct conflict with their admission

15

that Plaintiff was actively engaging in an intercollegiate sport—namely, men's basketball—which is one of the ways the UAAA provides that an individual can be deemed a student-athlete. The Court is not required to assume the truth of legal allegations or conclusions because they are packaged in the form of factual allegations. *Cf. Iqbal*, 556 U.S. at 678 (stating that the court is "not bound to accept as true a legal conclusion couched as a factual allegation.") (internal quotations omitted). While the Court must accept all facts well pleaded by the non-moving party, it is not required to accept conclusions of law, nor facts which might appear by a record or document included in the pleadings to be unfounded. *See Hargis Canneries v. United States*, 60 F. Supp. 729, 729 (W.D. Ark. 1945). Nor can a non-moving party raise a genuine issue by contradicting its own pleadings. Defendants' general allegations, denials, and affirmative defenses are insufficient to raise a genuine issue of material fact as to whether Plaintiff was a student-athlete during the time in which he was a member of Duke men's basketball team.[5]

Further, Defendants have not alleged or provided any facts to plausibly support their conclusory claims that Plaintiff was permanently ineligible to compete in intercollegiate

---

[5] The Court acknowledges that prior to the Supreme Court's decisions in *Twombly* and *Iqbal*, the Fourth Circuit held that "[a]n affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff fair notice of the nature of the defense." *Clem v. Corbeau*, 98 F. App'x 197, 203 (4th Cir. 2004) (citation omitted). However, since the Supreme Court issued its decision in *Twombly* and *Iqbql*, district courts have been divided on whether the pleading standards of *Twombly* and *Iqbol* extend to the pleadings of affirmative defenses in the context of a motion to dismiss and motion to strike. *See Lockheed Martin Corp. v. United States*, 973 F. Supp. 2d 591, 593 (D. Md. 2013) (providing overview of cases discussing the pleading standard applicable to affirmative defenses). The Fourth Circuit has yet to decide whether the pleading standards announced in *Twombly* and *Iqbal* apply to affirmative defenses. The majority of courts extend the plausibility pleading standard of *Twombly* and *Iqbal* to defensive pleadings. The Court finds the majority approach persuasive. It would be unfair to require a plaintiff to provide defendants with enough notice that there is a plausible factual basis for his claim to relief under one pleading standard, and then permit a defendant to merely suggest that some defense may be possible under another pleading standard. *See e.g.*, *Palmer v. Oakland Farms, Inc.*, No. 5:10CV00029, 2010 WL 2605179, at *4 (W.D. Va. June 24, 2010). Moreover, Defendants' allegations that are affirmative defenses are also stated as counterclaims, therefore it is logical that the same plausibility standard would apply.

athletics at the time the parties entered into the Agreement. Defendants' listing of purported offenses are insufficient to raise a genuine issue of material fact as to whether Plaintiff had been deemed permanently ineligible during the time period in question and thus no longer a student-athlete under the UAAA. Defendants have provided no authority, caselaw or otherwise, that suggests that it is for a court to adjudicate the details of a student-athlete's eligibility under NCAA rules. Rather, in applying the statute, it would appear that the Court's role is to determine whether the student-athlete has been either determined to be or declared "permanently ineligible" by the governing body authorized to do so. Defendants have not alleged that this has occurred.

Given the pleadings before the Court, taken in the light most favorable to Defendants and resolving all inferences in their favor, the Court finds that there is no genuine dispute that Plaintiff engaged in intercollegiate sports while a student at Duke University during the relevant time period. Further, there is no genuine dispute that he had not been declared permanently ineligible to do so at the time of the Agreement. Therefore, there is no genuine issue of material fact as to whether Plaintiff was a student-athlete under the UAAA during the time he entered into the Agreement with Defendants.

   2.   *Neither Defendant Ford Nor the Agreement Complied with the UAAA*

Having determined that there is no genuine issue of material fact as to whether Plaintiff was a student-athlete, the Court now turns to the analysis under Section 78C-88 of the UAAA. To begin, it is undisputed that Defendant Ford holds herself out as an athlete agent yet neither she nor her agency are licensed as athlete agents in North Carolina, nor have they applied for such a designation. (ECF Nos. 14 ¶¶ 16, 29; 32 at ¶¶ 16, 29.) When an individual acts as an

athlete agent without holding a certificate of registration, the UAAA expressly provides that any agency contract the individual entered with a student-athlete "is void, and the athlete agent shall return any consideration received under the contract." N.C. Gen. Stat. § 78C-88(d).[6]

