# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

### CASE NO. 1:19-CV-593-LCB-JLW

ZION WILLIAMSON,

       Plaintiff,

v.

PRIME SPORTS MARKETING, LLC and
GINA FORD,

       Defendants.

_____/

### MEMORANDUM IN SUPPORT OF DEFENDANTS'
### <u>MOTION TO ALTER OR AMEND JUDGMENT</u>

Defendants, Prime Sports Marketing, LLC and Gina Ford, submit this Memorandum of Law in Support of their Motion to Alter or Amend Judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, seeking reconsideration of this Court's ruling that Plaintiff, Zion Williamson was entitled to partial judgment on the pleadings as to Count I of the Plaintiff's First Amended Complaint. Defendants ask that this court alter or amend the judgment so as to allow Defendants to amend their answer, affirmative defenses, and counterclaim.

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS...........................................................................i

TABLE OF CITATIONS ........................................................................ iii

I.    INTRODUCTION ...........................................................................1

II.   LEGAL STANDARD ......................................................................2

III.  ARGUMENT....................................................................................3

      A. PLAINTIFF'S ARGUMENT FINDS NO SUPPORT IN THE RULES
         OF STATUTORY CONSTRUCTION ....................................................3

      B. PLAINTIFF'S ARGUMENT IS NOT SUPPORTED BY THE CASE LAW ...................9

         1. FEDERAL DISTRICT COURTS ARE NOT BOUND BY THE FINDINGS
            OF OTHER COURTS OR GOVERNMENT ENTITIES ........................................9

         2. FEDERAL DISTRICT COURTS ARE NOT BOUND BY THE FINDINGS
            OF THE NCAA WITH RESPECT TO AN ATHLETE'S ELIGIBILITY...............12

      C. DEFENDANTS' MOTION FOR LEAVE TO AMEND THEIR
         ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS
         SHOULD BE GRANTED................................................................20

      D. WILLIAMSON'S TERMINATION OF THE CONTRACT DOES NOT PROVIDE
         AN INDEPENDENT BASIS TO GRANT JUDGMENT ON THE PLEADINGS  ...........21

IV.   CONCLUSION ................................................................................21

      LR 7.3(d)(1) Word Count Certification ........................................................24

i

# TABLE OF CITATIONS

Page

*Adams v. Gould Inc.,*
 739 F.2d 858 (3d Cir. 1984)...........................................................................2, 3

*Baylon v. Wells Fargo Bank, N.A.,*
 2016 WL 7494256 (D.N.M. Mar. 9, 2016)....................................................5

*Bowen v. Celebrezze*,
 250 F. Supp. 46 (W.D. La. 1963)....................................................................12

*Buckton v. Nat'l Collegiate Athletic Assn.,*
 436 F. Supp. 1258 (D. Mass. 1977) ...............................................................17

*Coho Licensing LLC v. Glam Media, Inc.,*
2017 WL 6210882, (N.D. Cal. Jan. 23, 2017),
 *aff'd sub nom. Coho Licensing LLC v. Oath Inc.,*
 710 Fed. Appx. 892 (Fed. Cir. 2018).............................................................10

*Cole v. Cate*,
 2010 WL 5148463, (S.D. Cal. Oct. 21, 2010), *report and*
 *recommendation adopted,* 2010 WL 5148440 (S.D. Cal. Dec. 14, 2010) ..............5

*Dussouy v. Gulf Coast Inv. Corp.,*
 660 F.2d 594, (5th Cir. 1981) ..........................................................................2, 3

*Garza as Next Friend of Garza v. Hobbs Pub. Sch.,*
 2000 WL 36739864 (D.N.M. Apr. 6, 2000) .................................................10

*Gilbertson v. Allied Signal, Inc.*,
 2005 WL 8163839, (D.N.M. June 30, 2005).................................................12

*Horton v. United Services Auto. Ass'n,*
 218 F.2d 453 (5th Cir. 1955) ...........................................................................9, 10

*Howard v. Mississippi Sec'y of State,*
 184 So. 3d 295 (Miss. Ct. App. 2015) ............................................................16, 17

Case 1:19-cv-00593-LCB-JLW   Document 52   Filed 02/17/21   Page 3 of 30

*Ignacio v. United States,*
674 F.3d 252 (4th Cir. 2012) ...................................................................7

*In re Int'l Loan Network, Inc.,*
160 B.R. 1 (Bankr. D.C. 1993) ...............................................................10

*In re Rudy,*
956 F.3d 1379 (Fed. Cir. 2020)...............................................................10

*Jenkins v. Allied Interstate, Inc.,*
2009 WL 3157399 (W.D.N.C. Sept. 28, 2009) .....................................5, 6

*Jones v. Nat'l Collegiate Athletic Ass'n,*
392 F. Supp. 295 (D. Mass. 1975) .........................................................17

*King v. Burwell,*
576 U.S. 473 (2015)..................................................................................6

*Laber v. Harvey,*
438 F.3d 404 (4th Cir. 2006) ...................................................................3

*Loughrin v. United States,*
573 U.S. 351 (2014)..................................................................................4

*Manuel v. Oklahoma City Univ.,*
833 P.2d 288 (Okla. Civ. App. 1992) ...............................................17, 18

