# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

**Civil Action No.: 1:19-cv-00593-LCB-JLW**

| | |
|---|---|
| ZION WILLIAMSON, <br><br>               **Plaintiff,** <br><br> v. <br><br> PRIME SPORTS MARKETING, LLC, and GINA FORD, <br><br>         **Defendants.** | **DEFENDANTS' AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT WITH AMENDED AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIMS AGAINST PLAINTIFF** |

Defendants PRIME SPORTS MARKETING, LLC and GINA FORD, by and through their undersigned counsel, hereby respond to and Answer the First Amended Complaint of Plaintiff, ZION WILLIAMSON, (hereinafter "Plaintiff") as follows:

1.     Admit only that Ms. Ford is a domiciliary/residence of the State of Florida and further admitted that Prime Sports Marketing, LLC's has its principal place of business is in the State of Florida. It is expressly denied that Ms. Gina Ford and/or Prime Sports Marketing, LLC came to North Carolina beginning in approximately early January 2019, seeking to cash in on a supremely talented collegiate "student athlete" ZION WILLIAMSON. It is further expressly denied that Ms. Ford and/or Prime Sports Marketing, LLC initiated any contacts with Plaintiff and/or with Plaintiff's family. It is further expressly denied that Plaintiff ZION WILLIAMSON was a student athlete in approximately early January 2019. It is admitted that on April 20, 2019, Plaintiff voluntarily, knowingly and intelligently entered into a Marketing Agent Agreement with Defendants. It is expressly denied that Ms. Ford and/or Prime Sports Marketing, LLC initiated multiple contacts with Plaintiff and his family and it is further expressly denied that Ms. Ford

**Exhibit 1**

and/or Prime Sports Marketing, LLC entered the State of North Carolina for the sole purpose of signing Plaintiff to a marketing agent agreement, (hereinafter "the Contractual Agreement').

Plaintiff's allegation that the Contract Agreement contained draconian terms, such as that it purports not to be terminable for any reason for five years, and thereafter is terminable by Plaintiff only for cause, states legal conclusions to which no response is necessary. To the extent a response is deemed necessary, it is expressly denied by Ms. Ford and Prime Sports Marketing, LLC that the Contractual Agreement between Gina Ford, Prime Sports Marketing, LLC and Plaintiff contains draconian terms but, it is admitted that one of the terms of same Contractual Agreement between Ms. Ford, Prime Sports Marketing, LLC and Plaintiff is that same Contract is not terminable for any reason for five years and is thereafter only terminable for cause.

The allegations that Ms. Ford and Prime Sports Marketing, LLC flagrantly disregard clear obligations under North Carolina Law, that the Contractual Agreement contains draconian terms and that Plaintiff had remaining eligibility as a collegiate athlete are argumentative and statements of Plaintiff's alleged and purported legal conclusions to which no response is necessary. To the extent a response is deemed necessary, it is expressly denied that Ms. Ford and Prime Sports Marketing, LLC flagrantly or otherwise disregarded any obligations under North Carolina law. It is further expressly denied that Contractual Agreement between the Ms. Ford, Prime Sports Marketing, LLC and the Plaintiff, which was signed by Plaintiff, an adult, in Plaintiff's home in North Carolina and in the presence of the Plaintiff's mother and father, contains draconian terms. It is further expressly denied that Plaintiff had remaining eligibility as a college athlete before and at the time the Plaintiff entered into the Contractual Agreement with Ms. Ford and Prime Sports Marketing, LLC and, it is expressly denied that Ms. Ford and Prime Sports Marketing, LLC did not inform Plaintiff that by signing the April 20, 2019 Contract, Plaintiff would immediately forfeit

his alleged and purported remaining eligibility as a collegiate athlete. Except as expressly admitted, all allegations contained in this paragraph are denied.

2. Admit that Ms. Ford and Prime Sports Marketing, LLC were/are a successful and experienced Marketing Agent/Marketing Agency with the requisite expertise to maximize Mr. Williamson's brand and further admit that Ms. Ford and Prime Sports Marketing, LLC was/is/are a Marketing Agent/Agency for/of Olympic Athlete Usain Bolt, and admit that Ms. Ford and Prime Sports Marketing, LLC have served and are serving as Marketing Agent/Agency for other highly successful athletes. Except as expressly admitted, all allegations contained in this paragraph are denied.

3. The allegations of paragraph no. 3 state arguments and Plaintiff's alleged and purported legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC are without knowledge or information sufficient to form a belief as to the foresight of North Carolina General Assembly and particularly in 2003. To the extent that a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC admit that the North Carolina General Assembly enacted the North Carolina Uniform Athlete Agent Act, N.C. Gen. Stat. 78C-85 et seq. (the "UAAA") and that the statue cited by Plaintiff speaks for itself. Ms. Gina Ford and Prime Sports Marketing, LLC admit that North Carolina's "UAAA" statute establishes a process by which student athletes are protected, not non-student athletes like Plaintiff herein. It is expressly denied that Ms. Ford and Prime Sports Marketing, LLC exploited or sought to exploit the Plaintiff and it is further expressly denied that the North Carolina General Assembly enacted any Statute/Law that prohibited any acts performed by Ms. Gina Ford and/or Prime Sports Marketing, LLC in entering into the Contractual Agreement with Plaintiff, an adult, who was not a student athlete covered by the UAAA and who knowingly,

3

intelligently and voluntarily entered into a valid and enforceable Contractual Agreement with Ms. Gina ford and Prime Sports Marketing, LLC.

It is further expressly denied that the General Assembly enacted legislation to protect the Plaintiff, an adult and who was not a student athlete and it is further expressly denied that Ms. Ford and Prime Sports Marketing, LLC engaged in any unscrupulous behavior that gives rise to the within action relative to the Plaintiff, an adult, who knowingly, intelligently and voluntarily entered into the Contractual Agreement. It is specifically denied that the UAAA forbids an individual from acting as an athlete agent without holding a certificate of registration from the Athlete Agent Registration Office of the North Carolina Secretary of State and further deny that any purported agency contract resulting from actions taken without registration is void but, it is admitted that the UAAA forbids an individual from acting as a "[s]tudent [a]thlete" agent. It is further admitted that the UAAA is applicable only to the State of North Carolina.

It is further admitted that Ms. Ford is not registered as an agent in North Carolina and that Ms. Ford and Prime Sports Marketing, LLC are without knowledge or information sufficient to form a belief as to Plaintiff's allegation that no one associated with Prime Sports Marketing, LLC is registered as an agent in North Carolina. Plaintiff's allegation in paragraph 3 that, as a matter of law, the Contractual Agreement between Ms. Ford, Prime Sport Marketing, LLC and Plaintiff is null, void and has no legal effect states arguments and Plaintiff's alleged and purported legal conclusions to which no response is necessary. To the extent a response is deemed necessary, it is expressly denied herein. Except as expressly admitted, all allegations contained in paragraph 3 are denied.

4.     The allegations of paragraph no. 4 state states arguments and Plaintiff's alleged and purported legal conclusions to which no response is necessary. To the extent a response is deemed

necessary, Ms. Ford and Prime Sports Marketing, LLC deny the allegations set forth in paragraph no. 4, except admit that the UAAA applies and governs the State of North Carolina, the UAAA only applies and governs contracts with "[s]tudent [a]thletes" and not an "athlete", and, that the April 20, 2019 Contractual Agreement between Ms. Ford, Prime Sports Marketing, LLC and the Plaintiff is not a contract with a "[s]tudent [a]thlete" requiring adherence to the notice provision because Plaintiff was not a "student athlete". Except as expressly admitted, all allegations contained in paragraph 4 are denied.

5. The allegations of paragraph no. 5 state legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC deny the allegations set forth in paragraph no. 5, except admit that the "UAAA" Statute cited by the Plaintiff speaks for itself and further admits that same Statute outlines "code of conduct" for agents in the State of North Carolina in communicating with "[s]tudent [a]thletes". Except as expressly admitted, all allegations contained in paragraph 5 are denied.

6. The allegations of paragraph no. 6 state legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC deny the allegations set forth in paragraph no. 5, except admit after Gina Ford and Prime Sports Marketing, LLC performed and demonstrated potential performance under the April 20, 2019, Contractual Agreement, after Plaintiff accepted money from Ms. Ford and Prime Sports Marketing, LLC and after Plaintiff had fraudulently induced Ms. Ford and Prime Sports Marketing to provide Plaintiff with Ms. Ford's and Prime Sports Marketing, LLC's Marketing Plan, Plaintiff and/or someone acting on Plaintiff's behalf did send communication to Ms. Ford and Prime Sports Marketing, LLC in the State of Florida not only seeking to avoid his lawful obligations to Ms. Ford and Prime Sports Marketing, LLC under the April 20, 2019 Contractual Agreement, but

5

expressly stated that he would keep the monies that he demanded as an advancement from Ms. Ford and Prime Sports Marketing, LLC which was sent to him from Florida to Plaintiff as an advancement and further threatened to take legal action against Ms. Ford and Prime Sports Marketing, LLC, not only to avoid his lawful obligation under the terms and conditions of the April 20, 2019 Agreement, but also of his intent of keeping monies that he demanded of Ms. Ford and Primes Sports Marketing, LLC as an advancement on the April 19, 2020 Contract. Ms. Ford and Prime Sports Marketing, LLC further admit that upon receipt of the Plaintiff's threatening communication, Ms. Ford and Prime Sports Marketing, LLC responded to the Plaintiff and that response included advising the Plaintiff that, based upon Ms. Ford's and Prime Sports Marketing, LLC's performance under the Contract Agreement and the anticipated performance from Ms. Ford and Prime Sports Marketing, LLC, Plaintiff's unlawful breach of the April 20, 2019 Contract will cause Ms. Ford and Prime Sports Marketing, LLC to sustain loss of earnings which will **exceed One Hundred Million Dollars, ($100,000,000.00).** Except as expressly admitted, all allegations contained in paragraph 6 are denied.

7. Ms. Ford and Prime Sports Marketing, LLC deny the allegations set forth in paragraph no. 7, specifically it is expressly denied that Ms. Ford and Prime Sports Marketing, LLC threatened the Plaintiff and it further expressly denied that any perceived threat form any basis and/or necessitated Plaintiff bringing the within action as the Plaintiff in written correspondence which preceded any communication from Ms. Ford and Prime Sports Marketing, LLC first threatened to bring suit against Ms. Ford and Prime Sports Marketing, LLC. It is further expressly denied that the Plaintiff was induced and/or fraudulent induced to sign the April 20, 2019 Contractual Agreement and that same contract , which was signed in the comfort of the Plaintiff's home by the Plaintiff, in the presence of both of his parents, who, as Plaintiff, are well informed

6

relative to the NCAA regarding "student athletes", its rules and regulations, the UAAA, its rules and regulations regarding "student athletes" and who had years of experience and knowledge in making informed strategic decisions relative to Plaintiff and their collective goal and objective from the very early years of Plaintiff's life to one day play professional basketball in the NBA, was signed and/or negotiated in total regards and/or in lack of regard to Plaintiff's legal rights. Ms. Ford and Prime Sports Marketing, LLC admit that the Plaintiff knowing, voluntarily and intelligently signed the April 20, 2019 contract with full knowledge of all his rights, including full knowledge of his own prior conduct that voided his eligibility to be a "student athlete". Except as expressly admitted, all allegations contained in paragraph 7 are denied.

## THE PARTIES

8.     Ms. Gina Ford and Prime Sports Marketing, LLC are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within paragraph no. 8 of Plaintiffs complaint, and these allegations are therefore deemed denied.

9.     Admit that Prime Sports Marketing, LLC is a Florida limited liability company with its principal place of business in Miami, Florida.  Denied that Prime Sports Marketing, LLC members only include Ms. Gina Ford.

10.     Admit.

## JURISDICTION AND VENUE

11.     Admit.

12.     The allegations of paragraph no. 12 state arguments and Plaintiff's alleged and purported legal conclusions to which no response is necessary.  To the extent a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC deny the allegations set forth in paragraph no 12.

7

## AS TO PLAINTIFF'S CLAIMED FACTUAL ALLEGATIONS

### I.    As to the claimed background on Plaintiff:

13.    Ms. Ford and Prime Sports Marketing, LLC admit that over the past year, Plaintiff was a standout basketball athlete, that the Plaintiff has become a household name and further admit that the Plaintiff was selected as the number one draft pick in the 2019 NBA draft.   Ms. Ford and Prime Sports Marketing, LLC specifically deny the allegations set forth in paragraph no. 13 that Plaintiff was a "student athlete".   Ms. Ford and Prime Sports Marketing, LLC are without knowledge or information sufficient to form a belief as to the allegation that Plaintiff is known [b]est for his electrifying slam dunks and abounding energy and admit that the Plaintiff is known nationally and internationally for his ability to play basketball, as well as other marketable qualities.   Except as expressly admitted, all allegations contained in paragraph 13 are denied.

14.    Ms. Gina Ford and Prime Sports Marketing, LLC are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within paragraph no. 8 of Plaintiffs complaint, and these allegations are therefore deemed denied.

15.    The allegations of paragraph no.15, that specifically allege that at the time the Plaintiff enrolled at Duke University in 2018 he was a "student athlete" states arguments and Plaintiff's alleged and purported legal conclusions to which no response is necessary.   To the extent a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC deny the allegations set forth in paragraph no. 15 that allege that at the time the Plaintiff enrolled at Duke University in 2018 he was a "student athlete" as defined by the NCAA and/or the UAAA, and more specifically, it is expressly denied that at the time Plaintiff enrolled at Duke University in 2018 he was a "student-athlete" or an eligible "student-athlete" as the term student athlete is defined by the NCAA and/or the UAAA, as, long before Plaintiff entered Duke University and

8

long before Plaintiff ever had any contact with Defendants, and prior to April 20, 2019, Plaintiff, his mother, his stepfather and/or a third party(ies) acting on Plaintiff's behalf received, accepted, requested and/or solicited monies, financial compensation, improper benefits, prohibited benefits, improper housing and employment opportunities and/or otherwise from/by Nike, Adidas, Duke University, Coach K from Duke University, Thomas Morris, Merl Code, Kansas University, Coach Townsend from Kansas University, Slavko Duric, MMG and others that rendered Plaintiff permanently ineligible to be, to ever be and/or to remain a "student-athlete". Accordingly, the UAAA does not apply to Plaintiff and the April 20, 2019 Contract between Plaintiff and Defendants is valid and enforceable herein. Ms. Ford and Prime Sports Marketing, LLC admits the other remaining aspects of paragraph 15 as to the Plaintiff's basketball accomplishments while playing for Duke University.

## II. As to Ms. Ford and Prime Sports Marketing, LLC:

16. Admit that Prime Sports Marketing, is a Florida Limited Liability Company and further admit that Prime Sports Marketing, LLC filed on March 21, 2018 an Electronic Article of Organization for Florida Limited Liability Company with the Secretary of State of the State of Florida which were deemed effective by the Florida Secretary of State on April 1, 2018. Ms. Ford and Prime Sports Marketing further admits that Ms. Gina Ford is the President, Manager and Registered Agent for service of process for Prime Sports Marketing, LLC and is not a registered athlete in the State of North Carolina, an agent certified by the National Basketball Players Association or a registered athlete agent in her home state of Florida. Except as expressly admitted, all allegations contained in paragraph 16 are denied.

## III. Ms. Ford and Prime Sports Marketing did not initiate contact with Plaintiff:

17. Denied.

9

18.     Ms. Ford and Prime Sports Marketing, LLC deny all of the allegations set forth in paragraph no. 18 except admit that text messages by and between Defendants and Plaintiff's mother and/or stepfather exist, except admit that Defendants have been in Durham, North Carolina in 2019, except admit that Ms. Ford was in attendance at a Duke Basketball game in the year 2019. Except as expressly admitted, all allegations contained in paragraph 18 are denied.

19.     Ms. Gina Ford and Prime Sports Marketing, LLC are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within paragraph no. 19 as to the date that Plaintiff posted a video on Instagram, but admits that Plaintiff did at some point prior to signing the Contractual Agreement with Ms. Ford and Prime Sports Marketing, LLC posted a video on Instagram expressing his gratitude to, thanking his teammates and coach and further announcing that he would not be returning to Duke University—"as he was one and done"--as he intended to pursue his childhood dream of playing in the NBA and as such, he would be declaring his eligibility for the 2019 draft.   The allegations of paragraph no.19 that alleges that Plaintiff's public statement and posting on Instagram does not cause a "student athlete" to forgo his ability to return to college and continue playing collegiate basketball state legal conclusions to which no response is necessary.   To the extent a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC deny the allegations set forth in paragraph no. 19 that alleges and/or seeks to implicitly allege that at the time Plaintiff posted the video on Instagram, Plaintiff was a "student athlete" as defined by the NCAA and/or the UAAA.  Except as expressly admitted, all allegations contained in paragraph 19 are denied.

20.     Deny.

21.     Admit that on April 21, 2019, the Plaintiff, an adult, in the comfort of his home, in the presence of his mother and stepfather affixed his signature to and knowingly, intelligently and

10

voluntarily entered into the Contractual Agreement with Ms. Ford and Prime Sports Marketing, LLC. The allegations of paragraph no.21 that alleges that Plaintiff was a "student athlete" in April 2019, state legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC deny the allegations set forth in paragraph no. 21 that alleges at the time Plaintiff signed the Contractual Agreement, the Plaintiff was a "student athlete".

      **IV.**     <u>**North Carolina's Uniform Athlete Agents Act:**</u>

     22.     The allegations of paragraph no. 22 state arguments and Plaintiff's alleged and purported legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC are without knowledge or information sufficient to form a belief which state if any state, exacted legislature phased and predicated upon the basis as alleged and stated by the Plaintiff. To the extent that a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC admit that States including the North Carolina General Assembly, have enacted laws, statutes and/or regulation and that those laws, statutes and regulations independently, respectively and collectively speak for themselves. Ms. Gina Ford and Prime Sports Marketing, LLC admit that in 2003, the North Carolina General Assembly enacted the UAAA and that the UAAA establishes a process that only provides protection to and for "[s]tudent [a]thletes" so that these "student athletes" can make knowing, voluntary and intelligent decisions and to inform them of the injurious consequences of engaging in certain conduct relative to their "[s]tudent [a]thlete" status and eligibility. It is further admitted that the UAAA prohibits acts of agent's recruitment and solicitation of "student athletes" and states agent registration requirements and, to some extent, language that should be included in a contract only with a "student athlete". Ms. Ford and Prime Sports Marketing, LLC further admit that the rights,

privileges and benefits of the UAAA is only applicable to a "student athlete" and/or an eligible "student-athlete" and not to an "athlete" like Plaintiff herein who was not a "student athlete" nor an eligible "student-athlete" at all relevant times herein, as, long before Plaintiff entered Duke University and long before Plaintiff ever had any contact with Defendants, and prior to April 20, 2019, Plaintiff, his mother, his stepfather and/or a third party(ies) acting on Plaintiff's behalf received, accepted, requested and/or solicited monies, financial compensation, improper benefits, prohibited benefits, improper housing and employment opportunities and/or otherwise from/by Nike, Adidas, Duke University, Coach K from Duke University, Thomas Morris, Merl Code, Kansas University, Coach Townsend from Kansas University, Slavko Duric, MMG and others that rendered Plaintiff permanently ineligible to be, to ever be and/or to remain a "student-athlete". Accordingly, the UAAA does not apply to Plaintiff and the April 20, 2019 Contract between Plaintiff and Defendants is valid and enforceable herein. Except as expressly admitted, all allegations contained in paragraph 22 are denied.

23. The allegations of paragraph no. 23 state arguments and Plaintiff's alleged and purported legal conclusions legal conclusions to which no response is necessary. To the extent that a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC admit that the UAAA in all aspects, sections and subsections speaks for itself. Ms. Ford and Primes Sports Marketing, LLC admit that Section 78C-88 of the UAAA outlines the way one becomes and engages in the act of becoming an "student athlete's" agent in the State of North Carolina. It is further admitted that Section 78C-86 of the UAAA defines an "Athlete Agent" but it is denied as to any effort by Plaintiff in his allegations to imply or otherwise that the UAAA and/or any section cited by Plaintiff herein is applicable to the within matter as Plaintiff was not a "student athlete" nor an eligible "student-athlete" at all times relevant herein as Plaintiff, and/or a third party(ies)

12

acting on Plaintiff's behalf, long before Plaintiff entered Duke University and long before Plaintiff ever had any contact with Defendants, and prior to April 20, 2019, received, accepted, requested and/or solicited monies, financial compensation, improper benefits, prohibited benefits, improper housing and employment opportunities and/or otherwise from/by Nike, Adidas, Duke University, Coach K from Duke University, Thomas Morris, Merl Code, Kansas University, Coach Townsend from Kansas University, Slavko Duric, MMG and others that rendered Plaintiff permanently ineligible to be, to ever be and/or to remain a "student-athlete". Accordingly, the UAAA does not apply to Plaintiff and the April 20, 2019 Contract between Plaintiff and Defendants is valid and enforceable herein. Except as expressly admitted, all allegations contained in paragraph 23 are denied.

24.    The allegations of paragraph no. 24 state arguments and Plaintiff's alleged and purported legal conclusions to which no response is necessary. To the extent that a response is deemed necessary, Ms. Ford and Prime Sports, Marketing, LLC admit that the UAAA in all aspect, sections and subsections speaks for itself. Ms. Ford and Primes Sports Marketing, LLC admits that the UAAA defines Agency Contract and Endorsement Contracts but deny any effort to allege implicitly or otherwise that the UAAA and/or any section cited by Plaintiff herein is applicable to the within matter, as Plaintiff was not a "student athlete" nor an eligible "student-athlete" at all times relevant herein. The allegations of paragraph no. 24 that state that the Contractual Agreement that Defendants enticed Mr. Williams to sign state arguments and Plaintiff's alleged and purported legal conclusions legal conclusions to which no response is necessary. To the extent that a response is deemed necessary, it is further specifically denied that Plaintiff, an adult, in the comfort of his home and in the presence of both his parents, was induced by Ms. Ford and/or by Prime Sports Marketing, LLC to affix his signature to the April 20, 2019 Contractual Agreement between

Ms. Ford, Prime Sports Marketing, LLC and the Plaintiff. Except as expressly admitted, all allegations contained in paragraph 24 are denied.

25.    Deny.

26.    Deny.

27.    The allegations of paragraph no. 27 state arguments and Plaintiff's alleged and purported legal conclusions to which no response is necessary. To the extent that a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC admit that the UAAA in all aspect, sections and subsections speaks for itself. Ms. Ford and Prime Sports Marketing, LLC admit that Plaintiff accurately quotes Section 78C-88 of the UAAA in paragraph 27 of Plaintiff's complaint. Ms. Ford and Sports Marketing, LLC specifically deny the allegations that the Contractual Agreement between Ms. Ford, Prime Sports Marketing, LLC and the Plaintiff is void for any reason including that Ms. Ford and Prime Sports Marketing, LLC were not permitted under the law to enter into an agency agreement with the Plaintiff. Ms. Ford and Prime Sports Marketing, LLC further specifically deny any effort to allege implicitly or otherwise that the UAAA and/or any section cited by Plaintiff herein is applicable to the within matter as Plaintiff was not a "student athlete" at all times relevant herein and as the UAAA does not apply to the April 20, 2019 Contract between Plaintiff and Defendants. Except as expressly admitted, all allegations contained in paragraph 27 are denied.

28.    The allegations of paragraph no. 28 state arguments and Plaintiff's alleged and purported legal conclusions to which no response is necessary. To the extent that a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC admit that the UAAA in all aspect, sections and subsections speaks for itself. Ms. Ford and Prime Sports Marketing, LLC specifically deny engaging in any unlawful conduct and further deny that Ms. Ford and Prime Sports

Marketing, LLC cannot rely upon any exception to the UAAA rule herein and that none of the exceptions of the UAAA rules are applicable to Ms. Ford and Prime Sports Marketing, LLC herein. Ms. Ford and Prime Sports Marketing, LLC admit that the Plaintiff accurately quotes the first and second prongs of Section 78C-88 of the UAAA in quotations in paragraph 28 of Plaintiff's complaint. Ms. Ford and Prime Sports Marketing, LLC further specifically deny any effort to allege, implicitly or otherwise, that the UAAA and/or any section cited by Plaintiff herein is applicable to the within matter as Plaintiff was not a "student athlete" at all times relevant herein and as the UAAA does not apply to the April 20, 2019 Contract between Plaintiff and Defendants. Except as expressly admitted, all allegations contained in paragraph 28 are denied.

29.     Admit.

30.     Deny.  Ms. Ford and Prime Sports Marketing, LLC further specifically deny any effort to allege implicitly or otherwise that the UAAA and/or any section cited by Plaintiff herein is applicable to the within matter as Plaintiff was not a "student athlete" at all times relevant herein, and as the UAAA does not apply to the April 20, 2019 Contract between Plaintiff and Defendants, as long before Plaintiff entered Duke University and long before Plaintiff ever had any contact with Defendants, and prior to April 20, 2019, Plaintiff, his mother, his stepfather and/or a third party(ies) acting on Plaintiff's behalf received, accepted, requested and/or solicited monies, financial compensation, improper benefits, prohibited benefits, improper housing and employment opportunities and/or otherwise from/by Nike, Adidas, Duke University, Coach K from Duke University, Thomas Morris, Merl Code, Kansas University, Coach Townsend from Kansas University, Slavko Duric, MMG and others that rendered Plaintiff permanently ineligible to be, to ever be and/or to remain a "student-athlete".  Accordingly, the UAAA does not apply to Plaintiff

and the April 20, 2019 Contract between Plaintiff and Defendants is valid and enforceable herein. Except as expressly admitted, all allegations contained in paragraph 30 are denied.

31.     The allegations of paragraph no. 31 state arguments and Plaintiff's alleged and purported legal conclusions to which no response is necessary.   To the extent that a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC admit that the UAAA in all aspect, sections and subsections speaks for itself.   Ms. Ford and Prime Sports Marketing, LLC admit that the Plaintiff accurately recites/quotes Section 78C-94 of the UAAA.    Ms. Ford and Prime Sports Marketing, LLC further specifically deny any effort to allege implicitly or otherwise that the UAAA and/or any section cited by Plaintiff herein is applicable to the within matter as Plaintiff was not a "student athlete" at all times relevant herein and as the UAAA does not apply to the April 20, 2019 Contract between Plaintiff and Defendants.    Except as expressly admitted, all allegations contained in paragraph 31are denied.

32.     The allegations of paragraph no. 32 state arguments and Plaintiff's alleged and purported legal conclusions to which no response is necessary.   To the extent that a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC admit that the UAAA in all aspect, sections and subsections speaks for itself.   Ms. Ford and Prime Sports Marketing, LLC admit that the Plaintiff accurately recites/quotes Section 78C-94 of the UAAA.    Ms. Ford and Prime Sports Marketing, LLC further specifically deny any effort to allege, implicitly or otherwise, that the UAAA and/or any section cited by Plaintiff herein is applicable to the within matter as Plaintiff was not a "student athlete" at all times relevant herein, and as the UAAA does not apply to the April 20, 2019 Contract between Plaintiff and Defendants, as long before Plaintiff entered Duke University and long before Plaintiff ever had any contact with Defendants, and prior to April 20, 2019, Plaintiff, his mother, his stepfather and/or a third party(ies) acting on Plaintiff's behalf

16

received, accepted, requested and/or solicited monies, financial compensation, improper benefits, prohibited benefits, improper housing and employment opportunities and/or otherwise from/by Nike, Adidas, Duke University, Coach K from Duke University, Thomas Morris, Merl Code, Kansas University, Coach Townsend from Kansas University, Slavko Duric, MMG and others that rendered Plaintiff permanently ineligible to be, to ever be and/or to remain a "student-athlete". Accordingly, the UAAA does not apply to Plaintiff and the April 20, 2019 Contract between Plaintiff and Defendants is valid and enforceable herein. Except as expressly admitted, all allegations contained in paragraph 32 are denied.

33. Deny.

34. The allegations of paragraph no. 34 state arguments and Plaintiff's alleged and purported legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC deny the allegations set forth in paragraph no. 5, except admit that after Gina Ford and Prime Sports Marketing, LLC performed and demonstrated potential performance under the April 20, 2019 Contractual Agreement after Plaintiff accepted money from Ms. Ford and Prime Sports Marketing, LLC and after Plaintiff had fraudulently induced Ms. Ford and Prime Sports Marketing, LLC to provide Plaintiff with Ms. Ford's and Prime Sports Marketing, LLC's Marketing Plan, Plaintiff and/or someone acting on Plaintiff's behalf did send communication to Ms. Ford and Prime Sports Marketing, LLC in the State of Florida not only seeking to avoid his lawful obligations to Ms. Ford and Prime Sports Marketing, LLC under the April 20, 2019 Contractual Agreement, but expressly stated that he would and intended to keep the monies that he demanded as an advancement from Ms. Ford and Prime Sports Marketing, LLC which was sent to him from Florida. It is further admitted that in same communication Plaintiff threatened to take legal action against Ms. Ford and Prime Sports

17

Marketing, LLC not only to avoid his lawful obligation under the terms and conditions of the April 20, 2019 Agreement, but also of his intent of keeping monies that he demanded of Ms. Ford and Primes Sports Marketing, LLC as an advancement on the April 20, 2019 Contract. Except as expressly admitted, all allegations contained in paragraph 34 are denied.

35. The allegations of paragraph no. 35 state arguments and Plaintiff's alleged and purported legal conclusions to which no response is necessary. To the extent that a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC admit that the UAAA in all aspect, sections and subsections speaks for itself. Ms. Ford and Prime Sports Marketing, LLC admit that the Plaintiff accurately recites/quotes portions of Section 78C-98 of the UAAA identified as (1), (2), (3), and (4) in Plaintiff's Amended Complaint. Ms. Ford and Prime Sports Marketing, LLC denies any effort to allege implicitly or otherwise that the UAAA and/or any section cited by Plaintiff herein is applicable to the within matter, as Plaintiff was not a "student athlete" at all times relevant herein, as, long before Plaintiff entered Duke University and long before Plaintiff ever had any contact with Defendants, and prior to April 20, 2019, Plaintiff, his mother, his stepfather and/or a third party(ies) acting on Plaintiff's behalf received, accepted, requested and/or solicited monies, financial compensation, improper benefits, prohibited benefits, improper housing and employment opportunities and/or otherwise from/by Nike, Adidas, Duke University, Coach K from Duke University, Thomas Morris, Merl Code, Kansas University, Coach Townsend from Kansas University, Slavko Duric, MMG and others that rendered Plaintiff permanently ineligible to be, to ever be and/or to remain a "student-athlete". Accordingly, the UAAA does not apply to Plaintiff and the April 20, 2019 Contract between Plaintiff and Defendants is valid and enforceable herein. Ms. Ford and Prime Sports Marketing, LLC specifically deny Plaintiff's allegation that

18

Defendants engaged in all four categories of prohibited conduct under the UAAA.    Except as expressly admitted, all allegations contained in paragraph 35 are denied.

