# EXHIBIT

# "G"

**SWORN AFFIDAVIT OF MR. DONALD KREISS AND EXHIBITS ATTACHED TO SAID AFFIDAVIT REGARDING MONIES TAKEN BY PLAINTIFF/PLAINTIFF'S FAMILY IN OCTOBER 2018 FROM CANADIAN MARKETING AGENCY**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No.: 1:19-cv-00593-LCB-JLW

ZION WILLIAMSON,

        Plaintiff,

    v.

PRIME SPORTS MARKETING,
LLC, and GINA FORD,

        Defendants.

**AFFIDAVIT**

| State of California | ) |
|---|---|
| | SS: |
| County of Los Angeles | ) |

I, Donald Kreiss, being duly sworn hereby deposes and says as follows:

1.    I am an adult resident of the State of California, County of Los Angeles, City of West Hollywood.

2.    I know that I am under no obligation to give this statement. I make this statement completely voluntarily and of my own free will, declaring that all information shared by me in this statement is the truth. I am under no pressure to give this statement. Further, in giving this statement, I have neither asked for, nor been given or promised anything, by anyone. My statement is simply a sharing of the facts of which I am personally aware relating to Zion Williamson.

I



3.     Before giving this statement, Attorney Alvin L. Pittman told me, and I fully understand, that this statement (called an Affidavit) is a formal and legal document which expects and requires me to **tell the truth under the penalty of perjury.** With a clear understanding of the requirement for TRUTH, I voluntarily give this Affidavit.

4.     I am an entrepreneur who engages in activities such as fundraising, deal-making, investing and others. In past years, I have worked with athletes and agents in marketing relationships. I match individuals who have financial resources to invest, with various investment opportunities that I identify.

5.     Around the end of March of 2019, Leslie Wittlin, a Canadian Attorney who represents a number of high profile individuals in Canada, called me and introduced me to the name Slavko Duric, representative of a small sporting marketing entity who had landed the exclusive marketing representation rights to Zion Williamson, and needed my help. Attorney Wittlin gave me Mr. Duric's telephone number asking me to call him, and I authorized Wittlin to give Duric my telephone number.

6.     Within a day or so of Wittlin's call to me, I telephoned Slavko Duric and introduced myself. Duric introduced himself as President of Maximum Management Group, Inc., ("MMG") a Sport Marketing Agency based in

2

Burlington, Ontario Canada that represents athletes in Canada, the United States and Europe. Duric announced that he and "MMG" had obtained verbal agreement from/with Lee Anderson, Stepfather of Zion Williamson, to be the exclusive marketing representative for Zion Williamson, and he needed my financial and professional help. My understanding was that to obtain from Lee Anderson (on behalf of the Zion Williamson Family) the promise that Zion would sign with MMG for exclusive marketing as soon as Zion was free from Duke and eligible to sign with a marketing agent, Duric exhausted his financial resources and obtained a $300,000 investment from Ed Ulrich, a Developer/Builder, in Canada. It was further my understanding that to secure the verbal commitment from Lee Anderson (who was acting on behalf of Zion Williamson and the Zion Williamson Family) to have Zion sign with "MMG", Lee Anderson had demanded, and Duric paid, some $400,000 to Lee Anderson and Chubby Wells. I understood that the $400,000 to Lee Anderson and Chubby Wells was paid in the manner directed by Lee Anderson. My understanding is that Lee Anderson requested that the money be wired to a bank in South Carolina, shortly after Zion started school at Duke (and that some may have been in October of 2018). I understand that Lee Anderson requested the money saying that he needed it to fix up a house.

7. My understanding is that the money was wired just as directed by Lee

3



Anderson and Chubby Wells, for the verbal commitment that Zion Williamson would sign a written agreement making MMG his exclusive marketing agent as soon as he left Duke for the NBA.

8.        After my initial conversation with Slavko Duric, we spoke almost daily. Also, around late March 2019, I came to understand that Duric had a long-standing relationship with Lee Anderson that started when Lee Anderson played basketball somewhere in Europe when the two of them met years ago. Duric somehow assistance Lee Anderson in some manner, and now, with Zion anticipated to be a basketball and marketing super star, they reconnected.

