**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**

**CASE NO. 1:19-CV-593-LCB-JLW**

| |
|---|
| ZION WILLIAMSON, |
|                         Plaintiff, |
| v. |
| PRIME SPORTS MARKETING, LLC, and GINA FORD, |
|                         Defendants. |

**PLAINTIFF'S MEMORANDUM OPPOSING**
**DEFENDANTS' MOTION TO ALTER OR AMEND THE COURT'S ORDER OF**
**<u>PARTIAL JUDGMENT ON THE PLEADINGS</u>**

Plaintiff Zion Williamson submits this Memorandum opposing Defendants'

Motion To Alter or Amend Judgment (the "Motion To Reconsider") relating to the

Court's granting of Mr. Williamson's Motion for Partial Judgment on the Pleadings.

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ........................................................................... 1

LEGAL STANDARD ......................................................................................... 2

ARGUMENT....................................................................................................... 4

    I.     Defendants' Motion Is Procedurally Improper................................ 5

    II.    Defendants' Motion To Reconsider Fails on Its Own Terms.......... 5

          A.    Defendants Raised or Could Have Raised the Arguments and Factual Allegations They Press Now. ................................ 5

          B.    The Court's Interpretation of the UAAA Is Correct, Not Clearly Erroneous.............................................................. 9

CONCLUSION ................................................................................................. 19

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alphonse v. N. Telecom, Inc.*,
  776 F.Supp. 1075 (E.D.N.C. 1991)................................................................. 9

*Buckton v. Nat'l Collegiate Athletic Ass'n*,
  436 F. Supp. 1258 (D. Mass. 1977) ............................................................ 15

*Carlson v. Boston Sci. Corp.*,
  856 F.3d 320 (4th Cir. 2017) ....................................................................... 3

*Darden v. Cooper*,
  2020 WL 7774381 (M.D.N.C. Dec. 30, 2020) ............................................ 2

*Democracy N.C. v. N.C. State Bd. of Elections*,
  2020 WL 6591396 (M.D.N.C. Sept. 30, 2020)............................................ 4

*Ferrellgas, L.P. v. Best Choice Prods.*,
  2018 WL 2770138 (M.D.N.C. June 8, 2018) (Biggs, J.)............................... 3

*Hawkins v. Nat'l Collegiate Athletic Ass'n*,
  652 F. Supp. 602 (C.D. Ill. 1987) ............................................................... 16

*Howard v. Miss. Sec'y of State*,
  184 So. 3d 295 (Miss. Ct. App. 2015) ........................................................ 17

*Jones v. Nat'l Collegiate Athletic Ass'n*,
  392 F. Supp. 295 (D. Mass. 1975) .............................................................. 15

*JTH Tax, Inc. v. Aime*,
  984 F.3d 284 (4th Cir. 2021) ....................................................................... 2

*Manuel v. Okla. City Univ.*,
  833 P.2d 288 (Okla. Civ. App. June 16, 1992) .............................................. 15

*McAdoo v. Univ. of N.C. at Chapel Hill*,
  736 S.E.2d 811 (N.C. Ct. App. 2013) .................................................... 13, 15

*N.C. State Conf. of the NAACP v. Cooper*,
  2020 WL 5806484 (M.D.N.C. May 27, 2020) (Biggs, J.)............................ 3

Case 1:19-cv-00593-LCB-JLW   Document 57   Filed 03/10/21   Page 3 of 26

*O'Halloran v. Univ. of Wash.*,
856 F.2d 1375 (9th Cir. 1988) .................................................................................. 16

*Potter v. Potter*,
199 F.R.D. 550 (D. Md. 2001).................................................................................... 7

*Sloane v. Tenn. Dep't of State, Bus. Servs. Div.*,
2019 WL 4891262 (Tenn. Ct. App. Oct. 3, 2019)..................................................... 17

*Spill the Beans, Inc. v. Sweetreats, Inc.*,
2009 WL 2929434 (D.S.C. Sept. 8, 2009)................................................................... 5

*TFWS, Inc. v. Franchot*,
572 F.3d 186 (4th Cir. 2009) ...................................................................................... 4

*Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys. Inc.*,
2011 WL 6934696 (M.D.N.C. Dec. 30, 2011) .......................................................... 11

*Tully v. Tolley*,
63 F. App'x 108 (4th Cir. 2003) .............................................................................. 2, 5

*U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*,
899 F.3d 236 (4th Cir. 2018) ...................................................................................... 3

