IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ZION WILLIAMSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19-cv-593 |
| | ) | |
| PRIME SPORTS MARKETING, | ) | |
| LLC and GINA FORD, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

The Court, on January 20, 2021, entered its Memorandum Opinion and Order granting Plaintiff's Motion for Partial Judgment on the Pleadings, (ECF No. 34), and declaring the Agreement at issue in the case void under the UAAA as a matter of law ("January 20th Memorandum Opinion and Order"). (ECF No. 49 at 20.) Now before the Court are four motions by Defendants that all appear to seek the same or related relief. (ECF Nos. 51, 53, 65, 69.)

First, the motion entitled "Defendants' Motion to Alter or Amend Judgment," Defendants request that this Court alter its January 20th Memorandum Opinion and Order pursuant to Fed. R. Civ. P. 59(e). (ECF No. 51.) Defendants specifically request that the Court reconsider and alter its position concerning the appropriateness of a court determining a student's eligibility to participate in intercollegiate sports under a set of guidelines set by the National Collegiate Athletic Association ("NCAA"), a private organization. (ECF No. 52 at 7.) According to Defendants, this Court committed a clear error of law by taking a position

that is "contrary to all authority on the subject." (*Id.*) Further, Defendants argue "that the Court is in no way bound by the NCAA's determination of [Plaintiff's] eligibility," which they argue means that they "should be granted leave to amend their affirmative defenses to include the factual allegations that, if proven, would demonstrate that" Plaintiff was ineligible to be a student athlete under the NCAA rules and therefore did not benefit from the protections afforded to student-athletes under the UAAA. (*Id.*)

Next, in a document entitled "Defendants Motion for Leave to Amend Answer, Affirmative Defenses and Counterclaims," Defendants move to amend their pleadings as delineated in the caption of the motion pursuant to Rule 15(a). (ECF No. 53.) Defendants request the opportunity to "specifically allege that Williamson engaged in conduct that violated NCAA rules, rendering him ineligible and therefore not subject to the protections provided under the UAAA." (*Id.* at 2.) Defendants also, in a motion captioned "Motion to Substitute Proposed Amended Answer, Amended Affirmative Defenses and Amended Counterclaims in Pending Motion for Leave to Amend," move to substitute the proposed pleadings they submitted in connection with their motion to amend. (ECF No. 65.) Defendants wish to include information regarding Plaintiff that was presented in a then-pending unrelated matter in the United States District Court for the District of South Carolina, that has since been dismissed on the merits with prejudice and to which Plaintiff was not a party. *See generally Bowen v. Adidas Am. Inc.*, No. 3:18-3118, 2021 WL 2141724 (D.S.C. May 26, 2021). (ECF No. 268).

Finally, Defendants, in a document captioned "Notice of Motion to Vacate January 20, 2021 Partial Judgment on the Pleadings Pursuant to FRCP 60(b)(2) Based Upon Newly

2

Discovered Evidence," give notice that they "will move this Court . . . for an Order vacating" the January 20th Memorandum Opinion and Order "based upon newly discovered evidence." (ECF No. 69 at 2–3.) Though this document is captioned as a "Notice," it has been fully briefed by the parties and appears to cover the same ground as the motion under Rule 59(e) with minor exceptions. Thus, the Court will, in the interest of judicial economy, construe this as a motion to vacate and will address it in this Order. In their motion, Defendants again cite to the information regarding Plaintiff that was presented in the unrelated, and now dismissed with prejudice, matter that was before the United States District Court for the District of South Carolina. The Court will therefore address each of Defendants' pending motions in turn.

