# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

### Civil Action No.:  1:19-cv-00593-LCB-JLW

ZION WILLIAMSON,

       Plaintiff,

   v.

PRIME SPORTS MARKETING, LLC
and GINA FORD,

       Defendants.

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ............................................................................. 1

II.  ARGUMENT ...................................................................................................... 3

    A.   Prime Sports' Claims Fail Because They Seek To Benefit From an
        Illegal Contract ............................................................................................. 3

    B.   Prime Sports' Claims Independently Fail Because There Is No
        Genuine Issue of Material Fact ..................................................................... 5

        1.   The Misappropriation Claim Fails Because the Marketing
            Materials Are Not Trade Secrets ........................................................ 5

            a)   The Partnership Summaries Are Not Trade Secrets .............. 6

            b)   The Marketing Plan Is Not a Trade Secret ............................. 6

            c)   Prime Sports Cannot Now Plead a New Trade Secret
                Claim ...................................................................................... 9

        2.   The Fraud Claim Fails Because Ford Admits No Fraud
            Occurred ........................................................................................... 11

        3.   The Remaining Claims Fail Because Prime Sports Provides
            Neither Argument Nor Evidence To Support Them ........................ 12

    C.   Prime Sports Improperly Relies on Inadmissible Evidence ........................ 13

III. CONCLUSION ................................................................................................. 16

- i -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adefila v. Davita, Inc.*,
    2015 WL 268983 (M.D.N.C. Jan. 20, 2015) ............................................................ 14

*Amerigas Propane, L.P. v. Coffey*,
    2015 WL 6093207 (N.C. Super. Oct. 15, 2015) .................................................... 12

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) .............................................................................. 12

*Bryan Builders Supply v. Midyette*,
    274 N.C. 264 (1968) ............................................................................................ 3

*Cable v. FedEx Freight, Inc.*,
    2014 WL 6810816 (M.D.N.C. Dec. 2, 2014) ...................................................... 15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................. 5

*Dalton v. Camp*,
    138 N.C. App. 201 (2000) .................................................................................. 13

*Data Gen. Corp. v. Cty. of Durham*,
    143 N.C. App. 97 (2001) ...................................................................................... 4

*Edgewater Servs., Inc. v. Epic Logistics, Inc.*,
    2009 WL 2456868 (N.C. Super. Aug. 11, 2009) .................................................. 7

*Edwards v. JPMorgan Chase Bank, N.A.*,
    2020 WL 1814423 (M.D.N.C. Apr. 9, 2020) ...................................................... 3

*Eley v. Mid/East Acceptance Corp. of N.C., Inc.*,
    171 N.C. App 368 (2005) ................................................................................... 12

*Eli Rsch., Inc. v. United Commc'ns Grp., LLC*,
    312 F. Supp. 2d 748 (M.D.N.C. 2004) .............................................................. 12

*Equal Rts. Ctr. v. Niles Bolton Assocs.*,
    602 F.3d 597 (4th Cir. 2010) ............................................................................... 9

Case 1:19-cv-00593-LCB-JLW   Document 153   Filed 03/14/22   Page 3 of 23

*Evans v. Techs. Applications & Serv. Co.*,
  80 F.3d 954 (4th Cir. 1996) .................................................................................. 7, 15

*In re Fam. Dollar FLSA Litig.*,
  637 F.3d 508 (4th Cir. 2011) ................................................................................. 2, 8

*Ferguson v. Maita*,
  162 F. Supp. 2d 433 (W.D.N.C. 2000) (4th Cir. 2001) ............................................. 9

*Foushee v. R.T. Vanderbilt Holding Co., Inc.*,
  507 F. Supp. 3d 654 (E.D.N.C. 2020) ......................................................................... 8

*Garey v. James S. Farrin, P.C.*,
  514 F. Supp. 3d 784 (M.D.N.C. 2021) (J. Biggs) ...................................................... 13

