IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ZION WILLIAMSON,                    )
                                    )
                Plaintiff,          )
                                    )
        v.                          )          1:19CV593
                                    )
PRIME SPORTS MARKETING, LLC and     )
GINA FORD,                          )
                                    )
                Defendants.         )
                                    )

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Defendants, a sports marketing company and its President and CEO, entered into an agreement to represent professional basketball player Zion Williamson while he was a student at Duke University. (ECF No. 14-2 (the "Agreement").) Neither Defendants nor the Agreement complied with North Carolina law governing student athlete agents, however, and this Court found that the Agreement was void and unenforceable in an Order filed on January 20, 2021. (ECF No. 49 at 13–20.) Now, Defendants seek to recoup payment for the work they did on Plaintiff's behalf through an assortment of counterclaims sounding in contract and tort. (*See* ECF No. 32, Counterclaims ¶¶ 101–296.) Before the Court are cross motions seeking summary judgment on Defendants' counterclaims, (ECF Nos. 102; 119), as well as several motions to seal, (ECF Nos. 113; 139; 147; 157; 168; 171), and Defendants' Notice of Motion to Certify Judgment on the Pleadings, Order for Appeal and to Stay Proceedings,

(ECF No. 86).[1]  For the reasons stated herein, Plaintiff's motion for summary judgment will be granted, Defendants' motion for summary judgment will be denied, the motions to seal will be granted in part and denied in part, and Defendants' motion to certify judgment and to stay proceedings will be denied.

## I.    BACKGROUND

Plaintiff was a student and basketball player at Duke University during the 2018-2019 school year.  (ECF Nos. 14 ¶ 15; 32, Answer ¶ 15.)  Defendant Prime Sports Marketing, LLC, is a Florida sports marketing agency formed on April 1, 2018.  (ECF Nos. 14 ¶ 16; 32, Answer ¶ 16.)  Defendant Ford is the President and CEO of Prime Sports and appears to be its sole or primary employee.  (ECF No. 150-2 ¶¶ 1, 7.)  Although the parties dispute who initiated the relationship, Plaintiff, his parents, and Defendants began discussing a potential partnership in February 2019.  (Id. ¶ 17.)  On April 20, 2019, Plaintiff and Defendants entered into the Agreement.  (ECF No. 150-3 at 9.)  The Agreement provided that Defendants would "identify[ ] branding and endorsement opportunities" and "exclusively oversee all marketing opportunities brought before" Plaintiff.  (Id. ¶¶ 1, 1.1.)

During the April 20th meeting and repeatedly thereafter, Plaintiff and his parents requested a written marketing plan.  (ECF No. 104-34 at 63:7–64:2.)  Over the next few weeks, Defendants relayed offers and other information about potential endorsement partners to Plaintiff or his parents in one-page spreadsheets called "Partnership Summaries."  (ECF Nos. 104-24; 104-30; 104-31.)  Plaintiff and his parents continued to request a written marketing

---

[1] The Court finds that Defendants' Notice of Motion for Summary Judgment, (ECF No. 115), is moot in that it has been superseded by their Notice of Motion for Summary Judgment, (ECF No. 119).  Similarly, Defendants' motions to file their statement of facts, memorandum law, and certain exhibits under seal, (ECF Nos. 117; 120; 122), are mooted by this Court's Order striking those documents (ECF No. 133), and are further superseded by Defendants' Amended Motion for Leave to File Documents Under Seal, (ECF No. 147). Accordingly, the following motions will be denied as moot: ECF Numbers 115; 117; 120; 122.

2

plan beyond these Partnership Summaries to establish that, in Ford's words, she was building a "global brand and not just . . . endorsement deals." (ECF No. 104-34 at 63:7–64:2.) On May 23, 2019, Ford met with Plaintiff's stepfather and provided him with a document entitled "Brand Management Strategy." (ECF No. 104-27.)

Also, in April and May 2019, Plaintiff and his parents were contacted by representatives of Creative Artists Agency, LLC ("CAA"), a competing agency. (ECF Nos. 32, Counterclaims ¶ 73; 33 ¶ 73.) On May 24, 2019, Plaintiff's parents emailed Ford to cease speaking to third-parties on his behalf. (ECF No. 104-1.) Plaintiff emailed Ford from his mother's email account on May 31, 2019, to terminate the Agreement. (ECF No. 104-2.) He signed a representation agreement with CAA the same day. (ECF No. 104-12.)

Plaintiff initiated this action on June 13, 2019. (ECF No. 1.) As amended, his Complaint alleged (1) the Agreement is unenforceable under North Carolina's Uniform Athlete Agent Act ("UAAA"), N.C. Gen. Stat. § 78C-85, *et seq.*, (2) Defendants violated North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, *et seq.*; and (3) Defendants fraudulently induced him to sign the Agreement. (ECF No. 14 ¶¶ 54–77.) After this Court denied Defendants' motion to dismiss, (*see* ECF No. 31), Defendants filed their Answer with Affirmative Defenses and Counterclaims against Plaintiff ("Answer"), (ECF No. 32). Defendants' counterclaims include breach of contract (Count I), fraud (Count II), civil conspiracy (Count III), unjust enrichment (Count IV), misappropriation of trade secrets in violation of North Carolina's Trade Secrets Protection Act ("TSPA"), N.C. Gen. Stat. § 66-152, *et. seq.* (Count V), conversion (Count VI), breach of implied duty of good faith and fair dealing, (Count VII), and violation of the UDTPA (Count X); and they additionally

3

seek declaratory relief (Count VIII), injunctive relief (Count IX), and punitive damages (Count XI). (*Id.*, Counterclaims ¶¶ 101–296.)