As stated above, a contract that authorizes a person to negotiate a professional-sports-services contract or an endorsement contract on behalf of a student-athlete, as the Agreement does, is included in the definition of an agency contract under the UAAA. *Id.* § 78C-86(1). For such contracts, the UAAA expressly sets forth precise requirements for a warning that must be included. Specifically, it "must contain, in close proximity to the signature of the student-athlete, a conspicuous notice in boldface type in capital letters" the following language:

> **WARNING TO STUDENT-ATHLETE**
>
> **IF YOU SIGN THIS CONTRACT:**
>
> **(1) YOU SHALL LOSE YOUR ELIGIBILITY TO COMPETE AS A STUDENT-ATHLETE IN YOUR SPORT;**
>
> **(2) IF YOU HAVE AN ATHLETIC DIRECTOR, WITHIN 72 HOURS AFTER ENTERING INTO THIS CONTRACT, BOTH YOU AND YOUR ATHLETE AGENT MUST NOTIFY YOUR ATHLETIC DIRECTOR;**
>
> **(3) YOU WAIVE YOUR ATTORNEY-CLIENT PRIVILEGE WITH RESPECT TO THIS CONTRACT AND CERTAIN INFORMATION RELATED TO IT; AND**
>
> **(4) YOU MAY CANCEL THIS CONTRACT WITHIN 14 DAYS AFTER SIGNING IT. CANCELLATION OF THIS CONTRACT SHALL NOT REINSTATE YOUR ELIGIBILITY.**

*Id.* § 78C-94(c). When a contract does not contain this required disclosure, it is voidable by the student-athlete. *Id.* § 78C-94(d).

---

[6] Defendants have not alleged that Defendant Ford is subject to the registration exception under the UAAA for North Carolina licensed and resident attorneys.

It is undisputed that Defendants entered into a contract in North Carolina with Plaintiff for the purposes of identifying branding and endorsement opportunities. (*See* ECF Nos. 32 at 1–2; 14 ¶ 21; 14-2 at 2). It is additionally undisputed that the Agreement provides that Defendants are to act as Mr. Williamson's agents for purposes of endorsements, namely, as Mr. Williamson's "Global Marketing Consultant for identifying branding and endorsement opportunities." (ECF No. 14-2 at 2.) The Agreement further empowers Defendants to "exclusively oversee all marketing opportunities" brought before Plaintiff and to "[negotiate] with any entity contracted to [Plaintiff] to resolve any problems that may arise in the delivery of the services and in meeting the entity's obligations to [Plaintiff]" (*Id.* at 2–3.) Finally, the pleadings and exhibits show that the Agreement does not contain the warning required by the UAAA. (*See generally ECF No. 14-2.*) Further, Defendants admit that on May 31, 2019, Plaintiff's family sent a letter to Defendants on Plaintiff's behalf terminating and voiding the Agreement. (ECF Nos. 14 ¶ 51; 32 at 20*; see also* ECF No. 14-4).

Having considered the pleadings, viewed in the light most favorable to Defendants and drawing all reasonable inferences in Defendants' favor, the Court concludes that Plaintiff is entitled to judgment as a matter of law on the issue of whether the Agreement is void. Specifically, there is no dispute that: (1) Plaintiff was a student at Duke University and playing on Duke University's men's basketball team at the time that the parties engaged one another; (2) he had not been determined to be permanently ineligible by any governing body at the time of the agreement; (3) Defendant Ford did not hold the requisite athlete agent certification as required by North Carolina's UAAA; (4) the parties entered into the Agreement; (5) the Agreement permits Defendants to negotiate or solicit professional-sports-services or

19

endorsement contracts on Plaintiff's behalf; (6) the Agreement at issue did not have the statutorily required warning; and (7) Plaintiff's family communicated to Defendants that they were terminating and voiding the agreement.

For the foregoing reasons, in light of the undisputed facts contained in the pleadings in the instant matter, construed in the light most favorable to Defendants, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Defendants' Motion to Supplement, (ECF No. 41), is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Judgment on the Pleadings, (ECF No. 34), is GRANTED. The Court hereby declares that the Agreement entered into by the parties is void as a matter of law under N.C. Gen. Stat. § 78C-88 (the "UAAA").

This the 20th day of January 2021.

/s/ Loretta C. Biggs
United States District Judge