*McAdoo v. Univ. of N.C. at Chapel Hill,*
736 S.E.2d 811 (N.C. Ct. App. 2013) ....................................................17

*Medellin v. Texas,*
552 U.S. 491 (2008)................................................................................10

*O'Halloran v. Univ. of Washington,*
856 F.2d 1375 (9th Cir. 1988) ................................................................13

*Outbound Mar. Corp. v. P.T. Indonesian Consortium of Const. Indus.,*
575 F. Supp. 1222 (S.D.N.Y. 1983) .........................................................5

iii

*Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*,
 148 F.3d 396 (4th Cir. 1998) ................................................................. 2

*Petition of Larson*,
 152 F. Supp. 252 (E.D. Va. 1957), *aff'd sub nom.*
*Larson v. United States*, 255 F.2d 166 (4th Cir. 1958) .......................... 11

*Potmesil v. Alexandria Prod. Credit Ass'n*,
 42 B.R. 731 (W.D. La. 1984) ..................................................................... 5

*Price v. Rosiek Const. Co.*,
 509 F.3d 704 (5th Cir. 2007) .................................................................. 11

*Sloane v. Tennessee Dep't of State, Bus. Services Div.*,
 2019 WL 4891262 (Tenn. Ct. App. Oct. 3, 2019) ...................... 15, 16, 17

*Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.*,
 365 F. Supp. 1199 (S.D.N.Y. 1973) ........................................................ 11

*State v. Childers*,
 255 S.E.2d 654 (N.C. Ct. App. 1979) ........................................................ 5

*United States v. Beason*,
 690 F.2d 439 (5th Cir. 1982) ..................................................................... 4

*United States v. Gatto*,
 295 F. Supp. 3d 336 (S.D.N.Y. 2018) ............................................... 18, 19

*United States v. Gatto*,
 2021 WL 137250 (2d Cir. Jan. 15, 2021) ........................................... 19, 20

*United States v. McMillan*,
 346 Fed. Appx. 945 (4th Cir. 2009) ........................................................... 5

*United States v. One Hundred Thirty-Seven (137) Draw Poker-Type
 Machines & Six (6) Slot Machines*, 765 F.2d 147 (6th Cir. 1985) ........... 5

*United States v. Walters*,
 711 F. Supp. 1435 (N.D. Ill. 1989) .................................................... 13, 14

iv

*United States v. Xiarhos*,
 820 F. Supp. 634 (D. Mass. 1993) ...........................................................10

*Waterhouse v. Tennessee Valley Auth.*,
 475 F. Supp. 3d 817 (E.D. Tenn. 2020) ....................................................5

*Wong Gum v. McGranery*,
 111 F. Supp. 114 (N.D. Cal. 1953) .........................................................11

## OTHER AUTHORITIES

N.C. Gen. Stat. Ann.§ 78C-100 ...................................................................4

Miss. Code. Ann. § 73–42–34(6).................................................................16

N.C. Gen. Stat. Ann. § 58–70–90 ................................................................5

N.C. Gen. Stat. Ann. § 78C-86(11)..............................................................4

N.C. Gen. Stat. Ann. § 78C-88 ...................................................................1

N.C. Gen. Stat. Ann. § 75-100 ..............................................................6, 8, 9

N.C. Gen. Stat. Ann. § 150B-51 ................................................................17

v

# I.    INTRODUCTION

On January 20, 2021, this Court entered an order granting Plaintiff, Zion Williamson's ("Williamson's") Motion for Partial Judgment on the Pleadings and declaring that "the Agreement entered into by the parties is void as matter of law under NC Gen. Stat. Ann. § 78C-88 (the "UAAA"). [DE49 at 20] Defendants are not seeking a complete reversal of the Court's ruling. Instead, Defendants are asking the Court to reconsider and alter /amend a portion of the ruling to provide for the primary relief Defendants are concurrently seeking - leave to amend their Answer, Affirmative Defenses and Counterclaim.

Defendants specifically seek reconsideration and alteration/amendment of this Court's conclusion that it has no independent authority to determine whether a student's athlete's actions would have rendered him permanently illegible under NCAA Rules. In ceding the Court's authority to independently evaluate the Plaintiff's eligibility status, the Court takes a position contrary to all authority on the subject. Because the authority that we will discuss below demonstrates that the Court is in no way bound by the NCAA's determination of Williamson's eligibility, it follows that Defendants should be granted leave to amend their affirmative defenses to include the factual allegations that, if proven, would demonstrate that on April 20, 2019, Williamson was in fact ineligible for "student athlete" status under the NCAA rules and therefore not entitled to the protections provided by the UAAA.

1

## II. LEGAL STANDARD

The Fourth Circuit explains that, under Rule 59(e), there are three grounds for altering or amending a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pacific Insurance. Co. v. American National Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir. 1998). Here, Defendants seek reconsideration to correct a clear error of law regarding the legal effect of NCAA's determination of Williamson's eligibility.