## V.    Plaintiff's Claims as to the Contractual Agreement:

36.    Ms. Ford and Prime Sports Marketing, LLC deny all the allegations set forth in paragraph no. 36 except admit that text messages by and between Defendants and Plaintiff's mother and/or stepfather exist, except admit that Ms. Ford and Prime Sports Marketing, LLC did eventually meet with Plaintiff, Plaintiff's mother and Plaintiff's stepfather to discuss the prospect of the Plaintiff, entering into a Marketing Agreement with Ms. Ford and Prime Sports Marketing, LLC.   Except as expressly admitted, all allegations contained in paragraph 36 are denied.

37.    The allegations of paragraph no. 37 state states arguments and Plaintiff's alleged and purported legal conclusions to which no response is necessary.   To the extent that a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC specifically deny the allegations. Except as expressly admitted, all allegations contained in paragraph 37 are denied.

38.    Deny.

39.    Ms. Ford and Prime Sports Marketing, LLC deny all the allegations set forth in paragraph no. 39 except Ms. Ford admits that Ms. Ford was/is a Marketing Agent/Agency of/for Olympic Athlete Usain Bolt and admit that Ms. Ford and Prime Sports Marketing, LLC have served and are serving as Marketing Agent/Agency for Mr. Bolt's electric scooter launched in London.  Ms. Ford and Prime Sports Marketing, LLC admit that Ms. Ford and Prime Sports Marketing, LLC could and can provide global branding and marketing for the Plaintiff but expressly deny that Ms. Ford and/or Prime Sports Marketing, LLC promised the Plaintiff and/or the Plaintiff's family that Ms. Ford and/or Prime Sports Marketing, LLC could provide the Plaintiff

19

with the same type of global recognition as Usain Bolt. Except as expressly admitted, all allegations contained in this paragraph are denied.

40. Ms. Ford and Prime Sports Marketing, LLC deny all the allegations set forth in paragraph no. 40 except Ms. Ford admits that Ms. Ford may not be the exclusive Marketing Agent that represents Mr. Bolt, but that Ms. Ford and Prime Sports Marketing, LLC have served as lead Marketing Agent on some global marketing ventures on behalf of Mr. Bolt. Except as expressly admitted, all allegations contained in this paragraph are denied.

41. Ms. Ford and Prime Sports Marketing, LLC deny all the allegations set forth in paragraph no. 41 except Ms. Ford admits that Ms. Ford and Prime Sports Marketing, LLC have served as Marketing Agent for other NBA draft picks, including first round and other round draft picks. Except as expressly admitted, all allegations contained in this paragraph are denied.

42. Ms. Ford and Prime Sports Marketing, LLC deny all of the allegations set forth in paragraph no. 42 except Ms. Ford admits that on April 20, 2019, the Plaintiff, the Plaintiff's mother and/or the Plaintiff's stepfather, who are all adults and are very knowledgeable and who have a demonstrated history of strategically sophisticated decision making as to Plaintiff's basketball career, knowingly, voluntarily and willingly invited Ms. Ford to their home in North Carolina and further provided Ms. Ford with the address of their home, knowingly opened the door and invited Ms. Ford inside their home where Plaintiff knowingly, voluntarily, intelligently entered into the Contractual Agreement of April 20, 2019 by affixing his signature to same in the presence of his mother and his step-father after they all individually and collectively reviewed, discussed, negotiated and deliberated over the terms and conditions of same contract and further suggested that Plaintiff take pictures of the Plaintiff and Ms. Ford in the Plaintiff's home to memorialize the execution of the contract and the beginning of their relationship. Ms. Ford and Prime Sports

20

Marketing, LLC further expressly deny that the April 20, 2019 Contract was unlawful and deny that Plaintiff at that time was a "student athlete" under the UAAA as, long before Plaintiff entered Duke University and long before Plaintiff ever had any contact with Defendants, and prior to April 20, 2019, Plaintiff, his mother, his stepfather and/or a third party(ies) acting on Plaintiff's behalf received, accepted, requested and/or solicited monies, financial compensation, improper benefits, prohibited benefits, improper housing and employment opportunities and/or otherwise from/by Nike, Adidas, Duke University, Coach K from Duke University, Thomas Morris, Merl Code, Kansas University, Coach Townsend from Kansas University, Slavko Duric, MMG and others that rendered Plaintiff permanently ineligible to be, to ever be and/or to remain a "student-athlete". Accordingly, the UAAA does not apply to Plaintiff and the April 20, 2019 Contract between Plaintiff and Defendants is valid and enforceable herein. Ms. Ford and Prime Sports Marketing, LLC admits that Paragraph 7(a) of the Contractual Agreement identifies Ms. Ford as Prime Sports Marketing, LLC designated individual for all purposes of the Contractual Agreement between Ms. Ford, Prime Sports Marketing, LLC and the Plaintiff. Except as expressly admitted, all allegations contained in this paragraph are denied.

43.    Deny.

44.    The allegations of paragraph no. 44 state arguments and Plaintiff's alleged and purported legal conclusions to which no response is necessary. To the extent that a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC specifically deny this allegation. Except as expressly admitted, all allegations contained in this paragraph are denied.

45.    The allegations of paragraph no. 45 state arguments and Plaintiff's alleged and purported legal conclusions to which no response is necessary. To the extent that a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC deny the allegations set forth in

21

paragraph no. 45 except admit that Ms. Ford never held a UAAA certificate under section 78C-88 of the UAAA. Ms. Ford and Prime Sports Marketing, LLC further specifically deny that the agreement is void and/or voidable under Section 78C-88(d) of the UAAA as the Plaintiff at all relevant times herein was not a "student athlete", and the UAAA does not apply to the Plaintiff nor to the April 20, 2019 Contract between Plaintiff and Defendants herein, a long before Plaintiff entered Duke University and long before Plaintiff ever had any contact with Defendants, and prior to April 20, 2019, Plaintiff, his mother, his stepfather and/or a third party(ies) acting on Plaintiff's behalf received, accepted, requested and/or solicited monies, financial compensation, improper benefits, prohibited benefits, improper housing and employment opportunities and/or otherwise from/by Nike, Adidas, Duke University, Coach K from Duke University, Thomas Morris, Merl Code, Kansas University, Coach Townsend from Kansas University, Slavko Duric, MMG and others that rendered Plaintiff permanently ineligible to be, to ever be and/or to remain a "student-athlete". Accordingly, the UAAA does not apply to Plaintiff and the April 20, 2019 Contract between Plaintiff and Defendants is valid and enforceable herein. Except as expressly admitted, all allegations contained in this paragraph are denied.

46. The allegations of paragraph no. 46 state arguments and Plaintiff's alleged and purported legal conclusions to which no response is necessary. To the extent that a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC deny the allegations set forth in paragraph no. 46. Ms. Ford and Prime Sports Marketing, LLC further specifically deny that the agreement is void and/or voidable under Section 78C-94 of the UAAA as the Plaintiff, at all relevant time herein, was not a "student athlete", and the UAAA does not apply to the Plaintiff nor to the April 20, 2019 Contract between Plaintiff and Defendants herein, as long before Plaintiff entered Duke University and long before Plaintiff ever had any contact with Defendants, and prior

22

to April 20, 2019, Plaintiff, his mother, his stepfather and/or a third party(ies) acting on Plaintiff's behalf received, accepted, requested and/or solicited monies, financial compensation, improper benefits, prohibited benefits, improper housing and employment opportunities and/or otherwise from/by Nike, Adidas, Duke University, Coach K from Duke University, Thomas Morris, Merl Code, Kansas University, Coach Townsend from Kansas University, Slavko Duric, MMG and others that rendered Plaintiff permanently ineligible to be, to ever be and/or to remain a "student-athlete". Accordingly, the UAAA does not apply to Plaintiff and the April 20, 2019 Contract between Plaintiff and Defendants is valid and enforceable herein.

47.     The allegations of paragraph no. 47 state arguments and Plaintiff's alleged and purported legal conclusions to which no response is necessary.   To the extent that a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC deny the allegations set forth in paragraph no. 47.


**VI**.     <u>**The Plaintiff sought to avoid his lawful duties and obligations under the Contractual Agreement into which he entered:**</u>

48.     Deny.

49.     Deny.

50.     Admit.

51.     Admit.

**VII.**     <u>**Ms. Ford and Prime Sports Marketing, LLC informed Plaintiff of his rights under the Contractual Agreement:**</u>

52.     Admit.

23

53.     Admitted that on June 4, 2019, attorneys for Plaintiff and further admits that the letter speaks for itself and that the letter sought to inform the Plaintiff that Ms. Ford and Prime Sports Marketing, LLC are prepared to seek court intervention to enforce the April 20, 2019 Contractual Agreement.   Plaintiff's interpretation of the letter that alleges that the letter states that it was the Plaintiff's declaring his eligibility for the NBA draft that supports a valid contract between the Ms. Ford, Prime Sports and the Plaintiff is specifically denied.   Except as expressly admitted, all allegations contained in this paragraph are denied.

## CLAIMS FOR RELIEF

## COUNT I

54.     Ms. Ford and Prime Sports Marketing, LLC expressly deny each and every allegation set forth in Paragraphs 1-53 of Plaintiff's First Amended Complaint with exception as for those allegations that are specifically admitted by Ms. Ford and/or Prime Sports Marketing, LLC.

55.     Deny.

56.     Admit.

57.     Deny.

58.     Deny.

59.     The allegations of paragraph no. 59 state arguments and Plaintiff's alleged and purported legal conclusions, legal requests and/or legal relief that the Plaintiff is seeking to which no response is necessary.   To the extent that a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC deny the allegations set forth in paragraph no 59.  Specifically, Ms. Ford and Prime Sports Marketing, LLC expressly deny that Declaratory relief will resolve the legal issues between the parties pertaining to the enforceability of the Contractual Agreement and

24

pertaining to allegations of Ms. Ford's and Prime Sports Marketing, LLC's alleged conduct in inducing Plaintiff to sign the Contractual Agreement. Except as expressly admitted, all allegations contained in this paragraph are denied.

60.     The allegations of paragraph no. 60 state arguments and Plaintiff's alleged and purported legal conclusions, legal requests and/or legal relief that the Plaintiff is seeking to which no response is necessary.   To the extent that a response is deemed necessary, Ms. Ford and Prime Sports Marketing, LLC deny the allegations set forth in paragraph no. 60 and further expressly deny that the Plaintiff is entitled lawfully entitled Judicial Declaration that the Contractual Agreement is void as a matter of law and that Ms. Ford and Prime Sports Marketing, LLC engaged in prohibited conduct by the UAAA.    Ms. Ford and Prime Sports Marketing, LLC further expressly deny that Plaintiff is lawfully entitled to the alternative relief of Judicial Declaration that Ms. Ford and Prime Sports Marketing, LLC engaged in conduct prohibited by the UAAA, that the Agreement fails to meet the required form of contract under the UAAA, further deny that the Contractual Agreement is voidable and, further deny that Plaintiff voided the Contractual Agreement. Except as expressly admitted, all allegations contained in this paragraph are denied.

## COUNT II

## Alleged Violation of North Carolina's Unfair and Deceptive Trade Practices Act N.C. Gen Stat. Section 75-1.1, sea)

61.     Ms. Ford and Prime Sports Marketing, LLC expressly deny each and every allegation set forth in Paragraphs 1-60 of Plaintiff's First Amended Complaint with exception as to for those allegations that are specifically admitted by the Ms. Ford and/or Prime Sports Marketing, LLC.

62.     The allegations of paragraph no. 62 state arguments and Plaintiff's alleged and purported legal conclusions to which no response is necessary.   To the extent that a response is

deemed necessary, Ms. Ford and Prime Sports Marketing, LLC admit that the N.C. Gen. Stat. Section 75-1.1 (the "NC UDTPA") speaks for itself.

63.     Deny.

64.     Deny.

65.     Deny.

66.     Deny.

67.     Deny

68.     Deny.

## COUNT III

## Alleged Fraudulent Inducement and Rescission

69.     Ms. Ford and Prime Sports Marketing, LLC expressly deny each and every allegation set forth in Paragraphs 1-68 of Plaintiff's First Amended Complaint with exception as to for those allegations that are specifically admitted by the Ms. Ford and/or Prime Sports Marketing, LLC.

70.     Deny.

71.     Deny.

72.     Deny.

73.     Deny.

74.     Deny.

75.     Deny.

76.     Deny.

77.     Deny.

**ALLEGED PRAYER FOR RELIEF**.

Ms. Ford and Prime Sports Marketing, LLC deny that the Plaintiff, Zion Williamson is entitled to any of the relief sought in his prayer for relief, specifically and inclusive of those listed in the Plaintiff's Prayer for Relief listed and identified as (a)---(g). Each and every allegation of the Plaintiff's First Amended Complaint not elsewhere responded to is hereby expressly denied.

**AFFIRMATIVE DEFENSES**

Pursuant to the Federal Rules of Procedure Civil Procedure (12)(b)(1), 12(b)(2) and Rule 8(c) of the North Carolina Rules of Civil Procedure, Ms. Ford and Prime Sports Marketing, LLC state the following as affirmative defenses to Plaintiff's claims.

**AS AND FOR MS. FORD'S AND PRIME SPORTS MARKETING, LLC'S
FIRST AFFIRMATIVE DEFENSE**

At the time Plaintiff registered for and entered Duke University as a Freshman in 2018, the Plaintiff was not a "student athlete" as defined by the NCAA and/or as defined by UAAA as Plaintiff, and/or third parties acting on the Plaintiff's behalf, had violated one or more of the NCAA and/or UAAA rules that voided Plaintiff's eligibility to be a "student-athlete", that rendered him ineligible to be/remain a "student athlete" and/or that rendered his eligibility voidable under the NCAA and/or the UAAA rules and regulations as Plaintiff lost/forfeited any possible eligibility to ever be a "student-athlete" by: agreeing orally or in writing to be represented by any individual other than a NCAA–certified agent, accepting any benefits from an individual other than a NCAA-certified agent, and/or, accepting any benefits from a NCAA-certified agent that are not expressly permitted by the NCAA legislation or outside of the permissible timeframe allowed by NCAA legislation.

To that end, long before Plaintiff entered Duke University and long before Plaintiff ever had any contact with Defendants, and prior to April 20, 2019, Plaintiff, his mother, his stepfather

27

and/or a third party(ies) acting on Plaintiff's behalf received, accepted, requested and/or solicited monies, financial compensation, improper benefits, prohibited benefits, improper housing and employment opportunities and/or otherwise from/by Nike, Adidas, Duke University, Coach K from Duke University, Thomas Morris, Merl Code, Kansas University, Coach Townsend from Kansas University, Slavko Duric, MMG and others that rendered Plaintiff permanently ineligible to be, to ever be and/or to remain a "student-athlete".

Among the improper benefits Williamson and his family received prior to his enrollment at Duke University were the following:

- Williamson's Mother was retained as a "consultant" by Nike and received improper payments from Nike in an effort to induce Williamson to attend Duke University and to later endorse Nike's products.
- In December of 2017, Williamson's step-father received an improper benefit in the form of a 2015 Cadillac Escalade.
- In February of 2018, Williamson's mother received an improper benefit in the form of a 2015 Cadillac Escalade.
- Williamson's mother and step-father received an improper benefit in the form of funds sufficient to pay a full year of rent in advance on a $5000 per month rental home in Durham, North Carolina.
- In October of 2018, Williamson received an improper benefit in the form of a $500,000 payment for entering into a marketing agreement with Maximum Management Group, Inc.

Accordingly, the UAAA does not apply to Plaintiff and the April 20, 2019 Contract between Plaintiff and Defendants is valid and enforceable herein.

## AS AND FOR MS. FORD'S AND PRIME SPORTS MARKETING, LLC'S SECOND AFFIRMATIVE DEFENSE

That prior to ever meeting Ms. Ford and Prime Sports Marketing, LLC and/or having any discussions with Ms. Ford and/or Prime Sports Marketing, PLLC, and prior to April 20, 2019, Plaintiff, and/or third parties acting on the Plaintiff's behalf, engaged in conduct that rendered and renders him ***ineligible to be or remain a student-athlete*** including, but not limited to:

28

(a) He agrees orally or in writing to be represented by any individual other than a NCAA-certified agent;

(b) He accepts any benefits from an individual other than a NCAA-certified agent; and

(c) He entered the NBA Draft AND did not intend to and did not take the appropriate steps to withdraw and declare any intention of resuming intercollegiate participation and, in fact, repeatedly and publicly declared and made it abundantly clear that he was **not** ever returning to intercollegiate basketball.

To that end, long before Plaintiff entered Duke University and long before Plaintiff ever had any contact with Defendants, and prior to April 20, 2019, Plaintiff, his mother, his stepfather and/or a third party(ies) acting on Plaintiff's behalf received, accepted, requested and/or solicited monies, financial compensation, improper benefits, prohibited benefits, improper housing and employment opportunities and/or otherwise from/by Nike, Adidas, Duke University, Coach K from Duke University, Thomas Morris, Merl Code, Kansas University, Coach Townsend from Kansas University, Slavko Duric, MMG and others that rendered Plaintiff permanently ineligible to be, to ever be and/or to remain a "student-athlete".

Among the improper benefits Williamson and his family received prior to his enrollment at Duke University were the following:

- Williamson's Mother was retained as a "consultant" by Nike and received improper payments from Nike in an effort to induce Williamson to attend Duke University and to later endorse Nike's products.
- In December of 2017, Williamson's step-father received an improper benefit in the form of a 2015 Cadillac Escalade.
- In February of 2018, Williamson's mother received an improper benefit in the form of a 2015 Cadillac Escalade.
- Williamson's mother and step-father received an improper benefit in the form of funds sufficient to pay a full year of rent in advance on a $5000 per month rental home in Durham, North Carolina.

- In October of 2018, Williamson received an improper benefit in the form of a $500,000 payment for entering into a marketing agreement with Maximum Management Group, Inc.

Accordingly, the UAAA does not apply to Plaintiff and the April 20, 2019 Contract between Plaintiff and Defendants is valid and enforceable herein.

## AS AND FOR MS. FORD'S AND PRIME SPORTS MARKETING, LLC'S THIRD AFFIRMATIVE DEFENSE

## THE PAROL EVIDENCE RULE

Plaintiff's causes of action is/are barred by the Parol Evidence Rule which precludes, **as a matter of law,** the Plaintiff from introducing and/or seeking to introduce evidence outside of the four corners of the contract to undermine and/or contradict the contract, the terms of the contract where, as in the within matter, the April 20, 2019 Contractual Agreement between the Ms. Ford, Prime Sports Marketing, LLC and the Plaintiff in Paragraph 13 clearly states right above the signature line where the Plaintiff executed affixed his signature that:

"13. All prior understandings and negotiations between Firm and Client, both written and oral, are void. This Agreement represents the final understanding and entire agreement between the parties. No other representation, inducement or promise has been made or relied upon by either party. This Agreement may on only be altered or modified by a written mutually agreed upon and signed by both parties." See exhibit "B", *supra.*

## AS AND FOR MS. FORD'S AND PRIME SPORTS MARKETING, LLC'S FOURTH AFFIRMATIVE DEFENSE

The April 20, 2019 Contract between Ms. Ford, Prime Sports Marketing, LLC and the Plaintiff is a lawfully binding contract which is not subject to the UAAA Statute and/or to any provision thereof that would render the April 20, 2019 Contractual Agreement between Ms. Ford, Prime Sports Marketing, PLLC and the Plaintiff void and/or voidable as the UAAA does not apply to Plaintiff, does not apply to the Defendants and does not apply to the April 20, 2019 Contract between Plaintiff and Defendants as, long before Plaintiff entered Duke University and long before

30

Plaintiff ever had any contact with Defendants, and prior to April 20, 2019, Plaintiff, his mother, his stepfather and/or a third party(ies) acting on Plaintiff's behalf received, accepted, requested and/or solicited monies, financial compensation, improper benefits, prohibited benefits, improper housing and employment opportunities and/or otherwise from/by Nike, Adidas, Duke University, Coach K from Duke University, Thomas Morris, Merl Code, Kansas University, Coach Townsend from Kansas University, Slavko Duric, MMG and others that rendered Plaintiff permanently ineligible to be, to ever be and/or to remain a "student-athlete". Accordingly, the UAAA does not apply to Plaintiff and the April 20, 2019 Contract with Defendants is valid and enforceable herein.

## .AS AND FOR MS. FORD'S AND PRIME SPORTS MARKETING, LLC'S FIFTH AFFIRMATIVE DEFENSE

That, upon information and belief, prior to April 20, 2019, Plaintiff ZION WILLIAMSON entered the NBA Draft and did not intend to and did not take the appropriate steps to withdraw and declare any intention of resuming intercollegiate participation and, in fact, repeatedly and publicly declared and made it abundantly clear that he was **not** ever returning to intercollegiate basketball in violation of a NCAA March 13, 2019 correspondence, to the NCAA Division 1 Directors of Athletics, Senior Compliance Administrators and Men's Basketball Head Coaches detailing and highlighting the important NCAA rules related to maintaining NCAA eligibility while "testing the waters" with the 2019 NBA Draft. That the March 13, 2019 NCAA Memorandum details and highlights the rules governing men's basketball "student athlete" eligibility and ineligibility and, in particular, those governing the 2019 NBA Draft, as follows:

"A men's basketball student-athlete will **lose** his eligibility IF:

*Nos. 1-6 below are NEW IN 2019!*

1. He enters the NBA Draft without requesting an Undergraduate Advisory Committee evaluation from the NBA.

31

2. He agrees orally or in writing to be represented by any individual other than a NCAA–certified agent.

3. He accepts any benefits from an individual other than a NCAA-certified agent.

4. He accepts any benefits from a NCAA-certified agent that are not expressly permitted by the NCAA legislation or outside of the permissible timeframe allowed by NCAA legislation.

5. He participates in a tryout with a NBA team that lasts longer than 48 hours (exception for the NBA Draft Combine and G League Elite Camp held in connection with the Combine), which he has not personally financed, or a NCAA-certified agent has not financed.

6. He misses class to participate in a tryout, including travel to and from the tryout (exception for the NBA Draft Combine and G League Elite Camp held in connection with the Combine).

7. He enters the NBA Draft AND does not take the appropriate steps to withdraw and declare his intention to resume intercollegiate participation.

8. He enters the NBA Draft AND is drafted by a professional team.

   **It is important to note that an institution may cancel a student athlete's athletic scholarship if he has an agreement with a non-NCAA certified agent or otherwise jeopardizes his eligibility during this process."**

## AS AND FOR MS. FORD'S AND PRIME SPORTS MARKETING, LLC'S SIXTH AFFIRMATIVE DEFENSE

### EQUITABLE ESTOPPEL

The Plaintiff's causes of action are barred by the Doctrine of Equitable Estoppel in that after executing the April 20, 2019 Contractual Agreement with Ms. Ford, Prime Sports Marketing, LLC, the Plaintiff and/or third parties acting on Plaintiff's behalf, made false representations and/or further concealed material facts including, but not limited to, those false and misleading representations that the Plaintiff and/or third parties acting on Plaintiff's behalf made to Ms. Ford's and Prime Sports Marketing, LLC, as detailed below in Ms. Ford's and Prime Sports Marketing, LLC's Counterclaims, in order to fraudulently, deceitfully and unlawfully obtain Ms. Ford's and

32

Prime Sports Marketing, LLC's strategic Marketing Plan/Trade Secret and to further conceal Plaintiff's true intention to breach the April 20, 2019 Contractual Agreement, which he knew he intended to and actually breached, and to further unjustly and deceitfully obtain monies as advancement from Ms. Ford and Prime Sports Marketing, LLC; monies Plaintiff intended and intends to unlawfully keep. Plaintiff is further equitably estopped as Plaintiff intended and expected Ms. Ford and Prime Sports Marketing, LLC to rely and/or act upon Plaintiff's false representations and/or concealment of material facts, which was calculated to induce a reasonably prudent person, as Ms. Ford and Prime Sports Marketing, LLC, to believe that Plaintiff's conduct and/or representations were intended or expected to be relied and acted upon which, in fact, Ms. Ford and Prime Sports Marketing, LLC did.

Plaintiff is further equitably estopped as Plaintiff and/or third parties acting on Plaintiff's behalf, had and continues to have actual knowledge of the real facts behind his conduct and giving rise to his conduct including, but not limited to, Plaintiff and/or third parties acting on Plaintiff's behalf provided Ms. Ford's and Prime Sports Marketing, LLC's strategic Marketing Plan/Trade Secret to third parties in furtherance of Plaintiff's, and/or third parties acting on Plaintiff's behalf, true intention of breaching the April 20, 2019 Contractual Agreement and in furtherance of Plaintiff's true intention to obtain financial benefits/compensation by utilizing Ms. Ford's and Prime Sports Marketing, LLC's strategic Marketing Plan/Trade Secret without any intent of compensating Ms. Ford and Prime Sports Marketing, LLC to date.

Plaintiff is further equitably estopped because Ms. Ford and Prime Sports Marketing, LLC lacked knowledge of the truth as to the facts giving rise to Plaintiff's, and/or third parties acting on Plaintiff's behalf, conduct and Ms. Ford and Prime Sports Marketing, LLC, as detailed below in their Counterclaims, actually relied upon Plaintiff's, and/or third parties acting on Plaintiff's

33

behalf, false representations and concealment of material facts herein which, in turn, caused Ms. Ford and Prime Sports Marketing, LLC to act in reliance thereof which changed their position prejudicially.

<u>**AS AND FOR MS. FORD'S AND PRIME SPORTS MARKETING, LLC'S SEVENTH AFFIRMATIVE DEFENSE**</u>

<u>**UNCLEAN HANDS**</u>

Plaintiff seeks the protections accorded by the laws of the State of North Carolina and the rules and regulations of the NCAA and the UAAA and avails himself to this court with unclean hands rendering the relief he seeks herein unavailable. Plaintiff has unclean hands herein as Plaintiff and/or third parties acting on Plaintiff's behalf, as detailed below in Ms. Ford's and Prime Sports Marketing, LLC's Counterclaims, acted intentionally, maliciously, deceitfully fraudulently, unethically and/or in bad faith with respect to his dealings with Ms. Ford and Prime Sports Marketing, LLC in relation to the April 20, 2019 Contract, including but not limited to:

1.      Making materially false statements to Ms. Ford and Prime Sports Marketing, LLC to unlawfully obtain Ms. Ford's and Prime Sports Marketing, LLC's strategic Marketing Plan/Trade Secret and to further conceal Plaintiff's true intention to breach the April 20, 2019 Contractual Agreement which he knew he intended to and did, in fact, breach.

2.      Plaintiff and/or third parties acting on Plaintiff's behalf, after unlawfully obtaining Ms. Ford's and Prime Sports Marketing, LLC's strategic Marketing Plan/Trade Secret, provided it to third parties in furtherance of Plaintiff's, and/or third parties acting on Plaintiff's behalf, true intention of breaching the April 20, 2019 Contractual Agreement and in furtherance of Plaintiff's true intention to obtain financial benefits/compensation by utilizing Ms. Ford's and Prime Sports Marketing, LLC's strategic Marketing Plan/Trade

34

Secret without any intent of compensating Ms. Ford and Prime Sports Marketing, LLC to date.

3.    Plaintiff, and/or third parties acting on Plaintiff's behalf, demanded and took monies from Ms. Ford and Prime Sports Marketing, LLC that Plaintiff and/or third parties acting on Plaintiff's behalf falsely represented to Ms. Ford and Prime Sports Marketing, LLC that same monies would be an advance on the April 20, 2019, Contractual Agreement when and while Plaintiff, and/or third parties acting on Plaintiff's behalf, knew that Plaintiff's true intent was to breach the Contractual Agreement and keep the monies which, in fact, Plaintiff did and did so without returning and without any intent to present date of returning same monies to Ms. Ford and/or to Prime Sports Marketing, LLC. Ms. Ford and Prime Sports Marketing, LLC relied upon Plaintiff's, and/or third parties acting on Plaintiff's behalf, immoral and unconscionable conduct which caused and continues to cause damages and injuries to Ms. Ford and Prime Sports Marketing, LLC to present date.

## AS AND FOR MS. FORD'S AND PRIME SPORTS MARKETING, LLC'S EIGHTH AFFIRMATIVE DEFENSE

## UNJUST ENRICHMENT

Plaintiff has been conferred property and benefits including, but not limited to, monies and/or the proprietary information/Trade Secrets of Ms. Ford and of Prime Sports Marking, LLC and the benefits from the use thereof has conferred property and benefit on Plaintiff who has knowledge thereof without any compensation to Ms. Ford and/or to Prime Sports Marketing, LLC which, in turn, legally and equitably obligates Plaintiff to account for the benefits he has received and continues to receive to present date. Plaintiff have been unjustly enriched as he has received the foregoing property and benefits by and through his own improper conduct, as detailed below in the Counterclaims of solicitation and inducement to receive the foregoing and as Plaintiff has

35

not received same by accident or mistake. Plaintiff has improperly, voluntarily and intentionally accepted and retains the benefits conferred and, the circumstances are such that it would be inequitable for Plaintiff to retain the benefits without paying the value thereof to the Ms. Ford and to Prime Sports Marketing, LLC.

## AS AND FOR MS. FORD'S AND PRIME SPORTS MARKETING, LLC'S NINTH AFFIRMATIVE DEFENSE

## FAILURE TO STATE A CAUSE OF ACTION

Plaintiff's Complaint fails to state a claim upon which relief can be granted and is therefore barred pursuant to Federal Rules of Civil Procedure 12(b)(6) and Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.

## AS AND FOR MS. FORD'S AND PRIME SPORTS MARKETING, LLC'S TENTH AFFIRMATIVE DEFENSE

## FAILURE TO JOIN A NECESSARY PARTY

Plaintiff has failed to join a necessary party.

## AS AND FOR MS. FORDS AND PRIME SPORTS MARKETING, LLC'S ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's breach of the April 20, 2019 Contractual Agreement and his breach of the implied duty of good faith and fair dealings bars Plaintiff from any right of recovery herein.

## AS AND FOR MS. FORD'S AND PRIME SPORTS MARKETING, LLC'S TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's damage/recovery, if any, is barred by Plaintiff's failure to mitigate damages, or in the alternative that Plaintiff's damages/recovery, if any, must be reduced by those damages that Plaintiff failed to mitigate.

## AS AND FOR MS. FORD'S AND PRIME SPORTS MARKETING, LLC'S THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's damages/recovery, if any, is caused in whole by the culpable conduct of the Plaintiff with no conduct on the part of Ms. Ford and/or Prime Sports Marketing, LLC contributing thereto.

## AS AND FOR MS. FORD'S AND PRIME SPORTS MARKETING, LLC'S FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery as to all his claims herein as Plaintiff and/or a third party acting on Plaintiff's behalf has committed fraud, as detailed in Ms. Ford's and Prime Sports Marketing, LLC's Counterclaims below.