9.        Duric reached out to me because he had never represented a Number One Draft Choice (or a top tier athlete), and he really needed my professional assistance and some money. The money demanded by Lee Anderson for his verbal commitment to have Zion sign a written exclusive marketing agreement with Duric and "MMG"as soon as Zion left Duke and could legitimately sign a written agreement, was paid by Duric, depleting his financial resources and prompting him (Duric) to reach out to me for money and professional marketing help. Duric's offer to me for my professional assistance in marketing Zion Williamson and coming up with a $40,000 to $50,000 investment to assist him with his personal financial crisis, was 16 % (and later amended to 22.5%) of all earnings from Zion

4

Williamson's exclusive marketing management by Maximum Management Group, Inc. (As to all other "MMG" Clients, I owned a 33% interest.) (Exhibit -A)

10.     I agreed to accept the offer. I put together $35,000 (from my friend) and sent it to Duric (via a wire from my friend), and I confirmed that I was on the team with Duric and "MMG" to assist in marketing Zion Williamson.

11.     On or about May 2, 2019, it appeared that the money paid to Lee Anderson and Chubby Wells for the Zion Williamson Family, was about to pay off as Lee Anderson had promised, because consistent with the verbal promise by Lee Anderson, Duric submitted an exclusive Marketing Agreement from "MMG" to Lee Anderson and it was returned to Mr. Duric fully executed (See, Exhibit -B).

12.     At the time that we received the signed "MMG" Marketing Contract, I had no knowledge that Zion Williamson had signed a contract with Gina Ford, Prime Sports Marketing, LLC, or any other entity. My first knowledge of a relationship between Zion Williamson and Gina Ford (and/or Prime Sports Marketing), came around June or July 2019 , about the time that a lawsuit was filed, I believe by Zion Williamson. At all times between May 2, 2019 and the time news broke about an exclusive contract between Zion Williamson had with Gina Ford (PSM), I thought that "MMG"was the exclusive marketing agent for Zion Williamson, and I was the owner of 22.5% of the marketing revenues "MMG"

5



would make from marketing him. (Exhibit - C)

13.　　Around May 2019, before it was published that Zion Williamson had signed an exclusive marketing contract with Creative Artist Agency ("CAA"), Duric and I were made aware that Zion had signed another exclusive marketing agreement with CAA. I was SHOCKED, but simultaneously learned that Duric had already worked out a deal with Lee Anderson in advance whereby "we would be taken care of". (I did not know the specifics.) Later, I learned that Lee Anderson and Zion Williamson promised "MMG" that for cutting short "MMG's" rights by signing with CAA, Zion Williamson would repay all monies given to his Family (which repayment amount they agreed was $500,000) in 2018 and pay us (Duric/"MMG" seven to ten million dollars ($7,000,000 to $10,000,000). Later, Duric confirmed (to me and other lenders) the details of the deal he worked out with Lee Anderson and the Zion Williamson Family for replacing "MMG" with CAA and for keeping secret the monies that he paid to the Zion Williamson Family in or around September/October of 2018, through Chubby Wells and Lee Anderson.

14.　　I learned that as a condition of the "Settlement" Duric struck with Lee Anderson and Zion Williamson and his Family, CAA required Duric to "shred" any record relating to payment of money and the contract between "MMG" and

6

Zion Williamson (which I understood was sent to Lee Anderson and Chubby Wells together with the cash money that Lee Anderson had requested to have Zion Williamson sign with "MMG" in September/October, 2018). My understanding is that about two days before CAA signed and publicly announced that it had signed Zion Williamson and would be representing him as the Exclusive Marketing Agent, Duric had a conversation with CAA and representatives for Zion Williamson, during which Duric was told that if he wanted to be paid the $7,000,000 to $10,000,000 promised to him, he should "shred" all records of his payment of 2018 to Zion Williamson's Family and the exclusive marketing contract between "MMG" and Zion Williamson.

15.     Now, Duric and "MMG" were out of money and, having accepted hundreds of thousands of dollars from Duric on the promise that Zion Williamson, would sign a written exclusive marketing agreement with "MMG" when Zion left Duke, Lee Anderson and Zion Williamson reneged on promise. Duric engaged in conversations with Lee Anderson that led to them reaching an agreement pursuant to which Zion Williamson would pay Duric and "MMG" between Seven Million and Ten Million Dollars ($7,000,000 to $10,000,000) for breaching the contract with "MMG" and to prevent the filing of a lawsuit against Zion Williamson by signing with CAA.  This was another verbal agreement that was reached Lee

7

Anderson, Lisa Metelus, and one male, in Cleveland, Ohio, around August/September 2019. Additional terms of the agreement included two years tickets to the NBA Finals with up to five tickets anywhere for any game, and some other perks. Since Mr. Duric entered into agreement with Zion Williamson and Lee Anderson putting him (Duric) in position to receive up to $10,000,000, Duric has repeatedly urged everyone involved to be patient. He urged that a lawsuit with all of the facts coming out involving the money paid to Lee Anderson and the Zion Williamson's Family in 2018, would be bad for all of us (the 2019 Lenders, "MMG").