*United States v. Duke Energy Corp.*,
218 F.R.D. 468 (M.D.N.C. 2003) ................................................................... 8, 14, 18

*United States v. Gatto*,
986 F.3d 104 (2d Cir. 2021) ................................................................................... 7, 16

*United States v. Lovely*,
420 F.Supp.3d 398 (M.D.N.C. 2019) (Biggs, J.) ......................................................... 3

*United States v. Walters*,
711 F.Supp. 1435 (N.D. Ill. 1989) ........................................................................... 16

**Statutes**

35 U.S.C. § 141 ................................................................................................................ 18

42 U.S.C. § 2000e-16 ....................................................................................................... 18

North Carolina Uniform Athlete Agents Act ("UAAA"), N.C. Gen. Stat. §
78C-85 *et seq.* .......................................................................................................*passim*

**Other Authorities**

Nat'l Collegiate Athletic Ass'n, Division I Manual (Aug. 1, 2019) .................................. 13

Uniform Athlete Agents Act, (Nat'l Conference of Comm'rs on Uniform
    State Laws 2000),
    https://www.uniformlaws.org/HigherLogic/System/DownloadDocument
    File.ashx?DocumentFileKey=fbc54541-eb71-44d7-d9ee-
    dd6f3b851697&forceDialog=0 (last accessed Mar. 10, 2021) ................ 10, 11, 12, 13

11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE
    AND PROCEDURE CIVIL § 2810.1 (3d ed. 2020)........................................................ 2, 8

iv

## PRELIMINARY STATEMENT

In granting Plaintiff's Motion for Partial Judgment on the Pleadings, this Court engaged in a thorough analysis of the North Carolina Uniform Athlete Agents Act, N.C. Gen. Stat. § 78C-85 *et seq.* (the "UAAA"), and the undisputed facts in the pleadings, to conclude that "the Agreement entered into by the parties is void as a matter of law . . . ." (*See* Mem. Op. and Order 20, ECF No. 49 ("Order").)  This Court found that the undisputed facts were sufficient to find that Mr. Williamson was protected as a "student-athlete" under the UAAA at the time Defendants unlawfully recruited him.  (*Id.* at 17.) In particular, this Court found that it was undisputed that (1) Defendants, in violation of the UAAA, failed to register as athlete agents or to include required warnings in the agreement they entered into with Mr. Williamson; (2) Mr. Williamson was engaged in college basketball at the time of his interactions with Defendants; and (3) Mr. Williamson had not been declared "permanently ineligible."  (*Id.* at 19-20.)

Defendants' Motion To Reconsider falls far short of the high bar required to justify reconsideration of this Court's prior decision.  Defendants rehash old arguments and allegations that they raised or could have raised in opposition to the Motion for Partial Judgment on the Pleadings, and in any event, their arguments fail on the merits. Ultimately, Defendants still do not—and cannot—dispute that (1) they failed to register or to provide the requisite warnings; (2) Mr. Williamson was engaged in playing college basketball; and (3) Mr. Williamson was never declared permanently ineligible.  And

Defendants provide no sound basis (much less a new one) for reconsidering this Court's thoughtful interpretation of the UAAA.

## **LEGAL STANDARD**

Reconsideration is an "extraordinary" remedy to be used "sparingly." *JTH Tax, Inc. v. Aime,* 984 F.3d 284, 290 (4th Cir. 2021) (citing *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). A motion for reconsideration can be successful "only" in three situations: (1) where there is "an intervening change in controlling law;" (2) to account for "previously unavailable evidence;" or (3) "to correct a clear error of law or prevent manifest injustice." *Id.*; *see also* 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE CIVIL § 2810.1 (3d ed. 2020) (noting requirement of "manifest errors of law or fact upon which the judgment is based"). Here, Defendants do not contend that there is an intervening change in law or previously unavailable evidence; they rely solely on the "clear error" prong. (Mem. Supp. Defs.' Mot. Alter Amend J. 2, ECF No. 52 ("Mot. Recons." or "Motion To Reconsider").) That standard is demanding. To demonstrate that a court committed a clear error, the decision must be "dead wrong." *Darden v. Cooper*, 2020 WL 7774381, at *2 (M.D.N.C. Dec. 30, 2020) (citations omitted).

Defendants bring their motion under Rule 59, but Rule 59 applies only to final judgments from which an appeal lies. *Tully v. Tolley*, 63 F. App'x 108, 112 (4th Cir. 2003). Here, the Court's ruling on Mr. Williamson's Motion for Partial Judgment on the Pleadings has not yet been reduced to a final judgment and, therefore, is not subject to a

2

Rule 59 motion.  The Motion To Reconsider accordingly can be denied on this basis alone.  *See* p. 5-6, *infra*.