## I. Defendants' Motion to Alter or Amend Judgment

### A. Standard of Review

The Court will briefly address the appropriate standard that applies to Defendants' Motion to Alter or Amend Judgment. Defendants bring their motion pursuant to Rule 59(e). (*See* ECF No. 51.) Plaintiff opposes Defendants' motion for reconsideration under Rule 59(e), first on the grounds that it is procedurally improper because Rule 59 motions are reserved for cases that have proceeded to a final judgment. (ECF No. 57 at 10.) Plaintiff argues that, because this "Court's ruling has not yet" reached that stage, the Court may deny Defendants' motion on this ground alone. (*Id.*)

In their reply, Defendants state that they sought relief under Rule 59(e) rather than Rule 54(b) because they felt that Rule 59(e) "best preserved [their] right to appellate review" because, "[i]f [they] had brought [their] motion for reconsideration under Rule 54 rather than

3

Rule 59 and been incorrect, the motion would not have tolled the time to file a notice of appeal." (ECF No. 63 at 4–5.)  Nevertheless, Defendants state that they "agree with the Plaintiff that [the January 20th Memorandum Opinion and Order] is an interlocutory order that the Court may reconsider at any time." (*Id.* at 5.)  While the fact that Defendants knowingly and intentionally brought a procedurally improper motion before the Court is concerning, the Court will nevertheless construe Defendants' motion to "Alter or Amend Judgment" as one for reconsideration pursuant to Rule 54(b).

Under Rule 54(b) "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment." Fed. R. Civ. P. 54(b).  "Said power is committed to the discretion of the district court" and may be exercised as justice requires. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003).  Although the Federal Rules of Civil Procedure "do not set out a[ ] standard for reconsideration of interlocutory orders," under Rule 54(b), most courts have frequently looked to the standards under Rule 59(e) for guidance in considering such motions. *Akeva, L.L.C. v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 565 (M.D.N.C. 2005); *see United States v. Lovely*, 420 F. Supp. 3d 398, 403 (M.D.N.C. 2019).  Specifically, courts have considered whether: "(1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." *Akeva*, 385 F. Supp. 2d at 566.  While "[t]his standard closely resembles the standard applicable to motions to reconsider final orders pursuant to Rule 59(e)," it departs from it "by accounting for potentially different evidence discovered during litigation as opposed to the discovery of 'new evidence not available at trial.'" *Carlson*

4

*v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (citing *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). Further, like Rule 59(e) motions, Rule 54(b) motions "should not be used to rehash arguments the court has already considered" or "to raise new arguments or evidence that could have been raised previously." *South Carolina v. United States*, 232 F. Supp. 3d 785, 793 (D.S.C. 2017).

### B. Discussion

In its January 20th Memorandum Opinion and Order, the Court concluded that the Agreement between the parties was void as a matter of law pursuant to § 78C-88 of the UAAA because the pleadings of both parties revealed there was no genuine dispute that:

> (1) Plaintiff was a student at Duke University and playing on Duke University's men's basketball team at the time that the parties engaged one another; (2) he had not been determined to be permanently ineligible by any governing body at the time of the agreement; (3) Defendant Ford did not hold the requisite athlete agent certification as required by North Carolina's UAAA; (4) the parties entered into the Agreement; (5) the Agreement permits Defendants to negotiate or solicit professional-sports-services or endorsement contracts on Plaintiff's behalf; (6) the Agreement at issue did not have the statutorily required warning; and (7) Plaintiff's family communicated to Defendants that they were terminating and voiding the agreement.

(ECF No. 49 at 19–20.)

Defendants request that the Court alter its January 20th Memorandum Opinion and Order "to hold that Defendants may raise the issue of Plaintiff's ineligibility as a defense to Plaintiff's claim that the [Agreement] was void under the UAAA." (ECF No. 51 at 2.) Specifically, according to Defendants, they "seek reconsideration to correct a clear error of law regarding the legal effect of NCAA's determination of [Plaintiff's] eligibility." (ECF No. 52 at 8.) Defendants also argue that the Court, in reaching its determination, "[ceded its] authority to independently evaluate the Plaintiff's eligibility status," which is a position that is

5

"contrary to all authority on the subject." (ECF No. 52 at 7.) However, Plaintiff contends that, in requesting reconsideration, Defendants raise arguments and factual allegations they did or could have previously raised. (ECF No. 57 at 10.)