*Hill v. Southeastern Freight Lines, Inc.*,
  877 F.Supp.2d 375 (M.D.N.C. July 2, 2012) .............................................................. 14

*Homeq v. Watkins*,
  154 N.C. App. 731 (2002) ............................................................................................ 4

*Jiangmen Kinwai Furniture Decoration Co. Ltd. v. IHFC Properties, LLC*,
  2015 WL 5098791. (M.D.N.C. Aug. 31, 2015) ........................................................... 4

*Jones v. Nationwide Advantage Mortg. Co.*,
  2018 WL 1569835 (M.D.N.C. Mar. 27, 2018) ............................................................. 3

*LeMay v. U.S.*,
  2010 WL 3522333 (W.D.N.C. Sept. 7, 2010) ............................................................ 13

*Maisha v. Univ. of N. Carolina*,
  2015 WL 224939 (M.D.N.C. Jan. 15, 2015) ............................................................... 15

*Maness v. Meyers*,
  419 U.S. 449 (1975) ..................................................................................................... 3

*Owle v. Solomon*,
  2017 WL 2262419 (W.D.N.C. May 23, 2017) ........................................................... 14

*Pearson v. Gardere Wynne Sewell LLP*,
  814 F. Supp. 2d 592 (M.D.N.C. 2011) ...................................................................... 12

*Rahamankhan Tobacco Enterprises Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.*,
   989 F. Supp. 2d 471 (E.D.N.C. 2013)........................................................................ 12

*Richardson v. Bank of Am., N.A.*,
   182 N.C. App. 531 (2007)............................................................................................ 1

*RLM Commc'ns, Inc. v. Tuschen*,
   66 F. Supp. 3d 681 (E.D.N.C. 2014)........................................................................ 11

*Russel v. Absolute Collection Servs., Inc.*,
   763 F.3d 385 (4th Cir. 2014) ...................................................................................... 8

*Silverdeer, LLC v. Berton*,
   2013 WL 1792524 (N.C. Super. Apr. 24, 2013)...................................................... 12

*Thompson v. Thompson*,
   313 N.C. 313 (1985) .................................................................................................... 4

**Other Authorities**

██████████████████████████████████████████ .................................... 10

███████████████████████████████████████████████ ........ 10

████████████████████████████ ██ ████ █████████ ...................... 10

███████████████████████████ ██ ███ ████ ██████ .................... 10

# I. PRELIMINARY STATEMENT

Prime Sports' response to Williamson's Motion for Summary Judgment confirms that this Court should grant summary judgment to Williamson for two independent reasons. First, Prime Sports' claims fail because they seek to recover profits under the contract that this Court held to be void for violating the North Carolina Uniform Athlete Agents Act ("UAAA"). And it is well-settled that North Carolina law "will not allow one party to benefit directly or indirectly from a contract void as against public policy." *Richardson v. Bank of Am., N.A.*, 182 N.C. App. 531, 563 (2007). Second, Prime Sports' claims fail for lack of record evidence. Most significantly, Prime Sports' marketing materials fall far short of warranting trade secret protection, and Ford admitted in her deposition that the fraud she alleged in the counterclaims never occurred.

Prime Sports has no sound response to either fatal flaw. First, Prime Sports contends (Response at 7) that the "the voided contract is not a defense" to its tort claims. But all of the tort claims are efforts by Prime Sports to recover profits from its contractual relationship with Williamson, which this Court held to be illegal. Recouping those same fees through tort would allow Prime Sports "to benefit directly or indirectly" from that illegal contract in contravention of North Carolina law. *Richardson*, 182 N.C. App. at 563; *see also* § 78C-88(d).

Second, Prime Sports has no credible response to the undisputed record. Prime Sports focuses on the secrecy of its supposed trade secrets, but the uncontroverted evidence shows that the marketing materials were not secret and in fact were widely

shared. Moreover, they would not be protectable trade secrets because the Partnership Summaries are merely preliminary offers from third parties, and the Marketing Plan contains nothing more than obvious brands and widely known marketing concepts.