Plaintiff moved for partial judgment on the pleadings on his declaratory judgment claim on May 20, 2020. (ECF No. 34.) On January 20, 2021, this Court granted Plaintiff's motion. (ECF No. 49.) This Court concluded that the Agreement was void as a matter of law because Plaintiff was a "Student Athlete" under the UAAA and neither Defendants nor the Agreement complied with the UAAA's requirements for student athletic agents and agency agreements. (*Id.* at 13–20.) Defendants then filed motions to vacate or amend the Court's January 20, 2021, Order, and for leave to amend their Answer to specifically allege that Plaintiff violated NCAA rules and was therefore not a "student athlete" under the UAAA. (ECF Nos. 51; 53; 65; 69.) The Court denied these motions on September 15, 2021. (ECF No. 83.)

## II. SUMMARY JUDGMENT

Plaintiff argues that he is entitled to summary judgment on all of Defendants' counterclaims. (ECF No. 112 at 7.) Defendants argue that they are entitled to summary judgment on counterclaims Counts II–XI. (ECF No. 151 at 9.)

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (internal citations and quotations omitted). "[I]n deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant" and to "draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). A court "cannot weigh the evidence or make

4

credibility determinations," *Jacobs*, 780 F.3d at 569 (citations omitted), and thus must "usually" adopt "the [nonmovant's] version of the facts," even if it seems unlikely that the moving party would prevail at trial, *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see also Celotex*, 477 U.S. at 324.

### A. Breach of Contract, Unjust Enrichment, Breach of Implied Duty of Good Faith and Fair Dealing, and Declaratory Judgment (Counts I, IV, VII, & VIII)

Defendants first allege that Plaintiff breached the Agreement and the implied duty of good faith and fair dealing inherent in the Agreement, and they seek a declaratory judgment that the Agreement is "valid and enforceable." (*See* ECF No. 32, Counterclaims ¶¶ 101–139, 187–203, 241–62.) Since the Agreement is void under the UAAA, (*see* ECF No. 49 at 20), these claims fail as a matter of law, *see Williamson v. Miller*, 58 S.E.2d 743, 747 (N.C. 1950)

5

("Breach of an invalid contract, if that paradox could exist, gives rise to no cause of action."); *McDonald v. Bank of N.Y. Mellon Tr. Co.*, 816 S.E.2d 861, 864–65 (N.C. Ct. App. 2018) ("A defendant cannot breach a covenant of good faith and fair dealing when a claimant fails to establish the defendant breached the underlying contract.").

Likewise, Defendants claim of unjust enrichment alleges that Plaintiff received "financial and/or economic benefits" from Defendants pursuant to the Agreement and for which they have not been compensated. (ECF No. 32, Counterclaims ¶ 189.) North Carolina law is clear, however, that "if there can be no recovery on an express contract because of its repugnance to public policy, there can be no recovery on *quantum meruit*." *Thompson v. Thompson,* 328 S.E.2d 288, 290 (N.C. 1985). Contracts in violation of the UAAA are void as against public policy. N.C. Gen. Stat. §§ 78C-88(d), 78C-94(d). Defendants are not entitled to recover payment for the work they did, or recoup benefits they provided to Plaintiff pursuant to the Agreement under a theory of unjust enrichment.

Defendants argue that their breach of contract claim "is not pending before this Court" because the parties agreed not to pursue discovery on this claim "unless and until the Court (or any appellate court) reverses" this Court's January 10, 2021, Order. (ECF No. 142 at 14 (citing ECF No. 59 at 2).) But the mere fact that discovery has not been completed on this claim does not deprive the Court of jurisdiction. Although generally "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986), the party complaining of a lack of discovery must file an affidavit pursuant to Rule 56(f) of the Federal Rules of Civil Procedure affirming "that it could not properly oppose a motion for summary judgment without a chance to conduct discovery" before a court will

6

deny summary judgment on these grounds, *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). Here, not only did Defendants fail to file a Rule 56(f) affidavit, it appears that additional discovery on this claim would be futile as it arises from a contract that is void as a matter of law. Moreover, Defendants have moved for summary judgment on their breach of the implied covenant of good faith and fair dealing claim, (*see* ECF No. 151 at 9), despite that this claim is likewise subject to the same agreement to delay discovery, (ECF No. 59 at 2). Defendants offer no reason why this latter claim is properly before the Court, but their breach of contract claim is not.

Thus, Plaintiff's motion will be granted, and Defendants' motion will be denied, as to Counts I, IV, VII, and VIII of Defendants' countersuit.

### B.      Fraud (Count II)

To prove a claim of fraudulent misrepresentation or fraudulent concealment, the claimant must show that the party accused is responsible for "(1) a false representation or concealment of a material fact which is (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) results in damage to the injured party." *Willen v. Hewson*, 622 S.E.2d 187, 190–91 (N.C. Ct. App. 2005). Allegations of fraud must be pled "with particularity" as to "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999); *see* Fed. R. Civ. P. 9(b).