The relief sought in this motion is directly related to the relief sought in Defendants' motion for leave to amend their Answer, Affirmative Defenses and Counterclaim. In evaluating whether to grant this motion, the Court is "governed by the same considerations controlling the exercise of discretion under rule 15(a)." *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 597, n. 1 (5th Cir. 1981). In *Adams v. Gould Inc.,* 739 F.2d 858 (3d Cir. 1984), the Court expanded on *Dussouy's* holding as follows:

> Our scope of review in this case turns on the interrelationship between the scope of review applicable to Rule 59(e) motions and that applicable to Rule 15(a) motions. The Fifth Circuit was confronted with a similar situation in *Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594 (5th Cir.1981). In *Dussouy,* the district court had dismissed the complaint without leave to amend. The court of appeals reversed, and in doing so held that, where a timely motion was filed under Fed.R.Civ.P. 59(e), the Rule 15 and Rule 59(e) inquiries turned on the same factors. 660 F.2d at 597 n. 1. We agree and adopt the Fifth Circuit's approach. Thus, in examining each possible ground on which the district court could be

2

sustained, we will apply the standard of review which would be applicable had the motion been brought without the complication of a prior grant of summary judgment.

*Adams* at 864. See also *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (Concurring with *Dussouy* and *Adams* that granting leave to amend necessarily requires granting the Rule 59(e) motion.)

## III. ARGUMENT

The Court's Order identified two problems that we seek to address with our current motions. In response to our argument that Defendants had pleaded an affirmative defense that the UAAA didn't apply to the Contract because Williamson had engaged in activities that violated NCAA rules, the Court held that "Defendants have not alleged that Plaintiff had, in fact engaged in any of those activities."[DE49 at 15] Our motion for leave to amend seeks to address the Court's concern is by alleging the specific factual basis of the many improper benefits received by Williamson and his family in violation of NCAA rules.

The second problem the Court raised was that even if Defendants had alleged the factual details behind the rule's violations, the Court could not "adjudicate the details of a student-athlete's eligibility under NCAA rules." It is this argument we address herein.

### A. PLAINTIFF'S ARGUMENT FINDS NO SUPPORT IN THE RULES OF STATUTORY CONSTRUCTION.

In order for the Plaintiff to invoke the protections of the UAAA, is axiomac

3

that he must have met the definition of a "student athlete" at the time that he entered into the contract with the Defendants.  As has been repeatedly noted throughout this litigation, the complete definition of "student athlete" under the UAAA is as follows:

> An individual who engages in, is eligible to engage in, or may be eligible to engage in any intercollegiate sport.  If an individual is permanently ineligible to participate in a particular intercollegiate sport, the individual is not a student-athlete for the purposes of the sport.

N. C. Gen. Stat. § 78C-86(11).  The second sentence makes clear that notwithstanding the first sentence, individuals that are permanently ineligible to compete in a sport do not meet the definition of student athlete under the statute.  In Plaintiff's reply memorandum, Plaintiff accused the Defendants of seeking to "re-write the statute."  [DE40 at 9]  On the contrary, the Defendants ask the Court to "give effect, if possible, to every clause and word of a statute" as required by the "cardinal principle" of statutory interpretation. *Loughrin v. United States*, 573 U.S. 351, 358 (2014).

As a starting point, we note that § 78C-100 of the UAAA contains the following clause: "(e)This Article does not restrict rights, remedies, or defenses of any person under law or equity." "Exceptions to statutory definitions are generally matters for affirmative defenses." *United States v. Beason*, 690 F.2d 439, 445 (5th Cir. 1982). The right to raise an affirmative defense challenging whether a prerequisite statutory definition has been met has been recognized in numerous

4

contexts.[1] *Jenkins v. Allied Interstate, Inc.,* 2009 WL 3157399 (W.D.N.C. Sept. 28, 2009), provides the closest analogue we could find. In *Jenkins*, the Plaintiff sued Defendant for violation of the TCPA and North Carolina state law related to telephone calls made by debt collectors. The Defendant asserted affirmative defenses alleging "that Plaintiff is not a 'consumer' within the meaning of North Carolina General Statute § 58–70–90 (governing collection of debts from debtors)

---

[1] *See Baylon v. Wells Fargo Bank, N.A.,* 2016 WL 7494256, at *2 (D.N.M. Mar. 9, 2016) (Wells Fargo asserted affirmative defense to FDCPA claim that it did "not meet the statutory definition of a 'debt collector.'"); *Potmesil v. Alexandria Prod. Credit Ass'n,* 42 B.R. 731, 732 (W.D. La. 1984) (Debtors were entitled to relief from order of the bankruptcy court based on their affirmative defense that they met the statutory definition of farmers.); *Waterhouse v. Tennessee Valley Auth.,* 475 F. Supp. 3d 817, 821 (E.D. Tenn. 2020) (Property Owner raised affirmative defense that he met the statutory definition of a "landowner" under Tennessee's "recreational use statute."); *Cole v. Cate,* 2010 WL 5148463, at *21 (S.D. Cal. Oct. 21, 2010), *report and recommendation adopted,* 2010 WL 5148440 (S.D. Cal. Dec. 14, 2010) (Defendant in securities litigation raised affirmative defense "that he [was] excluded from the statutory definition of a broker-dealer."); *Outbound Mar. Corp. v. P.T. Indonesian Consortium of Const. Indus.,* 575 F. Supp. 1222, 1224 (S.D.N.Y. 1983) (Defendant entity seeking protection from prejudgment attachment under Foreign Sovereign Immunities Act must plead and prove an affirmative defense establishing that it falls within the statutory definition of a "foreign state."); *United States v. One Hundred Thirty-Seven (137) Draw Poker-Type Machines & Six (6) Slot Machines,* 765 F.2d 147 (6th Cir. 1985) (Defendant asserted "the affirmative defense that at least some of the machines are not gambling devices within the statutory definition."); *United States v. McMillan,* 346 Fed. Appx. 945, 947 (4th Cir. 2009) (Defendant in an unlawful possession of a firearm case may raise the affirmative defense that the gun meets the statutory definition of an "antique firearm."); and *State v. Childers,* 255 S.E.2d 654, 657–58 (N.C. Ct. App. 1979) (Defendant in an unlawful possession of marijuana seeds case may raise the affirmative defense that the seeds do not meet the statutory definition of seeds because they have been sterilized or rendered incapable of germination.)