## AS AND FOR MS. FORD'S AND PRIME SPORTS MARKETING, LLC'S FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's action is barred as the laws of the State of Florida govern the April 20, 2019 Contract between the parties and the laws of North Carolina do not apply to the within dispute.

## AS AND FOR MS. FORD'S AND PRIME SPORTS MARKETING, LLC'S SIXTEENTH AFFIRMATIVE DEFENSE

## RATIFICATION

*Assuming arguendo* that the April 20, 2019 Contractual Agreement is voidable, Plaintiff is barred from all recovery, damages, relief and/or remedies herein including, but not limited to, being barred from obtaining declaratory judgment as by Plaintiff's, and/or third parties acting on Plaintiff's behalf, acts, words, deeds and/or conduct with full knowledge of the facts surrounding and relating to the April 20, 2019 Contractual Agreement, Plaintiff intended to and actually gave validity to the April 20, 2019 Contractual Agreement and to any and all circumstances and acts, or omissions surrounding same. The conduct of Plaintiff that supports Plaintiff being barred from

obtaining any relief herein and that ratified the April 20, 2019 Contractual Agreement herein include, but is not limited to:

1. Plaintiff and/or a third party acting on Plaintiff's behalf, after Plaintiff executed the April 20, 2019 Contract with full knowledge of the facts surrounding same Contract, demanded and received a monetary advance from Ms. Ford and Prime Sports Marketing, LLC;

2. Consistent with the terms and conditions of the April 20, 2019 Contractual Agreement, Plaintiff travelled to California with Ms. Ford, with Ms. Ford and Prime Sports Marketing, LLC representing Plaintiff as Plaintiff's Marketing Agent and Marketing Agency, where Plaintiff appeared in a nationally televised commercial promoting the movie *Hobbs and Shaw* for which payment for Plaintiff's services was tendered to Prime Sports Marketing, LLC. In turn, Prime Sports Marketing, LLC, from Florida, paid Plaintiff same compensation from the *Hobbs and Shaw* commercial and the compensation earned from Plaintiff's foregoing appearance was distributed to Plaintiff, Ms. Ford and Prime Sports Marketing, LLC in a manner consistent with the terms and conditions of the April 20, 2019 Contract;

3. Consistent with the terms and conditions of the April 20, 2019 Contractual Agreement, Ms. Ford and Prime Sports Marketing, LLC, as Plaintiff's Agent and Marketing Agency, negotiated, finalized and contracted a number of marketing deals and contracts on behalf of Plaintiff and, after these deals where finalized, Plaintiff breached the April 20, 2019 Contract but yet still performed, continues to perform and accepted/accepts compensation for/from the very same deals that Ms. Ford and Prime Sports Marketing, LLC negotiated on Plaintiff's behalf under the terms and conditions of the April 20,

38

2019 contract without tendering any compensation to Ms. Ford and/or Prime Sports

Marketing, LLC and without seeking to void performing under those contracts.

## AS AND FOR MS. FORD'S AND PRIME SPORTS MARKETING, LLC'S SEVENTEENTH AFFIRMATIVE DEFENSE

Ms. Ford and Prime Sports Marketing, LLC reserve the right to further assert any other

affirmative defenses that come to light through further investigation, during discovery or by

proof at trial.

## AS AND FOR DEFENDANTS PRIME SPORTS MARKETING, LLC'S AND GINA FORD'S COUNTERCLAIMS AGAINST PLAINTIFF ZION WILLIAMSON

1.      This is an action for counterclaims against Plaintiff ZION WILLIAMSON for

breach of contract, breach of the implied duty of good faith and fail dealings, fraud, tortuous

interference with a contract, civil conspiracy, unjust enrichment, misappropriation, violation of

North Carolina Trade Secrets Protection Act, Declaratory Judgment, Injunction Relief, Punitive

Damages, and related counterclaims, for damages in excess of One Hundred Fifty Thousand

Dollars ($150,000.00), exclusive of attorney's fees and costs.

## PARTIES

2.      Defendant PRIME SPORTS MARKETING, LLC is a Florida Limited Liability

Company, with its Principal Place of Business/Principle Office located at 13465 SW, 151 Terrace,

Miami, Florida 33186.

3.      Defendant GINA FORD is the President of Defendant PRIME SPORTS

MARKETING, LLC and is also a resident of the State of Florida.

4.      Plaintiff ZION WILLIAMSON is a resident of the State of South Carolina.

## INTERESTED/RELEVANT/RELATED ENTITIES AND INDIVIDUALS

Case 1:19-cv-00593-LCB-JLW   Document 54-1   Filed 02/17/21   Page 39 of 149

5.     CREATIVE ARTISTS AGENCY, LLC ("CAA") is a limited Liability Corporation with its Principal Place of Business located at 2000 Avenues of the Stars, Los Angeles, California, with additional headquarters located at 405 Lexington Avenue, 19th Floor, New York, New York 10174, with additional offices located at 420 Lincoln Road, Suite 307, Miami Beach, Florida 33139 and duly organized and existing under and by virtue of the Laws of the States of New York and/or California.

6.     AUSTIN BROWN ("Brown") is resident of the State of Illinois and is an Agent, NBA Agent, sports Agent, servant, employee, licensee of CAA.  Upon information and belief, Austin Brown, on behalf of CAA, is Plaintiff ZION WILLIAMSON'S current sports/NBA Agent.

7.     LISA JOSEPHS METELUS ("Metelus") is a resident of the State of Florida and is an Agent, marketing Agent, endorsements Agent, branding Agent, servant, employee, licensee of CAA.  Upon information and belief, Lisa Josephs Metelus, on behalf of CAA, is Plaintiff ZION WILLIAMSON'S current marketing/branding/endorsements Agent.

## GENERAL AND FACTUAL ALLEGATIONS.

8.     That all relevant times herein mentioned, Plaintiff ZION WILLIAMSON is an adult male of high intelligence with exceptional business acumen and one who is acutely cognizant of his value as a basketball superstar and of his branding, marketability and earning potential.

9.     That at all relevant times herein mentioned, upon information and belief, Plaintiff ZION WILLIAMSON, from a very early stage in his life, dreamed of and aspired to becoming a professional NBA player.

10.     That at all relevant times herein mentioned, upon information and belief, Plaintiff ZION WILLIAMSON, and those who advise and support him, including but not limited to his mother and stepfather, have embarked upon years of strategic maneuvering and decision-making

Case 1:19-cv-00593-LCB-JLW   Document 54-1   Filed 02/17/21   Page 40 of 149

to put Plaintiff ZION WILLIAMSON in the best suited position to achieve, at the earliest opportunity, his dream of becoming a professional NBA player and star.

11. That at all relevant times herein mentioned, upon information and belief, Plaintiff ZION WILLIAMSON has been and continues to be strategic in the planning of his collegiate and professional basketball career including, but not limited to, his intentional and knowing decision to attend Duke University—a decision which stunned the basketball community and fans of Clemson University and, as well as, his intentional and knowing decision to be and declare himself as an early-entrant to/for the 2019 NBA Draft.

12. That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON has been declared by NBA experts to be one of the most dominant collegiate players in recent history who has received numerous awards for his basketball athleticism and high-ranking records and averages.

13. That at all relevant times herein mentioned, based upon his performance as the high-flying dominant forward of Duke University's male basketball team, many basketball experts opined and continued to opine that Plaintiff ZION WILLIAMSON, should he declare his eligibility for the 2019 NBA Draft, would most likely be the No. 1 Draft pick whose marketability could rival that and/or surpass NBA legends including, but not limited to: LeBron James, Kobe Bryant and Michael Jordan.

14. That at all relevant times herein mentioned, based upon his exceptional basketball ability exhibited from when he first started playing with Duke from the early stages of the 2018-2019 NCAA basketball season, coupled with his personality, his demonstrated intelligence and his overall presentation, experts opined and continued to opine that Plaintiff ZION WILLIAMSON

41

potentially, within a short time, would garner financial revenue of approximately One Billion Dollars from endorsements, deals and an NBA contract.

15.     That at all relevant times herein mentioned, in or about before January 2019 and continuing thereafter, Plaintiff ZION WILLIAMSON, with the support and advice of his mother and stepfather, started their strategic and analytical assessment as to which NBA team, which marketing agent/agency, which athletic companies and which associations and/or relationships would best serve to place Plaintiff ZION WILLIAMSON in the best strategic position to not only play in the NBA, but, to secure his placement as the 2019 No. 1 Draft pick and to maximize his monetary potential as an NBA superstar who may realize revenues of One Billion Dollars or more in the immediate years to come.

16.     That at all relevant times herein mentioned, in the early stages of the 2018-2019 NCAA season, Plaintiff ZION WILLIAMSON became a national collegiate basketball sensation and based on this exposure, Plaintiff ZION WILLIAMSON, with his mother and stepfather, desired that Plaintiff ZION WILLIAMSON not only become a national sensation, but, that he become an international, worldwide, marketable and rainmaking superstar in order to attract both domestic and international/worldwide endorsements and opportunities.

17.     That at all relevant times herein mentioned, upon information and belief, Plaintiff ZION WILLIAMSON, with his mother and stepfather, knowingly, voluntarily, intelligently and strategically began to research and evaluate which marketing firms and/or agents would best serve to help propel Plaintiff ZION WILLIAMSON to become this marketable, international and worldwide rainmaking superstar.

18.     That at all relevant times herein mentioned, upon information and belief, Plaintiff ZION WILLIAMSON with his mother and stepfather, through their research, identified and

learned of Defendants PRIME SPORTS MARKETING, LLC and GINA FORD and of their proven history of successful domestic and international branding and marketing of athletes.

19.    That at all relevant times herein mentioned, in or about February 2019, after sustaining physical injury while playing for Duke University, upon information and belief, Plaintiff ZION WILLIAMSON realized that continuing to play at the collegiate level and risking injury could jeopardize his dream of becoming an NBA player and his dream of becoming not only a national sensation, but, that he become an international, worldwide, marketable and rainmaking superstar in order to attract both domestic and international/worldwide endorsements and opportunities.

20.    That at all relevant times herein mentioned, from in or about prior to March 2019 and continuing thereafter, Plaintiff ZION WILIAMSON, having already been publicly declared by experts to be the potential No. 1 2019 NBA Draft pick, and having realized that he risks sustaining career ending injury while still at the collegiate playing level, repeatedly, continuously, publicly and privately stated and declared that he would absolutely be declaring as an early entrant for the 2019 NBA Draft and that even though he returned post injury to play with his team out of loyalty, once he declares, he absolutely would not and will not be returning to play for Duke University nor be returning to play as a collegiate basketball player.

21.    That on or about April 15, 2019, Plaintiff ZION WILLIAMSON publicly declared eligible for the 2019 NBA draft and, at that time and thereafter, he did not intend to return to Duke University as a "student athlete" as it was his intent to end his collegiate career.

22.    That on or before April 15, 2019, and at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON and his mother and stepfather knew and/or had reasons to know that he was projected to be and that he would, in fact, be the No. 1 Draft pick for the 2019 NBA

43

Draft and that, as the No. 1 Draft pick, Plaintiff ZION WILLIAMSON in addition to and separate and apart from endorsements, would immediately be signing a multi-million dollar NBA contract once picked.

23. That at all relevant times herein mentioned, unlike other NCAA collegiate basketball athletes who may be testing the waters by declaring for the 2019 NBA Draft, Plaintiff ZION WILLIAMSON, with his mother and stepfather, knew and/or had reasons to know that Plaintiff ZION WILLIAMSON was not testing the waters by declaring for the 2019 NBA Draft and that, for all intent and purpose, knew that he would be drafted, knew that he would be drafted as the No. 1 Draft pick, knew that he would be accepting whichever team selected him and knew that he was never returning to play collegiate basketball ever again.

24. That Plaintiff ZION WILLIAMSON, with his mother and stepfather, continued to publicly declare, in sum and substance, that while playing for Duke University may have been the best year of his life up until that point, he was not returning to Duke nor to any collegiate basketball because the reality in which Plaintiff ZION WILLIAMSON lives is one in which he wants to realize his ultimate dream of playing in the NBA and taking care of his family.

25. That all relevant times herein mentioned, on or about March 13, 2019, the NCAA issued a Memorandum to the NCAA Division 1 Directors of Athletics, Senior Compliance Administrators and Men's Basketball Head Coaches detailing and highlighting the important NCAA rules related to maintaining NCAA eligibility while "testing the waters" with the 2019 NBA Draft. *Annexed hereto and made a part hereof as Exhibit "A" is a copy of the March 13, 2019 NCAA Memorandum.*

44

26.    That the March 13, 2019 NCAA Memorandum details and highlights the rules governing men's basketball "student-athlete" eligibility and ineligibility and, in particular, those governing the 2019 NBA Draft, as follows:

"A men's basketball student-athlete will **lose** his eligibility IF:

*Nos. 1-6 below are NEW IN 2019!*

9.   He enters the NBA Draft without requesting an Undergraduate Advisory Committee evaluation from the NBA.

10.  He agrees orally or in writing to be represented by any individual other than a NCAA–certified agent.

11.  He accepts any benefits from an individual other than a NCAA-certified agent.

12.  He accepts any benefits from a NCAA-certified agent that are not expressly permitted by the NCAA legislation or outside of the permissible timeframe allowed by NCAA legislation.

13.  He participates in a tryout with a NBA team that lasts longer than 48 hours (exception for the NBA Draft Combine and G League Elite Camp held in connection with the Combine), which he has not personally financed, or a NCAA-certified agent has not financed.

14.  He misses class to participate in a tryout, including travel to and from the tryout (exception for the NBA Draft Combine and G League Elite Camp held in connection with the Combine).

15.  He enters the NBA Draft AND does not take the appropriate steps to withdraw and declare his intention to resume intercollegiate participation.

16.  He enters the NBA Draft AND is drafted by a professional team.

**It is important to note that an institution may cancel a student-athlete's athletic scholarship if he has an agreement with a non-NCAA certified agent or otherwise jeopardizes his eligibility during this process.**"

See Exhibit "A", *supra.*

27.    That upon information and belief, on or about March 13, 2019 and prior to April 15, 2019, and at all relevant times herein mentioned, the March 13, 2019 NCAA Memorandum regarding the NCAA rules for the eligibility and ineligibility of the men's basketball "student-

45

athletes" for the 2019 NBA Draft, was provided to Duke University and, in particular, to Duke University's men's basketball head Coach who was, at that time, the coach of Plaintiff ZION WILLIAMSON.

28.    That upon information and belief, and at all relevant times herein mentioned, on or about March 13, 2019 and before April 15, 2019, Duke University and/or its Head Coach, and/or men's basketball coaching staff, consistent with the spirit and intent of the NCAA March 13, 2019 Memorandum informed, instructed, advised, discussed, explained, and provided a copy of the NCAA March 13, 2019 Memorandum to the entire Duke University's men's basketball team and, in particular, to Plaintiff ZION WILLIAMSON.

29.    That at all relevant times herein mentioned, upon information and belief, in addition to other conduct/acts, and as a manifest demonstration that Plaintiff ZION WILLIAMSON did not, would not and will not return to Duke University or any other collegiate basketball, prior to April 20, 2019 Plaintiff ZION WILLIAMSON engaged in conduct/acts that rendered and renders him ***ineligible to be or remain a "student-athlete"*** including, but not limited to:

(a)    He agrees orally or in writing to be represented by any individual other than a NCAA-certified agent;

(b)    He accepts any benefits from an individual other than a NCAA-certified agent; and

(c)    He entered the NBA Draft AND did not intend to and did not take the appropriate steps to withdraw and declare any intention of resuming intercollegiate participation and, in fact, repeatedly and publicly declared and made it abundantly clear that he was **not** ever returning to intercollegiate basketball.

46

30.     That at all relevant times herein mentioned, prior to April 20, 2019 and prior to Plaintiff ZION WILLIAMSON attending Duke University, Plaintiff was not a "student-athlete" and/or lost and/or forfeited his eligibility to be/remain a "student-athlete" because Plaintiff, and/or a third-party acting on his behalf including but not limited to Plaintiff's mother and/or stepfather, long before Plaintiff attended Duke University and long before Plaintiff had any contacts with Defendants herein and prior to April 20, 2019, accepted, received, requested and/or solicited improper/prohibited benefits from non-NCAA certified agents including, but not limited to, monies from/by Nike to, upon information and belief, improperly and unlawfully recruit Plaintiff to attend Duke University—a Nike sponsored University.

31.     That at all relevant times herein mentioned, prior to April 20, 2019 and prior to Plaintiff ZION WILLIAMSON attending Duke University, Plaintiff's ineligibility to be and/or remain a "student-athlete" and/or his loss and/or forfeiture of his eligibility to be/remain a "student-athlete" is evidenced by/in documents filed with the United States District Court, Southern District of New York, to wit: text messages dated in **February 2017**, prior to Plaintiff attending Duke and prior to Plaintiff meeting Ms. Ford, by and between Nike EYBL men's basketball executives Carlton DeBose and Jamal James and Nike Recruiting Coordinator John Stovall, discussing financial offerings made by Nike to Plaintiff that rendered Plaintiff ineligible to ever be a "student-athlete" and rendered him not a "student-athlete" long before Plaintiff ever attended Duke University.  *Annexed hereto and made a part hereof as Exhibit "B"* are true and accurate copies of publicly filed text messages from the Southern District of New York Docket, Case No.: 1:19-cr-00373-PGG.

32.     That at all relevant times herein mentioned, prior to April 20, 2019 and prior to Plaintiff ZION WILLIAMSON attending Duke University, Plaintiff's ineligibility to ever be

and/or remain a "student-athlete" and/or his loss and/or forfeiture of his eligibility to be/remain a "student-athlete" long before Plaintiff ever attended Duke University, and prior to Plaintiff having any contact with Defendants and prior to April 20, 2019, is evidenced by the following <u>February 2017</u> text messages by and between Nike EYBL executives Debose and James and Nike Recruiting Coordinator John Stovall:

> **On February 11, 2017, a text message to Jamal James states: "…just remember that…Zion deals are NOT done yet. We are still in it. Just want u to remember that possible financial obligation also".  <u>Id.</u>  A February 11, 2017 text message from James to Debose states that James: "…just told them we could do the 30k too."  <u>Id.</u>  In response, on February 11, 2017, it was texted:   "…We're  still  in  there  for Zion…??! I thought that ship had sailed".  <u>Id.</u>  In response, on same date, James receives a text stating: "Nope. Still at the dock. Hoping to have news next week".  <u>Id.</u>**

33.     That at all relevant times herein mentioned, prior to April 20, 2019 and prior to Plaintiff ZION WILLIAMSON attending Duke University, Plaintiff's ineligibility to ever be and/or remain a "student-athlete" and/or his loss and/or forfeiture of his eligibility to be/remain a "student-athlete" long before Plaintiff ever attended Duke University, and prior to Plaintiff having any contact with Defendants and prior to April 20, 2019, is evidenced by the following <u>February 2017</u> text messages by and between Nike EYBL executives Debose and James and Nike Recruiting Coordinator John Stovall:

> **On February 12, 2017, Stovall texts: "…Are we willing to do …whatever may be needed for the Zion…situations…"  <u>Id.</u>  On same February 12, 2017, James receives a text confirming: "…Zion – 35 plus…"   and Stovall texts that he is: "…willing to spend to cripple adidas…is more than worth me spinning the approximate 100k to support the efforts…I will figure out the money part."  <u>Id.</u>  On February 28, 2017, it was texted: "…Update on Williamson?"  and on same date, James receives a response stating: "Nothing yet. Norm had not talked to them directly in a couple of days. Still has not presented our new offer.  Only hinted at it.  He did not want to put it in print which I agreed with."  <u>Id.</u>**

34.     That at all relevant times herein mentioned, in addition to rendering himself <u>ineligible</u> to be a "student-athlete" requesting, soliciting and/or receiving monies from Nike long

48

before Plaintiff ZION WILLIAMSON ever attended Duke University, at all relevant times herein mentioned and prior to April 20, 2019 and prior to Plaintiff ever attending Duke University, Plaintiff and/or a third party acting on his behalf including but not limited to his mother and/or stepfather, accepted, received, requested and/or solicited improper/prohibited benefits from non-NCAA certified agents including, but not limited to: monies, housing and/or employment from/by Adidas to, upon information and belief, improperly and unlawfully recruit Plaintiff to attend Kansas University – an Adidas sponsored University.

35.     That at all relevant times herein mentioned, prior to April 20, 2019 and prior to Plaintiff ZION WILLIAMSON attending Duke University, Plaintiff's ineligibility to ever be and/or remain a "student-athlete" and/or his loss and/or forfeiture of his eligibility to be/remain a "student-athlete" long before Plaintiff ever attended Duke University, and prior to Plaintiff having any contact with Defendants and prior to April 20, 2019, is evidenced by documents filed with the United States District Court, Southern District of New York, in a publicly filed trial transcript in Case No.: 1:17-cr-686-LAK, in which evidence of Adidas improperly and unlawfully offering prohibited benefits to/for Plaintiff in 2017-2018 was caught on wiretap. *Annexed hereto and made a part hereof as Exhibit "C" is a true and correct copy of relevant pages of official Court trial transcript, Case No.: 1:17-cr-686-LAK.*

36.     That at all relevant times herein mentioned, prior to April 20, 2019 and prior to Plaintiff ZION WILLIAMSON attending Duke University, Plaintiff's ineligibility to ever be and/or remain a "student-athlete" and/or his loss and/or forfeiture of his eligibility to be/remain a "student-athlete" long before Plaintiff ever attended Duke University, and prior to Plaintiff having any contact with Defendants and prior to April 20, 2019, is evidenced by wiretap conversation(s) that were offered as evidence regarding improper benefits being offered by Kansas Assistant

Coach Kurtis Townsend to Plaintiff in 2017-2018 -- before Plaintiff ever attended Duke and before

he met Ms. Ford. See id. In said wiretap conversations, Mr. Merl Code of Adidas and Mr. Kurtis

Townsend of Kansas University discussed paying Plaintiff to attend Kansas and discussed requests

for improper benefits from Kansas University that were made by Plaintiff and/or a third party

acting on Plaintiff's behalf. See id.

37.     That at all relevant times herein mentioned, prior to April 20, 2019 and prior to

Plaintiff ZION WILLIAMSON attending Duke University, Plaintiff's ineligibility to ever be

and/or remain a "student-athlete" and/or his loss and/or forfeiture of his eligibility to be/remain a

"student-athlete" long before Plaintiff ever attended Duke University, and prior to Plaintiff having

any contact with Defendants and prior to April 20, 2019, is evidenced by the following publicly

filed trial transcript of the wiretap conversation between Mr. Code and Mr. Townsend:

> **"In this call between Mr. Code and Mr. Townsend, Mr. Townsend says…when they
> are referring to … Zion Williams[on]: '…between me and you…he asked about some
> stuff…I said, well, we'll talk about that you decide.' …Mr. Code says: 'I know what
> he's asking for.'  This is the player. 'He's asking for opportunities from an
> occupational perspective.  He's asking for money in the pocket.  And he's asking for
> housing for him and his family.'…Mr. Townsend says: 'so, I've got to just try to work
> and figure out a way.  Because if that's what it takes to get him for ten months, we're
> going to have to do it some way.'"  Id.**

38.     That at all relevant times herein mentioned, upon information and belief based upon

public news, in and around 2016-2017 – long before Plaintiff ZION WILLIAMSON ever attended

Duke University and long before he ever had any contact/meeting with Defendants - Nike was

reported to have paid Plaintiff's mother Sharonda Sampson for alleged "consulting services" and

to be an alleged "consultant" to Nike when Ms. Sampson's background and experience was as a

middle school teacher.  That at all relevant times herein mentioned, this improper employment

benefit/monies paid to Plaintiff's mother by Nike was, upon information and belief, the improper

and unlawful recruitment of Plaintiff to attend Duke University – a Nike sponsored University.

50

39.     That at all relevant times herein mentioned, in addition to the foregoing improper and unlawful benefits, monies, housing and/or employment that Plaintiff ZION WILLIAMSON, and/or a third party acting on his behalf including but not limited to his mother and/or stepfather, received, accepted, requested and/or solicited from Nike, Adidas, Duke University and/or Kansas University, Plaintiff ZION WILLIAMSON was not a "student-athlete" and was never eligible to be a "student-athlete" long before Plaintiff had any contact with the Defendants and prior to April 20, 2019 as Plaintiff, his mother and/or stepfather, upon information and belief and based upon a DMV records search, received, accepted, requested and/or solicited the following improper benefits from non-NCAA certified agents including, but not limited to, acquiring the following vehicles:

a.     A 2018 Mercedes Benz G Wagon: registered in <u>April 2019</u> to Plaintiff's stepfather without record of lien holder;

b.     A 2016 GMC Yukon: registered to Plaintiff's stepfather <u>in December 2017</u>;

c.     A 2015 Cadillac Escalade: registered to Plaintiff's mother <u>in February 2018</u>.

40.     That at all relevant times herein mentioned, in addition to the foregoing improper and unlawful benefits, monies, housing and/or employment that Plaintiff ZION WILLIAMSON, and/or a third party acting on his behalf including but not limited to his mother and/or stepfather received, accepted, requested and/or solicited from Nike, Adidas, Duke University and/or Kansas University, Plaintiff ZION WILLIAMSON was not a "student-athlete" and was never eligible to be a "student-athlete" long before Plaintiff had any contact with the Defendants and prior to April 20, 2019 as, on April 12, 2019, pursuant to public records, SSA Enterprises LLC was registered in South Carolina <u>three days before Plaintiff declared for the 2019 NBA Draft and eight days before Plaintiff entered into the Contract with Defendants herein,</u> with Plaintiff's mother as the registered

agent. Pursuant to public records, thereafter, and <u>before Creative Artists Agency announced that it had signed Plaintiff to an all-inclusive contract including to serve as his marketing agent in interference with and breach of Plaintiff's April 20, 2019 Contract with Defendants,</u> Plaintiff's mother through her company SSA Enterprises LLC purchased a house in South Carolina for $730,000.00. *Annexed hereto and made a part hereof as Exhibit "D", are true and accurate copy of the Registration of SSA Enterprises and of the deed/title to and picture of the $730,000.00 South Carolina house.* Further, based upon the Recorder of Deeds, the purchase of the foregoing house may have been a cash purchase as there is no mortgage recorded for same and was purchased at a time when **Plaintiff was not yet drafted to the NBA and/or Plaintiff's parents were not employed.**

41. That at all relevant times herein mentioned, in addition to the foregoing $730,000.00 South Carolina house and prior to attending Duke University, Plaintiff ZION WILLIAMSON and his family resided in a South Carolina property which, upon a search of public records, in or about the time they first rented the property, the rent was approximately $895.00 a month and which property is valued at approximately $153,000.00. *Annexed hereto and made a part hereof as Exhibit "E", is a picture of the South Carolina rental property with estimated market value*; https://www.zillow.com/homedetails/445-W-Emerald-Springs-Dr-Boiling-Springs-SC-29316/58165402_zpid/.

42. That at all relevant times herein mentioned, after Plaintiff ZION WILLIAMSON selected Duke University, over Kansas and Clemson Universities, and moved to North Carolina from the aforementioned rental property in South Carolina, he and his family resided in a property which was valued at approximately $950,000.00 at that time and for which the monthly rent was listed at $4,995.00. See https://www.zillow.com/homedetails/81-edgewood-Dr-Durham-NC-

27713/84510117_zpid/.  *Annexed hereto and made a part hereof as Exhibit "F" is a true and accurate copy of deed/title to and picture of property.*

43.     That at all relevant times herein mentioned, upon information and belief and a search of public records, the foregoing $950,000.00 North Carolina home with a $4,995.00 monthly rent was owned by a Mr. Thomas Morris and was provided to Plaintiff ZION WILLIAMSON and his family to reside in while Plaintiff attended his first and only year at Duke University at a time when **Plaintiff was not yet drafted to the NBA and/or when his parents were unemployed.**  See id.    Further, upon information and belief, the one year's rent for the foregoing $950,000.00 North Carolina home was paid upfront in one full lump sum to the real estate broker assigned to the listing in a certified check by/from Plaintiff's mother and/or stepfather at a time when **Plaintiff was not yet drafted to the NBA and/or when his parents were unemployed.**

44.     That at all relevant times herein mentioned, prior to Plaintiff ZION WILLIAMSON ever having any contact with Defendants and prior to April 20, 2019, Plaintiff was never a "student-athlete" and was permanently ineligible to ever be/remain/be eligible to be a "student-athlete" as Plaintiff and/or a third party acting on his behalf, entered into an agreement and agreed for Plaintiff to be represented by a non-NCAA certified agent which rendered Plaintiff ineligible to be and/or to ever be and/or to be eligible to ever be a "student-athlete".  To that end, Plaintiff, and/or a third party acting on Plaintiff's behalf, had improperly and unlawfully received financial compensation in or about **October of 2018** from Mr. Slavko Duric, who is President of Maximum Management Group, Inc. ("MMG") in exchange for Plaintiff's oral agreement to be represented for Marketing purposes by MMG when Plaintiff finishes his first year at Duke University in 2019. *Annexed hereto and made a part hereof as Exhibit "G" is the Affidavit of Mr. Donald Kreiss and*

53

*the Exhibits attached thereto;* see Kreiss's Affidavit at Exhibit "A", copy of Letter of Declaration acknowledging October 2018 monies executed by Plaintiff and Plaintiff's stepfather.

45.     That at all relevant times herein mentioned, MMG is a sports marketing agency based in Burlington, Ontario Canada and represents athletes in Canada, United States and Europe. See Exhibit "G" at ¶¶ 5, 6.

46.     That at all relevant times herein mentioned, Mr. Kreiss committed to serving on the marketing team of MMG to assist Duric and MMG in marketing Plaintiff ZION WILLIAMSON based upon Plaintiff's commitment to have MMG serve as Plaintiff's exclusive marketing agency. See id. at ¶¶5-7, 9, 10.

47.     That at all relevant times herein mentioned, after Plaintiff ZION WILLIAMSON'S oral agreement to be represented by MMG and after already receiving financial compensation from Duric/MMG in exchange for said oral agreement of representation in October 2018, Plaintiff thereafter executed a written Marketing Agreement/Contract with MMG for MMG to serve as Plaintiff's marketing agent/agency.  See id.at Exhibit "B", copy of Marketing contract between Plaintiff and MMG.

48.     That at all relevant times herein mentioned, after receiving the executed MMG contract, Mr. Kreiss learned that Plaintiff ZION WILLIAMSON had breached the MMG contract by signing with Creative Artist Agency, ("CAA") – a co-defendant in the related Florida Action. Mr. Kreiss attests that, as a result of breaching the MMG contract, Plaintiff and Plaintiff's stepfather Lee Anderson agreed and promised to pay MMG between Seven and Ten Million Dollars ($7,000,000.00-$10,000,000.00) for breaching the MMG contract and signing with Creative Artists Agency.  See id. at ¶¶ 12-14.