16.    Despite the agreement that Duric reached Zion Williamson and Lee Anderson providing that Zion Williamson would (at some point) pay Duric Ten Million Dollars ($10,000,000), Duric needed money, and he reached out to a number of people to obtain loans from around May, 2019 through December 19, 2019, promising to make huge repayments and using the written executed marketing contract with Zion Williamson and his relationship with Lee Anderson to induce lenders. These personal loans, obtained by Duric in 2019, after May, when Zion had signed with "MMG", amounted to about $245,000 and Duric had promised premiums on repayment of the loans making the amount due $500,000. (See Exhibit -D). Most of the Loans to Mr. Duric were due to be repaid by

8



January 17, 2020, but some of them were past due loans as of May and November 2019. The failure of Duric to make the promised payments in May and November made the Lenders and me very upset. The Lenders wanted to be paid.

17.    After Duric failed to repay the loans that were due end of November, I too was very upset. I told Duric that the lenders were very upset and needed to be paid. I wanted to know when he would be getting some of the Ten Million Dollars that Lee Anderson and/or Zion Williamson had agreed to pay for replacing "MMG" with CAA. Duric said, "I will have you speak to Lee Anderson about it. I am going to get Lee on the phone, and I will call you back." This call ended and later that same day (on or about December 2 or 3, 2019, around 8:00p.m. (pacific standard time) Duric telephoned me with Lee Anderson also on the call. Duric said hello to me and announced: "Lee Anderson is on the call." Lee Anderson said (as close as I can recall), "I know that Slav missed the payment, but we will make it right. I know that Slavko and all of you have to be paid and that you are all upset. We will make it right. I will draw up something and get it to you that I hope will work for you and the investors. We have money coming in the first week of January 2020." I reminded Lee Anderson that pursuant to the marketing contract that MMG had with Zion before he signed with CAA, we (Duric, Maximum Management Group, Inc. and I) had talked to some Companies about

9



using Zion for marketing, and I asked Lee Anderson if he minded if we went back to those companies to make marketing deals involving Zion to make money. Lee Anderson said something like: "Well, I don't mind, but you have to clear that with CAA." I said ,"I understand but I don't like it". Lee said that he would draft something that should put us at ease and get it out to us as soon as possible. He said that Zion was rehabbing, and everything was going well. This ended the conversation (The call lasted about five minutes or less).

18. On or about December 8, 2019, just several days after my telephone conversation with Lee Anderson and Slavko Duric, in which Lee Anderson promised to draft something and get it out to us, I received a document executed by Lee Anderson and Zion Williamson captioned "Letter of Declaration", in which they both "…declare to pay to Mr. Duric as President of Maximum Management Group, Inc Zion Williamson the sum of $500,000 [Five Hundred Thousand Dollars] on or before January 7, 2020…" for the monies Zion Williamson and his family received on or about October 10, 2018. As assurance that the Letter of Declaration was authentic, it was sent to us together with a color picture of Zion Williamson's South Carolina Driver's License. (See, Exhibit -E).

19. In the "Letter of Declaration" the money that was sent to the Zion Williamson Family is identified as "a loan". I never personally made a loan to Lee

10



Anderson or to Zion Williamson and/or to his Family, or to any third party acting on behalf of Zion Williamson. To my knowledge the money paid to/for the Williamson Family was money demanded by Lee Anderson, in return for which it was agreed that Zion Williamson would sign with MMG to be his exclusive marketing agent. It was my understanding that the payment(s) Lee Anderson and Zion Williamson are acknowledging in the "Letter of Declaration" was the commitment money that Lee Anderson requested for Zion Williamson to sign with Slavko Duric and MMG. As I stated previously, Duric borrowed money from Lenders (for which the repayment amount was about $500,000, the amount identified in Lee Anderson's "Letter of Declaration)in 2019. The money that Lee Anderson and Zion Williamson were identifying as "a loan" given to "...our Family..." in October 2018 could not have been the money that the Lenders were seeking from Duric in May and November 2019. . I view the characterization of the money that Lee Anderson and Zion Williamson acknowledged having received "...in October 10, 2018..." as "a loan", an attempt by Lee Anderson to avoid publicizing that the money his Family received from Duric in 2018 was the money he had demanded from Duric/MMG to obtain a verbal agreement that Zion Williamson would sign a written contract making "MMG" his exclusive marketing agent as soon as he left Duke.