To the extent Defendants' Motion To Reconsider can be recharacterized as a motion under Rule 54(b) of the Federal Rules of Civil Procedure, Defendants are no better off.  This Court's order constitutes the "law of the case."  *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017).  To succeed under Rule 54(b) and overcome the law of the case, a movant must demonstrate that there has been: "(1) a subsequent trial produc[ing] substantially different evidence; (2) a change in applicable law; or (3) clear error causing 'manifest injustice.'"  *Id.* (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003)); *see also U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018) (noting that the Rule 59 and Rule 54 standards closely resemble each other).

 "[M]ere disagreement [with a district court's ruling] does not support" reconsideration.  *Ferrellgas, L.P. v. Best Choice Prods.*, 2018 WL 2770138, at *3 (M.D.N.C. June 8, 2018) (Biggs, J.) (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993)).  "To rule otherwise is to invite . . . an unending stream of challenges to court orders."  *N.C. State Conf. of the NAACP v. Cooper*, 2020 WL 5806484, at *1 (M.D.N.C. May 27, 2020) (Biggs, J.).  Under no circumstances may a litigant use a motion for reconsideration "to rehash arguments the court has already considered or to raise new arguments or evidence that could have been raised previously."  *United States v. Lovely*, 420 F. Supp. 3d 398, 403 (M.D.N.C. 2019) (Biggs, J.) (internal quotation

3

marks omitted) (quoting *South Carolina v. United States,* 232 F. Supp. 3d 785, 793 (D.S.C. 2017)); *see also Democracy N.C. v. N.C. State Bd. of Elections*, 2020 WL 6591396, at *1 (M.D.N.C. Sept. 30, 2020) ("[A] motion to reconsider is improper where 'it only asks the Court to rethink its prior decision, or presents a better or more compelling argument that the party could have presented in the original briefs on the matter.'") (quoting *Hinton v. Henderson*, 2011 WL 2142799, at *1 (W.D.N.C. May 31, 2011)).

## ARGUMENT

To overcome the law of the case, it is not enough for a prior decision to be "just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (alteration in original) (quoting *Bellsouth Telesensor v. Info. Sys. & Networks Corp.*, 1995 WL 520978, *5 n.6 (4th Cir. Sept. 5, 1995)). Defendants' efforts to rehash and burnish their prior arguments fall far short of the demanding standard to warrant reconsideration of this Court's order. Indeed, because the Motion To Reconsider is improper under Rule 59, the Court may summarily deny it. To the extent the Court entertains the Motion To Reconsider, however, it fails. Defendants press arguments that they previously raised or could have raised. And Defendants cannot show a manifest error because this Court's decision is correct: The undisputed facts establish that the Agreement is void under the UAAA.

4

I. Defendants' Motion Is Procedurally Improper.

Right out of the gate, Defendants are on hollow ground. Defendants have improperly moved for reconsideration under Rule 59 of the Federal Rules of Civil Procedure. As previously noted, Rule 59 applies only to final judgments subject to appeal. *Tully*, 63 F. App'x at 112. But this Court's ruling has not yet become a final judgment. Defendants' Motion To Reconsider may be denied on this basis alone. *See Spill the Beans, Inc. v. Sweetreats, Inc.*, 2009 WL 2929434, at *1 (D.S.C. Sept. 8, 2009) (dismissing a Rule 59 motion because Rule 59(e) is an inappropriate vehicle for reconsideration of an interlocutory order).

II. Defendants' Motion To Reconsider Fails on Its Own Terms.

Even if this Court considers Defendants' arguments for reconsideration, they fail on their own terms because this Court's decision is correct (and far from manifestly erroneous) and Defendants raise no arguments that they did not or could not have raised before.

   A. *Defendants Raised or Could Have Raised the Arguments and Factual Allegations They Press Now.*

Defendants contend at length that Mr. Williamson was not a student-athlete. But Defendants made that very same argument in their Opposition to the Motion for Partial Judgment on the Pleadings, and this Court (correctly) rejected it on the merits. (*Compare* Defs.' Mem. L. Opp'n Mot. Partial J. 2, 4-5, ECF No. 37 ("Defendants have denied the allegation that Plaintiff is a 'Student-athlete' **more than ten times** in their Pleadings") (bold face in original), *with* Motion to Reconsider at 4, 8 ("Defendants may raise, as an

5

affirmative defense to the Plaintiff's claim for declaratory relief, the argument that Williamson did not meet the definition of student athlete . . . .").) The Court specifically addressed and rejected this argument as contrary to federal case law and Defendants' own factual allegations. (*See* Order at 15 ("Defendants' affirmative defenses and counter claims that Plaintiff was not a student-athlete do not rely on material allegations of fact, rather a conclusion of law that flies in the face of their own pleadings as well as attachments to their pleadings.").)