As discussed above, under Rule 54(a), there are three situations that would call for a reconsideration of this Court's determination: (1) there has been an intervening change in controlling law; (2) a party has evidence that was not previously available; and (3) the prior decision was based on a clear error or would result in manifest injustice. *Akeva,* 385 F. Supp. 2d at 566. In this motion, Defendants do not contend that there has been an intervening change in the controlling law or previously unavailable evidence. Defendants rest their arguments exclusively on their contention that this Court made a clear error in reaching its ruling. (ECF No. 52 at 8.) To qualify as a clear error for the purposes of amending a judgment, the controverted prior decision must be "dead wrong," not "just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009).

In this motion, Defendants merely rehash their previous arguments that have been rejected by this Court, (*See* ECF No. 52 at 3–20), and further argue why they believe "Plaintiff's argument[s] find[ ] no support in the rules of statutory construction" and are "not supported by the case law," (*id.* at 9, 15). However, the task before the Court is not to once again analyze Plaintiff's arguments but rather to examine whether this Court committed a clear error of law in reaching its January 20th ruling. As such, the Court understands Defendants' position to be that the Court committed clear error in its interpretation of the UAAA and made a clear error in reaching its determination based upon existing case law.

The Court has considered Defendants' arguments and, for the reasons that follow, concludes that there was no clear error of law that justifies amending its January 20th Memorandum Opinion and Order.

### 1. The Court's interpretation of the UAAA did not constitute clear error.

In its January 20th Memorandum Opinion and Order, the Court concluded:

> Given the pleadings before the Court, taken in the light most favorable to Defendants and resolving all inferences in their favor, the Court finds that there is no genuine dispute that Plaintiff engaged in intercollegiate sports while a student at Duke University during the relevant time period. Further, there is no genuine dispute that he had not been declared to be permanently ineligible to do so at the time of the Agreement. Therefore, there is no genuine issue of material fact as to whether Plaintiff was a student-athlete under the UAAA during the time he entered into the Agreement with Defendants.

(ECF No. 49 at 17.) In reaching this determination, the Court considered the pleadings in the light most favorable to Defendants and found that "Defendants' affirmative defenses and counter claims that Plaintiff was not a student-athlete [did] not rely on material allegations of fact, rather a conclusion of law that flies in the face of their own pleadings as well as attachments to their pleadings." (*Id.* at 15.)

Defendants argue that the Court made a "clear error of law regarding the legal effect of NCAA's determination of [Plaintiff's] eligibility," (ECF No. 52 at 8), because "the Court is in no way bound by the NCAA's determination of [Plaintiff's] eligibility." (*Id.* at 7.) Defendants point to *Jenkins v. Allied Interstate, Inc.*, in support of their argument that they have "the right to raise an affirmative defense challenging whether a prerequisite statutory definition has been met." (ECF No. 52 at 10–12 (citing *Jenkins v. Allied Interstate, Inc.*, No. 5:08-CV-125-DCK, 2009 WL 3157399, at *2 (W.D.N.C. Sept. 28, 2009)).) The Court does not find this case on point, nor is it persuasive. In *Jenkins*, the plaintiff brought suit against a debt collection

7

company after receiving calls falsely claiming that she owed money. *Jenkins*, 2009 WL 3157399, at \*1. As an affirmative defense, the defendant challenged whether the plaintiff was a consumer and whether the debt collection agency was a telephone solicitor under the relevant statutory definition. *Id.* at \*2.

The matter before the Court is distinguishable from *Jenkins*. Here, as discussed at length in the Court's January 20th Memorandum Opinion and Order, Defendants' claims that Plaintiff was not a student-athlete "flies in the face of their own pleadings as well as attachments to their pleadings." (ECF No. 49 at 15.) The Court in *Jenkins* was not faced with a defendant that contradicted its own pleadings in challenging whether the parties met the statutory definitions of relevant terms.