Lacking evidence to support its claims, Prime Sports relies on late-breaking declarations, which contradict prior admissions, in an effort to manufacture issues of fact. For example, Ford previously testified that █████████████████████████ ████████████████████████████████. Now, Ford asserts that ██████ worked as an agent of Prime Sports subject to a verbal confidentiality agreement. But such a belated, self-serving declaration cannot create a genuine issue of fact. *See In re Fam. Dollar FLSA Litig.*, 637 F.3d 508, 512–13 (4th Cir. 2011).

Perhaps recognizing that the Marketing Materials are not trade secrets, Prime Sports attempts to newly expand its trade secrets claim, asserting for the first time that it created the idea that Williamson should market himself as ███████████████████ ███████████ But publicly available materials clearly establish that this idea is no trade secret. Williamson himself asserted that idea in interviews long before he met Prime Sports. And it is too late to posit a new theory of the case, as the time for amending the complaint has long passed. These straining, last-ditch efforts simply underscore that Prime Sports has no evidence to support its claims.

Finally, Prime Sports' Response and affidavits depend on conclusory statements and inadmissible hearsay. Those statements cannot support Prime Sports' position at

summary judgment. And even if the Court considers those statements, Prime Sports'

claims fail on the law and the facts.

## II.  ARGUMENT

### A. *Prime Sports' Claims Fail Because They Seek To Benefit From an Illegal Contract*

Prime Sports' claims should be dismissed because a party cannot benefit, directly

or indirectly, from a void contract. *See Bryan Builders Supply v. Midyette*, 274 N.C. 264,

273 (1968) (unlicensed contractor could not recover under contractual or quasi-

contractual claims). Prime Sports has no credible response.

Prime Sports asserts that the Court cannot rely on its own order because that

decision "will be on Appeal." Response at 7. But that ruling is binding *now*, and Prime

Sports' suggestion that it may appeal that ruling in the future provides no basis to

disregard that ruling today. ECF 49, *recon. denied*, ECF 83; *Maness v. Meyers*, 419 U.S.

449, 458-59 (1975) ("once the court has ruled, counsel and others involved in the action

must abide by the ruling and comply with the court's orders"). Prime Sports also argues

the breach-of-contract counterclaim is "not pending" (Response at 7), because the parties

agreed not to pursue discovery on the contract. But discovery is unnecessary because this

Court declared the contract void on the pleadings. Accordingly, the breach of contract

and good-faith claims obviously fail. *See Jones v. Nationwide Advantage Mortg. Co.*,

2018 WL 1569835, at *5 (M.D.N.C. Mar. 27, 2018); *Edwards v. JPMorgan Chase Bank,

N.A.*, 2020 WL 1814423, at *3 (M.D.N.C. Apr. 9, 2020).

– 3 –

On *quantum meruit*, Prime Sports cites a series of inapposite cases, none of which allows a party to benefit from an illegal relationship. For example, *Homeq v. Watkins*, 154 N.C. App. 731 (2002), did not involve an illegal contract and regardless the court dismissed the unjust enrichment claim. *See also, e.g.*, *Data Gen. Corp. v. Cty. of Durham*, 143 N.C. App. 97, 104 (2001) (dismissing *quantum meruit* and estoppel claims when they depended on contract void for violating statute). Prime Sports also cites 49 exhibits (without pin cites). But "[t]he Court has no duty to 'scour the record' for evidence to support a party's arguments…and it certainly has no duty to wade through thousands of pages." *Jiangmen Kinwai Furniture Decoration Co. Ltd. v. IHFC Properties, LLC*, 2015 WL 5098791, *7 n. 7. (M.D.N.C. Aug. 31, 2015). The evidence leaves no doubt that Prime Sports' unjust enrichment claim seeks in tort the same commissions it cannot obtain in contract. *See Thompson v. Thompson*, 313 N.C. 313, 314–15 (1985).