Defendants allege in their Answer that Plaintiff lied to Defendant Ford in order to obtain her written marketing plan for Plaintiff. (ECF No. 32, Counterclaims ¶¶ 145, 151–53.) Specifically, they allege that Plaintiff and his parents told Defendant Ford that they wanted a

7

written marketing plan to "establish and/or facilitate a direct working relationship" between Defendants and Plaintiff's NBA Agent, when they actually intended to give the plan to CAA. (*Id.* ¶¶ 145, 151–53.) This alleged false statement was not borne out by Defendant Ford's own testimony, however. Ford testified that Plaintiff requested a written marketing plan to check her work and establish that she was building a "global brand and not just . . . endorsement deals." (ECF No. 104-34 at 63:22–64:2.) Plaintiff and his parents requested a written plan before meeting CAA and repeatedly asked for one throughout their relationship with Defendants. (*Id.* at 63:7-21.) Consequently, Defendants appear to have abandoned their initial allegation in their summary judgment briefing. (*See* ECF Nos. 142 at 17; 151 at 19.)

Instead, Defendants argue in their briefing that Plaintiff falsely omitted his discussions with CAA and his plan to end his relationship with Defendants, inducing Defendants to provide him with the Plan and other benefits. (ECF Nos. 142 at 18; 172 at 8.) Defendants are not permitted to pivot at the summary judgment stage to a new legal theory that is based on allegations that are not included in their pleadings. *Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 946 (4th Cir. 2013) (concluding that "the district court did not err in refusing to consider the new argument as an impermissible attempt to constructively amend the complaint"). This is particularly true for allegations of fraud, which must be pled "with particularity" in order to give the other party "sufficient information to formulate a defense by putting [him] on notice of the conduct complained of." *Harrison*, 176 F.3d at 784. This alone is sufficient reason to deny Defendants' motion for summary judgment as to this claim.

Moreover, Defendants' alternative theory of fraud also fails on the merits. Silence may constitute fraud only "[w]here there is a duty to speak." *Setzer v. Old Republic Life Ins. Co.*, 126 S.E.2d 135, 137 (N.C. 1962); *Comput. Decisions, Inc. v. Rouse Off. Mgmt. of N.C., Inc.*, 477 S.E.2d

8

262, 265 (N.C. Ct. App. 1996). Such a duty "generally does not exist" in an arms-length transaction unless one party "took steps to conceal material information" that he knew the other was unable to obtain. *Pearson v. Gardere Wynne Sewell LLP*, 814 F. Supp. 2d 592, 605 (M.D.N.C. 2011) (citing *Godfrey v. Res–Care, Inc.*, 598 S.E.2d 396, 402 (N.C. Ct. App. 2004)). Thus, "a party to a commercial transaction has no duty to tell the other party that it is negotiating with a third party." *Rahamankhan Tobacco Enters. Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.*, 989 F. Supp. 2d 471, 477 (E.D.N.C. 2013) (citing *Comput. Decisions*, 477 S.E.2d at 265). And breach of a contract, even an intentional breach, does not support a tort action for fraud. *Strum v. Exxon Co.*, 15 F.3d 327, 331 (4th Cir. 1994) (citing *Hoyle v. Bagby*, 117 S.E.2d 760, 762 (N.C. 1961)).

Here, Defendants cite no evidence that supports that Plaintiff actively concealed material information. At most, Defendants' evidence supports that Plaintiff formed a relationship with CAA and decided to terminate his Agreement with Defendants but failed to disclose those facts. (*See* ECF No. 151 at 20–22.) A typical enforceable contract would not create a duty to disclose these facts, and the unenforceable Agreement in this case certainly did not create such a duty. It would be contradictory to hold that the Agreement is void as against North Carolina public policy but nevertheless creates a duty to disclose. Allowing such a claim would create a backdoor for athletics agents to avoid the requirements of the UAAA and effectively enforce unenforceable contracts through tort law.

Therefore, Plaintiff's motion will be granted, and Defendants' motion will be denied, on Defendants' fraud claim.

## C.    Misappropriation of Trade Secrets (Count V)

Defendants next allege that Plaintiff misappropriated their trade secrets.  (ECF Nos. 32, Counterclaims ¶¶ 204–221; 151 at 9–13, 27–29.)

Owners of trade secrets have a statutory right of action in North Carolina for misappropriation.   N.C. Gen. Stat. § 66-153.   To make out a prima facie case of misappropriation of a trade secret, the trade secret's owner must introduce "substantial evidence" that another (1) "[k]nows or should have known of the trade secret," and (2) has "acquired, disclosed, or used" the trade secret—or had a specific opportunity to acquire it— "without the express or implied consent or authority of the owner." § 66-155.  Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to rebut a presumption that the trade secrets were misappropriated.  *Id.*; *GE Betz, Inc. v. Conrad*, 752 S.E.2d 634, 649 (N.C. Ct. App. 2013).