5

and that Defendant is not a "telephone solicitor" within the meaning of North Carolina General Statute § 75–101 (governing telephone solicitations)." Jenkins at *4. The Court agreed that the Plaintiff was not a "consumer" and the Defendant was not a "telephone solicitor" for purposes of the relative statutes and granted judgment on the pleadings to the Defendant on those statutory counts. *Jenkins* at *4. Just as the *Jenkins* Defendant was able to challenge whether the plaintiff met the statutory definition of consumer, so too should the Defendants here be allowed to challenge whether Williamson met the statutory definition of student athlete. The UAAA explicitly reserves that right for the Defendants here.

With respect to the definition of "student athlete," it is the Court's job "to construe statutes, not isolated provisions." *King v. Burwell*, 576 U.S. 473, 486 (2015). Plaintiff sought to apply the first sentence in isolation, essentially asking this court to ignore the second sentence entirely.[2] The Court correctly rejected the

---

[2] Plaintiff dismissed the second sentence of the definition as irrelevant based on the commentary to the Model Act of the UAAA. [DE40 at 7] However, the rules of statutory construction are clear that when the statutory language is unambiguous, a court may not look beyond to the legislative history. Plaintiff made no argument that the statutory language was ambiguous, and the Court did not so hold in its order. Because the definition of student athlete is unambiguous, the Court must apply it as its written. The commentary, incidentally, does not support Plaintiffs argument that the second sentence applies only to two sport athletes. The commentary states only that the definition of "student-athlete" applies to a two-sport athletes and individuals who are not yet in college. It does not in any way limit the applicability of the second sentence to two sport athletes. Uniform Athlete Agents Act, Section 2 Comment (Nat'l Conference of Comm'rs on Uniform State Laws 2000).

6

Plaintiff's invitation to ignore the second sentence of the definition. Instead, the Court took a different approach, but one which we believe runs afoul of the prohibition on re-writing statutory language.

Specifically, the Court added a requirement that in order to utilize the second sentence of the definition to avoid the application of the UAAA, the Defendants would have to establish that there had been a "declaration" by the NCAA that Williamson had been permanently illegible, as follows:

> Defendants' listing of purported offenses are insufficient to raise a genuine issue of material fact as to whether Plaintiff had been deemed permanently ineligible during the time period in question and thus no longer a student-athlete under the UAAA. Defendants have provided no authority, caselaw or otherwise, that suggests that it is for a court to adjudicate the details of a student-athlete's eligibility under NCAA rules. Rather, in applying the statute, it would appear that the Court's role is to determine whether the student-athlete has been either determined to be or declared "permanently ineligible" by the governing body authorized to do so. . . . Further, there is no genuine dispute that he had not been declared permanently ineligible to do so at the time of the Agreement.

[DE49 at 17]

Is a well settled rule of statutory construction that, "[c]ourts must construe statutes as written, [and] not add words of their own choosing." *Ignacio v. United States*, 674 F.3d 252, 255 (4th Cir. 2012). In its Order, the Court has added a requirement to the statute that is not present in the language. Under the Court's interpretation, a student athlete meets the definition of a student athlete until the NCAA declares to be permanently illegible. This position improperly cedes the

7

authority to the Court to the finding of a private organization.

It would also render portions of the civil remedies section of the UAAA meaningless. Section 78C-100(b) of the UAAA allows an educational institution to sue for damages "incurred because, as a result of the conduct of an athlete agent or former student-athlete, the educational institution was injured by a violation of this Article or was penalized, disqualified, or suspended from participation in athletics by: (i) a national association for the promotion and regulation of athletics; (ii) an athletic conference; or (iii) reasonable self-imposed disciplinary action taken to mitigate sanctions likely to be imposed by an athletic organization." This section makes two things clear. First, contrary to Plaintiff's assertion in his reply, the UAAA is not focused solely on the conduct of the agent. [DE40 at 10][3] Second, the school has a right of action against the former student-athlete even if he was never declared ineligible by the NCAA. It is enough that he engaged in violations of the rules that would expose the school to penalties if they were discovered by the NCAA. If the eligibility status was solely dependent on the NCAA's determination, then the statute would provide no incentive to self-impose sanctions in order to mitigate the sanctions that *might* be handed down by the NCAA. Statutes are not to be interpreted

---

[3] Section 78C-100(c) states that "[a] right of action under this section does not accrue until the educational institution discovers, or by the exercise of reasonable diligence would have discovered, *the violation by* the athlete agent or *former student-athlete.*

in a manner that would render parts of it, like § 78C-100(c)(iii), meaningless.