49.     That at all relevant times herein mentioned, in an effort to assure payment by Plaintiff ZION WILLIAMSON and Plaintiff's stepfather Lee Anderson for breaching the MMG contract and signing with CAA, Duric arranged a joint telephone call with Duric, Kreiss and Plaintiff's stepfather Lee Anderson.  During this joint telephone call with Lee Anderson and Duric, Plaintiff's stepfather Lee Anderson confirmed to Kreiss the deal that Duric had with Plaintiff and Plaintiff's stepfather Lee Anderson to pay Duric/MMG for breaching the MMG contract by signing with CAA, and, Plaintiff's stepfather Lee Anderson further promised to "make it right" and to "draw up something and get it to you[Duric/Kreiss]" as Plaintiff had "money coming in the first week of January 2020".  Plaintiff's stepfather Lee Anderson further told Kreiss that they would be happy with what he (Plaintiff's stepfather Lee Anderson) was going to send them on behalf of himself and Plaintiff for breaching the MMG contract.  See id.  at ¶¶ 12-14.

50.     That at all relevant times herein mentioned, subsequent to the aforementioned joint telephone call with Kreiss, Plaintiff's stepfather Lee Anderson and Duric, on or about December 8, 2019, as promised by Lee Anderson during the foregoing joint telephone call, Kreiss received a document executed by Plaintiff ZION WILLIAMSON and by Plaintiff's stepfather Lee Anderson captioned "Letter of Declaration" in which both Plaintiff and Plaintiff's stepfather declared and promised: "to pay to Mr. Duric as President of Maximum Management Group, Inc., the sum of $500,000.00 on or before January 7, 2020 for a repayment of a loan rendered by him to our family in **October 10, 2018**" which was accompanied by a color picture of Plaintiff's South Carolina Identification.  See id. at ¶¶ 18-19 and at Exhibit "A".

51.     That at all relevant times herein mentioned, upon information and belief, the monies which Plaintiff ZION WILLIAMSON and Plaintiff's family received from Duric/MMG in **October 2018** were monies paid and tendered to Plaintiff and/or to Plaintiff's family in exchange

55

and in return for Plaintiff's agreement in October of 2018 with MMG for MMG to serve as Plaintiff's exclusive marketing agency, and, same October 2018 monies were not a loan despite Plaintiff's and Plaintiff's stepfather Lee Anderson's attempt to identify same monies as an alleged "loan" in the aforementioned "Letter of Declaration". See id. at ¶ 20 and at Exhibit "A".

52.     That at all relevant times herein mentioned, upon information and belief, Plaintiff ZION WILLIAMSON'S and Plaintiff's stepfather Lee Anderson's characterization of the October 2018 monies as a "loan" was an attempt by Plaintiff and/or his family to conceal the true nature, purpose and reason for the October 2018 money exchange by MMG, to wit:  for MMG to obtain the exclusive marketing contract of Plaintiff Zion Williamson. See id. at ¶¶ 19-20.

53.     That at all relevant times herein mentioned, the signature of Plaintiff ZION WILLIAMSON on the "Letter of Declaration", and the accompanying color copy of Plaintiff's South Carolina photo identification, are identical to his signatures on the April 20, 2019 Marketing Agreement with Defendant Prime Sports Marketing, LLC and to his signature on his South Carolina Driver's License that accompanied the April 20, 2019 Contract with Defendants. See Exhibit "G" at Exhibits "A" and "B"; *Annexed hereto and made a part hereof as Exhibit "H" is a copy of Plaintiff's South Carolina photo identification provided by Plaintiff to Defendants in accompaniment and furtherance of his execution of the April 20, 2019 Contract with Defendants.*

54.     That at all relevant times herein mentioned, in addition to all the foregoing, upon information and belief, and according to Plaintiff ZION WILLIAMSON himself, prior to any contact Plaintiff had with Defendants and prior to April 20, 2019, Coach K from Duke University and as the head coach of the men's basketball team at Duke University, made improper promises to Plaintiff in order to induce Plaintiff to attend Duke University.  In a statement attributed to

56

Plaintiff himself as to promises made by Coach K to induce him to attend Duke University, and what Plaintiff states convinced Plaintiff to attend Duke University, Plaintiff states:

> **"When Coach K came to my house and spoke to me and my family, it wasn't just about basketball and <u>what he could do for me in one year…It was how he can build Zion as a brand on and off the court for like the next 20 years or the rest of my life</u>".**

<u>See</u> "*Zion Williamson's Parents: 5 fast Facts you Need to Know",* https://heavy.com/sports/2019/03/zion-williamson-parents-mom-dad-family/.

55.    That at all relevant times herein mentioned, the foregoing promise alone by Coach K to Plaintiff ZION WILLIAMSON rendered Plaintiff ineligible to ever be a "student-athlete" as Plaintiff <u>lost his amateur status and was rendered permanently ineligible</u> for intercollegiate basketball if Plaintiff, among other things: "…**Accepts a promise of pay even if such pay is to be received following completion of intercollegiate athletics participation…"** <u>See</u> NCAA 2018-2019 NCAA Division I Manual §12.1.2.

56.    That at all relevant times herein mentioned, upon information and belief, Plaintiff ZION WILLIAMSON, his mother and/or stepfather conspired together to conceal and had personal and financial incentive to conceal, from Duke University, from the NCAA and/or from local and federal criminal authorities, all of the improper monies, employment, housing and/or other improper and unlawful/prohibited benefits and/or promises of benefits that Plaintiff, his mother, his stepfather and/or third party(ies) acting on Plaintiff's behalf received, accepted, requested and/or solicited from/by Nike, Adidas, Duke University, Coach K from Duke University, Thomas Morris, Merl Code, Kansas University, Coach Townsend from Kansas University, Slavko Duric, MMG and others that rendered Plaintiff permanently ineligible to be, ever be and/or remain a "student-athlete" as set forth above and as evidenced herein.

57.     That at all relevant times herein, upon information and belief, CAA not only represents Coach K but is also a business partner with Coach K in a separate venture and, as CAA also represents Plaintiff ZION WILLIAMSON herein, Coach K and CAA have incentive to conceal and/or turn a blind eye to Plaintiff's ineligibility to ever be a "student-athlete" and that Plaintiff was rendered permanently ineligible to ever be a "student-athlete" long before Plaintiff ever attended Duke University, long before Plaintiff ever had any contact with Defendants and long before April 20, 2019.

58.     That at all relevant times herein mentioned, upon information and belief, any alleged investigation by Duke University into allegations that Plaintiff ZION WILLIAMSON and/or his mother, stepfather and/or third party(ies) acting on Plaintiff's behalf received, accepted, requested and/or solicited improper benefits, promises, monies, employment and/or housing that would render Plaintiff ineligible to be or remain a "student-athlete" and/or that would render Plaintiff ineligible to play intercollegiate basketball for Duke University, was not a true investigation and did not require nor ask Plaintiff, his mother nor his stepfather to answer **any questions under oath** as to any improper benefits, promises, monies, employment and/or housing or otherwise that Plaintiff, his mother, his stepfather and/or any third party(ies) acting on Plaintiff's behalf received, accepted, requested and/or solicited prior to and/or while Plaintiff attended Duke University including, but not limited to, any questions under oath about any monies, employment, housing, and/or promises by/with Nike, Coach K, Adidas, Merl Code, Kansas University, Coach Townsend from Kansas University, Mr. Thomas Morris, Slavko Duric, MMG and/or otherwise.

59.     That at all relevant times herein mentioned, upon information and belief, Coach K and/or Duke University had incentives to conceal the improper benefits, promises, monies, employment and/or housing or otherwise that Plaintiff ZION WILLIAMSON, his mother, his

stepfather and/or any third party(ies) acting on Plaintiff's behalf received, accepted, requested and/or solicited prior to and/or while Plaintiff attended Duke University from the authorities, local and federal, as well as conceal same from the NCAA and further had incentives not to have any agency, entity and/or criminal authorities find Plaintiff ineligible to ever be, to be and/or to remain a "student-athlete".

60.    That at all relevant times herein mentioned, despite the highly publicized allegations and/or evidence against Plaintiff ZION WILLIAMSON, his mother and/or stepfather about the improper benefits, promises, monies, employment and/or housing or otherwise that Plaintiff, his mother, his stepfather and/or any third party(ies) acting on Plaintiff's behalf received, accepted, requested and/or solicited prior to and/or while Plaintiff attended Duke University, including but not limited to the aforementioned Nike text messages and the aforementioned wiretap conversations by Merl Code of Adidas and Coach Townsend of Kansas University, the NCAA never conducted any investigation into same as, upon information and belief, either same improper benefits, promises, monies, employment and/or housing or otherwise that Plaintiff, his mother, his stepfather and/or any third party(ies) acting on Plaintiff's behalf received, accepted, requested and/or solicited prior to and/or while Plaintiff attended Duke University were concealed from the NCAA and/or the NCAA, despite knowing of same and/or learning of the allegations of same, ignore same, intentionally chose not to conduct any investigation into same, and/or, intentionally elected not to find/render Plaintiff ineligible to be and/or ineligible to remain a "student-athlete."

61.    That at all relevant times herein mentioned, the NCAA had incentives not to conduct any investigation of/into the allegations of the improper benefits, promises, monies, employment and/or housing or otherwise that Plaintiff ZION WILLIAMSON, his mother, his

59

stepfather and/or any third party(ies) acting on Plaintiff's behalf received, accepted, requested and/or solicited prior to and/or while Plaintiff attended Duke University and had incentives not to find/render Plaintiff ineligible to ever be, to be and/or to remain a "student-athlete".

62.     That at all relevant times herein mentioned and prior to any contact Plaintiff ZION WILLIAMSON had with Defendants, Plaintiff did not disclose to Duke University that he had received financial compensation/monies and/or other prohibited benefits that rendered him ineligible to ever be a "student-athlete" including, but not limited to, failing to disclose any monies, employment, housing, and/or promises by/with Nike, Coach K, Adidas, Merl Code, Kansas University, Coach Townsend from Kansas University, Mr. Thomas Morris, Slavko Duric, MMG and/or otherwise that Plaintiff, his mother, his stepfather and/or third party(ies) acting on Plaintiff's behalf received, requested, accepted and/or solicited prior to Plaintiff attending Duke University and while Plaintiff attended Duke University.

63.     That at all relevant times herein mentioned, and prior to any contact Plaintiff ZION WILLIAMSON had with Defendants, Plaintiff, did not disclose to the NCAA that he had received financial compensation/monies and/or other prohibited benefits that rendered him ineligible to ever be a "student-athlete" including, but not limited to, failing to disclose any monies, employment, housing, and/or promises by/with Nike, Coach K, Adidas, Merl Code, Kansas University, Coach Townsend from Kansas University, Mr. Thomas Morris, Slavko Duric, MMG and/or otherwise that Plaintiff, his mother, his stepfather and/or third party(ies) acting on Plaintiff's behalf received, requested, accepted and/or solicited prior to Plaintiff attending Duke University, while Plaintiff attended Duke University and prior to April 20, 2019.

60

64.    That from prior to April 15, 2019 and continuing to on or about April 20, 2019, and at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON was not and was never a "student-athlete".

65.    That, upon information and belief, prior to April 20, 2019, Plaintiff ZION WILLIAMSON entered the NBA Draft and did not intend to and did not take the appropriate steps to withdraw and declare any intention of resuming intercollegiate participation.

66.    That, upon information and belief, prior to April 20, 2019, Plaintiff ZION WILLIAMSON, in fact, repeatedly and publicly declared, making it abundantly clear, that he was **not** ever returning to intercollegiate basketball.

67.    That, at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON with his mother and stepfather, having researched and identified Defendants PRIME SPORTS MARKETING, LLC and GINA FORD and having assessed Defendants to be the best marketing firm/agent for Plaintiff's desire to become a national and international/worldwide marketable professional athlete, sought out and contacted and/or requested to meet with Defendants in furtherance of retaining Defendants PRIME SPORTS MARKETING, LLC and GINA FORD to serve as Plaintiff ZION WILLIAMSON's exclusive marketing, branding and endorsement firm and agent to make Plaintiff ZION WILLIAMSON an international and worldwide marketable and rainmaking superstar in order to attract both domestic and international/worldwide endorsements and opportunities.

68.    That on or about April 19, 2019, and at all relevant times herein mentioned, upon information and belief, in furtherance of Plaintiff ZION WILLIAMSON's desire to become a national and international/worldwide marketable professional athlete, Plaintiff ZION WILLIAMSON with his mother and stepfather contacted, caused to be contacted and invited

and/or caused Defendant GINA FORD to be invited to where Plaintiff ZION WILLIAMSON then resided to discuss and negotiate Defendants' exclusive representation of Plaintiff ZION WILLIAMSON for marketing, branding and endorsement opportunities and further to discuss and negotiate the contract Agreement setting forth the terms and conditions of same.

69.     That on or about April 20, 2019, and at all relevant times herein mentioned, after due deliberation, negotiation and agreement, with his mother and father present both of whom were actively involved in same deliberation, negotiation and agreement, Plaintiff ZION WILLIAMSON with his mother and stepfather again invited and/or caused to be invited Defendant GINA FORD back to where Plaintiff ZION WILLIAMSON then resided to meet again with him and his parents during which they all, again, discussed and agreed upon the terms and conditions of Defendants' representation of Plaintiff ZION WILLIAMSON for marketing, branding and endorsement opportunities.

70.     That on or about April 20, 2019, and at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON, as an adult, knowingly, voluntarily and intelligently entered into a Consulting and Joint Marketing and Branding Agreement with Defendants PRIME SPORTS MARKETING, LLC and GINA FORD to serve as Plaintiff's exclusive marketing, branding and endorsement consultant/firm/agent for a term of five (5) years.  That upon entering into the April 20, 2019 Contract with Defendants, Plaintiff ZION WILLIAMSON and/or his parents on his behalf, demanded an immediate Contract advance in the amount of One Hundred Thousand Dollars ($100,000.00) which, within days after executing and entering into the April 20, 2019 Contract, Defendants tendered to Plaintiff ZION WILLIAMSON by wiring same into Plaintiff's and/or his mother and/or stepfather's bank account on Plaintiff's behalf and at Plaintiff ZION WILLIAMSON's direction, instruction, permission, knowledge and consent.  *Annexed hereto and*

*made a part hereof as Exhibit "I" is a copy of the April 20, 2019 Consulting and Joint Marketing and Branding Agreement.*

71.    That at all relevant times herein mentioned, in addition to other terms and conditions of the April 20, 2019 Consulting and Joint Marketing and Branding Agreement/contract, Plaintiff ZION WILLIAMSON, in the presence of and with the advice of his mother and stepfather, knowingly, intelligently and voluntarily discussed, negotiated and agreed to Defendants PRIME SPORTS MARKETING, LLC and GINA FORD, "…1.6  Giving advice on the building of client's brand domestically and internationally…"  See id.

72.    That at all relevant times herein mentioned, in furtherance of the April 20, 2019 contract/Agreement with Plaintiff ZION WILLIAMSON, Defendant GINA FORD, on behalf of Defendants, agreed for Defendants to serve as the exclusive Global Marketing Firm/Agent for Plaintiff ZION WILLIAMSON and to decline representation by Defendants, for the first two years of the April 20, 2019 five year contract with Plaintiff, of any other basketball player; thereby agreeing for Defendants to forego and decline representation of and to decline income from representation of any other basketball player.  See id.

73.    That at all relevant times herein mentioned, in addition to other terms and conditions of the April 20, 2019 Consulting and Joint Marketing and Branding Agreement/contract, Plaintiff ZION WILLIAMSON, in the presence of and with the advice of his mother and stepfather, knowingly, intelligently and voluntarily discussed, negotiated and agreed that, in exchange for the marketing and branding services provided by the Defendants, Plaintiff ZION WILLIAMSON agreed to pay/compensate Defendants with Fifteen percent (15%) of the gross value of any compensation received by him from/by any and all of the branding/marketing/endorsement deals identified, sought out and/or obtained by Defendants on

63

Plaintiff's behalf during the tenure of the Agreement and, further, agreed to pay Defendants the same 15% of his gross earnings in perpetuity for all compensation/consideration/earnings made and received by him including after the expiration or termination of the Agreement/contract, that are/were derived from any and all engagements, contracts and/or agreement introduced by Defendants and/or entered into and/or substantially negotiated by Defendants on Plaintiff ZION WILLIAMSON's behalf. See id.

74.     That at all relevant times herein mentioned, in addition to other terms and conditions of the April 20, 2019 Consulting and Joint Marketing and Branding Agreement/contract, Plaintiff ZION WILLIAMSON, in the presence of and with the advice of his mother and stepfather, knowingly, intelligently and voluntarily discussed, negotiated and agreed that all marketing deals and/or endorsement opportunities brought to or presented to Plaintiff ZION WILLIAMSON, that was not obtained or presented to him by Defendants, were to be presented to Defendants for Defendants to discuss, negotiate and finalize any and all terms and conditions for any and all such contracts from any all such third parties deals/opportunities on behalf of Plaintiff ZION WILLIAMSON and, in exchange for such services, Defendants would receive compensation.

75.     That at all relevant times herein mentioned, in addition to other terms and conditions of the April 20, 2019 Consulting and Joint Marketing and Branding Agreement/contract, Plaintiff ZION WILLIAMSON, in the presence of and with the advice of his mother and stepfather, knowingly, intelligently and voluntarily discussed, negotiated and agreed and covenanted, pursuant to Paragraph 10 of the April 20, 2019 contract/Agreement, "…to keep, protect and hold confidential all information shared between the parties that is related to the matters

64

of this Agreement.  Such information includes but is not limited to, any trade secrets, business plans, strategies … concerning the Client…"  <u>See</u> Exhibit "I", *supra.*

76.    That at all relevant times herein mentioned, in addition to other terms and conditions of the April 20, 2019 Consulting and Joint Marketing and Branding Agreement/contract, Plaintiff ZION WILLIAMSON, in the presence of and with the advice of his mother and stepfather, knowingly, intelligently and voluntarily discussed, negotiated and agreed that termination of the Consulting and Joint Marketing and Branding Agreement/contract by any party to same Agreement/contract can only be upon thirty (30) days clear written notice to the other party and can only be made **for cause**.  <u>See</u> <u>id.</u>

77.    That at all relevant times herein mentioned, in addition to other terms and conditions of the April 20, 2019 Consulting and Joint Marketing and Branding Agreement/contract, Plaintiff ZION WILLIAMSON, in the presence of and with the advice of his mother and stepfather, knowingly, intelligently and voluntarily discussed, negotiated and agreed that the validity, interpretation and performance of the Agreement is controlled by and construed under the laws of the State of Florida**.**  <u>See</u> <u>id.</u>

78.    That on or about April 20, 2019, and at all relevant times herein mentioned, in furtherance of same Consulting and Joint Marketing and Branding Agreement/contract, Plaintiff ZION WILLIAMSON knowingly, voluntarily and intelligently appointed Defendant GINA FORD, by letter of Authorization dated April 20, 2019, as his Global Marketing Agent.  To that end, Plaintiff ZION WILLIAMSON wrote:

"Letter of Authorization

April 20th, 2019

Prime Sports Marketing
Gina Ford
13727 SW 152nd Street #319
Miami, Fl 33177

65

I Zion Williamson effective immediately appoint Gina Ford as my Global Marketing Agent. I grant full permission to Gina Ford to negotiate and secure opportunities on my behalf and to work together to determine how to best position our efforts going forward. I look forward to working with you and believe that your guidance will be instrumental in assisting me with achieving my long term goals.
Sincerely,
Zion Williamson (Athlete)
ID:"

*Annexed hereto and made a part hereof as Exhibit "J" is a copy of the April 20, 2019 Letter of Authorization and a copy of a photograph of Plaintiff Zion Williamson and Defendant Gina Ford taken in/at Plaintiff Zion Williamson's residence on April 20, 2019 after the execution of the April 20, 2019 contract/Agreement and Letter of Authorization.*

79. That on April 20, 2019 and at all relevant times herein mentioned, demonstrative of Plaintiff ZION WILLIAMSON being consciously aware that he, by his own prior conduct, actions, statements and/or omissions/inactions, was no longer a "student-athlete", Plaintiff ZION WILLIAMSON signed both the April 20, 2019 Consulting and Joint Marketing and Branding Agreement and the April 20, 2019 Letter of Authorization appointing Defendant GINA FORD to be his Global Marketing Agent stating that he was an "athlete" and not a "student-athlete". See Exhibits "I" and "J", *supra.*

80. That at all relevant times herein mentioned, upon information and belief, in furtherance of the duly entered and executed Consulting and Joint Marketing and Branding Agreement/contract, Defendants performed the contracted services and successfully identified, sought out, obtained and/or negotiated on Plaintiff ZION WILLIAMSON's behalf, numerous potential and actual multi-million dollar endorsement/branding deals, to wit:

a. Defendants successfully identified, sought out and negotiated actual marketing/branding deals/endorsements on Plaintiff ZION WILLIAMSON's behalf with: Activision Publishing/Call of Duty Video Game Franchise; NBA Live/EA Sports, Fanatics Authentic & Panini America (Sports Memorabilia and Trading Card Brand); NBA 2K and

BioSteel  -- all of which Defendants, in performance of the April 20, 2019 contract/Agreement with Plaintiff ZION WILLIAMSON, had presented to Plaintiff ZION WILLIAMSON for acceptance; and

b.      Defendants, using Defendants' unique skills set, trade secrets, work product and/or business relationships sought out and identified, contacted, discussed and was engaged in ongoing fruitful negotiations on Plaintiff ZION WILLIAMSON'S behalf for additional multi-million dollar endorsement/branding deals with companies including, but not limited to:  PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola) and others.

81.      That at all relevant times herein mentioned, upon information and belief, in furtherance of the duly entered and executed Consulting and Joint Marketing and Branding Agreement/contract, Defendants secured for Plaintiff ZION WILLIAMSON a potential shoe/sneaker deal by which he would not only have his own sneaker/shoe, but would, based upon Plaintiffs trade secret and work product, obtain a shoe/sneaker deal that would revolutionize the professional athlete shoe market, particularly for professional basketball players.

82.      That at all relevant times herein mentioned, upon information and belief, on or about April 28, 2019, Defendant GINA FORD, with Plaintiff ZION WILLIAMSON's mother and stepfather at Plaintiff ZION WILLIAMSON'S direction, permission, authorization and full knowledge, met with the representative of/for the foregoing potential shoe/sneaker company deal during which Defendant GINA FORD successfully secured, obtained and negotiated for Plaintiff, compensation and rights, including, but not be limited to, monetary compensation of an immediate One Hundred Million Dollars ($100,000,000.00) to be tendered to Plaintiff ZION WILLIAMSON upon execution of the contract for same shoe/sneaker company deal.

83.     That at all relevant times herein mentioned, in furtherance of the duly entered and executed Consulting and Joint Marketing and Branding Agreement/contract, Defendants reviewed and negotiated the contract terms for Plaintiff ZION WILLIAMSON, which Plaintiff ZION WILLIAMSON accepted and agreed to perform, for a photo shoot and interview with Slam Magazine whereby Plaintiff ZION WILLIAMSON was featured on the cover of Slam Magazine with a feature spread and interview for the Magazine.

84.     That on or about April 28, 2019, and at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON appeared at Duke University with Defendant GINA FORD and he performed the Slam Magazine photo shoot and feature spread. *Annexed hereto and made a part hereof as Exhibit "K" is a copy of the Slam Magazine interview of Plaintiff Zion Williamson.*

85.     That, at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON, in his Slam Magazine interview, stated: "…I'm just trying to make the most of what I got. I love Duke…If I didn't have as much at stake, I probably would stay for another year. But I can't…So if I could come back for a second year I would, but unfortunately that's just not the reality we live in. The reality we live in is [that] my ultimate dream is the NBA.  It's what I've been dreaming about as a kid so I have to pursue that. And I have to take care of my family."  See id.

86.     That, at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON's interview with Slam Magazine confirms that he had also already informed his fellow Duke teammates, prior to his declaring for the Draft, that he was declaring for the 2019 NBA Draft and that was not coming back to play for Duke/collegiate basketball.  See id.  Plaintiff ZION WILLIAMSON further told Slam Magazine that, in response, his Duke teammates told him: "…We know you love this place but you gotta do what's best for you and your family. Nobody is going to hate you for this." Id.

87. That on or about April 28, 2019, and at all relevant times herein mentioned, on the campus of Duke University and during the time of the Slam Magazine photo shoot, Plaintiff ZION WILLIAMSON, upon information and belief, introduced Defendant GINA FORD, as well as Defendant GINA FORD'S business partner, to Duke University's men's basketball team Head Coach. *Annexed hereto and made a part hereof as Exhibit "L" is a copy of a photograph of Plaintiff Zion Williamson, Defendant Gina Ford and Duke University men's basketball coach taken on April 28, 2019 during the time of the Slam Magazine photo shoot.*

88. That on or about April 28, 2019 and at all relevant times herein mentioned, based upon information and belief, on the campus of Duke University and during the time of the Slam Magazine photo shoot after the foregoing introduction, Defendant GINA FORD'S business partner advised and told Duke University Men's Basketball Head Coach that Defendant GINA FORD was Plaintiff ZION WILLIAMSON'S marketing agent.

89. That after the April 28, 2019 Slam Magazine photo shoot, on or about April 29, 2019 Plaintiff ZION WILLIAMSON, with his mother and stepfather, again invited and/or caused to be invited, Defendant GINA FORD to Plaintiff ZION WILLIAMSON's then residence and discussed the strategic vision and future marketing/endorsement opportunities for which Defendants were in the midst of securing offers to present to Plaintiff ZION WILLIAMSON. During this meeting, Defendant GINA FORD provided and/or caused to be provided to Plaintiff ZION WILLIAMSON, and/or to his parents, Defendants' strategic marketing and branding ideas/plan to make Plaintiff ZION WILLIAMSON an international, worldwide, marketable and rainmaking superstar and with Defendants' strategic plans to attract both domestic and international/worldwide endorsements and opportunities for Plaintiff ZION WILLIAMSON.

69

90.     That, at all relevant times herein mentioned, in furtherance of the duly entered and executed Consulting and Joint Marketing and Branding Agreement/contract, Defendants secured and obtained for Plaintiff ZION WILLIAMSON, a nationally televised commercial for compensation which Plaintiff ZION WILLIAMSON knowingly, intelligently and voluntarily, and with the advice of his mother and stepfather, accepted and agreed to perform for which Plaintiff ZION WILLIAMSON knowingly, intelligently and voluntarily entered into and executed a contract.

91.     That on or about May 14, 2019, and at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON and his parents invited and requested that Defendant GINA FORD appear with them at the 2019 NBA Draft Lottery in Chicago, Illinois and to appear at same with him as Plaintiff's exclusive Global Marketing Agent; same lottery would reveal the team that Plaintiff ZION WILLIAMSON would contract with, as the projected No. 1 Draft pick, for the 2019 NBA Draft on June 20, 2019.

92.     That Defendant GINA FORD did, in fact, appear at Plaintiff's request to the foregoing 2019 NBA Draft Lottery in Chicago, Illinois, as Plaintiff ZION WILLIAMSON'S exclusive Global Marketing Agent as he and his parents requested and invited her to attend with them.

93.     That on or about May 14, 2019 at the 2019 NBA Draft Lottery in Chicago, Illinois, and at all relevant times herein mentioned, upon information and belief, Defendant GINA FORD and CAA's Agent Lisa Josephs Metelus discussed that Defendants were representing Plaintiff ZION WILLIAMSON as Plaintiff ZION WILLIAMSON's exclusive Global Marketing Firm/Agent.

Case 1:19-cv-00593-LCB-JLW   Document 54-1   Filed 02/17/21   Page 70 of 149

94.     That at all relevant times herein mentioned, on or about May 14, 2019 at the 2019 NBA Draft Lottery in Chicago, Illinois, where Plaintiff ZION WILLIAMSON personally appeared, the New Orleans Pelicans won the first draft pick for the 2019 NBA Draft which was held on June 20, 2019.

95.     That at all relevant times herein mentioned, on or about May 14, 2019, and continuing thereafter to date, after hearing that the New Orleans Pelicans won the first draft pick for the 2019 NBA Draft, Plaintiff ZION WILLIAMSON and/or his stepfather, made it abundantly clear that Plaintiff ZION WILLIAMSON had long decided that, irrespective of which NBA Team secured the number one NBA Draft pick in the Lottery, Plaintiff ZION WILLIAMSON was not and would not return to Duke and/or to collegiate basketball and would, in fact, realize his childhood dream of playing in the NBA and securing financial compensation to take care of himself and his family.

96.     That at all relevant times herein mentioned on or about May 15, 2019, Plaintiff ZION WILLIAMSON's stepfather during an interview in Baton Rouge, Louisiana with "Off the Bench" radio show, again declared and emphasized that returning to collegiate basketball and/or to Duke University was not even a consideration for Plaintiff ZION WILIAMSON.  To that end, based upon information and belief, Mr. Lee Anderson, Plaintiff ZION WILLIAMSON's stepfather, stated that returning for a second season with Duke University's Blue Devils: "is not something that we have even considered… it is the process of the NBA and certainly we're excited about the Crescent City down there in New Orleans… we met with [David Griffin, the Pelicans Executive Vice President of Basketball Operations] and had a great conversation and are excited at the prospect of coming down there and getting settle and looking for a place to stay and all these good things". *Annexed hereto and made a part hereof as Exhibit "M" is a copy of the May 16,*

*2019, article in the Washington Post entitled "Would Zion Williamson Return to Duke, His Stepfather Says No, Quieting the Speculation.".*

97.     That at all relevant times herein mentioned on or about May 15, 2019, based upon information and belief, when Plaintiff's ZION WILLIAMSON's stepfather made the foregoing statement which, in sum and substance, confirmed and/or demonstrated that Plaintiff ZION WILLIAMSON's decision not return to Duke and/or to collegiate basketball had long been made and that he did so because he knew and/or had reasons to know that Plaintiff ZION WILLIAMSON had knowingly, voluntarily and intelligently engaged in acts and/or conduct, long before Plaintiff ever attended Duke or had any contact with Defendants, that rendered Plaintiff ineligible to return to and/or ineligible to reinstate his "student athlete" status/eligibility including, but not limited to: improper benefits, promises, monies, employment and/or housing or otherwise that Plaintiff, his mother, his stepfather and/or any third party(ies) acting on Plaintiff's behalf received, accepted, requested and/or solicited prior to and/or while Plaintiff attended Duke University including, but not limited to, any questions under oath about any monies, employment, housing, and/or promises by/with Nike, Coach K, Adidas, Merl Code, Kansas University, Coach Townsend from Kansas University, Mr. Thomas Morris, Slavko Duric, MMG and/or otherwise.