11



20.     The money paid to the Zion Williamson Family in 2018 was not that the money that the Lenders loaned to Duric in 2019 (a year after the Zion Williamson Family was already enjoying the money paid to it/them). The money that Lee Anderson and Zion Williamson reference as "a loan rendered by him [Slavko Duric] to our family in October 10, 2018", was never "a loan".

21.     I have voluntarily devoted a number of hours over the course of several days to provide this Affidavit. It was my own initiative, and neither asking nor receiving anything in return, I sought out and reached out to Gina Ford and shared with her all of the information that I have included in this Affidavit.

22.     **Having now completed this statement, I reiterate that I have made, and now submit, this affidavit voluntarily, knowingly, intelligently, of my own free will and without any force, duress, coercion to make and submit it.**

23.     **I have not been promised and/or given anything in exchange for providing this affidavit by any person and/or entity, including Gina Ford, Prime Sports Marketing, LLC, their agents, their attorneys, or anyone acting on their behalf.**

24.     **I have not been promised and/or given anything in exchange for providing this affidavit by anyone.**

12



25.    Before signing this Affidavit, I was advised that I was under no pressure to sign it.  I was also advised that I could obtain my own legal representation to prepare and submit my Affidavit and/or review this Affidavit (prepared by Attorney Alvin L. Pittman, at my instructions and based on my presentation of facts to him).  I was also advised that before I signed the Affidavit, I could and should carefully read, review, edit and/or correct and/or make any changes to it that I deemed necessary to make it true and correct, with emphasis on the importance of truth and accuracy.

I chose to carefully read and review this Affidavit, and I have done that. I am satisfied that the information contained in this Affidavit are true and correct, and I am do hereby knowingly, voluntarily, and intelligently execute this Affidavit.  If call as a witness to testify in court or deposition under oath, swearing to tell the truth, I would testify consistent with this Affidavit.  I hereby declare that this Affidavit is made, executed and delivered by me without any coercion, duress, force, intimidation, promise and/or inducement of any kind by any person or entity, including, Gina Ford, Prime Sports Marketing, LLC, their agents and/or attorneys and/or anyone acting on their behalf.

13

I HEREBY DECLARE UNDER PENALTY OF PERJURY UNDER THE FEDERAL LAWS OF THE UNITED STATES OF AMERICA, AND THE STATE LAWS OF CALIFORNIA, NORTH CAROLINA AND FLORIDA, THAT ALL OF THE STATEMENTS IN THIS (MY) AFFIDAVIT ARE TRUE AND CORRECT, BASED ON MY PERSONAL KNOWLEDGE AND BELIEF.

Dated: July 1, 2020 California

July 1, 2020

_____
DONALD KREISS, AFFIANT

Sworn to before me on this
1st Day of July, 2020

_____
NOTARY PUBLIC

JOZINE C. MCGEE
COMM. #2161595
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Aug. 27, 2020

14



# EXHIBIT - A

Letter of Declaration

December 8th, 2019

This Letter is to certify that we hereby declare to pay Slavko Duric- President of Maximum Management Group Inc. the sum of $500,000.00 on or before January 7, 2020 for a repayment of a loan rendered by him to our family in October 10, 2018.

Further to this, is the matter of a "Settle Agreement" which will be contractual and binding in nature and must be notarized by both parties' lawyers at some point in the new year not exceeding March 1st, 2020. The agreement terms rest entirely on the current rehabilitation status that Zion Williamston is currently managing post his knee surgery. The Settlement Agreement will be paid out by Driven Sports Marketing and VIP Sports Management LLC. A Wyoming based enterprise that is being registered by Lee Anderson and Zion Williamson.

We do understand that if for any reason we fail to pay the loan in full by the date stated above, Mr. Slavko Duric will pursue the debt via civil court action against us. We maintain firmly, that this is something that we not be necessary. Zion Williamson has secured numerous marketing revenue streams that begin to take effect first week of the new year and currently receives 794,000.00 on a monthly basis from his rookie professional NBA contract with the New Orleans Pelicans.