Among other things, Defendants also previously argued that this Court should engage in a detailed retroactive inquiry into whether Mr. Williamson *could have been* declared ineligible at the time he was engaged in playing basketball and Defendants unlawfully began to recruit him. (*See* Defs.' Mem. L. Opp'n Mot. Partial J. Pleadings, ECF No. 37, at 15-20 (setting forth the facts now alleged in Defendants' proposed amended pleadings as evidence for the Court to consider in assessing Mr. Williamson's eligibility).) And again, this Court (correctly) rejected those arguments on the merits, interpreting the UAAA to refer to a declaration of "permanent ineligibility" by the relevant governing bodies at the time in question. (*See* Order at 17 ("Defendants have provided no authority, caselaw or otherwise, that suggests that it is for a court to adjudicate the details of a student-athlete's eligibility under NCAA rules.").)

That Defendants now cite additional cases in support of this argument provides no basis for reconsideration. Nearly all of the cases cited by Defendants existed before the

Court issued its Order; indeed, Defendants cite authority dating as early as 1953.[1] Defendants are merely recasting losing arguments. *See Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001) (finding that a motion to reconsider is not an opportunity to reargue a previous filing and noting that "[h]indsight being perfect, any lawyer can construct a new argument to support a position previously rejected by the court, especially once the court has spelled out its reasoning in an order").

Similarly, as set forth in Mr. Williamson's Opposition to the Motion to Amend, filed concurrently with this brief, none of the factual allegations Defendants seek to inject into the case was previously unavailable. (*See* Pl.'s Opp'n Mot. Amend, at 6-8.) In particular, Defendants' supposedly new allegations set forth in the Motion To Reconsider and in their proposed amended pleadings were raised previously in their Opposition to the Motion for Partial Judgment on the Pleadings (ECF Nos. 37-38) as well as their Motion To Supplement the Opposition (ECF Nos. 41-45). The underlying facts largely refer to events that allegedly occurred in 2017 and 2018, and Defendants' own filings in the related Florida action between the parties confirm Defendants' prior knowledge of these allegations. (*See* Pl.'s Opp'n Mot. Amend, at 6-7.) Defendants, therefore, could have raised these contentions (i) in connection with their Answer and Counterclaims filed

---

[1] Defendants cite one case, *United States v. Gatto*, 986 F.3d 104 (2d Cir. 2021), which was decided five days before the Court issued the Order. (Defs.' Mem. L. Opp'n Mot. Partial J. Pleadings, ECF No. 37, at 19-20.) Were the case so integral to their arguments, Defendants could have moved to supplement their authority. Regardless, that case is inapposite, as demonstrated below.

on May 8, 2020, nearly a year ago; (ii) in advance of filing their opposition to the Motion for Partial Judgment on the Pleadings filed on June 9, 2020; (iii) in July 2020 when they moved to supplement that opposition, especially after Plaintiff specifically noted that Defendants' motion was procedurally improper because it relied on "materials beyond the pleadings" (Pl.'s Opp. Defs.' Mot. Suppl., ECF No. 46, at 2-4); or (iv) at any time in the six months between the time at which the parties had fully briefed the Motion To Supplement the Opposition and when the Court issued its recent decision. *See United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (M.D.N.C. 2003) (denying a motion to reconsider in part because the "evidence is not new or previously unobtainable, but merely newly submitted"), *aff'd,* 2009 WL 10717776 (M.D.N.C. Jan. 30, 2019), *aff'd,* 2012 WL 1565228 (M.D.N.C. Apr. 30, 2012).

Nor do any of these supposed facts have any bearing on whether Mr. Williamson was a protected "student-athlete" under this Court's correct interpretation of the UAAA. It remains undisputed that Mr. Williamson was engaged in playing basketball and was never found to be permanently ineligible. Accordingly, even if they were new, these extraneous facts do not change the findings on which the Court's judgment relied and cannot provide a basis for reconsideration of this Court's judgment. *See* 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE CIVIL § 2810.1 (3d ed. 2020) (requiring "manifest errors of law or fact upon which the judgment is based").