In addition, Defendants argue that under the Court's construction of the UAAA, "a student athlete meets the definition of a student athlete until the NCAA declares [him/her] to be permanently illegible," and that this construction ceded the Court's authority to a private organization. (ECF No. 52 at 13–14.) The Court has considered Defendants' argument and disagrees. The Court ceded no authority; rather it used its authority to interpret the UAAA. The definition of "student-athlete" under the UAAA is "[a]n individual who engages in, is eligible to engage in, or may be eligible in the future to engage in any intercollegiate sport," but not an individual who is "permanently ineligible to participate in a particular intercollegiate sport." N.C. Gen. Stat. § 78C-86(11) (2019). The provision of the UAAA that provides the definition of "student-athlete" does not define "permanently-ineligible" nor provide any criteria for making such an interpretation. However, as was recognized in *McAdoo v. Univ. of N.C. at Chapel Hill*, cited by Defendants to support their contention, "[i]t is well established

8

that courts will not interfere with the internal affairs of voluntary associations." 736 S.E.2d 811, 825 (N.C. Ct. App. 2013), (quoting *Wilson Realty & Constr., Inc. v. Asheboro–Randolph Bd. of Realtors, Inc.*, 518 S.E.2d 28, 30 (N.C. Ct. App. 1999)). Thus here, not only had Plaintiff in this case not been determined to be permanently ineligible by the NCAA as this Court recognized, Defendants pleaded only conclusory allegations, not supported by factual allegations specific to Plaintiff from which this Court could conclude that a genuine issue was raised.

Additionally, Defendants argue that the Court added an additional requirement to the language of the UAAA that would require Defendants to establish that "there had been a 'declaration' by the NCAA that [Plaintiff] had been permanently [ineligible]" in order for it to plead that Plaintiff was not a student-athlete under the UAAA. (ECF No. 52 at 13.) However, the Court's ruling did not stand for a proposition that Defendants must establish that there had been a declaration by the NCAA that Plaintiff was permanently ineligible. Rather, the ruling stated that Defendant failed to plausibly allege that Plaintiff was not a student-athlete, due to permanent ineligibility or otherwise, under the UAAA. The Court finds no clear error in its interpretation of the UAAA.

### 2. The Court's determination is in line with relevant case law and does not constitute clear error.

Defendants next argue that the Court committed a clear error of law because its position is contrary to "all authority on the subject." (ECF No. 52 at 7.) Defendants cite a number of cases in an apparent response to the Court's statement that Defendants "provided no authority, caselaw or otherwise, that suggests that it is for a court to adjudicate the details of a student-athlete's eligibility under NCAA rules." (*See id.* at 13 (citing ECF No. 49 at 17).) Defendants contend that they [provided] "authority demonstrating that an agent seeking to

9

avoid penalties for violation of the UAAA may raise the ineligibility of the athlete as an affirmative defense" that, they believe, "are dispositive on the issue." (*Id.* at 21.) Contrary to Defendants' assertion, the Court did not find that a party may *never* raise the ineligibility of an athlete as an affirmative defense—rather the Court concluded that Defendants failed to plausibly allege such a claim or raise such a defense *in this case*. (ECF No. 49 at 16–17.)

Defendants point to two state court of appeals cases, one from Tennessee and the other from Mississippi, in support of the proposition that Defendants can raise whether Plaintiff was a student-athlete as an affirmative defense.[1] (*See* ECF No. 52 at 21–23 (citing *Sloane v. Tenn. Dep't of State, Bus. Servs. Div.*, No. M2019-00126-COA-R3-CV, 2019 WL 4891262 (Tenn. Ct. App. Oct. 3, 2019), *appeal denied* (Apr. 15, 2020), then citing *Howard v. Miss. Sec'y of State*, 184 So.3d 295, 300 (Miss. Ct. App. 2015)). Defendants appear to cite to both cases for the proposition that a defendant has the right to call a student-athlete's eligibility into question. The Court finds these cases neither relevant nor persuasive. First, as distinguished from *Sloane*, this Court was not engaged in analysis of whether Defendants *could* raise Plaintiff's eligibility as an affirmative defense, but whether Defendants plausibly alleged facts that called Plaintiff's eligibility into question.

Second, in *Howard*, Mississippi's Court of Appeals determined that an agent failed to raise a question of eligibility at the trial level. *Howard*, 184 So.3d at 302. Similar to the reason the Court did not find *Sloane* to be persuasive or relevant to the Court's analysis, the Court does not find *Howard* to be relevant or persuasive. The matter before the Court is not a

---

[1] Defendants rely on these cases even though they previously argued that Plaintiff's reliance on the same cases at the trial court level was "profoundly misplaced." (*Compare* ECF No. 52 at 21–23 *with* ECF No. 37 at 18–20.)