Prime Sports also contends that its claims relating to the Marketing Materials—namely, misappropriation, fraud, conversion, conspiracy, and unfair and deceptive trade practices—are "outside of the contract," because the contract "did not obligate [Ford]/PSM to provide" the Marketing Materials. But Prime Sports was plainly acting pursuant to the (illegal) contractual relationship in serving as Williamson's "Global Marketing Consultant for identifying branding and endorsement opportunities." ECF 150-3 at 2. Prime Sports' responsibilities included "[i]ntroducing to Client endorsement opportunities" and "[g]iving advice on the building of client's brand domestically and internationally." *Id.* Regardless, the only value to Prime Sports in the Marketing

– 4 –

Materials is the potential commissions on deals allegedly initiated under the illegal contract. *See, e.g.,* ECF 32 ¶¶ 39, 104, 105, 167, 168. Prime Sports seeks to reap the fruits of the poisonous tree, and these quasi-contractual claims cannot survive.

### B. Prime Sports' Claims Independently Fail Because There Is No Genuine Issue of Material Fact

Prime Sports' claims also fail for the independent reason that the summary judgment record forecloses relief. There is no genuine issue of material fact that the Marketing Materials do not qualify for trade secret protection, Ford herself admitted that the alleged fraud did not occur, and Prime Sports has no evidence to support its remaining claims.

          1.   The Misappropriation Claim Fails Because the Marketing Materials Are Not Trade Secrets

Prime Sports' misappropriation claim fails because the summary judgment record confirms the Marketing Materials—the supposed "trade secrets"—consist of widely known information that third parties assembled hastily, and were shared without regard for confidentiality. Prime Sports attempts to shift the burden, arguing that Williamson "fails to bring forth a scintilla of evidence that Ford's/PSM's trade secrets are not trade secrets." Response at 22. But it is *Prime Sports* who has the burden, and summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-

23 (1986). Prime Sports has not carried its burden, and regardless the uncontroverted evidence affirmatively shows that the Marketing Materials are not trade secrets.

### a) *The Partnership Summaries Are Not Trade Secrets*

The minimal "effort" behind scribing potential deal terms conveyed by third parties falls far short of what is required to establish a trade secret. The Partnership Summaries were preliminary offers made to Williamson by widely known brands that all could be (and were) easily independently identified and negotiated by CAA. Ford did not even send a ████ Partnership Summary to Williamson or anyone acting on his behalf, or receive any offer from ████. Williamson Br. at 23-26. Likewise, Prime Sports has no answer for why the materials were never marked confidential or how it could establish trade secret protection after filing one set of Partnership Summaries on the public docket in Florida. These points are sufficient to foreclose relief.

### b) *The Marketing Plan Is Not a Trade Secret*

Prime Sports also cannot establish that the Marketing Plan is a trade secret. The information in it is widely known and has no independent value, and the Marketing Plan was not kept secret.

Prime Sports argues that the Marketing Plan is "unique,"[1] holds value for competitors, and would be difficult to properly acquire or replicate. But Prime Sports

---

[1] Ford argues she based her marketing strategy for Williamson off her unique global branding strategies for ████, but copying a previously used, now publicly-known strategy contradicts any suggestion that her "plan" was "unique." *See* ████████████████████████████ ████████████████████████████████████ ████████████████████████ (last visited Mar. 14, 2022).