 "The threshold question in any misappropriation of trade secrets case is whether the information obtained constitutes a trade secret."  *Combs & Assocs., Inc. v. Kennedy*, 555 S.E.2d 634, 639 (N.C. Ct. App. 2001).  A "trade secret" is defined as

> [B]usiness or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
>
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

§ 66-152(3).  North Carolina courts "have fashioned six factors which are to be considered when determining whether information is a trade secret," to include:

10

(1) the extent to which the information is known outside the business; (2) the extent to which it is known to employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of information to business and its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could properly be acquired or duplicated by others.

*Combs*, 555 S.E.2d at 640.

Whether a trade secret exists is generally a question of fact for the jury, and the claimant bears the burden to show that a trade secret exists. *See Static Control Components, Inc. v. Darkprint Imaging, Inc.*, 240 F. Supp. 2d 465, 483 (M.D.N.C. 2002). Claimants must "identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Krawiec v. Manly*, 811 S.E.2d 542, 547–48 (N.C. 2018). "[G]eneral allegations in sweeping and conclusory statements" are insufficient to support a claim of misappropriation of trade secrets. *Id.* at 548.

Here, Defendants' allegations of trade secrets in their Answer are general and sweeping. Defendants broadly allege that their "strategic, comprehensive and extensive marketing plan for Plaintiff" constitutes a trade secret, including "the numerous multi-million-dollar strategic branding and marketing endorsements, contracts and or opportunities that Defendants had obtained for Plaintiff." (ECF No. 32, Counterclaims ¶ 205). This allegation appears to reach all of the work Defendants did for Plaintiff pursuant to the Agreement and does not specify what *information*, if any, Defendants consider proprietary. As with Defendants' fraud claim, this lack of specificity is reason enough to deny Defendants' motion for summary judgment on this claim.

Defendants attempt to narrow the scope of their trade secret allegations in their summary judgment briefing, although these arguments are also not sufficiently specific or

clear. Defendants argue that two concepts and several "partnership alignment/structures" with third parties are trade secrets, including various endorsement partnerships and one deal that procured a $100,000,000 investment into Plaintiff's shoe company. (ECF Nos. 142 at 26–27; 151 at 27–29.) Again, however, while information *about* endorsement deals or contained in such deals may constitute trade secrets, the relationships, or agreements themselves are not "information." To the extent that Defendants seek compensation for coordinating endorsement deals or procuring investments in Plaintiff's shoe company, Defendants merely repackage their breach of contract and unjust enrichment claims. It is possible that Defendants used some proprietary "method, technique, or process" to obtain offers from endorsement partners or structure endorsement deals, but they do not cite to any specific evidence in the record that would support such an inference.[2]

Finally, the information that Defendants do explicitly identify in their summary judgment briefs as trade secrets do not qualify under the statutory definition.

First, Defendants contend that the concept "the First Zion Williamson" is their trade secret. (ECF No. 151 at 28.) Ford testifies that during the April 20, 2019, meeting, she discussed with Plaintiff and his parents that he "should be branded/marketed independently, distinctly and separate from being referenced as the next Lebron James and should not be called or marketed as 'the next Lebron.'" (ECF No. 150-2 ¶ 42.) Instead, she recommended that he be branded "not as the 'next' anyone, but rather to step out of the shadows of any

---

[2] Defendants support their arguments with blanket citations to entire exhibits, often multiple exhibits, constituting hundreds of pages of evidence, without pin citations or parenthetical explanations. (*See generally* ECF Nos. 142 at 9–13, 26–32; 151 at 10–16, 27–31.) It is not this Court's job to sift through the record to find evidence of Defendants' claims. Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to *particular parts* of materials in the record." (emphasis added)); U.S. District Judge Loretta Copeland Biggs, *Policies and Procedures: General Matters, Civil Cases, and Criminal Cases* 10, https://www.ncmd.uscourts.gov/sites/ncmd/files/JudPref_LCB.pdf ("Statements in support of material facts . . . must include specific and not general references to the parts of the record that support each of the statements. . . . <u>Pinpoint citations are required.</u>").

other basketball player, actively playing or retired, and to be the 'First Zion Williamson.'" (*Id.*) Publicly available materials, however, show that Plaintiff employed this exact concept before April 20, 2019. He stated in interviews in 2017 and 2018 that he is not trying to be the "Next LeBron"[3] and is "just trying to be the first Zion."[4] Before that, Lebron James' marketing agent stated publicly in 2005 that "[o]ur focus is to make sure [James is] the first LeBron James and not the second Michael Jordan."[5] Michael Jordan, in turn, was compared to Julius Erving as "The Next Dr. J."[6] Defendants have offered no evidence to refute that the concept "The First Zion" is both generally known and readily ascertainable, and therefore derives no value from being kept secret. Thus, Defendants have failed to establish a genuine issue of material fact, and this concept is not a trade secret as a matter of law.

Second, Defendants argue that the formula "1+1=3" is their trade secret. (ECF No. 151 at 28.) They do not explain the concept in their briefing, but Ford testifies that "1+1=3" means:

> that every single branding/sponsorship/endorsement/business opportunity should yield [Plaintiff] triple the value for domestic, international, and global long-term branding to make him the 'First Zion Williamson', to make him a global brand, to step out from any other player's shadow and to make and keep him as a global brand even after retirement from playing basketball.