When the UAAA is examined through the rules of statutory construction, it is clear that the Defendants may raise, as an affirmative defense to the Plaintiff's claim for declaratory relief, the argument that Williamson did not meet the definition of student athlete under the UAAA because he engaged in conduct that rendered him ineligible.

## B. PLAINTIFF'S ARGUMENT IS NOT SUPPORTED BY THE CASE LAW.

### 1. FEDERAL DISTRICT COURTS ARE NOT BOUND BY THE FINDINGS OF OTHER COURTS OR GOVERNMENT ENTITIES.

In its Order the Court stated that we fail to provide any "authority, caselaw or otherwise, that suggested that it is for a court to adjudicate the details of a student's athletes eligibility under NCAA rules. [DE49 at 17] Defendants did, in fact provide such authority, a point we will discuss further below. However, we believe that, as the proponent of this argument, it was incumbent upon the Plaintiff to provide some authority to demonstrate that this Court is bound by the NCAA's determination regarding his eligibility. This obligation to provide such authority is magnified because this argument runs contrary to the overwhelming weight of the law which demonstrates that a Federal District Court is almost never bound by the factual findings of other governmental entities, let alone those of private enterprises.

As a starting point, we note that Federal District Courts are not bound by the findings of state courts. *See Horton v. United Services Auto. Ass'n,* 218 F.2d 453,

454 (5th Cir. 1955) ("[T]he findings of fact in the opinion of the Court of Appeal of Louisiana are, of course, not binding upon the district court or this court."); *United States v. Xiarhos*, 820 F. Supp. 634, 635 (D. Mass. 1993) (District court was not bound by the state's court finding at a probable cause hearing, that the defendant's alleged traffic violation was insufficient reason for stopping the defendant's car.); and *Garza as Next Friend of Garza v. Hobbs Pub. Sch.,* 2000 WL 36739864, at *4 (D.N.M. Apr. 6, 2000) ("It is clear the state court's findings and conclusions are not binding on this Court.").  Similarly, Bankruptcy Courts are not bound by findings of fact made in a separate related case by a District Court. *In re Int'l Loan Network, Inc.*, 160 B.R. 1, 9-10 (Bankr. D.C. 1993). Finally, District Courts are not bound by decisions of the International Court of Justice.  *Medellin v. Texas,* 552 U.S. 491, 511 (2008).

District Courts are not bound by the findings of numerous government agencies.  District Courts are not bound by the patent eligibility determinations of the Patent and Trial Appeal Board.  *See In re Rudy,* 956 F.3d 1379, 1382 (Fed. Cir. 2020).  (The patent office guidance "is not, itself, the law of patent eligibility, does not carry the force of law, and is not binding in our patent eligibility analysis."); *Coho Licensing LLC v. Glam Media, Inc.,* 2017 WL 6210882, at *7 (N.D. Cal. Jan. 23, 2017), *aff'd sub nom. Coho Licensing LLC v. Oath Inc.,,* 710 Fed. Appx. 892 (Fed. Cir. 2018) (Ruling of Patent and Trial Appeal Board "would certainly not bind

10

nor necessarily inform this Court's determination of patent eligibility.") District courts are not bound by the findings of the Registry of Copyrights. *Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.,* 365 F. Supp. 1199, 1200 (S.D.N.Y. 1973) ("The courts have long held that any finding of fact or conclusion of law by the Register of Copyrights is not binding on the courts.")

The findings of the Coast Guard Examiner as to whether a sailor has deserted are not binding on a District Court. *Petition of Larson,* 152 F. Supp. 252, 254 (E.D. Va. 1957), *aff'd sub nom. Larson v. United States,* 255 F.2d 166 (4th Cir. 1958). A District Court is not bound by the findings of the EEOC. *Price v. Rosiek Const. Co.,* 509 F.3d 704, 709 (5th Cir. 2007) ("A finding by the EEOC of employment discrimination, while admissible is evidence in civil proceedings, is not binding on the finder of fact.") Even the findings of the Labor and Immigration Departments that an individual as a citizen of the United States are not binding on District Courts. *Wong Gum v. McGranery*, 111 F. Supp. 114, 115 (N.D. Cal. 1953). Instead, those findings merely create a rebuttable presumption that the Government is entitled to challenge by demonstrating "fraud or other circumstances." *Id.* Williamson's claim of NCAA eligibility should be treated no differently here - as a mere presumption that the Defendants may overcome with evidence showing that his eligibility was obtained through a fraudulent certification.

As a final example, there are hundreds of cases involving disability

Case 1:19-cv-00593-LCB-JLW   Document 52   Filed 02/17/21   Page 17 of 30

determinations made by the Social Security Administrator. Courts have consistently held that the Administrators findings of disability are, "as a matter of law, not binding on the court." *Bowen v. Celebrezze*, 250 F. Supp. 46, 47 (W.D. La. 1963). *See also Gilbertson v. Allied Signal, Inc.*, 2005 WL 8163839, at \*7, n.12 (D.N.M. June 30, 2005) (Benefits eligibility determinations by SSA are not binding on disability insurers unless the insurance ties the benefits to a social security decision.") Applying this Court's holding to these cases would deprive insurers of their ability to challenge an insured's entitlement to benefits under their policy in any case where the insured had been declared disabled by the Social Security Administrator.