98.     That at all relevant times herein mentioned, on or about May 15, 2019, Plaintiff ZION WILLIAMSON's stepfather, during the same "Off the Bench" radio show interview, stated that Plaintiff ZION WILLIAMSON and his family accept how the lottery turned out and further stated that: "One thing that Zion has always been taught is that you accept the things that you can't change.  You change the things that you can change."

99.     That on or about May 23, 2019, and at all relevant times herein mentioned, in addition to Plaintiff ZION WILLIAMSON's intentional conduct preceding his April 20, 2019

contract with Defendants, Plaintiff ZION WILLIAMSON knew that accepting compensation for any endorsement deals/opportunities would render him ineligible to return to Duke University and/or to return to collegiate basketball and/or rescinded his "student-athlete" status. Knowing the foregoing, Plaintiff ZION WILLIAMSON knowingly, intelligently and voluntarily, upon information and belief, flew with his mother and stepfather to the State of California and performed in the nationally televised commercial obtained, negotiated and secured by Defendants for Plaintiff ZION WILLIAMSON, for which Plaintiff received compensation.

100.    That on or about May 23, 2019, at the request of Plaintiff ZION WILLIAMSON and his parents, Defendant GINA FORD met with Plaintiff ZION WILLIAMSON's stepfather, on behalf of Plaintiff ZION WILLIAMSON, in California and provided him Defendants' extensive and comprehensive marketing plan that included the numerous multi-million dollar strategic branding and marketing endorsements and opportunities that Defendants had obtained for Plaintiff ZION WILLIAMSON with companies/brands including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), Biosteel and others.

101.    That at all relevant times herein mentioned, after meeting with Defendant GINA FORD in California on or about May 23, 2019 after Plaintiff ZION WILLIAMSON'S television commercial shoot, Plaintiff ZION WILLIAMSON and his parents instructed, directed and further authorized Defendant GINA FORD to continue to discuss and negotiate the terms and conditions of the contracts for/with PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), BioSteel and others on Plaintiff's behalf so that same deals could be finalized with contracts and financial compensation for Plaintiff ZION WILLIAMSON to enter into and execute.

73

102.    That at all relevant times herein mentioned, at the NBA Draft Lottery on May 14, 2019 and subsequent thereafter, Plaintiff ZION WILLIAMSON, his stepfather and his mother advised Defendant GINA FORD that Plaintiff and his parents had been contacted by NBA Agents for the purpose of securing Plaintiff ZION WILLIAMSON a NBA player's contract with an NBA Team.

103.    That at all relevant times herein mentioned, subsequent to May 14, 2019 and prior to May 29, 2019, Plaintiff ZION WILLIAMSON, his stepfather and his mother, advised Defendant GINA FORD that during this time period they would be meeting with and negotiating a contract with prospective NBA Agents to discuss Plaintiff ZION WILLIAMSON signing a NBA Agent for his professional NBA career, and, that they only intended to sign with and needed a NBA Agent as Defendants already were Plaintiff ZION WILLIAMSON's exclusive Global Marketing Firm/Agent.

104.    That at all relevant times herein mentioned and on or about May 23, 2019, Plaintiff ZION WILLIAMSON, and/or his parents, requested that Defendant GINA FORD provide them with a copy of Defendants' extensive and comprehensive marketing plan that included the numerous multi-million dollar strategic branding and marketing endorsements and opportunities that Defendants had obtained for Plaintiff ZION WILLIAMSON with companies/brands including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), BioSteel and others.

105.    That at all relevant times herein mentioned and on or about May 23, 2019, Plaintiff ZION WILLIAMSON, and/or his parents, told Defendant GINA FORD that the reason Plaintiff ZION WILLIAMSON wanted a copy of Defendants' extensive and comprehensive marketing

74

plan, that included the numerous multi-million dollar strategic branding and marketing endorsements and opportunities that Defendants had obtained for Plaintiff ZION WILLIAMSON with companies/brands including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), BioSteel and others, was to, once Plaintiff ZION WILLIAMSON signs with a NBA Agent, to establish and/or facilitate a direct working relationship between Plaintiff ZION WILLIAMSON's NBA Agent and Defendants as Plaintiff ZION WILLIAMSON's exclusive Global Marketing Firm/Agent.

106. That at all relevant times herein mentioned, based upon information and belief, Duke University's Men's Basketball Head Coach, Plaintiff ZION WILLIAMSON'S coach while he played at/for Duke University, was/is represented by and/or was/is associated with CAA.

107. That at all relevant times herein mentioned, based upon information and belief, Duke University's Men's Basketball Head Coach, Plaintiff ZION WILLIAMSON'S coach while he played at/for Duke University, was/is in a business relationship/business partnership/company co-ownership with CAA.

108. That at all relevant times herein mentioned, based upon information and belief, between April 20, 2019 and May 29, 2019, while Plaintiff ZION WILLIAMSON had already contracted with Defendants for Defendants to serve and be Plaintiff's exclusive Global Marketing Firm/Agent and while Defendants were already performing under said Contract with Plaintiff, Plaintiff ZION WILLIAMSON and/or his mother and/or stepfather on his behalf, was contacted by CAA and/or by CAA Agents Austin Brown and/or Lisa Joseph Metelus, and/or by their agents/servants/employees to meet with CAA, Brown and/or Metelus to discuss and negotiate CAA's, Brown's and/or Metelus' representation of Plaintiff ZION WILLIAMSON.

75

109.    That at all relevant times herein mentioned, based upon information and belief, between April 20, 2019 and May 29, 2019, while Plaintiff ZION WILLIAMSON had already contracted with Defendants for Defendants to serve and be Plaintiff's exclusive Global Marketing Firm/Agent and while Defendants were already performing under said Contract with Plaintiff, when Plaintiff ZION WILLIAMSON, his mother and/or stepfather was contacted by and/or had communications and/or meetings directly and/or indirectly with CAA, Brown and/or Metelus, CAA, Brown and/or Metelus had actual knowledge, were aware of and/or had reasons to know that Plaintiff ZION WILLIAMSON had already entered into a contract with Defendant PRIME SPORTS MAKETING, LLC on April 20, 2019 for Defendants to serve as Plaintiff ZION WILLIAMSON's exclusive Marketing and Branding Firm/Agent.

110.    That at all relevant times herein mentioned, based upon information and belief, between April 20, 2019 and May 29, 2019, while Plaintiff ZION WILLIAMSON had already contracted with Defendants for Defendants to serve and be Plaintiff's exclusive Global Marketing Firm/Agent and while Defendants were already performing under said Contract with Plaintiff, when Plaintiff ZION WILLIAMSON, his mother and/or stepfather was contacted by and/or had communications and/or meetings directly and/or indirectly with CAA, Brown and/or Metelus, CAA, Brown and/or Metelus had actual knowledge, were aware of and/or had reasons to know that, pursuant to Plaintiff ZION WILLIAMSON's April 20, 2019 Contract with Defendant PRIME SPORTS MAKETING, LLC, Defendant GINA FORD was already Plaintiff ZION WILLIAMSON's exclusive Global Marketing/Branding/Endorsements Agent.

111.    That at all relevant times herein mentioned, based upon information and belief, between April 20, 2019 and May 29, 2019 and continuing, while Plaintiff ZION WILLIAMSON had already contracted with Defendants for Defendants to serve and be Plaintiff's exclusive Global

76

Marketing Firm/Agent and while Defendants were already performing under said Contract with Plaintiff, when Plaintiff ZION WILLIAMSON and/or his parents were contacted by and were communicating with CAA, Brown and/or Metelus, Plaintiff ZION WILLIAMSON and/or his parents on his behalf, actually informed CAA, Brown and/or Metelus that Plaintiff ZION WILLIAMSON had already entered into a Contract with Defendants on April 20, 2019 for Defendants to serve as Plaintiff ZION WILLIAMSON's exclusive Marketing and Branding Firm/Agent and that Defendants were performing under said Contract by securing and obtaining marketing, branding and/or endorsement deals on his behalf.

112.    That at all relevant times herein mentioned, based upon information and belief, between April 20, 2019 and May 29, 2019, while Plaintiff ZION WILLIAMSON had already contracted with Defendants for Defendants to serve and be Plaintiff's exclusive Global Marketing Firm/Agent and while Defendants were already performing under said Contract with Plaintiff, Plaintiff ZION WILLIAMSON and/or his mother and/or stepfather on his behalf, actually met with and/or had communications with CAA, Brown and/or Metelus regarding CAA's, Brown's and/or Metelus' representation of Plaintiff ZION WILLIAMSON.

113.    That at all relevant times herein mentioned, based upon information and belief, between April 20, 2019 and May 29, 2019 and continuing, while Plaintiff ZION WILLIAMSON had already contracted with Defendants for Defendants to serve and be Plaintiff's exclusive Global Marketing Firm/Agent and while Defendants were already performing under said Contract with Plaintiff, Plaintiff ZION WILLIAMSON and/or his parents on his behalf, actually met with and/or had communications with CAA, Brown and/or Metelus and provided, and/or caused to be provided, to CAA, Brown and/or Metelus a copy of the executed agreement/Contract between Plaintiff ZION WILLIAMSON and Defendants, a copy of the April 20, 2019 Letter of

Authorization from Plaintiff ZION WILLIAMSON appointing Defendant GINA FORD as Plaintiff's ZION WILLIAMSON's Global Marketing Agent, and, a copy of Defendants' extensive and comprehensive marketing plan for Plaintiff that included the numerous multi-million dollar strategic branding and marketing endorsements and opportunities that Defendants had obtained for Plaintiff ZION WILLIAMSON with companies/brands including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), BioSteel and others.

114.   That at all relevant times herein mentioned, Defendants' strategic, comprehensive and extensive marketing plan for Plaintiff ZION WILLIAMSON, that included the numerous multi-million dollar strategic branding and marketing endorsements and opportunities that Defendants had obtained for Plaintiff ZION WILLIAMSON with companies/brands including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), BioSteel and others, was/is/remains the proprietary work product/trade secrets of Defendants PRIME SPORTS MARKETING, LLC and GINA FORD.

115.   That at all relevant times herein mentioned, based upon information and belief, between April 20, 2019 and May 29, 2019 and continuing thereafter to present date, CAA, Brown and/or Metelus, and/or their agents, servants and employees, induced Plaintiff ZION WILLIAMSON to break/rescind/seek to end/terminate his contract with Defendants, based upon information and belief, by including, but not limited to:

a.     Intentionally, wrongfully and unlawfully undermining the terms and conditions of the contract between Plaintiff ZION WILLIAMSON and Defendants PRIME SPORTS MARKETING, LLC and GINA FORD;

78

b.       Intentionally, wrongfully and unlawfully telling/informing/communicating to Plaintiff ZION WILLIAMSON, and/or to his mother and/or to his stepfather, that CAA, Brown and/or Metelus are better suited to serve as Plaintiff ZION   WILLIAMSON'S marketing and branding firm/agent;

c.       Intentionally, wrongfully and unlawfully telling/informing/communicating to Plaintiff ZION WILLIAMSON, and/or to his mother and/or to his stepfather, that Defendants PRIME SPORTS MARKETING, LLC and GINA FORD are not capable of helping Plaintiff ZION WILLIAMSON achieve his objective of becoming an international and worldwide marketable and rainmaking superstar capable of attracting both domestic and international/worldwide endorsements and opportunities for Plaintiff ZION WILLIAMSON and/or that Defendants' representation of Plaintiff would not serve Plaintiff in achieving same goals and objectives;

d.       Intentionally, wrongfully and unlawfully promising Plaintiff ZION WILLIAMSON, and/or his parents, that CAA, Brown and/or Metelus will obtain, secure, negotiate and/or provide Plaintiff with more, better and/or more financially lucrative marketing, branding and/or endorsement deals and/or opportunities than Defendants PRIME SPORTS MARKETING, LLC and GINA FORD can/will;

e.       Intentionally, wrongfully and unlawfully promising Plaintiff ZION WILLIAMSON, and/or his parents, that CAA, Brown and/or Metelus will secure a higher compensation for Plaintiff ZION WILLIAMSON on/for the very same deals/opportunities/work product that Defendants PRIME SPORTS MARKETING, LLC and GINA FORD already secured, identified, obtained, negotiated and/or presented to Plaintiff ZION WILLIAMSON, and/or to his parents, with companies/brands including,

79

but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), Biosteel, and others, than the compensation that Defendants did and/or could obtain on Plaintiff ZION WILLIAMSON's behalf; and/or

f.        Intentionally, wrongfully and unlawfully telling/informing/communicating to Plaintiff ZION WILLIAMSON, and/or to his mother and/or to his stepfather, that CAA and/or Brown would not sign Plaintiff ZION WILLIAMSON to a NBA agency contract, and that CAA and/or Brown would not represent Plaintiff ZION WILLIAMSON as and for NBA and/or NBA player's purposes/services, unless Plaintiff ZION WILLIAMSON breached his April 20, 2019 contract/Agreement with Defendants and signed a contract with CAA for CAA to serve as his exclusive Global Marketing Firm/Agency, for Metelus to serve as his exclusive Global Marketing Agent and/or for Defendants to no longer serve as his exclusive Global Marketing Firm/Agent.

116.    That on or about May 30, 2019, and at all relevant times herein mentioned, CAA, Brown and/or Metelus publicly announced to the world that they had signed Plaintiff ZION WILLIAMSON to a contract for all purposes including to serve as Plaintiff ZION WILLIAMSON's exclusive Global Marketing Firm/Agent.

117.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON'S signing of a contract with CAA, Brown and/or Metelus for all purposes including for CAA, Brown and/or Metelus to serve as Plaintiff ZION WILLIAMSON's Global Marketing Firm/Agent, knowing that Plaintiff ZION WILLIAMSON had already contracted with Defendants PRIME SPORTS MARKETING, LLC and GINA FORD for Defendants to serve as Plaintiff's Global Marketing Firm/Agent, was intentional, willful and deliberate, and, intentionally, willfully and

80

deliberately interfered with, undermined, contradicted and breached Plaintiff ZION WILLIAMSON's April 20, 2019 contract with Defendants and with his April 20, 2019 Letter of Authorization appointing Defendant GINA FORD to serve as his exclusive Global Marketing and Branding Agent and Firm.

118.   That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON's, and/or his parents' on his behalf, conduct including, but not limited to: meeting with, negotiating with, communicating with, providing and/or causing to be provided a copy of Defendants' extensive marketing/branding plan for Plaintiff ZION WILLIAMSON to CAA, Brown and/or Metelus, and/or to their agents, servants and/or employees, and Plaintiff's signing with/contracting with CAA, Brown and/or Metelus for them to serve as his exclusive Marketing/Branding Firm/Agent, was knowingly, intelligently and voluntarily committed by Plaintiff ZION WILLIAMSON, was intentional, willful and deliberate, and, was an intentional, willful and deliberate breach of his April 20, 2019 Contract with Defendants PRIME SPORTS MARKETING, LLC and GINA FORD.

119.   That at all relevant times herein mentioned, Defendants PRIME SPORTS MARKETING, LLC and GINA FORD learned of the foregoing unlawful breach by Plaintiff ZION WILLIAMSON, and learned of the foregoing unlawful interference by CAA, Brown and/or Metelus with Defendants' April 20, 2019 Contract Plaintiff ZION WILLIAMSON, from/by CAA's, Brown's and/or Metelus' public announcement to the world that they had signed Plaintiff ZION WILLIAMSON to a contract for all purposes including to serve as Plaintiff ZION WILLIAMSON's Global Marketing Firm/Agent.

120.   That on or about May 31, 2019, one day after CAA, Brown and/or Metelus publicly announced to the world that they had Plaintiff ZION WILLIAMSON to a contract for all purposes

81

including to serve as Plaintiff ZION WILLIAMSON's Global Marketing Firm/Agent in an intentional and actual breach of and interference with the April 20, 2019 Contract between Plaintiff ZION WILLIAMSON and Defendants PRIME SPORTS MARKETING, LLC and GINA FORD, at 9:17pm Metelus, on her behalf and on behalf of CAA and/or Brown, texted Defendant GINA FORD requesting to speak with Defendant GINA FORD, writing:

> "Hi Gina. Hope all is well. Wanted to reach out and talk about
> Zion/CAA. Let me know if you have a few minutes to talk tonight or if tomorrow
> works."

*Annexed hereto and made a part hereof as Exhibit "N" is a copy of Metelus's 9:17pm text to Defendant Gina Ford.*

121.     That at all relevant times herein mentioned, the foregoing May 31, 2019 text by Metelus, made on her behalf and on the behalf of CAA and/or Brown, demonstrates and is an admission by CAA, Brown and/or Metelus that they knew of the April 20, 2019 Contract between Plaintiff ZION WILLIAMSON and Defendants PRIME SPORTS MARKETING, LLC and GINA FORD.

122.     That at all relevant times herein mentioned, the foregoing May 31, 2019 text by Metelus, made on her behalf and on the behalf of CAA and/or Brown, is an admission that CAA, Brown and/or Metelus knowingly, intentionally, willfully, unlawfully and deliberately induced Plaintiff ZION WILLIAMSON to breach his April 20, 2019 Contract with Defendants and that they knowingly, intentionally, willfully, unlawfully and deliberately interfered with same April 20, 2019 Contract between Defendants and Plaintiff ZION WILLIAMSON.

123.     That at all relevant times herein mentioned, the foregoing May 31, 2019 text by Metelus, made on her behalf and on the behalf of CAA and/or Brown, demonstrates that Plaintiff ZION WILLIAMSON intentionally, knowingly, intelligently and voluntarily breached his April 20, 2019 Contract with Defendants and unlawfully breached same by entering into contract with

82

CAA, Brown and/or Metelus for CAA, Brown and/or Metelus to serve as Plaintiff ZION WILLIAMSON's exclusive Global Marketing Firm/Agent.

124. That at all relevant times herein mentioned, on or about June 3, 2019, Defendant GINA FORD received an email communication from EA Entertainment, Inc./EA Sports -- one of the companies/brands which Defendants identified, obtained, secured, negotiated and/or presented as an endorsement/marketing/branding deal/opportunity on Plaintiff ZION WILLIAMSON's behalf, which was amongst those listed in the Defendants' strategic and comprehensive marketing plan/work product for Plaintiff ZION WILLIAMSON, which Plaintiff ZION WILLIAMSON requested and/or caused to be requested of Defendants for Defendants to provide Plaintiff ZION WILLIAMSON a copy of same, which, Defendants did provide on or about May 23, 2019.

125. That at all relevant times herein mentioned, in same June 3, 2019 email communication to Defendant GINA FORD, EA Entertainment, Inc./EA Sports wrote:

> "Hello Gina,
>     I hope this finds you well.
>     The representative we work with regularly at CAA called to let us know that they have exclusive marketing rights for Zion. Due to this, we are    kindly rescinding the offer we made through you on May 13, 2019, and will forward an offer to the CAA representative.
>     We will let CAA know that the offer was originally sent to you and that we have formally rescinded this.
>     I want to thank you for all your efforts and discussions that you have had with Zion on our behalf.
>     We are hopeful that we will be working with him this year.  Should you have any questions please let me know.
> Best,
>
> Marci
> _____
> Marci Galea EA Entertainment, Inc…."

*Annexed hereto and made a part hereof as Exhibit "O" is a copy of the June 3, 2019 email from EA Entertainment, Inc./EA Sports to Defendant Gina Ford.*

126.    That at all relevant times herein mentioned, on or about June 4, 2019, Defendant GINA FORD received an email communication regarding Biosteel -- one of the companies/brands which Defendants identified, obtained, secured, negotiated and/or presented as an endorsement/marketing/branding deal/opportunity on Plaintiff ZION WILLIAMSON's behalf which was amongst those listed in the Defendants' strategic and comprehensive marketing plan/work product for Plaintiff ZION WILLIAMSON, which Plaintiff ZION WILLIAMSON requested and/or caused to be requested of Defendants for Defendants to provide Plaintiff ZION WILLIAMSON a copy of same, which, Defendant did provide on or about May 23, 2019.

127.    That at all relevant times herein mentioned, in same June 4, 2019 email communication to Defendant GINA FORD regarding Biosteel, is an email that Biosteel received on June 4, 2019 from a Matthew Lacks of/from CAA, which was forwarded to Defendant GINA FORD, which stated:

"John:

Hope you're well!
As I am sure you've heard, CAA has signed Zion Williamson exclusively in all areas of representation. We are being very selective in approaching a few brands we feel might make sense for Zion and wanted to see if Biosteel is interested. We are having conversations in the category and hope to finalize a partnership by the week of the NBA draft.  If you are interested, let's connect in the next day or so.
Best,

Matt
Matthew Lacks  CAA Sports…"

*Annexed hereto and made a part hereof as Exhibit "P" is a copy of the June 4, 2019 email from Biosteel to Defendant Gina Ford forwarding the June 4, 2019 email from Matthew Lacks and CAA to Biosteel.*

Case 1:19-cv-00593-LCB-JLW   Document 54-1   Filed 02/17/21   Page 84 of 149

128.     That at all relevant times herein mentioned, the foregoing emails of June 3, 2019 and June 4, 2019, respectively, demonstrate and are actual acts by Plaintiff ZION WILLIAMSON, and by CAA, Brown and/or Metelus on behalf of Plaintiff ZION WILLIAMSON, to breach, interfere with and undermine Defendants' April 20, 2019 Contract with Plaintiff ZION WILLIAMSON and to unlawfully use, utilize, usurp and/or unlawfully take/misappropriate the work product/trade secrets of Defendants PRIME SPORTS MARKETING, LLC and GINA FORD.

129.     That at all relevant times herein mentioned, on or about June 4, 2019, Defendants PRIME SPORTS MARKETING, LLC and GINA FORD, by and through their legal counsel, served Plaintiff ZION WILLIAMSON and CAA, Brown and Metelus, who are all represented by the very same legal counsel, with a correspondence in which Defendants, among other advisements, advised that Plaintiff ZION WILLIAMSON, CAA, Brown and/or Metelus unlawfully breached and interfered with Defendants' April 20, 2019 Contract with Plaintiff ZION WILLIAMSON and, relying on the agreed upon terms and conditions of same April 20, 2019 Contract where the parties knowingly, intentionally and voluntarily agreed that the laws of the State of Florida governed the terms and conditions of same Contract, Defendants rejected any and all claims by Plaintiff ZION WILLIAMSON, CAA, Brown and/or Metelus that the April 20, 2019 contract is void/voidable, and, further rejected any claims that North Carolina's UAAA applies to any dispute between the parties of the April 20, 2019 Contract. *Annexed hereto and made a part hereof as Exhibit "Q" is a copy of Defendants' June 4, 2019 correspondence to Plaintiff, CAA, Brown and Metelus.*

130.     That at all relevant times herein mentioned, in same June 4, 2019 correspondence to Plaintiff, Defendants referred Plaintiff to the further fact, of which Plaintiff was already fully

aware, that Plaintiff ZION WILLIAMSON, in furtherance of the April 20, 2019 Contract, already performed (for which he already received compensation) one endorsement/marketing/branding deal/opportunity which Defendants had successfully identified, obtained, negotiated and secured for Plaintiff ZION WILLIAMSON.  See Exhibit "P", *supra.*

131.    That at all relevant times herein mentioned, on or about June 5, 2019, Defendants PRIME SPORTS MARKETING, LLC and GINA FORD, by and through their legal counsel, served Plaintiff ZION WILLIAMSON and CAA, Brown and Metelus, who are all represented by the very same legal counsel, with a *Cease and Desist* advising Plaintiff, CAA, Brown and Metelus, among other advisements, that CAA, Brown and/or Metelus knew of the valid contract between Plaintiff ZION WILLIAMSON and Defendants PRIME SPORTS MARKETING, LLC and GINA FORD, and despite knowing same, have unlawfully interfered with and undermined:

> "…deals, prospects and relationships which represent our Clients' work product to date on behalf of Mr. Williamson…your contacts of, and representations to, persons and entities with whom our Clients have established relationships and have pending deals and/or deal opportunities (i.e., the work product, personal and proprietary business information of our Clients and its unauthorized use by you) constitute willful, intentional and tortuous interference and exhibits conscious disregard for law and/or the rights of our Clients, your actions also severely injure the character and reputation of our Clients in the marketplace community where they conduct business…"

*Annexed hereto and made a part hereof as Exhibit "R", is a copy of Defendants' June 5, 2019 Cease and Desist correspondence to CAA, Brown and Metelus.*

132.    That on or about June 20, 2019, Plaintiff ZION WILLIAMSON was the No. 1 Draft Pick of/for the 2019 NBA Draft during which he was drafted by the New Orleans Pelicans and became an NBA player.

133.    That subsequent to Plaintiff ZION WILLIAMSON's breach of his valid contract with Defendants PRIME SPORTS MARKETING, LLC and GINA FORD and his signing of a contract with CAA, Brown and Metelus to serve as Plaintiff's exclusive Global Marketing

86

Agent/Firm and continuing to present date, Plaintiff ZION WILLIAMSON and CAA, Brown and/or Metelus, upon information and belief, entered into and executed contracts for, and were compensated for, marketing, branding and endorsement deals including, but not limited to, marketing, branding and endorsement deals and/or opportunities that Defendants PRIME SPORTS MARKETING, LLC and GINA FORD had identified, negotiated and secured for Plaintiff ZION WILLIAMSON.

134.    That subsequent to Plaintiff ZION WILLIAMSON's breach of his valid contract with Defendants PRIME SPORTS MARKETING, LLC and GINA FORD and his signing of a contract with CAA, Brown and Metelus to serve as Plaintiff's exclusive Global Marketing Agent/Firm and continuing to present date, Plaintiff ZION WILLIAMSON and CAA, Brown and/or Metelus, upon information and belief, entered into and executed contracts for, and were compensated for, marketing, branding and endorsement deals including, but not limited to, marketing, branding and endorsement deals and/or opportunities that Defendants PRIME SPORTS MARKETING, LLC had identified, negotiated and secured for Plaintiff ZION WILLIAMSON but, to date, have intentionally failed to compensate Defendants for same and, as such, to date Plaintiff ZION WILLIAMSON and CAA, Brown and Metelus have been and continue to be unjustly enriched therefrom.

135.    That as a direct and proximate cause of Plaintiff ZION WILLIAMSON's conduct, acts, omissions and/or failures, individually and collectively with CAA, Brown and Metelus, including his intentional breach of his April 20, 2019 Contract with Defendants and his unjust enrichment from same, Defendants PRIME SPORTS MARKETING, LLC and GINA FORD have suffered damages and injuries including, but not limited to: loss of income from secured deals/endorsement and branding deals/opportunities, loss of income from derivative

endorsement/branding deals/opportunities, loss income from lost royalties, loss income from loss of ownership rights, loss of income from other employment and/or marketing contracts with other players and/or athletes, damage to business character and reputation and related/other damages and injuries herein.

### AS AND FOR A FIRST COUNTERCLAIM AGAINST PLAINTIFF ZION WILLIAMSON

### BREACH OF CONTRACT

136.    Defendants s repeat, re-allege, reiterate and reassert each and every fact and each and every allegation contained in paragraphs of the Defendants' Counterclaims numbered "1" through "135" with the same force and effect as if more fully set forth at length herein.

137.    That on or about April 20, 2019, and at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON, as an adult, knowingly, voluntarily and intelligently entered into a Consulting and Joint Marketing and Branding Agreement with Defendants PRIME SPORTS MARKETING, LLC and GINA FORD to serve as Plaintiff's exclusive marketing, branding and endorsement consultant for a term of five (5) years.  See Exhibit "I", *supra* .

138.    That at all relevant times herein mentioned, in addition to other terms and conditions of the April 20, 2019 Consulting and Joint Marketing and Branding Agreement/contract, Plaintiff ZION WILLIAMSON, in the presence of and with the advice of his mother and stepfather, knowingly, intelligently and voluntarily discussed, negotiated and agreed that Defendant PRIME SPORTS MARKETING, LLC, though and by Defendant GINA FORD, would be "…1.6   Giving advice on the building of client's brand domestically and internationally…" to Plaintiff.  See id.

139.    That at all relevant times herein mentioned, in addition to other terms and conditions of the April 20, 2019 Consulting and Joint Marketing and Branding

Agreement/contract, Plaintiff ZION WILLIAMSON, in the presence of and with the advice of his mother and stepfather, knowingly, intelligently and voluntarily discussed, negotiated and agreed that, in exchange for the marketing and branding services provided by the Defendants, Plaintiff ZION WILLIAMSON agreed to pay/compensate Defendants with Fifteen percent (15%) of the gross value of any compensation received by him from/by any and all of the branding/marketing/endorsement deals identified, sought out and/or obtained by Defendants on Plaintiff's behalf during the tenure of the Agreement and further agreed to pay Defendants the same 15% of his gross earnings in perpetuity for all compensation/consideration/earnings made and received by him including after the expiration or termination of the Agreement/contract, that are/were derived from any and all engagements, contracts and/or agreement introduced by Defendants and/or entered into and/or substantially negotiated by Defendants on Plaintiff ZION WILLIAMSON's behalf.  See id.

140.    That on or about April 20, 2019, and at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON, as an adult, knowingly, voluntarily and intelligently agreed in in the April 20, 2019, contract that, Defendants PRIME SPORTS MARKETING, LLC and GINA FORD would further be entitled to compensation into perpetuity for all compensation/consideration/earnings made and received by Plaintiff ZION WILLIAMSON, including after the expiration or termination of the Agreement/contract that are/were derived from any and all engagements, contracts and/or agreement introduced by Defendants, and/or entered into and/or substantially negotiated by Defendants on Plaintiff ZION WILLIAMSON's behalf. See id.

141.    That at all relevant times herein mentioned, in addition to other terms and conditions of the April 20, 2019 Consulting and Joint Marketing and Branding

89

Agreement/contract, Plaintiff ZION WILLIAMSON, in the presence of and with the advice of his mother and stepfather, knowingly, intelligently and voluntarily discussed, negotiated and agreed and covenanted, pursuant to Paragraph 10 of the April 20, 2019 Contract/Agreement with Defendants, "…to keep, protect and hold confidential all information shared between the parties that is related to the matters of this Agreement. Such information includes but is not limited to, any trade secrets, business plans, strategies … concerning the Client…" Id.

142. That at all relevant times herein mentioned, in addition to other terms and conditions of the April 20, 2019 Consulting and Joint Marketing and Branding Agreement/Contract, Plaintiff ZION WILLIAMSON, in the presence of and with the advice of his mother and stepfather, knowingly, intelligently and voluntarily discussed, negotiated and agreed that termination of the April 20, 2019 Consulting and Joint Marketing and Branding Agreement/Contract by any party to same Agreement/Contract can only be upon thirty (30) days clear written notice to the other party and can only be made **for cause**. See id.