Sincerely,

Lee Anderson

. Zion Williamson



# EXHIBIT - B



**MAXIMUM MANAGEMENT GROUP Inc.**
**5109 Cherryhill Cr., Suite 100**
**Burlington, ON, L7L 4B8**
**Tel: 905-631-7398 (office)**
**      905-808-9708 (mobile)**

## MARKETING AGREEMENT

This exclusive marketing agreement ("Agreement') is entered into on May 2, 2019

between Maximum Management Group, ("MMG") and Zion Williamson, hereafter the
("Athlete").

### RECITALS

Athlete and MMG (collectively "Parties" and individually "Party") desire in this Agreement to set
forth the terms governing the marketing and endorsement agreement between MMG and
the Athlete.

### TERMS

In consideration of the mutual agreement set forth in this Agreement and for other valuable
consideration, the receipt and sufficiency of which are acknowledged by each Party, The
Parties as follows:

1. **Term.** The term of this Agreement shall commence on the date shown above and shall continue
until May 2, 2021 or until terminated by MMG or Athlete. Either party may terminate this
Agreement at any time and for any reason upon written notice to the other party sent to the
address of either party as specified from time to time, including by e-mail.

2. **MMG Services.** During the term of this agreement, MMG shall have the exclusive right to represent,
advise, and assist Athlete in the negotiation of any and all endorsement contracts, apparel and shoe
contracts, appearance contracts, trading card autograph and other autograph contracts or
sponsorship contracts on behalf of Athlete (each a  "Contract").

Page 1 of 3

3. Compensation. Athlete shall pay to MMG for services rendered as follows: ten percent (10%) for appearances and twenty percent (20%) for endorsements of the gross amount of all monies (or non-monetary benefits) received by Athlete's behalf as a result of any Contract, including any substitutions, additions, modifications, renewals, or extensions thereof, negotiated by MMG during the term of this Agreement, regardless of whether such income is received during the term of this Agreement or after the termination of this Agreement (the "Commission"), plus itemized out-of-pocket expenses in connection with the services. Unless otherwise agreed by MMG and Athlete, Athlete shall make Commission payments to MMG within thirty (30) days of receipt of payment pursuant to the terms of a Contract.

4. Representation and Warranties. Athlete hereby represents and warrants to MMG that he is not currently represented by any other agent for the services covered by this Agreement. Athlete further agrees that because this Agreement is exclusive with respect to the services covered, Athlete will not enter into any other representation agreement for the same services during the term of this Agreement.

5. Miscellaneous & Rights License. Athlete grants a non-exclusive perpetual license to MMG to use the Athlete's image, biography, character, and likeness to promote Athlete, Athlete's representation by MMG, and further the product endorsement/autograph/appearance marketing efforts on behalf of Athlete, and to highlight and promote MMG's representation of Athlete. This paragraph shall survive the termination of this Agreement.

6. Miscellaneous Terms.

a. No Waiver or Consent. Failure on the part of MMG to complain of any act or to declare Athlete in default under this Agreement, irrespective of how long that failure continues does not constitute a waiver by MMG of its rights with respect to that default or any other default.

b. Governing Law. This Agreement and the rights and obligations of the Parties to this Agreement will be governed by and construed under the laws of the province of Ontario without regard to its conflict of laws, rules, or choice of law principles that could otherwise apply the law of another province.

c. Dispute Resolution. Any and all disputes involving the meaning, interpretation, application, or enforcement of this Agreement or the obligations of the parties under this agreement shall be resolved exclusively through the arbitration procedures set forth in the Regulations Governing Contract Advisors in the province of Ontario.

d. Severability. If any one or more provisions of this Agreement are declared illegal or unenforceable, such provision(s) shall not affect the validity or enforceability of the other provisions.

Case 1:19-cv-00593-LCB-JLW   Document 54-8   Filed 02/17/21   Page 21 of 22

e. **Entire Agreement.** This writing constitutes the complete and final agreement between the Parties relating to this subject matter and shall and shall not be changed or modified except by in writing signed by all of The Parties to this Agreement. This Agreement shall supersede all prior negotiations or agreements, whether written or oral. This Agreement shall be effective as of the "entered into" date written above.

ATHLETE                                                MAXIMUM MENAGEMENT GROUP Inc.

                                                       Accepted by:

Signature: _____                  _____
                                                       Slavko Duric, President

Print Name: ZION WILLIAMSON

Page 3 of 3