B.     *The Court's Interpretation of the UAAA Is Correct, Not Clearly Erroneous.*

Defendants also cannot justify reconsideration, because this Court's decision is correct and surely not a manifest error. Defendants first contend that the Court denied them the opportunity to assert the affirmative defense that Mr. Williamson was not a "student-athlete" under the UAAA. Not so. The Court considered Defendants' defense, found that Defendants admitted the dispositive fact that Mr. Williamson was engaged in playing college basketball, and that Defendants failed "to raise a genuine issue of material fact as to whether Plaintiff had been deemed permanently ineligible during the time period in question and thus no longer a student-athlete under the UAAA." (Order at 17.) Therefore, the Court concluded that "Defendants' affirmative defenses and counter claims that Plaintiff was not a student-athlete do not rely on material allegations of fact, rather a conclusion of law that flies in the face of their own pleadings as well as attachments to their pleadings." (*Id.* at 15.) Defendants' admissions were thus sufficient to render the Agreement void under the UAAA.[2] None of the cases that Defendants cite contradicts the Court's analysis.

_____

[2] Defendants also briefly assert that the Court incorrectly found that Mr. Williamson voided the Agreement, arguing that only a court can void a contract. Defendants identify no case law to support this argument, which is contrary to the clear statutory language of the UAAA rendering contracts without required notice provisions "voidable by the student-athlete." N.C. Gen. Stat. § 78C-94(d); *see also Alphonse v. N. Telecom, Inc.*, 776 F. Supp. 1075, 1079 (E.D.N.C. 1991) (noting that "a voidable contract can be avoided or ratified *at the option of*" the party with the right to void the agreement) (emphasis added). In any event, the argument is a red herring because the Court voided the Agreement with its decision.

9

Moreover, Defendants do not establish that the Court's interpretation of the UAAA constituted a manifest error. The Court properly considered that the definition of a "student-athlete" includes "[a]n individual who engages in, is eligible to engage in, or may be eligible in the future to engage in any intercollegiate sport." N.C. Gen. Stat. § 78C-86(11). The statute thus offers three alternative options for an individual to qualify as a student-athlete. The Court found that Defendants admitted that Mr. Williamson was "actively engaging in an intercollegiate sport—namely, men's basketball—which is one of the ways the UAAA provides that an individual can be deemed a student-athlete" at the time Defendants violated the statute's registration and warning requirements. (Order at 15-16.)

Once the Court found that Mr. Williamson was "engaged in" playing college basketball, the Court needed to go no further because the second sentence of the student-athlete definition has no application here. In challenging the Court's conclusion, Defendants seek to conflate the two sentences of the definition: "An individual who engages in, is eligible to engage in, or may be eligible in the future to engage in any intercollegiate sport. If an individual is permanently ineligible to participate in a *particular* intercollegiate sport, the individual is not a student-athlete for purposes of *that sport*." N.C. Gen. Stat. § 78C-86(11) (emphasis added). But the second sentence does not apply to Mr. Williamson. To the contrary, the text and drafting history show that the second sentence addresses "a two-sport athlete who has eligibility remaining in one sport," making clear, for example, that "an individual who has signed a contract to play

10

professional basketball is not a student-athlete in basketball, but is a student-athlete in baseball."[3]  For a one-sport athlete like Mr. Williamson, the fact that he was "engaged in" playing that sport is sufficient; he could not have been engaged in playing basketball if he had already been declared permanently ineligible to play basketball at the time.  The fact that he was playing basketball thus shows that the second sentence was not triggered.

Regardless, this Court correctly concluded that the UAAA's "permanent ineligibility" prong does not apply to Mr. Williamson, because it looks to whether a student has been found to be permanently ineligible "during the time period in question" and "by the governing body authorized to do so," not whether a Court could potentially find an eligibility issue based on a Court's *post hoc* investigation into the student's eligibility.  (Order at 17.)  Defendants fall far short of establishing that this Court "obviously misapprehended . . . applicable law."  *Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys. Inc.*, 2011 WL 6934696, at *3 (M.D.N.C. Dec. 30, 2011) (citations omitted).

The Court's analysis is correct for several reasons.  *First*, the Court's interpretation is consistent with the plain language of the statute.  The definition is drafted in the present tense, carving out an athlete who "*is* permanently ineligible."  N.C.