10

question of whether a student-athlete's eligibility can be called into question if he raises a claim pursuant to the UAAA. Despite Defendants' characterization, the Court's January 20th Memorandum Opinion and Order did not hold that an agent has no right to challenge an athlete's eligibility as a student athlete, but rather that Defendants failed to plausibly allege facts that raised a question of Plaintiff's eligibility status.

Defendants proceed to identify a number of cases they contend demonstrate that student-athletes who have been declared ineligible routinely sue the NCAA in order to have the determination reversed in various courts. (*See* ECF No. 52 at 23.) The Court does not find these cases to be persuasive or relevant on the question of whether a court should step in and make an initial retroactive determination of eligibility under the guidelines set forth by a voluntary association.

Defendants also cite to a case that was determined five days prior to this Court's January 20th Memorandum Opinion and Order—*United States v. Gatto*. (ECF No. 52 at 25–26 (citing *United States v. Gatto*, 986 F.3d 104 (2d Cir. 2021).) Defendants point to dicta contained in the decision to support their position that a Court can reach a determination of a student-athlete's eligibility under the NCAA bylaws. *Id.* However, *Gatto* was not a case that was interpreting the definition of a "student-athlete" under the UAAA, and it is unclear whether the district court or circuit court actually determined the eligibility of the *Gatto* defendants or the process through which such a determination would be made. *Gatto* involved a criminal indictment for wire fraud and refers to student-athletes who were ineligible at the time of the fraud. *Gatto*, 986 F.3d at 116–17. The case does not outline the process through which they

11

were determined to be ineligible. The Court does not find *Gatto* to be persuasive nor relevant to the instant matter.

Despite Defendants' many arguments, they have still not provided any relevant case law that would suggest that it is for this Court to exercise oversight on how private organizations enforce and investigate alleged violations of their rules. The question the Court had to determine in interpreting the applicability of the UAAA was not whether Plaintiff *could have conceivably* been found permanently ineligible by the overseeing collegiate association or *should have* been found permanently ineligible, but rather whether Defendants had sufficiently alleged that he *was* permanently ineligible. The Court concluded that Defendants failed to do so.

Finally, Defendants take issue with the Court's January 20th Memorandum Opinion and Order which stated that Plaintiff effectively terminated and voided the Agreement by letter. (ECF No. 52 at 27.) If not abundantly clear before, the Court will now clarify that that Agreement was voided by this Court in its January 20th Memorandum Opinion and Order. (See ECF No. 49 at 20 (stating "The Court hereby declares that the Agreement entered into by the parties is void as a matter of law under N.C. Gen. Stat. § 78C-88 (the 'UAAA').").) Further, the Court did not use Plaintiff's termination of the Agreement as an independent basis to reach its determination to grant judgment on the pleadings in favor of Plaintiff. Rather, the Court determined that the Agreement was void as a matter of law pursuant to § 78C-88, which provides in subsection (d) that "[a]n agency contract resulting from conduct in violation of this section is void, and the athlete agent shall return any consideration received

12

under the contract"; not pursuant to § 78C-94(d), which discusses when a contract is voidable by a student-athlete. (*See* ECF No. 49 at 20.)

Thus, the Court concludes that Defendants have failed to establish that amendment, alteration, or vacature of the Court's January 20th Memorandum Opinion and Order in this matter is necessary or appropriate as there was no clear error or manifest injustice to prevent. Defendants' Motion to Amend Judgment will, therefore, be denied.

## II. DEFENDANTS MOTION TO AMEND THEIR PLEADINGS (RULE 15(A))

### A. Standard of Review

The decision of whether to grant or deny a motion to amend a pleading lies within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987). Courts should freely grant leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, a request for "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman*, 371 U.S. at 182). An "amendment to add an affirmative defense is futile 'when the proposed affirmative defense is not a defense to liability,' that is, when 'the proposed affirmative defense lacks a sound basis in law.'" *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 118 (S.D.N.Y. 2010) (quoting *Greenes v. Vijax Fuel Corp.*, 326 F. Supp. 2d 464, 466, 468 (S.D.N.Y. 2004)). The Fourth Circuit has cautioned that "[l]eave to amend, however, should only be denied on the

13

ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510.