– 6 –

proffers no evidence to support those self-serving and conclusory assertions. *See Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 962 (4th Cir. 1996). And the record evidence is to the contrary: Ford admitted ██████████████████████████████ ██████ ECF 104-34 at 22; *see Edgewater Servs., Inc. v. Epic Logistics, Inc.*, 2009 WL 2456868, at \*5 (N.C. Super. Aug. 11, 2009), *aff'd,* 217 N.C. App. 399 (2011). There is nothing strategic about ███████████████████████████████ ██████ Richards_Ex. 1 at Ford 84:9-85:10; ECF 141-8 at 8. Prime Sports concedes it had not yet made any strategic recommendations as to which of the many brands Williamson should sign with. Response at 22 ("as she *may* have been able to do with Williamson") (emphasis added).

Prime Sports also cannot refute that the Marketing Plan was shared within and outside the business without reasonable efforts at protecting confidentiality—the Marketing Plan was never marked confidential and Prime Sports produced no confidentiality agreements with any of the individuals (including ████████████ ███████████████████) who saw the Marketing Plan. Prime Sports' reversal of its sworn position on ██████ merits attention. In the Third Supplemental Responses to Plaintiff's First Interrogatories, Prime Sports stated: ████████████████████ ████████████████████████████████ Prime Sports now contends that ██████ is an "agent" or "work for hire" bound by verbal confidentiality obligations. *Compare* ECF 104-7 at 3-4 *and* Response at 18; Ford Aff. ¶ 140. But Prime

Sports cannot contradict its own testimony to manufacture an issue of fact. *See In re Fam. Dollar FLSA Litig.*, 637 F.3d 508, 512–13 (4th Cir. 2011) (when "deposition testimony and later affidavit are inconsistent, we will disregard her affidavit" since "a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct"). Prime Sports also ██████ ████████████████████████████████████████████████████████ ████████████████████████████████ and therefore cannot now assert the agreements in opposition to summary judgment. *See* Richards_Ex. 2; *Russel v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014).

Prime Sports remarkably asserts that Luchey alone constituted the ████████████ ████████████████████████████ But this self-serving explanation cannot create a genuine issue of fact. The record evidence shows ████████████████████████████ ██████. ECF 104-9. Luchey now states that *he* sent the email, but does not explain why he would ████████████████████ or why, if no ████████ existed and the comments were his own, he would say of the comments, ████████████████████ ██████ *Id.* Similarly, the unrefuted Kohr Declaration establishes that the "Author" and the "Last Saved By" fields are ████████████████ ECF 108 ¶¶ 10-11. Luchey's assertion that ████████████████████████████████████ does not explain why, if he supposedly ████████████████, the "Last Saved By" field says ████████████████ Luchey's assertion thus does not generate a genuine issue of fact. *Foushee v. R.T. Vanderbilt Holding Co., Inc.*, 507 F.

Supp. 3d 654, 659 (E.D.N.C. 2020) ("permissible inferences must still be within the range of reasonable probability"). In any event, even if Luchey's assertion were credited, the trade secret claim would still fail because the Marketing Plan contained nothing more than widely known information, was disclosed to others without confidentiality protections, and was never seen by Williamson or CAA.[2]

### c) Prime Sports Cannot Now Plead a New Trade Secret Claim

Apparently recognizing that the trade secret claim fails, Prime Sports uses its brief as a backdoor attempt to amend the pleadings and expand the scope of its supposed trade secrets. As a threshold matter, Prime Sports cannot allege new "trade secrets" it has known about throughout this case when the pleadings have long closed and they have seen Williamson's motion for summary judgment. The time to amend as of right passed long ago, Prime Sports has not sought leave to amend, and it should not be allowed to do so. Injecting new factual claims at this late date would plainly prejudice Williamson. *See Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (affirming denial of leave to amend where adding a new claim after the close of discovery "and on the eve of the deadline for dispositive motions would have required [the court] to reopen discovery and thereby prejudice [defendant]"); *Ferguson v. Maita*, 162 F. Supp. 2d 433, 441 (W.D.N.C. 2000), *aff'd,* 15 F. App'x 84 (4th Cir. 2001) (denying leave to amend

---

[2] Ford admitted ███████████████████████████████████. ECF 104-34 at 8-10. Williamson, Brown, and Metelus all testified they have never seen the document. ECF 104-37 at 3-4; ECF 104-38 at 3; ECF 104-39 at 3-4.