---

[3] Chris Johnson, *Zion Williamson v. LeBron James: Why the Comparisons Need to Stop*, Sports Illustrated (Aug. 14, 2017), https://www.si.com/.amp/nba/2017/08/14/zion-williamson-lebron-james-nba-draft-cavaliers-heat-highlights.

[4] Meredith Cash, *Zion Williamson weighs in on the NBA 'Greatest of All Time' debate*, Business Insider (Dec. 26, 2018, 9:13 A.M.), https://www.businessinsider.com/zion-williamson-michael-jordan-greatest-of-all-time-debate-2018-12.

[5] Brian Schmitz, *The First LeBron, Not Next M.J.*, Orlando Sentinel (Feb. 20, 2005, 12:00 A.M.), https://www.orlandosentinel.com/news/os-xpm-2005-02-20-0502200304-story.html.

[6] Jane Gross, *Jordan Makes People Wonder: Is He the New Dr. J?*, The New York Times (Oct. 21, 1984); *see* Aaditya Krishnamurthy, *Michael Jordan Was Dubbed 'The Next Dr. J' in Magazine Cover As a Rookie*, Fadeaway World (Nov. 24, 2021), https://fadeawayworld.net/nba-media/michael-jordan-was-dubbed-the-next-dr-j-in-magazine-cover-as-a-rookie.

(ECF No. 150-2 ¶ 42.)  It appears, therefore, that the concept "1+1=3" simply represents the age-old adage that "the whole is greater than the sum of its parts."[7]  The more modern buzzword is "synergy."  Jake Wayne, *Definition of Synergy in Marketing*, Chron. (Sept. 6, 2011) ("Synergy in marketing is when two marketing initiatives create a response greater than the sum of the combined response the two would have elicited alone."), *cited by* (ECF No. 166 at 36 n.8).  Numerous sources, from U.S. Supreme Court opinions[8] and legal dictionaries[9] to business magazines[10] and online publications[11], openly discuss the very concept that Defendants now attempt to claim as their trade secret.  Plaintiff even cites to news articles that employ Defendants' own equation.  *See* Wayne, *supra*, ("When synergy happens, one plus one no longer equals two.  It can equal three, four, five or more.").  As with "The First Zion," Defendants offer no evidence to rebut that synergy in marketing is both generally known and readily ascertainable, and therefore derives no value from being kept secret.  Thus, Defendants have failed to establish a genuine issue of material fact, and this concept is not a trade secret as a matter of law.

---

[7] The oft repeated adage paraphrases Aristotle, who argued that where "the whole is something besides the parts, there is a cause."  Aristotle, *Metaphysics*, *in The Basic Works of Aristotle* 689, 818 (Richard McKeon ed., W. D. Ross trans., Random House 1941).

[8] *See, e.g.*, *Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp.*, 340 U.S. 147, 152 (1950) ("[O]nly when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable.").

[9] *Synergism*, *Black's Law Dictionary* (11th ed. 2019) ("A combination of known elements or functions that create a result greater than the sum of the individual elements or functions.").

[10] *See, e.g.*, Clint Oram, *Sales and Marketing Synergy: It's Time to Unleash the Power of Now*, Forbes (June 30, 2021, 7:20 A.M.), https://www.forbes.com/sites/forbestechcouncil/2021/06/30/sales-and-marketing-synergy-its-time-to-unleash-the-power-of-now/?sh=189b29155b75 ("Collaboration has always been a key element of an effective sales and marketing effort. . . . When this happens, you get that synergistic 'smarketing' effect that every company wants.").

[11] Wayne, *supra*.

Third, Defendants argue that information they compiled about potential endorsement partners constitute trade secrets. (ECF No. 151 at 27–28.) This information was presented to Plaintiff or his parents in two forms: a Brand Management Strategy document that listed potential partners and individual Partnership Summaries for specific companies. None of these documents contain trade secrets, however. The Brand Management Strategy merely lists thirty-nine companies or brands sorted into categories such as "Footwear & Apparel," "Technology," and "Luxury." (ECF No. 104-27 at 8.) By Ford's own admission, many of the companies listed—including Nike, Gatorade, McDonalds, and Beats headphones—are famous for using athletes in advertising. (*See, e.g.*, ECF No. 104-34 at 191:14-19 (conceding that "lots of other NBA players endorse Beats"), 193:14-15 ("Gatorade is a company . . . most athletes are going to get").) The Brand Management Strategy does not appear to contain any information that could not be readily ascertained by watching the commercials during any televised NBA game.

The Partnership Summaries are single page breakdowns of possible "partnership opportunity[ies]" with individual companies. (ECF Nos. 104-24; 104-30; 104-31.) Each includes a one sentence company description and analysis of its alignment with Plaintiff's brand. (*Id.*) Some include details of initial offers of advertising partnerships from those companies, while others just list "TBD" where initial offer information should be. (*Compare* ECF Nos. 104-30 *with* 104-24 *and* 104-31.) These initial offers are not trade secrets. *RLM Commc'ns, Inc. v. Tuschen*, 66 F. Supp. 3d 681, 700 (E.D.N.C. 2014) (finding that "a nebulous, potential, business opportunity, not yet realized, that is being offered by a third-party" is not a trade secret), *aff'd*, 831 F.3d 190 (4th Cir. 2016). Undisputed evidence shows that each company independently brought their offers to CAA, demonstrating that each was readily

15

ascertained through independent development. (*See* ECF Nos. 105 ¶¶ 11, 20–21, 30–31, 38, 45–46, 51–52; 109 ¶ 6; 110 ¶¶ 5, 7–8.) Defendants argue that their trade secrets include their "partnership alignment/structuring of the partnership" with Gatorade. (ECF No. 151 at 28.) However, Ford admitted that she never even received an offer from Gatorade for Plaintiff, let alone structured some partnership. (ECF No. 104-34 at 199:6–201:3.)