This Court is no more bound by the NCAA's eligibility determination than it would be by any finding issued by any of the entities discussed above. It is the Court's role to adjudicate the question of a student athlete's eligibility under NCAA rules. Were it not, then the cases we will discuss in the following section would have stated so?

## 2. FEDERAL DISTRICT COURTS ARE NOT BOUND BY THE FINDINGS OF THE NCAA WITH RESPECT TO AN ATHLETE'S ELIGIBILITY.

As regulatory bodies go, the NCAA is a remarkably ineffectual one. Its effectiveness as a regulator is hampered both by its small size relative to the 460,000 student athletes it purports to regulate, and the inherent conflict of interest it has in regulating a flagship program like Duke Basketball, a perennial contender for the

12

championship of one of the NCAA's most lucrative sporting events - March Madness.[4]

As explained in *O'Halloran v. Univ. of Washington*, 856 F.2d 1375, 1377 (9th Cir. 1988), the NCAA is almost entirely reliant on its member schools self-certifying the eligibility of its athletes:

> As a condition of membership in the NCAA, the University of Washington agreed "[t]o administer their athletics programs in accordance with the Constitution, the Bylaws and other legislation of the Association." NCAA Const., art. IV, § 2(a). The NCAA Constitution also states that if a student athlete is ineligible under the NCAA requirements, the member school must withhold that athlete from all intercollegiate competition. NCAA Const., art. IV, 0.I.11. If the member school does not withhold the ineligible student from competition, the school is subject to NCAA enforcement proceedings and may be expelled from the NCAA. NCAA Const., art. II, § 2(b).

*O'Halloran* at 1377.

As *O'Halloran* makes clear, a student athlete is ineligible under NCAA requirements when he violates NCAA rules, not when the NCAA declares him to be ineligible. The court in *United States v. Walters,* 711 F. Supp. 1435, 1437–38 (N.D. Ill. 1989), reiterates this point:

> The National Collegiate Athletic Association ("NCAA") [has] regulations governing the amateur status of athletes eligible to compete in events sponsored by the entity. In substance, the regulations provide that student-athletes are ineligible to participate in a sport if they do any one of the following:
> —they contract to be represented by an agent in the marketing of the

---

[4] https://www.forbes.com/sites/sportsmoney/2019/03/19/march-madness-is-most-profitable-postseason-tv-deal-in-sports/?sh=353b80e71795n

individual's athletic ability or reputation in that sport.

— they take any pay for participation in that sport including the promise of pay when such pay was to be received following completion of the student-athletes intercollegiate athletic career.

—they receive financial assistance other than that administered by their schools except where the assistance comes from the athletes' family or was awarded on a basis having no relationship to athletic ability.

To ensure compliance with the regulations, the athletic regulatory bodies and the schools require every student-athlete to sign and submit each year statements containing information relating to eligibility, amateur status, and financial aid. Based on this information, the schools determine a student-athlete's eligibility to compete and to receive an athletic scholarship.

*Walters* at 1437-38.

Thus, if Defendants prove that Williamson engaged in any of the conduct identified above, they necessarily establish that Williamson was permanently ineligible to play basketball at Duke, thus establishing he was not a student athlete as defined under UAAA. Plaintiff argues that allowing Defendants to "retroactively challenge Williamson's protection as a student athlete would eviscerate the UAAA's protections." [DE40 at 13] This is exactly backwards. The protections of the UAAA are designed for true student athletes who played by the rules, not athletes who successfully defrauded the NCAA but didn't get caught. It's undisputed that an athlete that has been declared ineligible by the NCAA for violations of its rules would not be entitled to protections of the UAAA. There is no public policy reason to treat athletes who engaged in the same improper conduct differently based solely on whether or not they got caught. Both gamed the system. Neither should be entitled

14

to the protection of the UAAA. Precluding Defendants from establishing Williamson's ineligibility provides legal protections to a player wholly undeserving of them.

Plaintiff wholly failed to provide this Court with any authority supporting his position that the Court cannot examine the eligibility status of the Plaintiff. As a result, the Court's order also contains no authority in support of its holding. The Plaintiff will be unable to do so because no such authority exists. Conversely, the Defendants did provide authority demonstrating that an agent seeking to avoid penalties for violation of the UAAA may raise the ineligibility of the athlete as an affirmative defense. The Court's order makes no mention of the cases. We would respectfully ask the Court to reconsider them, as we believe they are dispositive on the issue.

In *Sloane v. Tennessee Dep't of State, Bus. Services Div.,* 2019 WL 4891262 (Tenn. Ct. App. Oct. 3, 2019), an agent appealed the result of a disciplinary action brought against him for violating Tennessee's version of the UAAA. The appellate court acknowledged that "if an athlete agent recruits an individual who is not a student athlete then the act does not apply." *Sloane* at *6. Unfortunately for the agent, he failed to raise this defense at the trial level and waited until the appeal to make the argument that the athlete in question was "not an eligible student athlete under the act." *Id.* The court rejected this argument as untimely because the agent

had stipulated during trial "that he violated the act, thereby implicitly admitting that [the athlete] was a student athlete." *Id.* Notably, the *Sloane* court did *not* hold that the agent had no right to challenge the athlete's eligibility as a student athlete. On the contrary, *Sloane* makes it clear that such a defense was available to the agent had he properly and timely raised it. Under this Court's holding, the NCAA's finding of eligibility for the athlete would have rendered him a student athlete as a matter of law, thus depriving the agent of any argument that the act did not apply.