143. That at all relevant times herein mentioned, in addition to other terms and conditions of the April 20, 2019 Consulting and Joint Marketing and Branding Agreement/Contract, Plaintiff ZION WILLIAMSON, in the presence of and with the advice of his mother and stepfather, knowingly, intelligently and voluntarily discussed, negotiated and agreed that the validity, interpretation and performance of the April 20, 2019 Contract/Agreement is controlled by and construed under the laws of the State of Florida**.** See id.

144. That on or about April 20, 2019, and at all relevant times herein mentioned, in furtherance of same Consulting and Joint Marketing and Branding Agreement/Contract, Plaintiff ZION WILLIAMSON knowingly, voluntarily and intelligently appointed Defendant GINA

90

FORD, by Letter of Authorization dated April 20, 2019, as his exclusive Global Marketing Agent. See Exhibit "J", *supra*.

145.    That at all relevant times herein mentioned, upon information and belief, in furtherance of the duly entered and executed Consulting and Joint Marketing and Branding Agreement/Contract, Defendants performed the contracted services and successfully identified, sought out, obtained and/or negotiated on Plaintiff ZION WILLIAMSON's behalf, numerous potential multi-million dollar endorsement/branding deals with including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), Biosteel and others.

146.    That at all relevant times herein mentioned, upon information and belief, in furtherance of the duly entered and executed Consulting and Joint Marketing and Branding Agreement/Contract, Defendants performed the contracted services and successfully identified, sought out, obtained and/or negotiated on Plaintiff ZION WILLIAMSON's behalf, numerous potential and actual multi-million dollar endorsement/branding deals/contracts, to wit:

a.    Defendants successfully negotiated actual deals/endorsement for Plaintiff and on Plaintiff ZION WILLIAMSON's behalf with the following: Activision Publishing/Call of Duty Video Game Franchise; NBA Live/EA Sports; Fanatics Authentic & Panini America (Sports Memorabilia and Trading Card Brand); NBA 2K and BioSteel -- all of which Defendants, in performance of the April 20, 2019 Contract/Agreement with Plaintiff ZION WILLIAMSON, had presented to Plaintiff ZION WILLIAMSON for acceptance; and

b.    Defendants using Defendants' unique skills set, trade secrets, work product and/or business relationships sought out and identified, contacted, discussed and was engaged in ongoing fruitful negotiations on Plaintiff ZION WILLIAMSON'S behalf for additional multi-million dollar

91

endorsement/branding deals with companies including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola) and others.

147. That at all relevant times herein mentioned, upon information and belief, in furtherance of the duly entered and executed Consulting and Joint Marketing and Branding Agreement/Contract, Defendants secured for Plaintiff ZION WILLIAMSON a potential shoe/sneaker deal by which he would not only have his own sneaker/shoe, but would, based upon Defendants' trade secrets, business relationships and work product, obtain a shoe/sneaker deal that would revolutionize the professional athlete shoe market, particularly for professional basketball players.

148. That at all relevant times herein mentioned, upon information and belief, on or about April 28, 2019, Defendant GINA FORD, with Plaintiff ZION WILLIAMSON's mother and stepfather at Plaintiff ZION WILLIAMSON'S direction, permission, authorization and full knowledge, met with the representative of/for the foregoing potential shoe/sneaker company deal during which Defendant GINA FORD successfully secured, obtained and negotiated same to include, but not be limited to, monetary compensation of an immediate One Hundred Million Dollars ($100,000,000.00) to be tendered to Plaintiff ZION WILLIAMSON upon execution of the contract for same shoe/sneaker company deal.

149. That at all relevant times herein mentioned, in furtherance of, in furtherance of the duly entered and executed Consulting and Joint Marketing and Branding Agreement/Contract, Defendants reviewed and negotiated the contract terms for Plaintiff ZION WILLIAMSON, which Plaintiff ZION WILLIAMSON accepted and agreed to perform, for a photo shoot and interview

92

with Slam Magazine whereby Plaintiff ZION WILLIAMSON was featured on the cover of Slam Magazine with a feature spread and interview for/in same Magazine.

150.    That at all relevant times herein mentioned, in furtherance of, in furtherance of the duly entered and executed Consulting and Joint Marketing and Branding Agreement/Contract, Defendants reviewed, further negotiated and established the terms for Plaintiff ZION WILLIAMSON to be featured on the cover of Slam Magazine and to be interviewed by Slam Magazine on the campus of Duke University which Plaintiff ZION WILLIAMSON did, in fact, accept and agreed to, and, did in fact appear for and was featured in/interviewed by Slam Magazine.

151.    That on or about April 28, 2019, and at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON appeared at Duke University with Defendant GINA FORD and performed the foregoing Slam Magazine photo shoot and feature spread and interview.  See Exhibit "K", *supra.*

152.    That on or about April 28, 2019, and at all relevant times herein mentioned, on the campus of Duke University and during the time of the Slam Magazine photo shoot, Plaintiff ZION WILLIAMSON, upon information and belief, introduced Defendant GINA FORD, as well as Defendant GINA FORD'S business partner, to Duke University's men's basketball team Head Coach who was Plaintiff ZION WILLIAMSON's head basketball coach at Duke University.

153.    That after the April 28, 2019 Slam Magazine photo shoot and on or about April 29, 2019, Plaintiff ZION WILLIAMSON, with his mother and stepfather, again invited Defendant GINA FORD to Plaintiff ZION WILLIAMSON's then residence and discussed the strategic vision and future marketing /endorsement opportunities that Defendants were in the midst of securing offers to present to Plaintiff ZION WILLIAMSON.  During this meeting, Defendant GINA FORD

93

provided and/or caused to be provided to Plaintiff ZION WILLIAMSON, and his parents on Plaintiff's behalf, with Defendants' strategic marketing and branding ideas/deals/opportunities/plans to make Plaintiff ZION WILLIAMSON an international and worldwide marketable and rainmaking superstar and to attract both domestic and international/worldwide endorsements and opportunities for Plaintiff ZION WILLIAMSON.

154.    That, at all relevant times herein mentioned, in furtherance of the duly entered and executed Consulting and Joint Marketing and Branding Agreement/Contract, Defendants secured and obtained for Plaintiff ZION WILLIAMSON, a nationally televised commercial for compensation which Plaintiff knowingly, intelligently and voluntarily, and with the advice of his mother and stepfather, accepted and agreed to perform for which Plaintiff ZION WILLIAMSON knowingly, intelligently and voluntarily entered into and executed a contract.

155.    That on or about May 23, 2019, and at all relevant times herein mentioned, in furtherance of his performance of his April 20, 2019 Contract with Defendants, Plaintiff ZION WILLIAMSON, upon information and belief, knowingly, intelligently and voluntarily flew with his mother and stepfather to the State of California and performed in the nationally televised commercial that was identified, obtained, negotiated and secured by Defendants for Plaintiff ZION WILLIAMSON for which he received compensation.

156.    That on or about May 14, 2019, and at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON and his parents invited and requested that Defendant GINA FORD appear with them at the 2019 NBA Draft Lottery in Chicago, Illinois and that she appear at same with Plaintiff ZION WILLIAMSON as his exclusive Global Marketing Agent at/for which, in fact, Defendant GINA FORD did appear; same lottery which revealed the team that would have the number one draft pick which, based on all projections at that time, would be the team that Plaintiff

94

ZION WILLIAMSON would contract with as Plaintiff was projected and, in fact, actually was, the No. 1 pick for the 2019 NBA Draft that later occurred on June 20, 2019.

157. That on or about May 23, 2019, at the request of Plaintiff ZION WILLIAMSON and his parents, Defendant GINA FORD met with Plaintiff ZION WILLIAMSON's stepfather on Plaintiff's behalf in California and provided him with Defendants' extensive and comprehensive marketing plan/work product/trade secrets that included the numerous multi-million dollar strategic branding and marketing endorsements, deals, contracts and/or opportunities that Defendants had obtained for Plaintiff ZION WILLIAMSON with companies/brands including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), Biosteel and others.

158. That at all relevant times herein mentioned, after meeting with Defendant GINA FORD in California on or about May 23, 2019 after Plaintiff ZION WILLIAMSON'S television commercial shoot, Plaintiff ZION WILLIAMSON and his parents on Plaintiff's behalf instructed, directed and further authorized Defendant GINA FORD to continue to discuss and negotiate the terms and conditions of the contracts, on Plaintiff's behalf, for/with: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), BioSteel so that same deals could be finalized with contracts and financial compensation for Plaintiff ZION WILLIAMSON to enter into and execute.

159. That at all relevant times herein mentioned, based upon information and belief, between April 20, 2019 and May 29, 2019, while Plaintiff ZION WILLIAMSON had already contracted with Defendants for Defendants to serve and be Plaintiff's exclusive Global Marketing

95

Firm/Agent and while Defendants were already performing under said Contract with Plaintiff, Plaintiff ZION WILLIAMSON and his mother and/or stepfather on Plaintiff's behalf were contacted by CAA, Brown and/or Metelus, and/or by their agents, servants and employees to meet with them to discuss and negotiate CAA's, Brown's and/or Metelus' representation of Plaintiff ZION WILLIAMSON.

160.    That at all relevant times herein mentioned, based upon information and belief, between April 20, 2019 and May 29, 2019, while Plaintiff ZION WILLIAMSON had already contracted with Defendants for Defendants to serve and be Plaintiff's exclusive Global Marketing Firm/Agent and while Defendants were already performing under said Contract with Plaintiff, and when Plaintiff ZION WILLIAMSON and his mother and/or stepfather on his behalf were contacted and/or had communications, directly and/or indirectly, with CAA, Brown and/or Metelus and/or with their agents, servants and employees, CAA, Brown and/or Metelus had actual knowledge, were aware of and/or had reasons to know that Plaintiff ZION WILLIAMSON had entered into a contract with Defendants on April 20, 2019 for Defendants to serve as Plaintiff ZION WILLIAMSON's exclusive Global Marketing and Branding Firm/Agent.

161.    That at all relevant times herein mentioned, based upon information and belief, between April 20, 2019 and May 29, 2019, while Plaintiff ZION WILLIAMSON had already contracted with Defendants for Defendants to serve and be Plaintiff's exclusive Global Marketing Firm/Agent and while Defendants were already performing under said Contract with Plaintiff, and, when Plaintiff ZION WILLIAMSON and his mother and/or stepfather on his behalf were contacted by CAA, Brown and/or Metelus, Plaintiff ZION WILLIAMSON and/or his parents on his behalf actually informed CAA, Brown and/or Metelus that Plaintiff ZION WILLIAMSON had

96

entered into a contract with Defendants on April 20, 2019 for Defendants to serve as Plaintiff's exclusive Global Marketing and Branding Firm/Agent.

162. That at all relevant times herein mentioned, based upon information and belief, between April 20, 2019 and May 29, 2019, while Plaintiff ZION WILLIAMSON had already contracted with Defendants for Defendants to serve and be Plaintiff's exclusive Global Marketing Firm/Agent and while Defendants were already performing under said Contract with Plaintiff, Plaintiff ZION WILLIAMSON and/or his mother and/or stepfather on his behalf actually met with and/or had communications with CAA, Brown and/or Metelus in furtherance of entering into a contract with CAA, Brown and/or Metelus and in furtherance of breaching Plaintiff's contract with Defendants herein.

163. That at all relevant times herein mentioned, based upon information and belief, between April 20, 2019 and May 29, 2019, while Plaintiff ZION WILLIAMSON had already contracted with Defendants for Defendants to serve and be Plaintiff's exclusive Global Marketing Firm/Agent and while Defendants were already performing under said Contract with Plaintiff, and when Plaintiff ZION WILLIAMSON and/or his parents on his behalf actually met with and/or had communications with CAA, Brown and/or Metelus, Plaintiff ZION WILLIAMSON and/or his parents on his behalf provided and/or caused to be provided to CAA, Brown and/or Metelus a copy of the April 20, 2019 Contract between Plaintiff and Defendants, a copy of the April 20, 2019 Letter of Authorization from Plaintiff ZION WILLIAMSON appointing Defendant GINA FORD as Plaintiff ZION WILLIAMSON's exclusive Global Marketing Agent, and, a copy of Defendants' extensive and comprehensive strategic marketing plan/trade secrets/work product that included the numerous multi-million dollar strategic branding and marketing endorsements, deals, contracts and/or opportunities that Defendants had obtained for Plaintiff ZION WILLIAMSON

97

with companies/brands including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), BioSteel and others.

164.    That on or about May 30, 2019, and at all relevant times herein mentioned, CAA, Brown and/or Metelus publicly announced to the world that they had signed Plaintiff ZION WILLIAMSON to a contract for all purposes including to serve as Plaintiff ZION WILLIAMSON's exclusive Global Marketing Firm/Agent.

165.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON'S signing of a contract with CAA, Brown and/or Metelus for all purposes including for CAA, Brown and/or Metelus to serve as Plaintiff ZION WILLIAMSON's Global Marketing Firm/Agent, knowing that Plaintiff ZION WILLIAMSON had already contracted with Defendants PRIME SPORTS MARKETING, LLC and GINA FORD for Defendants to serve as Plaintiff's Global Marketing Firm/Agent, was intentional, willful and deliberate, and, intentionally, willfully and deliberately interfered with, undermined, contradicted and breached Plaintiff ZION WILLIAMSON's April 20, 2019 contract with Defendants and with his April 20, 2019 Letter of Authorization appointing Defendant GINA FORD to serve as his exclusive Global Marketing and Branding Agent and Firm.

166.    That at all relevant times herein mentioned, based upon information and belief, Plaintiff ZION WILLIAMSON has refused to perform and/or comply with the terms and conditions of the Contract that Plaintiff ZION WILLIAMSON knowingly, intelligently and voluntarily entered into with Defendants on April 20, 2019.

167.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON's, and/or his parents' on Plaintiff's behalf, conduct/acts/omissions/failures including, but not limited

98

to: meeting with, negotiating with, communicating with, contracting with and providing and/or causing to be provided a copy of Defendants' extensive/strategic marketing plan/trade secrets/work product for Plaintiff ZION WILLIAMSON to CAA, Brown and/or Metelus, including contracting with CAA, Brown and/or Metelus to serve as Plaintiff's exclusive global Marketing/Branding Firm/Agent, was knowingly, intelligently and voluntarily committed by Plaintiff ZION WILLIAMSON, was intentional, willful and deliberate, and, was an intentional, willful and deliberate breach of Plaintiff ZION WILLIAMSON's April 20, 2019 Contract with Defendants PRIME SPORTS MARKETING, LLC and GINA FORD.

168. That at all relevant times herein mentioned, Defendants PRIME SPORTS MARKETING, LLC and GINA FORD learned of the foregoing unlawful breach by Plaintiff ZION WILLIAMSON, and learned of the foregoing unlawful interference by CAA, Brown and/or Metelus with Defendants' April 20, 2019 Contract Plaintiff ZION WILLIAMSON, from/by CAA's, Brown's and/or Metelus' public announcement to the world that they had signed Plaintiff ZION WILLIAMSON to a contract for all purposes including to serve as Plaintiff ZION WILLIAMSON's Global Marketing Firm/Agent.

169. That at all relevant times herein mentioned, on or about June 3, 2019, Defendant GINA FORD received an email communication from EA Entertainment, Inc./EA Sports -- one of the companies/brands which Defendants identified, obtained, secured, negotiated and/or presented to Plaintiff ZION WILLIAMSON as an endorsement/marketing/branding deal/opportunity on Plaintiff's behalf, which was amongst those listed in Defendants' strategic and comprehensive marketing plan/work product/trade secrets for Plaintiff which Plaintiff ZION WILLIAMSON requested and/or caused to be requested of Defendants for Defendants to provide Plaintiff, and/or Plaintiff's parents on Plaintiff's behalf, with a copy of same which Defendants did provide to

99

Plaintiff and/or to Plaintiff's parents on his behalf on or about May 23, 2019.  See Exhibit "O", *supra.*

170.    That at all relevant times herein mentioned, on or about June 4, 2019, Defendant GINA FORD received an email communication regarding Biosteel -- one of the companies/brands which Defendants identified, obtained, secured, negotiated and/or presented to Plaintiff ZION WILLIAMSON as an endorsement/marketing/branding deal/opportunity on Plaintiff's behalf, which was amongst those listed in Defendants' strategic and comprehensive marketing plan/work product/trade secrets for Plaintiff which Plaintiff ZION WILLIAMSON requested and/or caused to be requested of Defendants for Defendants to provide Plaintiff and/or to his parents on Plaintiff's behalf with a copy of same which, Defendants did provide on or about May 23, 2019.  See Exhibit "P", *supra*.

171.    That on or about June 20, 2019, Plaintiff ZION WILLIAMSON was the No. 1 Draft Pick of/for the 2019 NBA Draft during which he was drafted by the New Orleans Pelicans and became an NBA player.

172.    That subsequent to Plaintiff ZION WILLIAMSON's breach of his valid contract with Defendants PRIME SPORTS MARKETING, LLC and GINA FORD and his signing of a contract with CAA, Brown and Metelus to serve as Plaintiff's exclusive Global Marketing Agent/Firm, and continuing to present date, Plaintiff ZION WILLIAMSON and CAA, Brown and/or Metelus, upon information and belief, entered into and executed contracts for, and were compensated for, marketing, branding and endorsement deals including, but not limited to, marketing, branding and endorsement deals and/or opportunities that Defendants PRIME SPORTS MARKETING, LLC and GINA FORD had identified, negotiated and secured for Plaintiff ZION WILLIAMSON.

173.     That subsequent to Plaintiff ZION WILLIAMSON's breach of his valid contract with Defendants PRIME SPORTS MARKETING, LLC and GINA FORD and his signing of a contract with CAA, Brown and Metelus to serve as Plaintiff's exclusive Global Marketing Agent/Firm and continuing to present date, Plaintiff ZION WILLIAMSON and CAA, Brown and/or Metelus, upon information and belief, entered into and executed contracts for, and were compensated for, marketing, branding and endorsement deals including, but not limited to, marketing, branding and endorsement deals and/or opportunities that Defendants PRIME SPORTS MARKETING, LLC had identified, negotiated and secured for Plaintiff ZION WILLIAMSON but, to date, have intentionally failed to compensate Defendants for same and, as such, to date Plaintiff ZION WILLIAMSON and CAA, Brown and Metelus have been and continue to be unjustly enriched therefrom.

174.     That, as detailed in paragraphs numbered "30" to and including "64" above in Defendants' Counterclaims against Plaintiff herein, prior to April 20, 2019 and prior to Plaintiff ZION WILLIAMSON attending Duke University, Plaintiff was not a "student-athlete" and/or lost and/or forfeited his eligibility to be/remain a "student-athlete" because Plaintiff, and/or a third-party acting on his behalf including but not limited to Plaintiff's mother and/or stepfather, accepted, received, requested and/or solicited improper/prohibited benefits and/or promises from Nike, Coach K, Adidas, Merl Code, Kansas University, Coach Townsend from Kansas University, Mr. Thomas Morris, Slavko Duric, and MMG.

175.     That as a direct and proximate cause of Plaintiff ZION WILLIAMSON's conduct, acts, omissions and/or failures, individually and collectively with CAA, Brown and Metelus, including his intentional breach of his April 20, 2019 Contract with Defendants and his unjust enrichment from same, Defendants PRIME SPORTS MARKETING, LLC and GINA FORD have

suffered damages and injuries including, but not limited to: loss of income from secured deals/endorsement and branding deals/opportunities, loss of income from derivative endorsement/branding deals/opportunities, loss income from lost royalties, loss income from loss of ownership rights, loss of income from other employment and/or marketing contracts with other players and/or athletes, damage to business character and reputation and related/other damages and injuries herein.

**AS AND FOR A SECOND COUNTERCLAIM**
**AGAINST PLAINTIFF ZION WILLIAMSON**

**FRAUD**

176**.**     Defendants repeat, re-allege, reiterate and reassert each and every fact and each and every allegation contained in paragraphs of Defendants' Counterclaims numbered "1" through "135" with the same force and effect as if more fully set forth at length herein.

177**.**     That at all relevant times herein mentioned, upon information and belief, in furtherance of the duly entered and executed Consulting and Joint Marketing and Branding Agreement/Contract, Defendants performed the contracted services and successfully identified, sought out, obtained and/or negotiated on Plaintiff ZION WILLIAMSON's behalf, numerous potential multi-million dollar endorsement/branding deals with including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), Biosteel, and others.

178.     That at all relevant times herein mentioned, upon information and belief, in furtherance of the duly entered and executed Consulting and Joint Marketing and Branding Agreement/Contract, Defendants performed the contracted services and successfully identified, sought out, obtained and/or negotiated on Plaintiff ZION WILLIAMSON's behalf, numerous actual deals/endorsements on Plaintiff ZION WILLIAMSON's behalf with:     Activision

Publishing/Call of Duty Video Game Franchise, NBA Live/EA Sports, Fanatics Authentic & Panini America (Sports Memorabilia and Trading Card Brand), NBA #2K and BioSteel -- all of which Defendants, in furtherance of their performance of the April 20, 2019 Contract,. had presented to Plaintiff ZION WILLIAMSON, and/or to his parents on his behalf, for acceptance.

179.     That at all relevant times herein mentioned, subsequent to May 14, 2019 and prior to May 29, 2019, Plaintiff ZION WILLIAMSON and/or his stepfather and his mother on his behalf advised Defendant GINA FORD that, during this time, they would be meeting with and negotiating a contract with prospective NBA Agents to discuss Plaintiff ZION WILLIAMSON signing a NBA Agent for his professional NBA career.  That Plaintiff ZION WILLIAMSON and/or his parents on Plaintiff's behalf advised Defendant GINA FORD that they only intended to sign with and only needed a NBA Agent as Defendants already were Plaintiff ZION WILLIAMSON's exclusive Global Marketing Firm/Agent.

180.     That at all relevant times herein mentioned, that on or about May 23, 2019, Plaintiff ZION WILLIAMSON, and/or his parents on his behalf, requested that Defendant GINA FORD provide them with a copy of Defendants' extensive and comprehensive strategic marketing plan/work product/trade secrets that included the numerous multi-million dollar strategic branding and marketing endorsements, deals, contracts and/or opportunities that Defendants had obtained for Plaintiff ZION WILLIAMSON with companies/brands including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), Biosteel and others.

181.      That at all relevant times herein mentioned, that on or about May 23, 2019, Plaintiff ZION WILLIAMSON, and/or his parents on his behalf, told Defendant GINA FORD that the reason Plaintiff wanted a copy of Defendants' extensive and comprehensive strategic marketing

plan/work product/trade secrets that included the numerous multi-million dollar strategic branding and marketing endorsements, deals, contracts and/or opportunities that Defendants had obtained for Plaintiff ZION WILLIAMSON with companies/brands including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), Biosteel and others was, once Plaintiff ZION WILLIAMSON signs with a NBA Agent, to establish and/or facilitate a direct working relationship between Plaintiff ZION WILLIAMSON's NBA Agent and Defendants as Plaintiff ZION WILLIAMSON's exclusive Global Marketing Firm/Agent.

182.    That at all relevant times herein mentioned, based upon information and belief, between April 20, 2019 and May 29, 2019, Plaintiff ZION WILLIAMSON, his mother and/or stepfather was contacted by CAA, Brown and/or Metelus, and/or by their agents, servants and employees, to meet with them to discuss and negotiate their representation of Plaintiff ZION WILLIAMSON.

183.    That at all relevant times herein mentioned, based upon information and belief, between April 20, 2019 and May 29, 2019, while Plaintiff ZION WILLIAMSON had already contracted with Defendants for Defendants to serve and be Plaintiff's exclusive Global Marketing Firm/Agent and while Defendants were already performing under said Contract with Plaintiff, and when Plaintiff ZION WILLIAMSON and his mother and/or stepfather on his behalf were contacted and/or had communications, directly and/or indirectly, with CAA, Brown and/or Metelus and/or with their agents, servants and employees, CAA, Brown and/or Metelus had actual knowledge, were aware of and/or had reasons to know that Plaintiff ZION WILLIAMSON had entered into a contract with Defendants on April 20, 2019 for Defendants to serve as Plaintiff ZION WILLIAMSON's exclusive Global Marketing and Branding Firm/Agent.

184.    That at all relevant times herein mentioned, based upon information and belief, between April 20, 2019 and May 29, 2019, while Plaintiff ZION WILLIAMSON had already contracted with Defendants for Defendants to serve and be Plaintiff's exclusive Global Marketing Firm/Agent and while Defendants were already performing under said Contract with Plaintiff, and, when Plaintiff ZION WILLIAMSON and his mother and/or stepfather on his behalf were contacted by CAA, Brown and/or Metelus, Plaintiff ZION WILLIAMSON and/or his parents on his behalf actually informed CAA, Brown and/or Metelus that Plaintiff ZION WILLIAMSON had entered into a contract with Defendants on April 20, 2019 for Defendants to serve as Plaintiff's exclusive Global Marketing and Branding Firm/Agent.

185.    That at all relevant times herein mentioned, based upon information and belief, between April 20, 2019 and May 29, 2019, while Plaintiff ZION WILLIAMSON had already contracted with Defendants for Defendants to serve and be Plaintiff's exclusive Global Marketing Firm/Agent and while Defendants were already performing under said Contract with Plaintiff, Plaintiff ZION WILLIAMSON and/or his mother and/or stepfather on his behalf actually met with and/or had communications with CAA, Brown and/or Metelus in furtherance of entering into a contract with CAA, Brown and/or Metelus and in furtherance of breaching Plaintiff's contract with Defendants herein.

186.    That at all relevant times herein mentioned, based upon information and belief, between April 20, 2019 and May 29, 2019, while Plaintiff ZION WILLIAMSON had already contracted with Defendants for Defendants to serve and be Plaintiff's exclusive Global Marketing Firm/Agent and while Defendants were already performing under said Contract with Plaintiff, and when Plaintiff ZION WILLIAMSON and/or his parents on his behalf actually met with and/or had communications with CAA, Brown and/or Metelus, Plaintiff ZION WILLIAMSON and/or his

105

parents on his behalf provided and/or caused to be provided to CAA, Brown and/or Metelus a copy of the April 20, 2019 Contract between Plaintiff and Defendants, a copy of the April 20, 2019 Letter of Authorization from Plaintiff ZION WILLIAMSON appointing Defendant GINA FORD as Plaintiff ZION WILLIAMSON's exclusive Global Marketing Agent, and, a copy of Defendants' extensive and comprehensive strategic marketing plan/trade secrets/work product that included the numerous multi-million dollar strategic branding and marketing endorsements, deals, contracts and/or opportunities that Defendants had obtained for Plaintiff ZION WILLIAMSON with companies/brands including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), BioSteel and others.

187.    That at all relevant times herein mentioned, when Plaintiff ZION WILIAMSON, and/or his parents on his behalf, made and/or caused to be made, the representation to Defendant GINA FORD that he was requesting that Defendants provide him with a copy of their strategic marketing plan/work product/trade secrets, that included numerous multi-million dollar deals/opportunities/contracts on his behalf, to establish and/or facilitate a direct working relationship between Plaintiff ZION WILLIAMSON's NBA Agent and Defendants as his exclusive Global Marketing Firm/Agent, Plaintiff ZION WILLIAMSON, and/or his parents on his behalf, made and/or caused the foregoing representation to be made to Defendants to induce Defendants to provide said marketing plan/trade secrets to Plaintiff.

188.    That at all relevant times herein mentioned, when Plaintiff ZION WILIAMSON, and/or his parents on his behalf, made and/or caused to be mad, the foregoing representation to Defendant GINA FORD that he was requesting that Defendants provide him with a copy of their strategic marketing plan/trade secrets and when Plaintiff and/or his parents on his behalf made

106

such representation knowing that his/their stated reason/intent that he/they told to Defendant GINA FORD was false, misleading and untrue and that his/their true intentions, based upon information and belief, was to provide same to CAA, Brown and/or Metelus in furtherance of Plaintiff's contract with them for them to serve, instead of Defendants, as Plaintiff's exclusive Global Marketing/Branding Firm/Agent, Plaintiff ZION WILLIAMSON further breached the valid April 20, 2019 Contract with Defendants as Plaintiff had breached his agreement and duty to: "…to keep, protect and hold confidential all information shared between the parties that is related to the matters of this Agreement. Such information includes but is not limited to, any trade secrets, business plans, strategies … concerning the Client…" See Exhibit "I", *supra.*

189. That at all relevant times herein mentioned, Plaintiff's true intentions in fraudulently inducing Defendants to provide him with a copy of Defendants' strategic marketing plan/work product/trade secrets that included numerous multi-million dollar deals/opportunities/contracts on his behalf, was to fraudulently and unlawfully give same to CAA, Brown and/or Metelus for them to take over and/or finalize the numerous multi-million dollar endorsement/marketing/branding deals, contracts and/or opportunities that Defendants had already identified, secured, obtained and/or negotiated on Plaintiff ZION WILLIAMSON's behalf.

190. That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON's foregoing stated representation(s) to Defendants to induce Defendants to provide him and/or caused to be provided to him, with a copy of their strategic marketing plan/work product/trade secrets on Plaintiff's behalf, was a material representation upon which Defendants relied, to their detriment, and by which Defendants were induced to actually providing and/or causing to be provided to Plaintiff ZION WILLIAMSON, a copy of Defendants' marketing plan/work product/trade secrets which, in fact, Defendants did provide to Plaintiff.

191.    That at all relevant times herein mentioned, Plaintiff ZION WILIAMSON and/or his parents on his behalf, based upon information and belief, provided and/or caused to be provided, a copy of Defendants' strategic marketing plan/trade secrets that included numerous multi-million dollar endorsement/marketing/branding deals, contracts and opportunities to CAA, Brown and/or Metelus in furtherance of Plaintiff ZION WILLIAMSON'S contract with CAA, Brown and/or Metelus for them to serve, instead of Defendants, as Plaintiff's exclusive Global Marketing/Branding Firm/Agent, as well as, in furtherance of Plaintiff's breach of his April 20, 2019 Contract with Defendants and in furtherance of instructing CAA, Brown and/or Metelus to take over and/or finalize the numerous multi-million dollar endorsement/marketing/branding deals, contracts and/or opportunities that Defendants had already identified, secured, obtained and/or negotiated on Plaintiff ZIONWILLIAMSON's behalf.

192.    That at all relevant times herein mentioned, Defendants' marketing plan/trade secrets/work product on behalf of Plaintiff ZION WILLIAMSON that included numerous multi-million deals, contracts and/or opportunities on Plaintiff's behalf, was and remains to be Defendants' work product, business plan, marketing plan and/or trade secrets and, at all relevant times herein mentioned, are proprietary and protected proprietary information/trade secrets to Defendants herein.

193.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON's foregoing conduct was fraudulent and was in breach of the April 20, 2019 Contract with Defendants.