---

[3] Uniform Athlete Agents Act (2000), Section 2 cmt. at 6 (Nat'l Conference of Comm'rs on Uniform State Laws 2000), https://www.uniformlaws.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=fbc54541-eb71-44d7-d9ee-dd6f3b851697&forceDialog=0 (last accessed March 10, 2021).

11

Gen. Stat. § 78C-86(11) (emphasis added). It does not refer in the conditional voice to whether the student "could have been found to be permanently ineligible." Thus, the Court was correct that the statute captures the student-athlete's status at the time of the conduct implicating the statute, and in particular does not suggest any retroactive analysis into what eligibility determinations potentially could have been made.

*Second*, the statute does not provide any criteria with respect to eligibility that would guide a court in making *post hoc* eligibility determinations. That omission confirms both that the UAAA is not designed to regulate student-athlete conduct, and also that the determination of permanent ineligibility comes from an entirely separate scheme. The Court therefore correctly found that the NCAA and Duke's eligibility determination at the time that Mr. Williamson entered into the Agreement was sufficient to prevent him from being retroactively excluded from the protections of the UAAA—a conclusion reinforced by the undisputed fact that Mr. Williamson was actually engaged in playing NCAA basketball for Duke University at the time Defendants violated the statute.

*Third*, the Court's interpretation is consistent with the rules of the NCAA. As stated in the legislative history of the model act, "violation of eligibility rules . . . is not automatic and *does not occur until a determination has been made* by the educational institution or the national association." Uniform Athlete Agents Act, Section 10 cmt.

(Nat'l Conference of Comm'rs on Uniform State Laws 2000) (emphasis added).[4]  The

NCAA Division I Manual requires Duke and the NCAA Eligibility Center to certify a

student-athlete's amateur status, including prior to engaging in practice and competition.[5]

The NCAA Bylaws also provide robust procedural protections before a student-athlete

can be declared "permanently ineligible."  Among other things, if a school determines

that a student is ineligible, the student has a right to appeal.  NCAA Bylaws § 10.4; *see*

*McAdoo v. Univ. of N.C. at Chapel Hill*, 736 S.E.2d 811, 818 (N.C. Ct. App. 2013).  It

remains undisputed that Mr. Williamson was never found ineligible under that process,

and also that he was "engaged in" playing college basketball.

*Fourth*, and more fundamentally, Defendants' interpretation would turn the

purpose of the UAAA on its head.  Defendants would transform a statute intended as a

shield to protect student-athletes against overreaching agents into a sword by which those

agents could attempt to avoid liability by attacking students' reputations.[6]  (*See* Reply

---

[4]https://www.uniformlaws.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=fbc54541-eb71-44d7-d9ee-dd6f3b851697&forceDialog=0 (last accessed Mar. 10, 2021).

[5] Nat'l Collegiate Athletic Ass'n, Division I Manual §§ 12.1.1.1.2.1, 12.1.1.1.3 (Aug. 1, 2019) [hereinafter "NCAA Bylaws"], https://web3.ncaa.org/lsdbi/reports/getReport/90008 (last accessed March 10, 2021).

[6] Defendants' references to Section 78C-100 of the UAAA are irrelevant.  Defendants have not been denied any right, remedy, or defense, and they are not a university seeking to recover under the statute.  As set forth in Mr. Williamson's Motion for Partial Judgment on the Pleadings, the statute protects student-athletes and the institutions they attend, not athlete agents.  (*See* Pl.'s Mot. Partial J. Pleadings, 8, 10-111, 15, ECF No. 35.)

13

Mem. Supp. Pl.'s Mot. Partial J. Pleadings 8-9, ECF No. 40.) Indeed, any agent who violated the UAAA would have a powerful incentive to turn around and point at the very student the statute was designed to protect. And Defendants' proposed amended complaint (and briefing papers) illustrate the point vividly. Defendants nowhere deny that (1) they failed to register; (2) they failed to provide the requisite prominent warnings; (3) Mr. Williamson was actually "engaged in" playing basketball; and (4) Mr. Williamson had never been found ineligible, much less permanently so. They instead devote their voluminous papers to attacking the character and integrity of Mr. Williamson and his family and seeking to tarnish their reputations.