### B. Discussion

Defendants seek leave to amend their Answer, Affirmative Defenses, and Counterclaims. (ECF No. 53.) Defendants seek to allege specific violations of NCAA rules by Plaintiff or his representatives, (*id.* at 2), but not to allege that the NCAA determined that Plaintiff was permanently ineligible for the alleged violations. According to Defendants, "[i]t is undisputed that any one of these 'activities' *would* violate NCAA rules and *would* have cost [Plaintiff] his eligibility to play basketball at Duke." (ECF No. 56 at 2 (emphasis added.)) These are two distinct allegations that are at the crux of the Court's determination and are fatal to Defendants' argument.

First, Defendants seek to allege specific violations of the NCAA rules by Plaintiff or his representatives. (*See* ECF No. 54 at 2.) To allow Defendants to amend their Answer, Affirmative Defenses, and Counterclaims would be futile because, even if Defendants were to show that these violations occurred, the proposed amendments would still suffer from a fatal flaw—they do not plausibly allege that Plaintiff was permanently ineligible to participate in intercollegiate basketball at the time he entered into the contract with Defendants. Here again, Defendants confuse what is before the Court. In analyzing the UAAA, the Court is not tasked with undertaking an analysis of whether a student athlete engaged in activities that should have rendered him permanently ineligible to participate in a particular intercollegiate sport. The UAAA states that a student is not a student-athlete if that individual *is* permanently ineligible, not if an individual engages in activities that *would make him* permanently ineligible. Defendants

14

seek to simply amend their pleadings to argue points that were initially lacking in their pleadings and briefing. In other words, Defendants merely seek to relitigate arguments previously raised and rejected.

Review of the proposed amended complaint reveals that Defendants wish to set forth additional allegations enumerating alleged gifts of payments received by Plaintiff and/or his family. (ECF No. 56-1 at 8–9, 12, 27–31, 57.) However, in Defendants' original Answer, Affirmative Defenses, and Counterclaims, they had already alleged that "Plaintiff was not a 'student athlete' as define[d] by the NCAA and/or as defined by the UAAA as the Plaintiff and/or third parties acting on the Plaintiff's behalf had violated one or more of the NCAA and/or UAAA rules that voided the Plaintiff's eligibility and rendered him ineligible to be a 'student athlete.'" (ECF No. 32 at 24.) These arguments, therefore, have already been raised.

Defendants subsequently filed a motion to substitute their proposed Amended Answer, Affirmative Defenses, and Counterclaims associated with the motion to amend. (ECF No. 65.) Defendants seek to include information that was presented in the unrelated matter of *Bowen vs. Adidas* that was before the United States District Court for the District of South Carolina. (ECF No. 66 at 1 (citing *Bowen*, 416 F. Supp. 3d at 574.) Defendants argue that a number of things regarding Plaintiff and his family were revealed in that litigation which serve as evidence that Plaintiff was an ineligible student-athlete under NCAA Rules. (*Id.* at 1–2.) Defendants go on to provide a declaration from defense counsel that attaches interrogatory responses that were provided in *Bowen* and a deposition transcript. (ECF Nos. 67-1, 67-2.) According to Defense Counsel, these exhibits serve as evidence that Plaintiff and/or his family

received improper benefits when he was a high school student and, therefore, he was ineligible to be a student athlete under NCAA guidelines. (ECF No. 67 at 2.)

Defendants' proposed amendments do not cure the deficiencies the Court previously identified in granting Plaintiff's motion for partial judgment on the pleadings and declaring the Agreement void. Defendants proposed substitute amendments likewise fail. The additional allegations about alleged violations of NCAA rules are futile as they would not change the analysis conducted by the Court in reaching its determination that Plaintiff was not "permanently ineligible" under the UAAA during the relevant time period. Specifically, the proposed amendments do not dispute this Court's previous determination that:

> (1) Plaintiff was a student at Duke University and playing on Duke University's men's basketball team at the time that the parties engaged one another; (2) he had not been determined to be permanently ineligible by any governing body at the time of the Agreement; (3) Defendant Ford did not hold the requisite athlete agent certification as required by North Carolina's UAAA; (4) the parties entered into the Agreement; (5) the Agreement permits Defendants to negotiate or solicit professional-sports-services or endorsement contracts on Plaintiff's behalf; (6) the Agreement at issue did not have the statutorily required warning; and (7) Plaintiff's family communicated to Defendants that they were terminating and voiding the agreement.