– 9 –

where "facts upon which the new claim are based were known at the time of the original complaint").

Prime Sports' belated attempts to claim ownership of the ideas of ██████████ ██████████ even if countenanced, would be futile. Prime Sports' assertion that it developed the concept of ████████ is easily refuted by public records. This was <u>Williamson's idea,</u> developed long before he ever met Ford or anyone affiliated with Prime Sports. *See* ████████████████████████████████



And the familiar ████████████████ long predates the relationship here. ██████

████████████████████████████████ Prime Sports has no trade secret claim with respect to others' widely known ideas—and in particular for a phrase Williamson himself coined.

────────────────



Prime Sports' reliance on efforts with brands Williamson did not enter into an agreement with—unsupported by evidence—also would fail as a matter of law. Offers that were never consummated have no inherent value to Prime Sports and are not trade secrets. *See, e.g.,* Response at 9 (███), 9 (ownership of Williamson's own shoe company),[7] 10 (███████); *see RLM Commc'ns, Inc. v. Tuschen*, 66 F. Supp. 3d 681, 700 (E.D.N.C. 2014), *aff'd,* 831 F.3d 190 (4th Cir. 2016) ("a nebulous, potential, business opportunity, not yet realized, that is being offered by a third-party" is not a trade secret).

2. <u>The Fraud Claim Fails Because Ford Admits No Fraud Occurred</u>

Ford's own testimony refuted the single misrepresentation alleged in Prime Sports' fraud counterclaim: The counterclaim alleges Williamson requested the Marketing Plan to facilitate a working relationship with an NBA agent, but Ford ██████ ████████████████████. Counterclaims ¶¶ 145, 153–54; Williamson Br. at 31. That is sufficient to warrant summary judgment. Rather than confront that contradiction, Prime Sports pivots to a new theory of the case, alleging ████████████████████ ██████████████████████████████. But again, Prime Sports cannot use its brief to raise unpled allegations—particularly with information that Prime Sports would have known when it filed the Counterclaims in 2020. In any event, Prime Sports' allegations would be futile, as its new fraud theory is merely another effort to recover under the illegal contract: The supposed "fraud" is that ████████████████████

---

[7] Notably, Prime Sports does not even seek to seal references to Williamson owning his own shoe company, suggesting that there is nothing secret about such an idea. Response at 20.

███████████████████████████████████████ The claim fails on that basis alone. *See*

*Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 346 (4th Cir. 1998).

Prime Sports' new theory also fails on its own terms. To establish a claim for

fraudulent omission, Prime Sports would need to establish that Williamson had a duty to

disclose, and "[i]n an arms-length transaction…there generally does not exist" such a

duty. *Pearson v. Gardere Wynne Sewell LLP*, 814 F. Supp. 2d 592, 605 (M.D.N.C.

2011); *see Rahamankhan Tobacco Enterprises Pvt. Ltd. v. Evans MacTavish Agricraft,*

*Inc.*, 989 F. Supp. 2d 471, 477 (E.D.N.C. 2013) ("a party to a commercial transaction has

no duty to tell the other party that it is negotiating with a third party"); *Eli Rsch., Inc. v.*

*United Commc'ns Grp., LLC*, 312 F. Supp. 2d 748, 760 (M.D.N.C. 2004) ("contractor has

no duty to disclose his employment discussions with a competitor").

> 3. <u>The Remaining Claims Fail Because Prime Sports Provides Neither</u>
> <u>Argument Nor Evidence To Support Them</u>

Prime Sports' unfair and deceptive trade practices claim is derivative of the fraud

and misappropriation counterclaims, and accordingly fails for the same reasons. *See*

*Amerigas Propane, L.P. v. Coffey*, 2015 WL 6093207, at *14 (N.C. Super. Oct. 15, 2015)

(dismissing derivative UDTPA claim after dismissal of predicate trade secret claim);

*Silverdeer, LLC v. Berton*, 2013 WL 1792524, at *10 (N.C. Super. Apr. 24, 2013) (same

after dismissal of predicate fraud claim).