Defendants fail to direct the Court to any specific portions of the record to refute that their purported trade secrets are widely known outside the business and could properly be acquired or duplicated by others, nor do they establish that they took measures to guard the secrecy of the information or expended effort or money developing the information. And while the information may have had some value to Defendants and their competitors, that factor is not sufficient on its own to create a trade secret. Thus, Defendants have failed to meet their burden, and no reasonable jury could conclude that Plaintiff misappropriated Defendants' trade secrets.

### D.    Conversion (VI)

Defendants' Conversion claim is a restatement of their misappropriation and fraud claims. (ECF No. 32, Counterclaims ¶¶ 223–40.) Defendants allege that Plaintiff deceived them into giving him their work product, for which they have not been compensated. (*Id.*) This allegation, however, "commingles tangible and intangible property." *See TSC Rsch., LLC v. Bayer Chemicals Corp.*, 552 F. Supp. 2d 534, 542 (M.D.N.C. 2008). Intangible property, "such as business opportunities and expectancy interests," cannot be the subject of a conversion claim. *Norman v. Nash Johnson & Sons' Farms, Inc.*, 537 S.E.2d 248, 264 (N.C. Ct. App. 2000). To the extent Defendants' intangible property was reduced to paper, there is no evidence that Plaintiff deprived Defendants of access to their work product. "The essence of conversion is

16

not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner." *TSC Rsch.*, 552 F. Supp. 2d at 542 (quoting *Lake Mary Ltd. Partnership v. Johnston*, 551 S.E.2d 546, 552 (N.C. Ct. App. 2001)); *see Eley v. Mid/East Acceptance Corp. of N.C., Inc.*, 614 S.E.2d 555, 559 (N.C. Ct. App. 2005) ("Conversion is defined as: (1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) *to the exclusion of the rights of the true owner*." (emphasis added)). Since there is no evidence that Plaintiff assumed ownership over Defendants' tangible personal property to the exclusion of Defendants' ownership rights, this claim fails as a matter of law.

### E.     Unfair and Deceptive Trade Practices (Count X)

Defendants' UDTPA claim is a restatement of their fraud and breach of contract claims. (ECF No. 32, Counterclaims ¶¶ 277–90.) Defendants argue that fraud and misappropriation of trade secrets are violations of the UDTPA per se, and "[b]ased upon [Plaintiff's] fraud and his misappropriation of [Defendants'] trade secrets," Plaintiff is liable under the UDTPA as well. (ECF No. 151 at 32–34.) But Plaintiff did not commit fraud or misappropriation of trade secrets. *See* Sections II.B–C, *infra*. Defendants do not offer an alternative theory for their UDTPA claim or any specific evidence in the record to support such a claim, offering instead a single string citation to thirty-seven exhibits in their entirety without pin citations or explanatory parentheticals. (ECF No. 151 at 32.) Thus, Defendants have failed to create a genuine issue of material fact, and their claim fails as a matter of law.

### F.     Civil Conspiracy (Count III)

Civil conspiracy is a dependent claim that can be maintained only in conjunction with an "underlying claim for unlawful conduct." *Sellers v. Morton*, 661 S.E.2d 915, 922 (N.C. Ct. App. 2008); *Precision Components, Inc. v. C.W. Bearing USA, Inc.*, 630 F. Supp. 2d 635, 645 (W.D.N.C. 2008) ("There is no independent cause of action [in North Carolina] for civil

17

conspiracy."). Defendants have not alleged any unlawful conduct beyond what is discussed above. (*See* ECF Nos. 32, Counterclaims ¶¶ 171–86.) Again, they have offered no evidence of unlawful conduct, offering instead a single string cite to all forty-nine of their exhibits in their entirety. (ECF No. 151 at 34.) Since Defendants' underlying tort claims fail as a matter of law, their derivative civil conspiracy claim must fail as well. *See Gray v. Laws*, 915 F. Supp. 762, 764 (E.D.N.C. 1994) (dismissing a civil conspiracy claim where "all other claims had been dismissed and no unlawful acts remain on which to base [the] claim") (citing *Privette v. Univ. N.C. at Chapel Hill*, 385 S.E.2d 185, 193 (N.C. Ct. App. 1989).

### G. Injunctive relief and punitive damages (Counts IX & XI)

Finally, since each of Defendants' underlying claims fail as a matter of law, they are not entitled to injunctive relief or punitive damages. *Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enterprises, Inc.*, 505 F. Supp. 3d 570, 593 (M.D.N.C. 2020) ("[T]here is technically no separate cause of action for punitive damages."); *Kearney v. Blue Cross & Blue Shield of N.C.*, 233 F. Supp. 3d 496, 508 (M.D.N.C. 2017) ("[A] request for injunctive relief is not a cause of action but rather a type of remedy.").