*Howard v. Mississippi Secretary of State,* 184 So. 3d 295 (Miss. Ct. App. 2015) addressed an almost identical scenario. In *Howard,* an agent appealed the Mississippi Secretary of State's ruling finding him in violation of Mississippi's UAAA analogue. The agent argued "that he did not violate the act because Robinson was not a student athlete as defined by the act." *Howard* at 300. But, as the court explained, the agent failed to raise this issue below:

> Howard argues that Robinson was not a student athlete because he had exhausted his eligibility. However, when Howard was prompted to show cause why he had not violated the Act, Howard simply apologized for his unawareness of the registration requirement, urged that he received no compensation from Robinson, and claimed that "Mr. Robinson contacted me and asked if we could assist him in his professional career." Howard did not qualify his admission by stating that Robinson was not a "student-athlete" because Robinson had exhausted his eligibility, as he now contends. The Secretary of State specifically found that Robinson was a student-athlete within the meaning of the Act. Based on Howard's admissions and the record before us, we will not disturb the Secretary of State's finding because it is conclusive under Mississippi Code Annotated section 73–42–34(6).

16

*Howard* at 300. Like the court in *Sloane,* the *Howard* court acknowledged the agent's right to raise the ineligibility of the student athlete as an affirmative defense, notwithstanding the NCAA's determination of eligibility.[5]

Further undermining the Plaintiff's argument is the fact that student athletes declared ineligible by the NCAA can and routinely do sue the NCAA in order to have that determination reversed. *See McAdoo v. Univ. of N.C. at Chapel Hill*, 736 S.E.2d 811, 818 (N.C. Ct. App. 2013); *Jones v. Nat'l Collegiate Athletic Ass'n*, 392 F. Supp. 295, 296 (D. Mass. 1975); and *Buckton v. Nat'l Collegiate Athletic Assn.,* 436 F. Supp. 1258, 1259–60 (D. Mass. 1977). In *Manuel v. Oklahoma City Univ.,* 833 P.2d 288, 292 (Okla. Civ. App. 1992), a student athlete sued the NAIA after it declared him automatically ineligible to play based solely on his ineligibility under NCAA rules. The court held that the NAIA had arbitrarily applied its rules because they contained "no provision under its by-laws requiring those disciplined by the NCAA to be similarly disciplined by the NAIA, or a requirement that the NAIA

---

[5] Notwithstanding the concluding sentence of the opinion, Mississippi's UAAA specifically authorizes a reviewing court to modify or set aside the order of the Secretary of State, in whole or in part, if the findings (such as a finding that an athlete "was a student athlete within the meaning of the Act") were not "supported by competent material and substantial evidence." Mississippi Code Annotated § 73–42–34(6). Similarly, North Carolina's UAAA allows a court to "reverse or modify a decision if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusions, or decisions are affected by other error of law or unsupported by substantial evidence." N.C. Gen. Stat. Ann. § 150B-51 (West). Thus, both the Administrative Law Judge and the Circuit Court may review the evidence surrounding the athlete's eligibility.

17

must declare a student ineligible because of the fact he was ineligible under the NCAA." *Manuel* at 292. Had the eligibility determinations of the NCAA or NAIA been binding on the courts above, then none of the students who sued would have had any redress. There is simply no authority to suggest that the instant case presents the *only* scenario where a court is bound by the NCAA's eligibility determination.

Additional support for our argument can be found in criminal cases brought against individuals who provided improper benefits to student athletes. In *United States v. Gatto*, 295 F. Supp. 3d 336 (S.D.N.Y. 2018), the defendants were indicted for concealing payments to high school basketball players and their families in exchange for their commitments to play for certain universities. Throughout the order, the court repeatedly makes it clear that in accepting the bribes, these student athletes were ineligible under NCAA rules. The court stated "student-athletes who are recruited in violation of NCAA rules are ineligible to play," and "the universities agreed to provide scholarships to student athletes who were in fact illegible to compete as a result of the bribe payments." *Gatto* at 339, 340. The court noted that the indictment made it "abundantly clear NCAA rules prohibited the payments . . . and that the university stood to suffer substantial penalties if the payments were uncovered." *Gatto* at 342. The opinion contains no indication that the NCAA actually uncovered the scheme, let alone imposed sanctions on the players, such as declaring them permanently illegible.

Indeed, the Defendants highlighted the absence of such sanctions, arguing that the indictment only identified "potential harms that, in fact, would have been *undesirable* to defendants - *e.g*., a determination that a scholarship recipient was ineligible to compete for the Universities, or the imposition of penalties on the Universities by the NCAA." *Gatto* at 347. (emphasis in original) The court rejected this "potential harm" argument as unpersuasive, noting that the "indictment need not allege . . . that the specified harms had materialized . . . or were certain to materialize in the future." *Gatto* at 348, n.64. Finally, the court noted that the harm alleged in the indictment was, in part, that "the universities agreed to provide athletic scholarships to student athletes who, in truth and in fact, were ineligible to compete." *Gatto* at 348.