194.    That subsequent to Plaintiff ZION WILLIAMSON's breach of his valid contract with Defendants PRIME SPORTS MARKETING, LLC and GINA FORD and his signing of a contract with CAA, Brown and Metelus to serve as Plaintiff's exclusive Global Marketing

Agent/Firm, and continuing to present date, Plaintiff ZION WILLIAMSON and CAA, Brown and/or Metelus, upon information and belief, entered into and executed contracts for, and were compensated for, marketing, branding and endorsement deals including, but not limited to, marketing, branding and endorsement deals and/or opportunities that Defendants PRIME SPORTS MARKETING, LLC and GINA FORD had identified, negotiated and secured for Plaintiff ZION WILLIAMSON.

195.     That subsequent to Plaintiff ZION WILLIAMSON's breach of his valid contract with Defendants PRIME SPORTS MARKETING, LLC and GINA FORD and his signing of a contract with CAA, Brown and Metelus to serve as Plaintiff's exclusive Global Marketing Agent/Firm and continuing to present date, Plaintiff ZION WILLIAMSON and CAA, Brown and/or Metelus, upon information and belief, entered into and executed contracts for, and were compensated for, marketing, branding and endorsement deals including, but not limited to, marketing, branding and endorsement deals and/or opportunities that Defendants PRIME SPORTS MARKETING, LLC had identified, negotiated and secured for Plaintiff ZION WILLIAMSON but, to date, have intentionally failed to compensate Defendants for same and, as such, to date Plaintiff ZION WILLIAMSON and CAA, Brown and Metelus have been and continue to be unjustly enriched therefrom.

196.     That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON's foregoing conduct, material representations, fraudulent representations and/or materially fraudulent omissions that he, and/or his parents made to Defendants on Plaintiff's behalf, were false representations and/or concealment of a material fact, were reasonably calculated and intended to deceive Defendants, did in fact deceive Defendants as Defendants did provide Plaintiff

with a copy of their proprietary work plan/trade secrets and, as a result of same, Defendants were injured, and remain to be damaged and injured therefrom.

197.    That at all relevant times herein mentioned, Plaintiff, as per the valid April 20, 2019 Contract with Defendants, was under a duty not to disclose, share or provide Defendants' marketing plan/work product/trade secrets as Plaintiff agreed to keep same confidential, to wit: Plaintiff agreed: "…to keep, protect and hold confidential all information shared between the parties that is related to the matters of this Agreement.  Such information includes but is not limited to, any trade secrets, business plans, strategies … concerning the Client…"  See Exhibit "I", *supra*.

198.    That at all relevant times herein mentioned, based upon Plaintiff's contractual duty and obligation to keep Defendants' marketing plan/trade secrets confidential, Plaintiff ZION WILLIAMSON had a duty to speak and to tell/advise/warn/disclose to Defendants his true intentions but, rather, in furtherance of his intentional fraud against Defendants and in furtherance of his breach of the April 20, 2019 Contract, Plaintiff ZION WILLIAMSON intentionally concealed the material fact that he was going to provide and, in fact, did provide/cause to be provided Defendants' marketing plan/trade secrets to CAA, Brown and/or Metelus.  Plaintiff ZION WILLIAMSON breached his duty to speak/disclose to Defendants that he was not and would not keep Defendants' marketing plan/trade secrets confidential and he intentionally concealed same in furtherance of his contract with CAA, Brown and/or Metelus, in furtherance of their representation of Plaintiff as his exclusive Global Marketing Firm/Agent and in furtherance of instructing them to take over/finalize the numerous multi-million dollar endorsement/marketing/branding deals, contracts and/or opportunities that Defendants had already identified, secured, obtained and/or negotiated on Plaintiff ZIONWILLIAMSON's behalf.

199. That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON's silence/concealment herein was/is fraudulent.

200. That at all relevant times herein mentioned, as a direct and proximate cause/result of Plaintiff ZION WILLIAMSON's foregoing acts, conduct, omissions, statements and/or representations, Defendants have been damaged and injured therefrom including, but not limited to: being denied the opportunity to serve as Plaintiff ZION WILLIAMSON's exclusive Global Marketing/Branding Firm./Agent; being denied the opportunity to earn income; being denied the due compensation owed to Defendant; having Defendants' trade secrets/business secrets/business plans/strategic marketing plan/work product unlawfully taken, used, usurped and/or misappropriated; being damaged in reputation and character including business reputation and character; being denied other employment opportunities, loss of income from secured deals/endorsement and branding deals/opportunities, loss of income from derivative endorsement/branding deals/opportunities, loss income from lost royalties, loss income from loss of ownership rights, loss of income from other employment and/or marketing contracts with other players and/or athletes and other related damages and injuries herein.

201. That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON's foregoing acts, conduct, omissions, statements and/or representations have caused and will continue to cause Defendants economic loss, loss of future business opportunities, will prevent Defendants' performance of same April 20, 2019 Contract/Agreement and will prevent Defendants from receiving the due compensation owed to Defendants therefrom.

202. That at all relevant times herein mentioned, as a direct and proximate result of the foregoing, Defendants have suffered and will continue to suffer damages herein.

203. That at all relevant times herein mentioned, Defendants claim damages herein in excess of the jurisdictional limits of this Court and in an amount to be determined at Trial by Jury.

## AS AND FOR A THIRD COUNTERCLAIM AGAINST
## PLAINTIFF ZION WILLIAMSON

## CIVIL CONSPIRACY

204. Defendants repeat, re-allege, reiterate and reassert each and every fact and each and every allegation contained in paragraphs of Defendants' Counterclaims numbered "1" through "135" with the same force and effect as if more fully set forth at length herein.

205. That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON conspired with and entered into an agreement with his mother and/or stepfather and/or with CAA, Brown and/or Metelus to engage in a course of conduct to induce, encourage and to have Plaintiff ZION WILLIAMSON breach his April 20, 2019 Contract with Defendants so Plaintiff ZION WILLIAMSON could sign and enter into a representation contract with CAA, Brown and/or Metelus for them to represent Plaintiff as Plaintiff's exclusive Global Marketing Agency/Firm and so that CAA, Brown and/or Metelus could serve as his exclusive global marketing agent which, in fact Plaintiff ZION WILLIAMSON did breach.

206. That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON conspired with and entered into an agreement with his mother and/or stepfather and/or with CAA, Brown and/or Metelus to take, use, usurp and/or misappropriate, to their financial benefit and unjust enrichment, the Defendants' proprietary and protected work product/trade secrets/business plan/strategic marketing plan that included numerous multi-million dollar endorsement/marketing/branding deals, contracts and/or opportunities that Defendants had already identified, secured, obtained, and/or negotiated on Plaintiff ZION WILLIAMSON's behalf which, in fact Plaintiff ZION WILLIAMSON and/or his parents and/or CAA, Brown and/or Metelus did,

112

in fact, take, use, usurp, misappropriate/convert from Defendants; thereby causing Defendants damages and injuries therefrom.

207.    That at all relevant times herein mentioned, in furtherance of the conspiracy, Plaintiff ZION WILLIAMSON conspired with and entered into an agreement with his mother and/or stepfather and/or with CAA, Brown and/or Metelus to communicate, meet and discuss and negotiate CAA's, Brown's and/or Metelus' representation of Plaintiff ZION WILLIAMSON and/or to induce, encourage, facilitate and/or to have Plaintiff ZION WILLIAMSON breach his April 20, 2019 Contract with Defendants which, in fact, Plaintiff ZION WILLIAMSON did by breaching his April 20, 2019 Contract with Defendants and by entering into a contract with CAA, Brown and/or Metelus; thereby causing Defendants damages and injuries therefrom.

208.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON conspired with and entered into an agreement with his mother and/or stepfather and/or with CAA, Brown and/or Metelus  to take, use, usurp and/or misappropriate, to their financial benefit and unjust enrichment, a copy of Plaintiffs' proprietary work product and extensive and comprehensive marketing plan that included the numerous multi-million dollar strategic branding and marketing endorsements and opportunities that Defendants had obtained for Plaintiff ZION WILLIAMSON with companies/brands including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), Biosteel and others which, in fact, Plaintiff ZION WILLIAMSON did, in fact, take, use, usurp and misappropriate.

209.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON conspired with and entered into an agreement with his mother and/or stepfather and/or with CAA, Brown and/or Metelus  to take, use, usurp and/or misappropriate, to their financial benefit and

113

unjust enrichment, a copy of Plaintiffs' proprietary work product and extensive and comprehensive marketing plan that included the numerous multi-million dollar strategic branding and marketing endorsements and opportunities that Defendants had obtained for Plaintiff ZION WILLIAMSON with companies/brands including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), Biosteel and others which, in fact, Plaintiff ZION WILLIAMSON did, in fact, take, use, usurp and misappropriate and did give to/provide to CAA, Brown and/or Metelus for them to take over/finalize the numerous multi-million dollar endorsement/marketing/branding deals, contracts and/or opportunities that Defendants had already identified, secured, obtained and/or negotiated on Plaintiff ZIONWILLIAMSON's behalf.

210. That subsequent to Plaintiff ZION WILLIAMSON's breach of his valid contract with Defendants PRIME SPORTS MARKETING, LLC and GINA FORD and his signing of a contract with CAA, Brown and Metelus to serve as Plaintiff's exclusive Global Marketing Agent/Firm, in furtherance of their conspiracy, and continuing to present date, Plaintiff ZION WILLIAMSON and CAA, Brown and/or Metelus, upon information and belief, entered into and executed contracts for, and were compensated for, marketing, branding and endorsement deals including, but not limited to, marketing, branding and endorsement deals and/or opportunities that Defendants PRIME SPORTS MARKETING, LLC and GINA FORD had identified, negotiated and secured for Plaintiff ZION WILLIAMSON.

211. That subsequent to Plaintiff ZION WILLIAMSON's breach of his valid contract with Defendants PRIME SPORTS MARKETING, LLC and GINA FORD and his signing of a contract with CAA, Brown and Metelus to serve as Plaintiff's exclusive Global Marketing Agent/Firm, in furtherance of their conspiracy, and continuing to present date, Plaintiff ZION

114

WILLIAMSON and CAA, Brown and/or Metelus, upon information and belief, entered into and executed contracts for, and were compensated for, marketing, branding and endorsement deals including, but not limited to, marketing, branding and endorsement deals and/or opportunities that Defendants PRIME SPORTS MARKETING, LLC had identified, negotiated and secured for Plaintiff ZION WILLIAMSON but, to date, have intentionally failed to compensate Defendants for same and, as such, to date Plaintiff ZION WILLIAMSON and CAA, Brown and Metelus have been and continue to be unjustly enriched therefrom.

212.    That on or about May 30, 2019, and at all relevant times herein mentioned, in furtherance of their conspiracy, CAA, Brown and/or Metelus, on their behalf and on behalf of Plaintiff ZION WILLIAMSON, publicly announced to the world that Plaintiff ZION WILLIAMSON signed a contract for all purposes with CAA, Brown and/or Metelus for them to serve as Plaintiff ZION WILLIAMSON's exclusive Global Marketing Firm/Agent including, but not limited to, announcements declaring CAA as Plaintiff's Marketing Firm/Agency and declaring Brown as Plaintiff's NBA agent and Metelus as Plaintiff's global marketing agent.

213.    That at all relevant times herein mentioned, Plaintiff's conspiracy with his parents and/or with CAA, Brown and/or Metelus was deliberate, knowing, intentional and willful and same intentionally, willfully and deliberately interfered with, undermined, contradicted and breached Plaintiff ZION WILLIAMSON's April 20, 2019 contract with Defendants and Plaintiff's April 20, 2019 Letter of Authorization appointing Defendant GINA FORD to serve as Plaintiff's exclusive Global Marketing and Branding Agent/Firm.

214.    That at all relevant times herein mentioned, Plaintiff's conspiracy with his parents and/or with CAA, Brown and/or Metelus was deliberate, knowing, intentional and willful and same intentionally, willfully and deliberately interfered with, undermined and damaged

115

Defendants' business, Defendants' income/finances and Defendants' business character and reputation in the industry.

215.    That at all relevant times herein mentioned, the acts, conduct, omissions and/or representations of Plaintiff ZION WILLIAMSON and his parents and/or CAA, Brown and/or Metelus constitute a civil conspiracy which existed for wrongful acts to be committed, which acts were in fact committed by Plaintiff ZION WILLIAMSON and his co-conspirators herein for the purpose of their civil conspiracy against Defendants herein.

216.    That at all relevant times herein mentioned, as a direct and proximate cause/result of Plaintiff ZION WILLIAMSON's conspiracy herein, Defendants have been damaged and injured therefrom including, but not limited to: having the April 20, 2019 Contract/Agreement with Plaintiff ZION WILLIAMSON breached by Plaintiff ZION WILLIAMSON; being denied the opportunity to serve as Plaintiff ZION WILLIAMSON's exclusive Global Marketing/Branding Firm./Agent; being denied the opportunity to earn income; being denied the due compensation owed to Defendants; having Defendants' trade secrets/business secrets/business plans/strategic marketing plan/work product unlawfully taken, used, usurped and/or misappropriated; being damaged in reputation and character including business reputation and character; being denied other employment opportunities, loss of income from secured deals/endorsement and branding deals/opportunities, loss of income from derivative endorsement/branding deals/opportunities, loss income from lost royalties, loss income from loss of ownership rights, loss of income from other employment and/or marketing contracts with other players and/or athletes and other related damages and injuries herein.

217.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON's conspiracy herein has caused and will continue to cause Defendants economic loss, loss of future

business opportunities, will prevent Defendants' performance of same April 20, 2019 Contract/Agreement and will prevent Defendants from receiving the due compensation owed to Defendants therefrom.

218.     That at all relevant times herein mentioned, as a direct and proximate result of the foregoing, Defendants have suffered and will continue to suffer damages herein.

219.     That at all relevant times herein mentioned, Defendants claim damages herein in excess of the jurisdictional limits of this Court and in an amount to be determined at Trial by Jury.

<u>AS AND FOR A FOURTH COUNTERCLAIM AGAINST</u>
<u>PLAINTIFF ZION WILLIAMSON</u>

<u>UNJUST ENRICHMENT</u>

220.     Defendants repeat, re-allege, reiterate and reassert each and every fact and each and every allegation contained in paragraphs of Defendants' Counterclaims numbered "1" through "135" with the same force and effect as if more fully set forth at length herein.

221.     That at all relevant times herein mentioned, this is an action for unjust enrichment against Plaintiff within the jurisdiction of this Court for damages in excess of the jurisdictional limits of this Court herein exclusive of Attorneys' fees and costs pleaded in the alternative to and/or in addition to the other Counts of Defendants' Counterclaims against Plaintiff herein.

222.     That at all relevant times herein mentioned, as a result of Plaintiff ZION WILLIAMSON's obtainment and procurement of Defendants' proprietary and protected work product/trade secrets/business plan/strategic marketing plan as detailed above, Defendants conferred a benefit(s), including but not limited to financial and/or economic benefits, to Plaintiff ZION WILLIAMSON as a result of the unlawful inducement and solicitation of same by Plaintiff ZION WILLIAMSON.

223.    That at all relevant times herein mentioned, as a result of Plaintiff ZION WILLIAMSON's fraudulent and unlawful obtainment and procurement of Defendants' proprietary and protected work product/trade secrets/business plan/strategic marketing plan as detailed above, Defendants conferred a benefit(s), including but not limited to financial and/or economic benefits and the benefit of using and having Defendants' trade secrets/property itself, to Plaintiff ZION WILLIAMSON as a result of the unlawful inducement and solicitation of same by Plaintiff ZION WILLIAMSON which gives rise to a legal and/or equitable obligation on the part of Plaintiff ZION WILLIAMSON to account for the benefits he received.

224.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON knew of the benefits conferred to him, at Plaintiff's solicitation and benefit, from/by Defendants and knew and continues to know that he receives benefits therefrom to present date but, to date, has intentionally failed to compensate Defendants for same nor accounted for the benefits he has received and continues to receive to present date.

225.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON is are aware of these benefits, solicited these benefits, accepted these benefits and, based upon his respective conduct, omissions and actions as detailed above, he sought out and continues to seek to gain further benefit therefrom by misappropriating Defendants' work product/trade secrets and by contacting individuals and/or companies identified, listed and contained in Defendants' marketing plan/work product/trade secrets for Plaintiff ZION WILLIAMSON, including directly contacting individuals and/companies such as Biosteel and EA Entertainment, Inc.

226.    That subsequent to Plaintiff ZION WILLIAMSON's breach of his valid contract with Defendants PRIME SPORTS MARKETING, LLC and GINA FORD and his signing of a contract with CAA, Brown and Metelus to serve as Plaintiff's exclusive Global Marketing

Agent/Firm, in furtherance of their conspiracy, and continuing to present date, Plaintiff ZION WILLIAMSON and CAA, Brown and/or Metelus, upon information and belief, entered into and executed contracts for, and were compensated for, marketing, branding and endorsement deals including, but not limited to, marketing, branding and endorsement deals and/or opportunities that Defendants PRIME SPORTS MARKETING, LLC and GINA FORD had identified, negotiated and secured for Plaintiff ZION WILLIAMSON.

227.    That subsequent to Plaintiff ZION WILLIAMSON's breach of his valid contract with Defendants PRIME SPORTS MARKETING, LLC and GINA FORD and his signing of a contract with CAA, Brown and Metelus to serve as Plaintiff's exclusive Global Marketing Agent/Firm, in furtherance of their conspiracy, and continuing to present date, Plaintiff ZION WILLIAMSON and CAA, Brown and/or Metelus, upon information and belief, entered into and executed contracts for, and were compensated for, marketing, branding and endorsement deals including, but not limited to, marketing, branding and endorsement deals and/or opportunities that Defendants PRIME SPORTS MARKETING, LLC had identified, negotiated and secured for Plaintiff ZION WILLIAMSON but, to date, have intentionally failed to compensate Defendants for same and, as such, to date Plaintiff ZION WILLIAMSON and CAA, Brown and Metelus have been and continue to be unjustly enriched therefrom.

228.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON has retained these benefits, has not compensated Defendants for these benefits and does not intend to compensate Defendants for these benefits.

229.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON has retained these benefits, has not compensated Defendants for these benefits and does not intend to

119

compensate Defendants for these benefits -- all to Defendants' detriment including, but not limited to, financial detriment and detriment to business character and reputation.

230. That at all relevant times herein mentioned, it would be inequitable to allow Plaintiff ZION WILLIAMSON to retain these benefits and/or to allow him to seek to continue to retain these benefits under the circumstances herein and to become unjustly enriched therefrom.

231. That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON continues and will continue to unjustly enrich himself in this fashion as detailed and complained of herein.

232. That at all relevant times herein mentioned, Defendants have no adequate remedy at law for Plaintiff ZION WILLIAMSON's actions and continuing actions that led to his unjust enrichment herein.

233. That at all relevant times herein mentioned, as a direct and proximate cause of Plaintiff ZION WILLIAMSON's unjust enrichment herein, Defendants have been damaged and injured therefrom including, but not limited to: having the April 20, 2019 Contract/Agreement with Plaintiff ZION WILLIAMSON breached by Plaintiff ZION WILLIAMSON; being denied the opportunity to serve as Plaintiff ZION WILLIAMSON's exclusive Global Marketing/Branding Firm./Agent; being denied the opportunity to earn income; being denied the due compensation owed to Defendants; having Defendants' trade secrets/business secrets/business plans/strategic marketing plan/work product unlawfully taken, used, usurped and/or misappropriated; being damaged in reputation and character including business reputation and character; being denied other employment opportunities, loss of income from secured deals/endorsement and branding deals/opportunities, loss of income from derivative endorsement/branding deals/opportunities, loss income from lost royalties, loss income from loss of ownership rights, loss of income from other

employment and/or marketing contracts with other players and/or athletes and other related damages and injuries herein.

234.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON's unjust enrichment herein has caused and will continue to cause Defendants economic loss, loss of future business opportunities, will prevent Defendants' performance of same April 20, 2019 Contract/Agreement and will prevent Defendants from receiving the due compensation owed to Defendants therefrom.

235.    That at all relevant times herein mentioned, as a direct and proximate result of the foregoing, Defendants have suffered and will continue to suffer damages herein.

236.    That at all relevant times herein mentioned, Defendants claim damages herein in excess of the jurisdictional limits of this Court and in an amount to be determined at Trial by Jury.

<u>**AS AND FOR A FIFTH COUNTERCLAIM AGAINST<br>PLAINTIFF ZION WILLIAMSON**</u>

<u>**MISAPPROPRIATION AND VIOLATION OF NORTH CAROLINA TRADE SECRETS PROTECTION ACT, ARTICLE 24, CHAPTER 66 OF NORTH CAROLINA GENERAL STATUTES, N.C. GEN. STAT. §66-152, *ET. SEQ.*.**</u>

237**.**    Defendants repeat, re-allege, reiterate and reassert each and every fact and each and every allegation contained in paragraphs of Defendants' Counterclaims numbered "1" through "135" with the same force and effect as if more fully set forth at length herein.

238.    That at all relevant times herein mentioned, Defendants' strategic, comprehensive and extensive marketing plan for Plaintiff ZION WILLIAMSON that included the numerous multi-million dollar strategic branding and marketing endorsements, contracts and/or opportunities that Defendants had obtained for Plaintiff ZION WILLIAMSON with companies/brands including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-

121

Cola), Biosteel and others, was/is/remains to be the proprietary work product, business plan and/or trade secrets of Defendants PRIME SPORTS MARKETING, LLC and GINA FORD and, pursuant to the North Carolina trade Secrets Protection Act, NC Gen. Sta. §66-152, *et. seq.,* constitute(s) and satisfies the Statute's definition of a "Trade Secret".

239. That at all relevant times herein mentioned, Defendants' strategic, comprehensive and extensive marketing plan for Plaintiff ZION WILLIAMSON that included the numerous multi-million dollar strategic branding and marketing endorsements, contracts and/or opportunities that Defendants had obtained for Plaintiff ZION WILLIAMSON with companies/brands including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), Biosteel and others, was/is/remains to be the proprietary work product, business plan and/or trade secrets of Defendants PRIME SPORTS MARKETING, LLC and GINA FORD, is Defendants' business information, including but not limited to, Defendants' program, compilation of information, method, technique and/or process that derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use, and, is/are the subject of efforts that are reasonable under the circumstances, as detailed above and as agreed to in the April 20, 2019 Contract, to maintain its secrecy. See Exhibit "I", *supra.*

240. That at all relevant times herein mentioned, Defendants' strategic, comprehensive and extensive marketing plan/work product/business plan/trade secret(s) was confidential and constitutes trade secrets because it yields and/or derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means

122

by other persons who can obtain value from disclosure and use such as Plaintiff ZION WILLIAMSON herein.

241. That at all relevant times herein mentioned, Defendants took reasonable steps to protect their foregoing proprietary work product, business plan and/or trade secrets herein including, but not limited to, the term and condition of the April 20, 2019 Contract/Agreement with Plaintiff ZION WILLIAMSON, to which Defendant ZION WILLIAMSON in the presence of and with the advice of his mother and stepfather knowingly, intelligently and voluntarily discussed, negotiated and agreed to and covenanted, at Paragraph 10 of the April 20, 2019 Contract/Agreement which obligates Plaintiff ZION WILLIAMSON, as he knew and agreed to, "…to keep, protect and hold confidential all information shared between the parties that is related to the matters of this Agreement. Such information includes but is not limited to, any trade secrets, business plans, strategies … concerning the Client…" See Exhibit "I", *supra.*

242. That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON, individually and acting in concert with his parents and/or with CAA, Brown and/or Metelus, acquired/took/usurped and used Defendant' strategic, comprehensive and extensive marketing plan/ work product, business plan and/or trade secrets by improper means as detailed above including, but not limited to, Plaintiff ZION WILLIAMSON falsely representing and/or causing to be falsely represented to Defendant GINA FORD, upon which Defendants relied, that Plaintiff wanted a copy of Defendants' extensive and comprehensive marketing plan/trade secrets so that, once he signed with a NBA Agent, he could establish and/or facilitate a direct working relationship between his NBA Agent and Defendants as Plaintiff ZION WILLIAMSON's exclusive Global Marketing Firm/Agent.

243.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON knew and/or had reasons to know that Defendants' strategic, comprehensive and extensive marketing plan/work product/business plan was a trade secret(s) and that he acquired same by/through improper means and not by an accident or mistake.

244.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON took and misappropriated Defendants' trade secrets herein fraudulently and unlawfully as detailed above and, as such, he took same without the express consent or implied authority or consent of/by Defendants herein.

245.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON was and is aware of the unlawful benefits conferred to him by his unlawful misappropriation herein, he has solicited these benefits, he has accepted these benefits and, based upon his conduct, omissions and actions as detailed above, he sought out and continues to seek to gain further benefit therefrom by misappropriating Defendants' work product/trade secrets and by contacting individuals and/or companies identified, listed and contained in Defendants' work product/strategic marketing plan for Plaintiff ZION WILLIAMSON, including directly contacting individuals and/companies such as Biosteel and EA Entertainment, Inc.  See Exhibits "O" and "P", *supra.*

246.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON has retained these benefits, has not compensated Defendants for these benefits and does not intend to compensate Defendants for these benefits.

247.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON has retained these benefits, has not compensated Defendants for these benefits and does not intend to

compensate Defendants for these benefits to Defendants' detriment including, but not limited to, financial detriment and detriment to business character and reputation.

248.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON's unlawful misappropriation of Defendants' trade secrets was done in bad faith and was willful and malicious and, as such, pursuant to North Carolina Trade Secrets Protection Act, NC General Statute §66-154(b) (c) and (d), Defendants herein are entitled to recover their Attorneys' fees, are entitled to recover punitive damages and are entitled to recover actual damages of economic loss and/or unjust enrichment caused by Plaintiff's misappropriation herein.  Defendants are further entitled to injunctive relief, to order Plaintiff to stop violating Defendant' rights, to stop using and misappropriating Defendants' work product/trade secrets/business plan and to take reasonable steps to preserve the secrecy of Defendants' information pursuant to North Carolina Trade Secrets Protection Act, NC General Statute §66-154(a)(1), (a)(2).

249.    That at all relevant times herein mentioned, as a direct and proximate cause of Plaintiff's unlawful misappropriation herein, Defendants have been damaged and injured therefrom including, but not limited to: having the April 20, 2019 Contract/Agreement with Plaintiff ZION WILLIAMSON breached by Plaintiff ZION WILLIAMSON; being denied the opportunity to serve as Plaintiff ZION WILLIAMSON's exclusive Global Marketing/Branding Firm./Agent; being denied the opportunity to earn income; being denied the due compensation owed to Defendants; having Defendants' trade secrets/business secrets/business plans/strategic marketing plan/work product unlawfully taken, used, usurped and/or misappropriated; being damaged in reputation and character including business reputation and character; being denied other employment opportunities, loss of income from secured deals/endorsement and branding deals/opportunities, loss of income from derivative endorsement/branding deals/opportunities, loss

income from lost royalties, loss income from loss of ownership rights, loss of income from other employment and/or marketing contracts with other players and/or athletes and other related damages and injuries herein.

250.    That at all relevant times herein mentioned, Plaintiff's unlawful misappropriation herein has caused and will continue to cause Defendants economic loss, loss of future business opportunities, will prevent Defendants' performance of same April 20, 2019 Contract/Agreement and will prevent Defendants from receiving the due compensation owed to Defendants therefrom.

251.    That at all relevant times herein mentioned, all conditions precedent have occurred, been waived or have otherwise been satisfied.

252.    That at all relevant times herein mentioned, as a direct and proximate result of the foregoing, Defendants have suffered and will continue to suffer damages herein.

253.    That at all relevant times herein mentioned, Defendants respectfully request that this Honorable Court enter judgment against Plaintiff ZION WILLIAMSON herein and in favor of Defendants for all remedies available under North Carolina Trade Secrets Protection Act, NC General Statute §66-152, *et. seq.* including, but not limited to, damages for: actual loss, for potential loss, unjust enrichment, costs, interest and Attorneys' fees, injunctive relief, for Defendants' profits, for punitive damages and for such other relief, in law and/or in equity that this Court deems just and proper.

254.    That at all relevant times herein mentioned, Defendants claim damages herein in excess of the jurisdictional limits of this Court and in an amount to be determined at Trial by Jury.

## AS AND FOR A SIXTH COUNTERCLAIM AGAINST
## PLAINTIFF ZION WILLIAMSON

## CONVERSION

255.     Defendants repeat, re-allege, reiterate and reassert each and every fact and each and every allegation contained in paragraphs of Defendants' Counterclaims numbered "1" through "135" with the same force and effect as if more fully set forth at length herein.

256.     That at all relevant times herein mentioned, Defendants' strategic, comprehensive and extensive marketing plan for Plaintiff ZION WILLIAMSON that included the numerous multi-million dollar strategic branding and marketing endorsements, contracts and/or opportunities that Defendants had obtained for Plaintiff ZION WILLIAMSON with companies/brands including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), Biosteel and others, was/is/remains to be the proprietary work product, business plan, property and/or trade secrets of Defendants PRIME SPORTS MARKETING, LLC and GINA FORD.

257.     That at all relevant times herein mentioned, Defendants' strategic, comprehensive and extensive marketing plan for Plaintiff ZION WILLIAMSON that included the numerous multi-million dollar strategic branding and marketing endorsements, contracts and/or opportunities that Defendants had obtained for Plaintiff ZION WILLIAMSON with companies/brands including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), Biosteel and others, was/is/remains to be the proprietary work product, business plan and/or trade secrets of Defendants PRIME SPORTS MARKETING, LLC and GINA FORD, is Defendants' business information/business property/property that Plaintiff ZION WILLIAMSON

127

agreed, as detailed above, to keep Confidential pursuant to the April 20, 2019 Contract. <u>See</u> Exhibit "I", *supra.*

258. That at all relevant times herein mentioned, Defendants' strategic, comprehensive and extensive marketing plan/work product/business plan/trade secret(s)/business property/property was confidential and constitutes trade secrets because it yields and/or derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain value from disclosure and use such as Plaintiff ZION WILLIAMSON herein.

259. That at all relevant times herein mentioned, Defendants took reasonable steps to protect their foregoing proprietary work product, business plan, property, business property and/or trade secrets herein including, but not limited to, the term and condition of the April 20, 2019 Contract/Agreement with Plaintiff ZION WILLIAMSON, to which Defendant ZION WILLIAMSON in the presence of and with the advice of his mother and stepfather knowingly, intelligently and voluntarily discussed, negotiated and agreed to and covenanted, at Paragraph 10 of the April 20, 2019 Contract/Agreement which obligates Plaintiff ZION WILLIAMSON, as he knew and agreed to, "…to keep, protect and hold confidential all information shared between the parties that is related to the matters of this Agreement. Such information includes but is not limited to, any trade secrets, business plans, strategies … concerning the Client…" <u>See</u> Exhibit "I", *supra.*

260. That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON, individually and acting in concert with his parents and/or with CAA, Brown and/or Metelus, acquired/took/usurped and used Defendant' strategic, comprehensive and extensive marketing plan/ work product, business plan, property, business property and/or trade secrets by improper means as detailed above including, but not limited to, Plaintiff ZION WILLIAMSON falsely

128

representing and/or causing to be falsely represented to Defendant GINA FORD, upon which Defendants relied, that Plaintiff wanted a copy of Defendants' extensive and comprehensive marketing plan/trade secrets so that, once he signed with a NBA Agent, he could establish and/or facilitate a direct working relationship between his NBA Agent and Defendants as Plaintiff ZION WILLIAMSON's exclusive Global Marketing Firm/Agent.