Separate from their misconstruction of the UAAA, Defendants cite a variety of cases in their motion—cases that Defendants either previously cited or could have cited. Defendants appear to be responding to the Court's statement that they have provided no authority, caselaw or otherwise, indicating that it is for a court to adjudicate the details of a student-athlete's eligibility under NCAA rules. (*See* Order at 17.) Of course, this belated attempt to cite additional authority after the Court rejected Defendants' earlier arguments reveals Defendants' true goal: to get a second bite at the apple. But as this Court has made clear, "a party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider." *Duke Energy Corp.*, 218 F.R.D. at 474 (citing *Renfro v. City of Emporia*, 732 F. Supp. 1116, 1117 (D. Kan. 1990)).

In any event, Defendants' cases support, rather than undermine, the Court's decision to look to the NCAA and Duke's determination rather than conduct its own *post hoc* investigation into whether Mr. Williamson could potentially have been found ineligible. In *McAdoo*, the North Carolina Court of Appeals found that "[i]t is well established that courts will not interfere with the internal affairs of voluntary associations." 736 S.E.2d at 825 (quoting *Wilson Realty & Constr., Inc. v. Asheboro–Randolph Bd. of Realtors, Inc.,* 134 N.C. App. 468 (1999)). Similarly, in *Manuel v. Okla. City Univ.*, the court noted that "the general rule is that the courts will not interfere with the activities of a voluntary association." 833 P.2d 288, 292 (Okla. Civ. App. June 16, 1992). Moreover, those circumstances in which a court may review the NCAA's actions are inapplicable here. Neither of these cases address the interpretation of the UAAA's definition of a student-athlete. The UAAA and its protections are not designed to establish a mechanism through which agents can contest whether the NCAA made the correct determination. Instead, the statute establishes clear categories of athletes to whom the statute's protections apply, some categories of which include references to NCAA eligibility determinations at the time that a would-be agent initiates contact with the athlete.

Defendants also cite *Jones v. Nat'l Collegiate Athletic Ass'n*, 392 F. Supp. 295 (D. Mass. 1975) and *Buckton v. Nat'l Collegiate Athletic Ass'n*, 436 F. Supp. 1258 (D. Mass. 1977), *see* Motion to Reconsider at 17, but this line of cases largely focused on whether NCAA action constituted state action and their reasoning has since been overruled. *See*

*Hawkins v. Nat'l Collegiate Athletic Ass'n*, 652 F. Supp. 602, 608-09 (C.D. Ill. 1987).  In any event, these cases do not approach new authority, nor do they establish any error in this Court's interpretation of the UAAA.

Defendants suggest that *O'Halloran v. Univ. of Wash.*, *United States v. Walters*, and *United States v. Gatto* "make[] clear" that a student-athlete becomes ineligible as soon as he or she violates the NCAA rules.  (*See* Motion to Reconsider 13-20).  But none of those cases interprets the definition of a "student-athlete" under the UAAA, and none provides guidance here.  *O'Halloran* is a case about removal under the Federal Rules of Civil Procedure that cites, without analysis, sections of the NCAA Constitution regarding eligibility.  856 F.2d 1375, 1377 (9th Cir. 1988).  *Walters* addresses whether NCAA eligibility rules violate federal antitrust laws and, again, refers without analysis to the process through which schools determine and certify student-athlete eligibility. 711 F. Supp. 1435, 1437-38 (N.D. Ill. 1989).  And *Gatto* involved a criminal indictment for wire fraud and refers to student-athletes who were ineligible at the time of the fraud, again without addressing the process through which they were determined to be ineligible, much less interpreting the term "student-athlete" in the UAAA.  986 F.3d 104, 120 (2d. Cir. 2021).  *Gatto* even acknowledges that certain NCAA rules violations, similar to those purported violations that Defendants allege here, may result only in athletes being "*temporarily* deemed ineligible and then readmitted to play under the NCAA reinstatement guidelines."  *Id.* (emphasis added).  Thus, *O'Halloran*, *Walters*, and *Gatto* do not remotely support the notion that a Court can retroactively strip a student of the

protections of the UAAA when he was actually engaged in playing college sports at the time an agent unlawfully recruited him.