(ECF No. 49 at 19–20.)

The Court determines that the proposed amendments Defendants wish to include in their Answer, Affirmative Defenses, and Counterclaims would be futile. As such, the Court denies their motion to amend and their motion to substitute the proposed amendments.

### III. DEFENDANTS' MOTION TO VACATE

Defendants' last motion before the court is a motion to vacate this Court's January 20th Memorandum Opinion and Order. (ECF No. 69.) Defendants contend that they are entitled

16

to relief from the Court's previous order due to newly discovered evidence pursuant to Federal Rule of Civil Procedure 60(b)(2). (*Id.* at 2–3.)

Rule 60(b) allows a court to "relieve a party . . . from a final judgment, order or proceeding" on a limited number of grounds. Fed. R. Civ. P. 60(b). Setting aside for the moment that the Order in question is not a final judgment or order, as a threshold matter, to prevail on a 60(b) motion, a party must demonstrate "[1] timeliness, [2] a meritorious defense, [3] a lack of unfair prejudice to the opposing party, and [4] exceptional circumstances." *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993). "After a party has crossed this initial threshold, [it] then must satisfy one of the six specific sections of Rule 60(b)." *Id.* Of these specific sections, Rule 60(b)(2) provides that on a motion and just terms, the court may relieve a party from a final judgment, order, or proceeding when there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2).

Defendants' motion to vacate points to the same information from the *Bowen* case discussed above. As the Court determined above, this "newly discovered evidence," even if taken as true, has no bearing on the basis for the Court's ruling. "A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988); *see Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989) (stating that to obtain relief under Rule 60, a party must demonstrate, among other things, that newly discovered evidence is "material," and either "likely to produce a new outcome if the case were retried" or "would require the judgment to be amended"). In the instant matter, as

discussed above, the evidence Defendants offer does not meet this threshold requirement as it does not provide a meritorious defense, nor would it likely produce a new outcome of the Court's determination. It appears to this Court that Defendants are asking, in multiple ways, that it change its mind on its finding that Defendants failed to plausibly allege that Plaintiff was permanently ineligible to be a student athlete despite his enrollment in Duke University and participation on its men's basketball team. A motion that is "nothing more than a request that the district court change its mind . . . is not authorized by Rule 60(b)." *United States v. Williams*, 674 F.2d 310, 313 (4th Cir. 1982). As such, Defendant's motion to vacate is denied.

## IV. CONCLUSION

It appears that Defendants wish to engage in a fishing expedition into the backgrounds of Plaintiff, his parents, and his associates. Defendants attempt both to relitigate matters which have been addressed by the Court and, in some instances, introduce evidence that could have been raised prior to the Court's entry of its January 20th Memorandum Opinion and Order. Further, the Court finds that any newly discovered evidence Defendants wish this Court to consider would not likely change the Court's January 20th Memorandum Opinion and Order for the reasons described in this Memorandum. The Court will therefore deny all four of Defendants' pending motions.

Therefore, the Court enters the following:

[Order on next page]

# ORDER

**IT IS THEREFORE ORDERED** that Defendants' Motion to Alter or Amend Judgment, (ECF No. 51), is DENIED.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to Amend Answer, Affirmative Defenses, and Counterclaims, (ECF No. 53), is DENIED.

**IT IS FURTHER ORDERED** that Defendants' Motion to Substitute its Proposed Amended Answer, Affirmative Defenses, and Counterclaims, (ECF No. 65), is DENIED.

**IT IS FURTHER ORDERED** that Defendants' Motion to Vacate January 20, 2021, Partial Judgment on the Pleadings, (ECF No. 69), is DENIED.

This, the 15th day of September 2021.

/s/ Loretta C. Biggs
United States District Judge