Finally, Prime Sports has no response to Williamson's Motion with respect to its

counterclaims for conversion, conspiracy, and various remedies. Not one of Prime

Sports' cited cases suggest conversion can lie with respect to intangible property, *cf., Eley*

– 12 –

*v. Mid/East Acceptance Corp. of N.C., Inc.*, 171 N.C. App 368 (2005) (conversion based on the taking of a truck with a bed full of watermelons), or that a conspiracy claim can survive without an underlying claim or based on mere "suspicion," *see, e.g.*, *Dalton v. Camp*, 138 N.C. App. 201, 213 (2000), *rev'd on other grounds,* 353 N.C. 647 (2001), or that a party can obtain a remedy when their underlying claims all fail. Summary judgment is, therefore, proper on these claims.

### C. Prime Sports Improperly Relies on Inadmissible Evidence

Finally, Prime Sports' Response suffers from a fundamental flaw. Much of the Response and affidavits—Ford's Second Affidavit, ECF 141-2 ("Ford Affidavit"), Luchey's Affidavit, ECF 141-46 ("Luchey Affidavit"), and ███ Affidavit, ECF 141-49, ("███ Affidavit")—consist of legal conclusions, statements made without personal knowledge, or hearsay.[8] Pursuant to Local Rule 7.6, Williamson requests this Court strike those portions of each document. *See Garey v. James S. Farrin, P.C.*, 514 F. Supp. 3d 784, 790–91 (M.D.N.C. 2021) (J. Biggs).

**<u>Penalty of perjury</u>**. The ███ Affidavit is unsworn and not signed under penalty of perjury as 28 U.S.C. § 1746 requires. That alone is sufficient to strike the affidavit. *LeMay v. U.S.*, 2010 WL 3522333, at *2 (W.D.N.C. Sept. 7, 2010).

---

[8] Prime Sports' affidavits are a thinly veiled attempt to circumvent the applicable word limits. Prime Sports converted much of the stricken "Local Rule 56.1 Statement" into the Second Ford Affidavit, despite much of this information not coming from Ford's personal knowledge. *See, e.g.*, Ford Aff. ¶¶ 54, 59, 72. Prime Sports also purports to incorporate into the Response all facts contained in the Second Ford Affidavit, Luchey, and ███ Affidavits (as well as the facts in the Counterclaims). Response at 2, 5.

– 13 –

**Assertions which lacks personal knowledge**. Fed. R. Civ. P. 56(c)(4) requires that affidavits "be made on personal knowledge." Likewise, Fed. R. Evid. 602 permits a witness to "testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Yet the Ford, Luchey, and ████ Affidavits are rife with statements they "could not have actually perceived or observed." *Hill v. Southeastern Freight Lines, Inc.*, 877 F.Supp.2d 375, 381 (M.D.N.C. July 2, 2012); *see Owle v. Solomon*, 2017 WL 2262419, at *3 (W.D.N.C. May 23, 2017); *Adefila v. Davita, Inc.*, 2015 WL 268983, at *6 (M.D.N.C. Jan. 20, 2015). For example:

- Statements based on what Ford has "now learned" or "come to now learn" from a review of documents and deposition testimony. *See, e.g.*, Ford Aff. ¶¶ 52-60, 65-68, 70, 72, 83-84, 88, 91, 92, 94, 96, 108, 123, 126, 127.

- Statements made "on information and belief" or describing events "unbeknownst to Your Affirmant." Ford Aff. ¶¶ 37, 43, 52, 65, 85, 98, 106, 109, 116, 118; Luchey Affidavit ¶ 3.