In conclusion, Defendants have failed to demonstrate a genuine issue of material fact on any of their counterclaims. Accordingly, Plaintiff's motion for summary judgment will be granted and Defendants' motion for summary judgment will be denied.

## III.   MOTIONS TO SEAL

Next, the parties have filed motions to seal. (ECF Nos. 113; 139; 147; 157; 168; 171). Plaintiff seeks to seal exhibits attached to his summary judgment briefing regarding endorsement contracts he signed with non-parties, including the deals themselves, communications regarding their negotiation, and internal discussions regarding strategies for pursuing them. (ECF No. 114 at 3.) Plaintiff also offers to seal evidence marked confidential

18

by Defendants but "has no objection to any of these documents being filed publicly." (*Id.* at 3–4, 11.) Defendants join in Plaintiff's motions. (ECF Nos. 163 at 1; 175 at 2.)

Defendants seek to seal exhibits or portions thereof marked "confidential" pursuant to this Court's Joint Stipulation of Confidentiality and Protective Order, (ECF No. 78). (ECF Nos. 139; 147.) Plaintiff opposes Defendants' motions in part, arguing that "only a limited, narrow group of documents require sealing or substantive redaction." (ECF No. 160 at 2.) Defendants reply that Plaintiff's proposed redactions "improperly disclose and expose the very trade secrets that are the critical issues/matters before this Court that are contained in" Defendants' Brand Management Strategy and Partnership Summaries. (ECF No. 162 at 3–4.)

The public has a right, derived from both common law and the First Amendment, "of public access to documents or materials filed in a district court." *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004). When the subjects of a motion to seal are documents attached to a summary judgment motion in a civil case, "the more rigorous First Amendment standard" governs the court's analysis. *Id.* at 576 (quoting *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). Under this standard, "a district court may restrict access 'only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest.'" *Id.* at 575 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)). "Public access serves to promote the trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness." *Doe v. Pub. Citizen*, 749 F.3d 246, 266 (4th Cir. 2014). "Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like a fiat and requires rigorous justification." *Id.* Thus, before granting a motion to seal, a court must "(1) provide

19

public notice of the sealing request and a reasonable opportunity for the public to voice objections to the motion; (2) consider less drastic alternatives to closure; and (3) . . . state its reasons—with specific findings—supporting closure and its rejections of less drastic alternatives." *Id.* at 272.

"The reasons for granting a protective order to facilitate pre-trial discovery may or may not be sufficient to justify proscribing the First Amendment right of access to judicial documents." *Rushford*, 846 F.2d at 254. Discovery, "which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court." *Washington Post*, 386 F.3d at 576 (quoting *Rushford*, 846 F.2d at 252). Thus, the party seeking to seal documents bears the burden to show that such relief does not violate the First Amendment even if the documents were subject to a pretrial discovery protective order. *Id.* at 575.

Here, Plaintiff has adequately shown that information related to his endorsement deals with non-parties may be redacted. This information all relates to endorsement deals Plaintiff entered into through CAA after the conclusion of his relationship with Defendants and has no relevance to Defendants' claims. Plaintiff originally filed this evidence to support his affirmative defense against Defendants' trade secret claims, arguing that if Defendants' information about potential endorsement partners constituted trade secrets, Plaintiff and CAA independently obtained the same information and did not improperly use or disclose Defendants' secrets. (*See* ECF No. 112 at 32–34.) Since this Court finds that Defendants' endorsement partner information is not a trade secret, it need not reach Plaintiff's affirmative defense, and evidence related to that defense is irrelevant. Courts generally recognize a compelling governmental interest in protecting the privacy of non-parties, *see Robinson v. Bowser*,

No. 1:12CV301, 2013 WL 3791770, at *3–4 (M.D.N.C. July 19, 2013), and portions of confidential agreements not relevant to the claims at issue may generally be filed under seal, *see Sky Angel U.S., LLC v. Discovery Commc'ns*, LLC, Civil Action No. DKC 13-0031, 2013 WL 3465352, at *11 (D. Md. July 9, 2013). Plaintiff's motions have been publicly docketed since on or before April 7, 2022, and neither Defendant nor any member of the public has opposed his motions. (ECF No. 168.) He has limited his redactions to confidential information that is not relevant to this Court's adjudication of his motion for summary judgment. Plaintiff's motions will therefore be granted in part with respect to information related to endorsement deals with non-parties.

Defendants' motions, however, cannot be granted. First, Defendants seek to seal a wide range of information that is directly pertinent to their counterclaims. The public has a strong interest in reviewing the materials at the center of this dispute and sealing them would frustrate perceptions of judicial trustworthiness and fairness. *See Doe*, 749 F.3d at 266. Second, Defendants do not identify any compelling interest at issue in their briefing. The mere fact that these documents were subject to the Court's Protective Order does not relieve Defendants of their burden to show that their request is narrowly tailored to a compelling interest. To the extent Defendants argue that there is a compelling interest in protecting trade secrets, this Court finds that the materials Defendants seek to seal do not constitute trade secrets. Third, Defendants do not explain in their motions what the sealed or redacted documents contain. Thus, without access to the sealed documents themselves, members of the public had no notice of what information would be sealed and were not given reasonable opportunity to object. Finally, Defendants have failed to persuade the Court that their wide-reaching requests are narrowly tailored.