The *Gatto* defendants were convicted of their crimes and appealed their convictions to the Second Circuit. The Second Circuit affirmed the convictions, and in doing so, approved of the presumption made by the prosecutors and the district court that the acceptance of the bribes rendered the students ineligible to compete under NCAA rules, notwithstanding the absence of any declaration from the NCAA stating so. The Court agreed that the actions of the defendants deprived the universities of control over their scholarship assets because the "Universities would not have awarded the Recruits this aid had they known the Recruits were ineligible to compete." *United States v. Gatto,* 2021 WL 137250, at *15 (2d Cir. Jan. 15, 2021).

Later in the opinion, the Second Circuit affirmed the district court's decision to allow the fraudulent certifications of eligibility signed by the recruits to be imputed to the defendants because those false certifications "rendered [the recruits] ineligible by violating the NCAA rules." *Gatto* at *12.

The plaintiff's argument that a court may not make an independent determination of a student athlete's eligibility under NCAA rules would have resulted in a "get of jail free card" for the *Gatto* defendants, because the NCAA never declared the recruits permanently illegible, and therefore, they remained eligible as a matter of law. The law does not countenance such absurd outcome. No doubt, such an outcome would be absurd. Just as the prosecutors in *Gatto* were entitled to demonstrate to the jury the harm that could have been caused to the universities as a result of allowing these ineligible students to play, the Defendants here must be afforded the opportunity to establish that Williamson was, in truth and in fact, ineligible to compete during his tenure at Duke as result of his acceptance of improper benefits for himself and his family.

For the reasons set forth above, Defendants request that the Court reconsider its ruling that the Court's role is limited to examining whether or not Williamson had been declared permanently ineligible by the NCAA.

### C. DEFENDANTS' MOTION FOR LEAVE TO AMEND THEIR ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS SHOULD BE GRANTED.

In the event the Court reconsiders its position on this issue, the Defendants

20

request that the court alter or amend the judgment to allow Defendants to amend their Answer, Affirmative Defenses and Counterclaim in order to allege the specific facts that would establish that the Plaintiff had violated NCAA rules and was therefore ineligible to compete.

### D. WILLIAMSON'S TERMINATION OF THE CONTRACT DOES NOT PROVIDE AN INDEPENDENT BASIS TO GRANT JUDGMENT ON THE PLEADINGS.

This is a minor point, but the Court's order twice reference the fact that the Plaintiff's family sent a letter to Defendants "terminating and voiding the agreement." [DE49 at 19, 20] A party to agreement may terminate an agreement, but they may not void an agreement. Only a court may void an agreement. Here, Defendants alleged that the termination was a breach of contract because the contract only allowed for termination for cause. [¶¶71,142,165 of Amended Counterclaims] Whether or not the termination constituted a breach is a question to be determined later in this case, not as part of the motion for judgment on the pleadings.

### V. CONCLUSION

For the reasons set forth above, Defendants' respectfully request this Court reconsider its holding that the Defendants may not raise Williamson's ineligibility as a defense to his claim for declaratory relief, and grant Defendants' motion for leave to amend their answer, affirmative defenses, and counterclaim to allege the factual basis establishing that ineligibility.

21

Dated this 17th day of February 2021.

/s/ Willie E. Gary
WILLIE E. GARY, ESQ.
GARY, WILLIAMS, PARENTI, WATSON
& GARY, PLLC
Attorneys for Defendants
PRIME SPORTS MARKETING, LLC
and GINA FORD
221 E. Osceola Street
Stuart, Florida 34994
(772) 283-8260
weg@williegary.com
*Local Rule 83.1(d) Special Appearance*

/s/ Alvin L. Pittman
ALVIN L. PITTMAN, ESQ.
(N.C. Bar No. 8460)
office@apittman-law.com
Law Offices of Alvin L. Pittman
Attorneys for Defendants
PRIME SPORTS MARKETING, LLC
and GINA FORD
Airport Center Building
5901 W Century Boulevard, Suite 412
Los Angeles, California 90045
(310) 337-3077
(310) 337-3080(fax)

/s/ Stephen L. Drummond
Stephen L. Drummond*
sdrummond@dswinlaw.com
DRUMMOND & SQUILLACE, PLLC
Attorneys for Defendants
PRIME SPORTS MARKETING, LLC
and GINA FORD

22

175-61 Hillside Avenue, Suite 205
Jamaica, New York 11432
Tel: (718) 298-5050
Fax: (718) 298-5554
*Local Rule 83.1(d) Special Appearance*


/s/ JoAnn Squillace_____
JoAnn Squillace*
jsquillace@dswinlaw.com
DRUMMOND & SQUILLACE, PLLC
Attorneys for Defendants
PRIME SPORTS MARKETING, LLC
and GINA FORD
175-61 Hillside Avenue, Suite 205
Jamaica, New York 11432
Tel: (718) 298-5050
Fax: (718) 298-5554
*Local Rule 83.1(d) Special Appearance*

## LR 7.3(d)(1) Word Count Certification

I hereby certify that this brief contains 5,694 words as reported by Microsoft Word count feature and is in compliance with Local Rule 7.3(d)(1).

Respectfully submitted,

By: /s/ Willie E. Gary