261.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON knew and/or had reasons to know that Defendants' strategic, comprehensive and extensive marketing plan/work product/business plan/property/business property was a trade secret(s) and that he acquired same by/through improper means and not by an accident or mistake.

262.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON took and converted Defendants' trade secrets/property/business property herein fraudulently and unlawfully as detailed above and, as such, he took same without the express consent or implied authority or consent of/by Defendants herein.

263.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON was and is aware of the unlawful benefits conferred to him by his unlawful conversion herein, he has solicited these benefits, he has accepted these benefits and, based upon his conduct, omissions and actions as detailed above, he sought out and continues to seek to gain further benefit therefrom by misappropriating Defendants' work product/trade secrets/property/business property and by contacting individuals and/or companies identified, listed and contained in Defendants' work product/strategic marketing plan for Plaintiff ZION WILLIAMSON, including directly contacting individuals and/companies such as Biosteel and EA Entertainment, Inc.  See Exhibits "O" and "P", *supra.*

264.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON has retained these benefits, has not compensated Defendants for these benefits and does not intend to compensate Defendants for these benefits.

265.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON has retained these benefits, has not compensated Defendants for these benefits and does not intend to compensate Defendants for these benefits to Defendants' detriment including, but not limited to, financial detriment and detriment to business character and reputation.

266.    That at all relevant times herein mentioned, Defendants are the proper owner of Defendants' strategic marketing plan/work product/trade secrets/property/business property/property herein and same has been and continues to be wrongfully possessed and converted by Plaintiff ZION WILLIAMSON.

267.    That at all relevant times herein mentioned, Defendants are the proper owner of Defendants' strategic marketing plan/work product/trade secrets/property/business property/property herein and same has been and continues to be wrongfully possessed and converted by Plaintiff ZION WILLIAMSON to Plaintiff's benefit and to Defendants' detriment.

268.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON has, without authorization, or consent or permission by/from Defendants, assumed and exercised the right of ownership of Defendants' strategic marketing plan/work product/trade secrets/property/business property/property herein to the alteration of its condition and to the exclusion of Defendants' rights as owner thereof.

269.    That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON wrongfully deprived Defendants of their ownership of their strategic marketing plan/work product/trade secrets/property/business property/property herein and his actions, conduct and

130

omissions as detailed above, denies and violates Defendants' dominion over and rights to/in their property herein.

270. That at all relevant times herein mentioned, as a direct and proximate cause of Plaintiff's unlawful conversion herein, Defendants have been damaged and injured therefrom including, but not limited to: having the April 20, 2019 Contract/Agreement with Plaintiff ZION WILLIAMSON breached by Plaintiff ZION WILLIAMSON; being denied the opportunity to serve as Plaintiff ZION WILLIAMSON's exclusive Global Marketing/Branding Firm./Agent; being denied the opportunity to earn income; being denied the due compensation owed to Defendants; having Defendants' trade secrets/business secrets/business plans/strategic marketing plan/work product unlawfully taken, used, usurped and/or misappropriated; being damaged in reputation and character including business reputation and character; being denied other employment opportunities, loss of income from secured deals/endorsement and branding deals/opportunities, loss of income from derivative endorsement/branding deals/opportunities, loss income from lost royalties, loss income from loss of ownership rights, loss of income from other employment and/or marketing contracts with other players and/or athletes and other related damages and injuries herein.

271. That at all relevant times herein mentioned, Plaintiff's unlawful conversion herein has caused and will continue to cause Defendants economic loss, loss of future business opportunities, will prevent Defendants' performance of same April 20, 2019 Contract/Agreement and will prevent Defendants from receiving the due compensation owed to Defendants therefrom.

272. That at all relevant times herein mentioned, as a direct and proximate result of the foregoing, Defendants have suffered and will continue to suffer damages herein.

Case 1:19-cv-00593-LCB-JLW   Document 54-1   Filed 02/17/21   Page 131 of 149

273.     That at all relevant times herein mentioned, Defendants claim damages herein in excess of the jurisdictional limits of this Court and in an amount to be determined at Trial by Jury.

**AS AND FOR A SEVENTH COUNTERCLAIM AGAINST**
**PLAINTIFF ZION WILLIAMSON**

**BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING**

274.     Defendants repeat, re-allege, reiterate and reassert each and every fact and each and every allegation contained in paragraphs of Defendants' Counterclaims numbered "1" through "135" with the same force and effect as if more fully set forth at length herein.

275.     That at all relevant times herein mentioned, this is an action against Plaintiff ZION WILLIAMSON for breach of the implied duty of good faith and fair dealings and for damages in excess of the jurisdictional limits of this Court, exclusive of Attorneys' fees and costs pleaded in the alternative to, or in addition to, the other Counts of this Complaint.

276.     That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON breached express terms of the April 20, 2019 Contract/Agreement with Defendants by: meeting with, discussing, negotiating and entering into a contract with CAA, Brown and/or Metelus for them, not Defendants, to serve as his exclusive Global Marketing/Branding Firm/Agents; sharing/providing with/to, and/or causing to be shared/provided to CAA, Brown and/or Metelus Defendants' strategic marketing plan/trade secrets for Plaintiff ZION WILLIAMSON that included numerous multi-million dollar endorsement/branding deals/opportunities that Defendants and identified/secured/obtained/negotiated on Plaintiff ZION WILLIAMSON's behalf.

277.     That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON breached express terms of the April 20, 2019 Contract/Agreement with Plaintiffs and did so with the intent for Defendants to usurp, take, use, convert and misappropriate Defendants' trade/business secrets/business plans/work product and to usurp, convert and misappropriate the

132

due compensation owed to Defendants therefrom pursuant to the April 20, 2019 Contract for same; authorizing/instructing CAA, Brown and/or Metelus to publicly announce to the world that Plaintiff ZION WILLIAMSON had signed with them for them to serve as his Global Marketing/Branding Firm/Agent; refusing to, honor, adhere to and perform the terms and conditions of his April 20, 2019 Contract/Agreement with Defendants; failing to and/or refusing to pay Defendants the due compensation owed to Defendants pursuant to the April 20, 2019 Contract/Agreement -- all while knowing that he already had a valid and enforceable contract for same services with Defendants herein.

278.    That at all relevant times herein mentioned, a duty of good faith and fair dealings is implicit in all enforceable contracts under the laws of the State of North Carolina, and implied in the performance of every term of an express and/or written contract, including the April 20, 2019 Contract/Agreement between Plaintiff ZION WILLIAMSON and Defendants herein is Plaintiff's duty and obligation to act fairly and in good faith in carrying out the agreement which, in the instant matter, Plaintiff ZION WILLIAMSON intentionally failed and refused to do and continues to refuse to do.

279.    That at all relevant times herein mentioned, by repeatedly and systematically engaging in conduct that is contrary to and in breach of the terms and conditions of the April 20, 2019 Contract/Agreement between Plaintiff ZION WILLIAMSON and Defendants herein, Plaintiff ZION WILIAMSON demonstrated and continues to demonstrate bad faith and unfair dealings in performing and/or failing to perform in accordance with the express terms of the enforceable April 20, 2019 Contract/Agreement between him and Defendants herein.

280.    That at all relevant times herein mentioned, as a direct and proximate cause of Plaintiff ZION WILLIAMSON's breach of duty of good faith and fair dealings herein, Defendants

have been damages and injured therefrom including, but not limited to: being denied the opportunity to serve as Plaintiff ZION WILLIAMSON's exclusive Global Marketing/Branding Firm./Agent; being denied the opportunity to earn income; being denied the due compensation owed to Defendants; having Defendants' trade secrets/business secrets/business plans/strategic marketing plan/work product unlawfully taken, used, usurped and/or misappropriated and/or converted; being damaged in reputation and character including business reputation and character; being denied other employment opportunities, loss of income from secured deals/endorsement and branding deals/opportunities, loss of income from derivative endorsement/branding deals/opportunities, loss income from lost royalties, loss income from loss of ownership rights, loss of income from other employment and/or marketing contracts with other players and/or athletes and other related damages and injuries herein.

281. That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON's ongoing failure to perform consistent with the terms and conditions of the April 20, 2019 Contract/Agreement with Defendants, its promises and assurances, have caused and will continue to cause Defendants to suffer economic loss, loss of future business opportunities, will prevent Defendants' performance of same April 20, 2019 Contract/Agreement and will prevent Defendants from receiving the due compensation owed to Defendants therefrom.

282. That at all relevant times herein mentioned, as a direct and proximate result of the foregoing, Defendants have suffered and will continue to suffer damages herein.

283. That at all relevant times herein mentioned, Defendants claim damages herein in excess of the jurisdictional limits of this Court and in an amount to be determined at Trial by Jury.

## AS AND FOR AN EIGHTH COUNTERCLAIM
## AGAINST PLAINITFF ZION WILLIAMSON

## ACTION FOR DECLARATORY JUDGMENT

284.    Defendants repeat, re-allege, reiterate and reassert each and every fact and each and every allegation contained in paragraphs of Defendants' Counterclaims numbered "1" through "283" with the same force and effect as if more fully set forth at length herein.

285.    That at all relevant times herein mentioned, this is an action for Declaratory Judgment against Plaintiff pursuant to North Carolina General Statutes, including but not limited to, NC. General Statute §66-152 *et. seq.,* the North Carolina Trade Secrets Protection Act, within the jurisdiction of this Court pleaded in the alternative to and/or in addition to the other Counts of Defendants' Counterclaims herein.

286.    That at all relevant times herein mentioned, Defendants believe the existing April 20, 2019, Contract/agreement they have with Plaintiff ZION WILLIAMSON, and the applicable North Carolina Statutes, apply to Plaintiff and should be interpreted in such a manner as to require Plaintiff to pay the claims made by Defendant as alleged herein.

287.    That at all relevant times herein mentioned, furthermore, a Declaratory Judgment is required so as to guide the parties in their future relations and/or anticipated future conduct and to secure Defendants' interest relative to derivative earnings from any and all relationship, revenue, income and/or financial gain that arose from and/or will arise from the April 20, 2019, Contract/agreement and/or Defendants' performance of/services provided to pursuant to same contract and/or from Defendants' strategic and comprehensive market plan/business plan/work product/trade secrets herein.

288.    That at all relevant times herein mentioned, a bona fide, actual, present practical need for a Declaratory Judgment exists.

135

289.     That at all relevant times herein mentioned, the Declaration requested concerns a present, ascertained or ascertainable state of facts for present controversy as to a state of facts.

290.     That at all relevant times herein mentioned, a privilege or right of the Defendants is dependent upon the facts or the law applicable to the facts.

291.     That at all relevant times herein mentioned, Plaintiff and Defendants have an actual, present, adverse and antagonist interest in the subject manner either in law, equity and in fact.

292.     That at all relevant times herein mentioned, the relief sought by Defendants is not merely giving of legal advice or the answer to questions propounded for curiosity.

293.     That at all relevant times herein mentioned, Defendants request a Declaratory Judgment declaring the April 20, 2019 Contract/agreement with Plaintiff ZION WILLIAMSON to be valid and enforceable under which Defendants seeks specific performance of the terms and conditions thereof by Plaintiff ZION WILLIAMSON.

294.     That at all relevant times herein mentioned, Defendants request Declaratory Judgment declaring the contract between Plaintiff ZION WILLIAMSON and CAA, Brown and/or Metelus, to be void, voidable and/or unenforceable.

295.     That at all relevant times herein mentioned, Defendants request a Declaratory Judgment setting forth Defendants' rights under North Carolina Law and in accordance with the April 20, 2019 Contract Defendants have with Plaintiff ZION WILLIAMSON concerning Plaintiff's obligation to pay Defendants the compensation claimed by Defendants herein now and in the future.

## AS AND FOR A NINTH COUNTERCLAIM
## AGAINST PLAINTIFF ZION WILLIAMSON

## ACTION FOR INJUNCTIVE RELIEF

296. Defendants repeat, re-allege, reiterate and reassert each and every fact and each and every allegation contained in paragraphs of Defendants' Counterclaims numbered "1" through "295" with the same force and effect as if more fully set forth at length herein.

297. That at all relevant times herein mentioned, this is an action for Injunction Relief, both temporary and permanent, within the jurisdiction of this Court pleaded in the alternative to and/or in addition to the other Counts of this Complaint.

298. That at all relevant times herein mentioned, as set forth in detail above, Plaintiff has violated and continues to violate North Carolina Statutes, including by not limited to North Carolina trade Secrets Protection Act, NC. Gen. Statute §66-152, *et. seq.* and, based upon information and belief, will continue to do so in the future.

299. That at all relevant times herein mentioned, Plaintiff's conduct, acts and omissions as detailed above, including, but not limited to the unlawful misappropriation of, conversion of and unjust enrichment from Defendants' work product/trade secrets, are ongoing problems that will continue to cause Defendants to sustain economic losses and threaten Defendants' ability to serve as Marketing and Branding Consultants and/or to otherwise work in the marketplace for Marketing and Branding.

300. That at all relevant times herein mentioned, a money judgment alone in this case, may only compensate Defendants for past losses and will not stop Plaintiff's unlawful misappropriation, unlawful conversion and/or unjust enrichment, as detailed above, and will not stop Plaintiff from continuing to unlawfully take/misappropriate/convert the monies duly earned

and owed to Defendants and that is necessary to maintain Defendants' practice on an ongoing basis.

301.     That at all relevant times herein mentioned, Defendants will suffer irreparable harm from the acts of Plaintiff and enjoining Plaintiff from committing these violations in the future and declaring their invalidity, is appropriate as Defendants do not have any adequate remedy at law.

302.     That at all relevant times herein mentioned, Defendants will suffer irreparable harm unless the relief requested herein is granted and maintained until a trial on merits.

303.     That at all relevant times herein mentioned, Defendants have no adequate remedy to protect them in the law.

304.     That at all relevant times herein mentioned, Defendants have a substantial likelihood of success of the merits of the claims herein alleged.

305.     That at all relevant times herein mentioned, an injunction will serve the public interest.

306.     That at all relevant times herein mentioned, Defendants will suffer additional hardship if Plaintiff is allowed to continue his injurious conduct.

307.     That at all relevant times herein mentioned, the interest of third persons and of the public will be served by the entry of a permanent injunction.

308.     That at all relevant times herein mentioned, an injunction can be practicable and adequately framed and enforced.

309.     That at all relevant times herein mentioned, Defendants request a permanent and/temporary injunction pending trial on the merits of the within matter, which includes, but is not limited to, enjoining Plaintiff:

138

a.       From performing any of the terms or conditions of the contract between Plaintiff and CAA, Brown and/or Metelus for them to serve/represent Plaintiff as his exclusive Global Marketing Agency/Agent;

b.       From receiving any financial compensation from any of the individual/companies/entities/ideas identified/listed/contained in Defendants' strategic/comprehensive marketing plan/trade secrets relative to Plaintiff ZION WILLIAMSON's marketing branding and/or endorsements; .

c.       From having CAA, Brown and/or Metelus serve as Plaintiff's global marketing agency/agent, exclusive or otherwise;

d.       From having CAA, Brown and/or Metelus, on Plaintiff's behalf, hold themselves out as Plaintiff ZION WILLIAMSON's global marketing agency/agent to any and all third parties, from contacting Plaintiff or his family to introduce any endorsement opportunities, overseeing any marketing opportunities brought to or available to Plaintiff, defining analyzing or costing the benefit size to Plaintiff of any endorsement opportunities, negotiating any marketing branding or endorsement deals on behalf of Plaintiff, forwarding draft contracts to Plaintiff or his family to facilitate Plaintiff's review and negotiation of any such contracts with any endorsement entity or third party, facilitate or negotiate in any way with any third party, an contract, endorsement or opportunity on behalf of Plaintiff; providing any advice to Plaintiff or his family on the building of his marketing brand domestically or internationally and the granting of such further and other injunction relief as to this Honorable Court seems just and proper;

e.       From taking, publishing, using, usurping, deriving any benefit and/or financial benefit/compensation from, misappropriating and/or not protecting the secrecy of Defendants' proprietary and protected business plan/work product/trade secrets;

f.      From violating Defendants' rights; and

g.      From acting on or in furtherance of the breach of Defendants' April 20, 2019 contract/Agreement with Plaintiff ZION WILLIAMSON and/or in furtherance of Plaintiff's unlawful contract with CAA, Brown and/or Metelus for them to serve as Plaintiff ZION WILLIAMSON's Global Marketing and branding agency/firm/agent.

**AS AND FOR A TENTH COUNTERCLAIM**
**AGAINST PLAINITFF ZION WILLIAMSON**

**VIOLATION OF NORTH CAROLINA'S UNFAIR & DECEPTIVE**
**TRADE PRACTICES ACT, N.C. GEN. STAT §75-1.1**

310.     Defendants repeat, re-allege, reiterate and reassert each and every fact and each and every allegation contained in paragraphs of Defendants' Counterclaims numbered "1" through "309" with the same force and effect as if more fully set forth at length herein.

311.     That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON's acts, conduct, failures and omissions against Defendants PRIME SPORTS MARKETING, LLC and GINA FORD as detailed above, are in violation of North Carolina's Unfair and Deceptive Trade Practices Act, N. C. Gen. Stat §75-1.1.

312.     That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON's acts, conduct, failures and omissions against Defendants PRIME SPORTS MARKETING, LLC and GINA FORD as detailed above, constitute and was unfair methods of competition in or affecting commerce and/or constitute/was unfair or deceptive acts or practices in or affecting commerce and, as such, are unlawful and in violation of North Carolina Gen. Sta. §75-1.1.

313.     That at all relevant times herein mentioned, Defendants PRIME SPORTS MARKETING, LLC'S and GINA FORD'S business/business activities constitute commerce herein.

140

314.     That at all relevant times herein mentioned, North Carolina's Gen. Stat. §75-1.1, declares unfair methods of competition in or affecting commerce and/or unfair or deceptive acts or practices in or affecting commerce to be unlawful.

315.     That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON violated North Carolina Gen. Stat. §75-1.1 by his acts, conduct and/or omissions that were intentional, willful, deceitful, unfair, fraudulent, deceptive and made in bad faith including, but not limited to: misappropriating, converting, taking, using and deriving unjust enrichment from Defendants' strategic marketing plan/work product/trade secrets that Defendants created and made, in performance of the April 20, 2019 Contract, which included numerous multi-million dollar strategic branding and marketing endorsements, contracts and/or opportunities that Defendants had obtained for Plaintiff with companies/brands including, but not limited to: PUMA, General Mills (Wheaties), Beats by Dre, Chase Bank, Harper Collins, Monster Hydro, Burger King, Mercedes Benz, T-Mobile, Kraft Heinz, Powerade (Coca-Cola), Biosteel and others; misappropriating, converting, taking, using and deriving unjust enrichment from Defendants' strategic marketing plan/work product/trade secrets and providing it to and/or causing it to be provided to third parties including CAA, Brown and/or Metelus for Plaintiff, CAA, Brown and/or Metelus to use and derive financial benefit/compensation from, and, misappropriating, converting, taking, using and deriving unjust enrichment from Defendants' strategic marketing plan/work product/trade secrets and being unjustly enriched therefrom with no intention, continuing to present date, to duly compensate Defendants for same.   That to date, Plaintiff ZION WILLIAMOSN has received and continues to receive benefits and monetary compensation, as well as other economic benefits, from using and misappropriating/converting Defendants' strategic marketing plan/work product/trade secrets which included multi-million dollar

141

endorsement deals that Defendants already secured on his behalf and Plaintiff continues to refuse to compensate Defendants for same.

316. That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON further violated North Carolina Gen. Stat. §75-1.1 by demanding and taking monies from Defendants guising same as a Contract Advance to Defendants when Plaintiff knew he had intentions to, and in fact, did, breach the April 20, 2019 Contract and intended to keep same monies without reimbursement of same to Defendants. That to date, despite his unlawful breach of the April 20, 2019 Contract with Defendants, Plaintiff ZION WILLIAMSON has still refused to give back/reimburse same monies to Defendants.

317. That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON's conduct, acts and/or omissions herein and, in particular, his fraudulent and deceitful obtainment of Defendants' trade secrets herein, is a violation of the North Carolina Trade Secrets Protection Act, Article 24, Chapter 66 Of North Carolina General Statutes, N.C. Gen. Stat. §66-152, *Et. Seq.*

318. That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON's violation of the North Carolina Trade Secrets Protection Act, Article 24, Chapter 66 Of North Carolina General Statutes, N.C. Gen. Stat. §66-152, *Et. Seq.* is a *per se* violation of the North Carolina Unfair & Deceptive Trade Practices Act, North Carolina Gen. Stat. §75-1.1.

319. That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON's false representations and omissions of material fact that he intentionally made to Defendants in an effort to deceive them when his true intentions were to, and he in fact did: breach the April 20, 2019 Contract, fraudulently obtain Defendants' trade secrets for him to utilize same without compensating Defendants, give/provide Defendants' trade secrets to CAA, Brown and/or Metelus for them to use on Plaintiff's behalf so he could receive compensation therefrom without

142

compensating Defendants, and, obtain monies form Defendants as a guised contract advance when Plaintiff knew he was going to breach the April 20, 2019 Contract and that he was not going to give back/reimburse Defendants with same monies, were unfair acts and practices herein as same were immoral, unethical and unscrupulous—all such acts/conduct which are clearly prohibited by the North Carolina Unfair & Deceptive Trade Practices Act, North Carolina Gen. Stat. §75-1.1 herein.

320.　That at all relevant times herein mentioned, Plaintiff ZION WILLIAMSON's acts, conduct and practices against Defendants were done willfully, knowingly, voluntarily, intentionally, maliciously and fraudulently and had the capacity and tendency to deceive and mislead, to create the likelihood of deception and, in fact, did deceive Defendants herein.

321.　That as a direct and proximate result of Plaintiff ZION WILLIAMSON'S unfair and deceptive practices, Defendants PRIME SPORTS MARKETING, LLC and GINA FORD have suffered and continue to suffer damages and injury including, but not limited to: being denied the opportunity to serve as Plaintiff ZION WILLIAMSON's exclusive Global Marketing/Branding Firm./Agent; being denied the opportunity to earn income; being denied the due compensation owed to Defendants; having Defendants' trade secrets/business secrets/business plans/strategic marketing plan/work product unlawfully taken, used, usurped and/or misappropriated and/or converted; being damaged in reputation and character including business reputation and character; being denied other employment opportunities, loss of income from secured deals/endorsement and branding deals/opportunities, loss of income from derivative endorsement/branding deals/opportunities, loss income from lost royalties, loss income from loss of ownership rights, loss of income from other employment and/or marketing contracts with other players and/or athletes and other related damages and injuries herein.

143

322. That as a direct and proximate result of the foregoing, Defendants PRIME SPORTS MARKETING, LLC and GINA FORD have been damaged in an amount that exceeds the jurisdictional limits of this Court and in an amount to be determined at trial.

323. That, in addition, pursuant to of the North Carolina Unfair & Deceptive Trade Practices Act, North Carolina Gen. Stat. §75-1.1, §75-16 and §75-16.1, Defendants are entitled to, and demand judgment against Plaintiff for herein, treble damages and attorneys' fees and seek treble damages herein in the amount of One Hundred Million Dollars ($100,000,000.00).

## AS AND FOR AN ELEVENTH COUNTERCLAIM
## AGAINST PLAINITFF ZION WILLIAMSON

## PUNITIVE DAMAGES

324. Defendants repeat, re-allege, reiterate and reassert each and every fact and each and every allegation contained in paragraphs of Defendants' Counterclaims numbered "1" through "323" with the same force and effect as if more fully set forth at length herein.

325. That at all times herein mentioned, Plaintiff's conduct complained of herein, and as set for above, were intentional, malicious, reckless, wanton, extreme, outrageous, in total and/or reckless disregard and deliberate indifference to the lawful rights and entitlements of Defendants.

326. That at all times herein mentioned, Plaintiff's omissions, conduct and/or failures, complained of herein, and as set for above, were intentional, malicious, reckless, wanton, extreme, outrageous, in total and/or reckless disregard and deliberate indifference to the lawful rights and entitlements of Defendants.

327. That at all times herein mentioned, Plaintiff's conduct, as complained of herein, warrants and mandates that the jury should be instructed to affixed a monetary award so as to punish Plaintiff for same outrageous conduct and to further serve as a deterrent to this Plaintiff and other entities/individuals/parties similarly situated as Plaintiff from engaging in the same and/or

144

similar conduct who may be considering and/or engaging in intentional, malicious, reckless, wanton, extreme, outrageous conduct in total and/or reckless disregard and deliberate indifference to the lawful rights and entitlements of others, such Defendants herein, and to further serve the interest of the public at large.

328.    That pursuant to North Carolina Trade Secrets Protection Act, §66-152, *et. seq.,* Defendants are entitled to and demand herein, punitive damages against Plaintiff ZION WILLIAMSON herein.

329.    Defendants claim damages herein and request that a judgment be granted against Plaintiff in the amount of One Hundred Million Dollars, ($100,000,000.00) and/or in an amount to be determined at trial by the Jury.

## DAMAGES, DEMAND FOR JURY TRIAL AND PRAYER FOR RELIEF

**WHEREFORE,** Defendants PRIME SPORTS MARKETING, LLC AND GINA FORD, pray for the following damages and relief against Plaintiff ZION WILLIAMSON:

1.    Damages in Excess of the jurisdictional limits of this Court and/or in an amount to be determined at trial by jury;

2.    Compensatory Damages in an amount to be determined at trial by jury;

3.    Consequential Damages in an amount to be determined at trial by jury;

4.    Post Judgment interest;

5.    Declaratory Judgment against Plaintiff as set forth above in Defendants' Eighth Counterclaim;

6.    A Temporary Injunction against Plaintiff as set forth above in Defendants' Ninth Counterclaim until a final decision can be had in this case;

7.    A Permanent Injunction against Plaintiff as set forth above in Defendants' Ninth

145

Counterclaim;

8.  Treble Damages as against Plaintiff in the amount of One Hundred Million Dollars, ($100,000,000.00), and Attorneys' fees as set forth above in Defendants' Tenth Counterclaim;

9.  Punitive Damages against Plaintiff in the amount of One Hundred Million Dollars, ($100,000,000.00) as set forth above in Defendants' Eleventh Counterclaim;

10. Attorneys' fees and costs as authorized by contract and/or by applicable North Carolina Statutes;

11. All remedies including monetary, injunctive and/or declaratory available to Defendants pursuant to North Carolina Trade Secrets Protection Act, Section 66-152, *et. seq.;* and

12. Such other relief as this Court may deem just and proper, in law or in equity.

**ALL CONDITIONS PRECEDENT, HAVE BEEN MET, SATISFIED AND/OR WAIVED**

**DEFENDANTS REQUEST TRIAL BY JURY**

Dated: February 17, 2021

/s/ Willie E. Gary
WILLIE E. GARY, ESQ.
GARY, WILLIAMS, PARENTI, WATSON
& GARY, PLLC
Attorneys for Defendants
PRIME SPORTS MARKETING, LLC
and GINA FORD
221 E. Osceola Street
Stuart, Florida 34994
(772) 283-8260
weg@williegary.com
*Local Rule 83.1(d) Special Appearance*

146

/s/ Alvin L. Pittman
ALVIN L. PITTMAN, ESQ. (N.C. Bar No. 8460)
office@apittman-law.com
Law Offices of Alvin L. Pittman
Attorneys for Defendants
PRIME SPORTS MARKETING, LLC
and GINA FORD
Airport Center Building
5901 W Century Boulevard, Suite 412
Los Angeles, California 90045
(310) 337-3077
(310) 337-3080(fax)


/s/ Stephen L. Drummond
Stephen L. Drummond*
sdrummond@dswinlaw.com
DRUMMOND & SQUILLACE, PLLC
Attorneys for Defendants
PRIME SPORTS MARKETING, LLC
and GINA FORD
175-61 Hillside Avenue, Suite 205
Jamaica, New York 11432
Tel: (718) 298-5050
Fax: (718) 298-5554
*Local Rule 83.1(d) Special Appearance


/s/ JoAnn Squillace
JoAnn Squillace*
jsquillace@dswinlaw.com
DRUMMOND & SQUILLACE, PLLC
Attorneys for Defendants
PRIME SPORTS MARKETING, LLC
and GINA FORD
175-61 Hillside Avenue, Suite 205
Jamaica, New York 11432
Tel: (718) 298-5050
Fax: (718) 298-5554
*Local Rule 83.1(d) Special Appearance

147

**CERTIFICATE OF SERVICE**

We hereby certify that the foregoing **DEFENDANTS' AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT WITH AMENDED AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIMS AGAINST PLAINTIFF** was filed with the Clerk of the Court using the CM/ECF system and, as such, was served on all parties via ECF.

Dated: February 17, 2021

/s/ Willie E. Gary
WILLIE E. GARY, ESQ.
GARY, WILLIAMS, PARENTI, WATSON
& GARY, PLLC
Attorneys for Defendants
PRIME SPORTS MARKETING, LLC
and GINA FORD
221 E. Osceola Street
Stuart, Florida 34994
(772) 283-8260
weg@williegary.com
*Local Rule 83.1(d) Special Appearance*

/s/ Alvin L. Pittman
ALVIN L. PITTMAN, ESQ. (N.C. Bar No. 8460)
office@apittman-law.com
Law Offices of Alvin L. Pittman
Attorneys for Defendants
PRIME SPORTS MARKETING, LLC
and GINA FORD
Airport Center Building
5901 W Century Boulevard, Suite 412
Los Angeles, California 90045
(310) 337-3077
(310) 337-3080(fax)

/s/ Stephen L. Drummond_____
Stephen L. Drummond*
sdrummond@dswinlaw.com
DRUMMOND & SQUILLACE, PLLC
Attorneys for Defendants
PRIME SPORTS MARKETING, LLC
and GINA FORD
175-61 Hillside Avenue, Suite 205
Jamaica, New York 11432
Tel: (718) 298-5050
Fax: (718) 298-5554
*Local Rule 83.1(d) Special Appearance


/s/ JoAnn Squillace_____
JoAnn Squillace*
jsquillace@dswinlaw.com
DRUMMOND & SQUILLACE, PLLC
Attorneys for Defendants
PRIME SPORTS MARKETING, LLC
and GINA FORD
175-61 Hillside Avenue, Suite 205
Jamaica, New York 11432
Tel: (718) 298-5050
Fax: (718) 298-5554
*Local Rule 83.1(d) Special Appearance