Defendants also reargue *Sloane* and *Howard*, which they discussed at length in their opposition to Mr. Williamson's Motion for Partial Judgment on the Pleadings. (*See* Defs.' Mem. L. Opp'n Mot. Partial J. Pleadings, 13-15, ECF No. 37.) They do so in an attempt to support the proposition that a court will retroactively assess eligibility as long as the athlete agent timely raises the defense. The courts in those cases stated no such thing. Rather, those courts declined to consider the agents' untimely arguments that the athlete in question did not fall within the statutory definition of "student-athlete." *Sloane v. Tenn. Dep't of State, Bus. Servs. Div.,* 2019 WL 4891262, at *6 (Tenn. Ct. App. Oct. 3, 2019) ("By admitting that he violated the Act during his testimony before the ALJ, Mr. Sloane implicitly concedes that Justus was a student athlete, and his argument now that Justus was not an eligible student athlete under the Act is completely without merit."); *Howard v. Miss. Sec'y of State*, 184 So. 3d 295, 300 (Miss. Ct. App. 2015) (declining to consider whether the athlete fell under the definition of "student-athlete" where the agent failed to raise the defense earlier and the Secretary of State had found the individual to be a "student-athlete" within the meaning of the statute). Nothing in these cases suggests that those courts would have, or this Court should have, engaged in a retroactive analysis

of eligibility.[7]  In any event, Defendants' attempt to reargue previously cited cases is clearly improper and provides no basis for reconsideration.  "Mere disagreement over the Court's legal analysis" is not sufficient for reconsideration.  *Duke Energy Corp.*, 218 F.R.D. at 474.

Finally, Defendants contend that a line of cases regarding the authority of federal courts over other courts or government entities demonstrates that the Court committed a clear error of law by deferring to the NCAA's and Duke's determination as to Mr. Williamson's eligibility.  But Defendants largely cite to governmental and administrative entities whose determinations are statutorily subject to court review for the purpose of ensuring that the entity made the correct determination.[8]  Defendants' attempt to equate the UAAA's definitional reference to "permanent ineligibility" with these review processes is wholly misguided.  As set forth above, the UAAA and its protections are not designed to establish a mechanism through which agents can contest whether the NCAA

---

[7] In discussing *Sloane*, Defendants also assert that "North Carolina's UAAA allows a court to 'reverse or modify a decision if the substantial rights of the petitioner may have been prejudiced," Motion to Reconsider at 17 n. 5, but their citation to N.C. Gen. Stat. Ann. § 150B-51 refers to the North Carolina Administrative Procedure Act.  The provision provides a right of appeal with respect to government agency decisions, but has no relevance to determinations by this Court or the NCAA, a private organization.

[8] *See, e.g.,* 42 U.S.C. § 2000e-16(c) (granting a right of appeal to an employee or applicant aggrieved by the final disposition of the EEOC); 35 U.S.C. § 141(a) (granting a right of appeal to the United States Court of Appeals for the Federal Circuit to applicants dissatisfied with final decisions of the Patent Trial and Appeal Board).

made the correct determination. Rather, the UAAA merely refers to present-time NCAA eligibility determinations in its definition of a student-athlete.

In sum, Defendants' Motion To Reconsider is procedurally improper and meritless. This Court has considered the arguments for (and against) the conclusion that Mr. Williamson was a "student-athlete" at the time the Defendants violated the UAAA by failing to register or to provide the required warnings. And this Court correctly determined that Mr. Williamson was, in fact, a student-athlete because it is undisputed that Mr. Williamson was engaged in playing college basketball at the time, without having been "determined to be or declared 'permanently ineligible' by the governing body authorized to do so." (Order at 17.) Defendants fail to advance any argument now that they did not or could not have raised before. And they cannot come close to showing that this Court's decision constituted a manifest error, as this Court's decision is correct.

## CONCLUSION

For the foregoing reasons and those set forth in Mr. Williamson's Opposition to the Motion To Amend the Pleadings, the Court should deny Defendants' Motion To Reconsider.

*[Signatures Follow]*

19

This 10th day of March 2021.

/s/ John R. Wester

John R. Wester
N.C. Bar No. 4660
jwester@robinsonbradshaw.com
Robert E. Harrington
N.C. Bar No. 26967
rharrington@robinsonbradshaw.com
Fitz E. Barringer
N.C. Bar No. 42679
fbarringer@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON,
P.A.
101 N. Tryon St., Ste. 1900
Charlotte, North Carolina  28246
Telephone:   704.377.2536
Facsimile:    704.378.4000

Jeffrey S. Klein*
Jeffrey.Klein@weil.com
Pravin R. Patel*
Pravin.Patel@weil.com
Lauren E. Richards*
Lauren.Richards@weil.com

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone:  212.310.8790
Facsimile:  212.310.8007

*Local Rule 83.1(d) Special Appearance
filed.

Attorneys for Plaintiff

**LR 7.3(d)(1) Word Count Certification**

I hereby certify that this brief contains 4,981 words as reported by Microsoft Word word count feature and is in compliance with Local Rule 7.3(d)(1).

*/s/ John R. Wester*
John R. Wester