- Assertions that Williamson shared the Marketing Materials with CAA, despite Ford ████████████████████████. Ford Aff. ¶¶ 43, 74, 102.[9]

- Speculation regarding the thoughts and motivations of Williamson and his parents. Ford Aff. ¶¶ 17-19, 39, 53; Luchey Aff. ¶ 20.

---

[9] *See* ECF 104-34 at 10.

– 14 –

- Assertion by ██████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████ Aff. ¶ 13.

**Assertions based on hearsay**.  Affidavits may not be based on inadmissible hearsay. *Maisha v. Univ. of N. Carolina*, 2015 WL 224939, at *3 (M.D.N.C. Jan. 15, 2015), *aff'd,* 641 F. App'x 246 (4th Cir. 2016). The following assertions should be stricken:

- Ford's assertion in Ford Aff. ¶ 46 that Prime Sports "██████████████████ ██████████████."

- Ford's assertion in Ford Aff. ¶ 72 that "██████████████████████████ ████████."

- Luchey's assertion in Luchey Aff. ¶ 7 that Ford contacted ████ regarding Williamson, and Luchey's explanation of those conversations.

**Conclusory assertions and legal conclusions**.  Fed. R. Civ. P. 56(c) does not credit legal conclusions or purely conclusory statements in affidavits. *See*, *Cable v. FedEx Freight, Inc.*, 2014 WL 6810816, at *10 (M.D.N.C. Dec. 2, 2014); *Evans*, 80 F.3d at 962. But that is all Prime Sports musters:

- References to the Marketing Materials as "trade secrets." Ford Aff. ¶¶ 7-14, 19, 23, 27-29, 32-33, 41-43, 45, 47, 78, 85-86, 95, 97-98, 100-102, 105-106, 135, 137, 140, 146; Luchey Aff. ¶¶ 4, 6-8, 10-11, 19-21, 23-25; ████ Aff. ¶ 12.

– 15 –

- Luchey's conclusory assertion (that is also beyond his personal knowledge) that



        Luchey Aff. ¶¶ 21, 23.

      Williamson respectfully requests that all portions of the Ford, Luchey, and ▮▮▮▮▮ Affidavits identified above be stricken, along with any references in the Response.

## III.     CONCLUSION

      For the foregoing reasons, Williamson's motion for summary judgment should be granted.

<em>[Signatures Follow]</em>

Dated: March 14, 2022

/s/ John R. Wester

John R. Wester
N.C. Bar No. 4660
jwester@robinsonbradshaw.com

Robert E. Harrington
N.C. Bar No. 26967
rharrington@robinsonbradshaw.com

Fitz E. Barringer
N.C. Bar No. 42679
fbarringer@robinsonbradshaw.com

**Robinson, Bradshaw & Hinson, P.A.**
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone:    (704) 377-2536
Facsimile:    (704) 378-4000

Jeffrey S. Klein*
jklein@cgr-law.com

CLARICK GUERON REISBAUM LLC
220 Fifth Avenue, 14th Floor
New York, New York 10001
Telephone:    (646) 398-5071

Zachary D. Tripp*
zack.tripp@weil.com

WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, D.C. 20036
Telephone:    (202) 682-7220

Lauren E. Richards*
lauren.richards@weil.com

Zachary Schreiber*
zach.schreiber@weil.com

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:    (212) 310-8591

Edward Soto*
edward.soto@weil.com

Pravin R. Patel*
pravin.patel@weil.com

WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone:    (305) 577-3177

\* Local Rule 83.1(d) Special Appearance

*Attorneys for Plaintiff*

## CERTIFICATION OF WORD COUNT

I hereby certify that this brief complies with Local Rule 7.3(d) and the Court's

January 31, 2022 Order (ECF 101) and that this brief does not exceed 4,000 words.


/s/ John R. Wester
John R. Wester