Thus, Defendants' motions will be denied. Plaintiff's motions are likewise denied in part with respect to those documents which Plaintiff seeks to seal only because they were marked as confidential by Defendants. (*See* ECF No. 114 at 3–4, 11.) The parties will be ordered to file unsealed versions of documents cited and relied upon in their briefs and by this Court in this Memorandum Opinion. The parties will be permitted to redact from these documents information not relied upon in their briefs or by this Court in this Memorandum Opinion.

## IV.    STAY AND CERTIFICATE OF APPEALABILITY

Finally, Defendants move the Court to certify its January 20, 2021, Order for immediate Appeal pursuant to Rule 54(b) of the Federal Rules of Civil Procedure and stay these proceedings pending the disposition of such Appeal. (ECF No. 86.)

When an action presents more than one claim for relief, Rule 54(b) allows a court to enter final judgment as to some, but not all, claims "only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). "The chief purpose of a Rule 54(b) certification is to prevent piecemeal appeals." *Braswell Shipyards, Inc. v. Beazer E., Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993). Thus, "Rule 54(b) certification is recognized as the exception rather than the norm" and "must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties." *Id.* (quoting *Morrison–Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981) (Kennedy, J.)). The party seeking Rule 54(b) certification bears the burden "to demonstrate that the case warrants certification." *Id.*

To enter a final judgment under Rule 54(b), a court must determine that (1) the judgment is final, and (2) there is no just reason for the delay in the entry of judgment. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–8 (1980). A judgment is "final" if it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id.* at 7. Whether there is "just reason for delay" is a "case-specific" inquiry. *Braswell Shipyards*, 2 F.3d at 1335. The Fourth Circuit has identified five factors that courts should consider, if applicable, to include:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Id.* at 1335–36. "[T]he fact the parties on appeal remain contestants below militates against the use of Rule 54(b)." *Id.* at 1336–37 ("It will be a rare case where Rule 54(b) can appropriately be applied when the contestants on appeal remain, simultaneously, contestants below." (quoting *Spiegel v. Trustees of Tufts Coll.*, 843 F.2d 38, 44 (1st Cir. 1988)).

Here, the Court's January 20, 2021, Order is a final judgment in that it is an ultimate disposition of Plaintiff's declaratory judgment claim. (*See* ECF No. 49 at 20.) However, there is no just reason for delay. The contestants on appeal are the same as the contestants below, and Defendants have failed to show that this is the "rare case" where certification is appropriate. Granting the motion would likely cause a piecemeal appeal of the January 20, 2021, Order, this Order, and any future adjudication of Plaintiff's remaining claims. Moreover, Plaintiff's declaratory judgment claim is intertwined with Defendants' claims, *see* Part II, *supra*, and Plaintiff's remaining claims, (*See* ECF No. 14 ¶¶ 64 ("Defendants' violation of the UAAA

constitutes a *per se* violation of the NC UDTPA."), 77 (seeking damages and "a judicial declaration that the Agreement is unenforceable against Mr. Williamson as a matter of law because it was obtained through fraudulent inducement").) Although an interlocutory appeal could convenience Defendants by allowing them to avoid trying Plaintiff's remaining causes of action before seeking to overturn an unfavorable ruling, such a benefit is significantly reduced by the fact that discovery has ended, dispositive motions have been adjudicated, and the parties are preparing for trial at this stage, and at this stage only two issues remain for trial.

Defendants' motion will be denied.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 102), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Notice of Motion for Summary Judgment, (ECF No. 119), is **DENIED**. Defendant's Notice of Motion for Summary Judgment, (ECF No. 115), is **DENIED** as **MOOT**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Seal, (ECF No. 113), is **GRANTED** in part and **DENIED** in part. It is **GRANTED** with respect to Plaintiff's redaction of information related to his endorsement deals with non-parties. It is **DENIED** with respect to documents and portions thereof which Plaintiff seeks to seal merely because there were marked as confidential by Defendants subject to this Court's Protective Order. Plaintiff's remaining Motions to Seal, (ECF Nos. 157; 168), are **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motions for Leave to File Under Seal, (ECF Nos. 139; 147), and Motion for Leave to File Documents Under Seal, (ECF No.

171), are **DENIED**.  Defendants' Motions for Leave to File Documents Under Seal, (ECF Nos. 117; 120), and Amended and Corrected Motion for Leave to File Documents Under Seal, (ECF No. 122), are **DENIED** as **MOOT**.

IT IS FURTHER ORDERED that the Parties shall file unsealed versions of documents cited and relied upon in their briefs or by this Court in this Memorandum Opinion within 10 days of publication of this Order.  The parties may redact from those documents information not relied upon in their briefs or by this Court in this Memorandum Opinion.

IT IS FURTHER ORDERED that Defendants' Notice of Motion to Certify Judgment on the Pleadings, Order for Appeal and to Stay Proceedings, (ECF No. 86), is **DENIED.**

This, the 15th day of July 2022.

/s/ Loretta C. Biggs
United States District Judge