# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

### Civil Action No.: 1:19-cv-00593-LCB-JLW

| | |
|---|---|
| **ZION WILLIAMSON,** | |
| **Plaintiff,** | |
| **v.** | |
| **PRIME SPORTS MARKETING, LLC and GINA FORD,** | |
| **Defendants.** | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF ZION WILLIAMSON'S MOTION FOR ATTORNEYS' FEES

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ..........................................................................1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY .....................................3

III.  LEGAL STANDARD...................................................................................8

IV.   ARGUMENT...........................................................................................10

　　A.  Williamson Is Entitled to Fees Because None of Prime Sports' Counterclaims Was
　　　　Justiciable After This Court Declared the Contract Void in the January 2021 Order  10

　　　　1.  The Breach of Contract, Good Faith and Fair Dealing, and Unjust Enrichment
　　　　　　Claims Were Frivolous at That Point.......................................................... 11

　　　　2.  Prime Sports Knew the Fraud Claim Was Utterly Baseless but Persisted in
　　　　　　Litigating It ........................................................................................ 12

　　　　3.  The Conversion Claim Was Always Wholly Unfounded........................................ 14

　　　　4.  Prime Sports' Trade Secrets Claim Was Similarly Baseless and Was Brought in
　　　　　　Bad Faith............................................................................................ 14

　　　　5.  The Unfair and Deceptive Trade Practices Claim Was Unfounded, Frivolous, and
　　　　　　Malicious.............................................................................................. 16

　　　　6.  Prime Sports' Remaining Claims Had No Basis Because the Underlying Claims
　　　　　　Were Frivolous...................................................................................... 17

　　B.  Williamson's Requested Fees Are Reasonable.................................................. 18

　　　　1.  The Number of Hours Expended Is Reasonable...................................................... 19

　　　　2.  The Hourly Rate at Which Williamson Seeks To Recover Is Reasonable ............. 21

V.    CONCLUSION.........................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A.H. Robins Co., Inc.*,
86 F.3d 364 (4th Cir. 1996) ........................................................................ 17

*Binotti v. Duke Univ.*,
2021 WL 5366877 (M.D.N.C. Aug. 30, 2021) ............................................ 20

*Brooks v. Giesey*,
432 S.E.2d 339 (1993) ............................................................................... 12

*Burton Constr. Cleanup & Landscaping, Inc. v. Outlawed Diesel Perf. LLC*,
261 N.C. App. 317 (2018) .......................................................................... 11

*Design Res., Inc. v. Leather Indus. of Am.*,
2016 WL 5477611 (M.D.N.C. Sept. 29, 2016) ..................................... 8, 17

*Doe v. Chao*,
435 F.3d 492 (4th Cir. 2006) ................................................................ 17, 19

*Estate of Wilson v. Parrish*,
2018 WL 2267260 (N.C. Super. Jan. 30, 2018) ........................................... 9

*Fed. Point Yacht Club Ass'n, Inc. v. Moore*,
781 S.E.2d 351 (N.C. App. 2015) ................................................................ 8

*Ford v. Cardinal Innovations Healthcare Sols.*,
2022 WL 558376 (M.D.N.C. Jan. 21, 2022) ............................................. 20

*Fox v. Vice*,
563 U.S. 826 (2011) ................................................................................... 20

*Furniture Distribs., Inc. v. Software Support-PMW, Inc.*,
2014 WL 421913 (W.D.N.C. Feb. 4, 2014) ............................................... 14

*Jackson v. Associated Scaffolders and Equip. Co., Inc.*,
568 S.E.2d 666 (N.C. App. 2002) .............................................................. 10

*James W. Wilkins, Jr. v. Lester Jones*,
2006 WL 4130751 (N.C. Super. Mar. 16, 2006) ....................................... 11

Case 1:19-cv-00593-LCB-JLW   Document 196   Filed 09/14/22   Page 3 of 30

*Laschkewitsch v. Am. Nat'l Life Ins. Co.*,
   2017 U.S. Dist. LEXIS 185321 (E.D.N.C. July 27, 2017) ................................ 9, 12, 14

*Laschkewitsch v. Legal & Gen. Am. Inc.*,
   2017 WL 4976442 (E.D.N.C. Nov. 1, 2017) ............................................................. 15

*McAfee v. Bozcar*,
   738 F.3d 81 (4th Cir. 2013) ....................................................................................... 17

*McLennan v. Josey*,
   785 S.E.2d 144 (N.C. App. 2016) ................................................................................ 8

*Michael Borovsky Goldsmith LLC v. Jewelers Mut. Ins. Co.*,
   359 F. Supp. 3d 306 (E.D.N.C. 2019) ........................................................................ 10

*Norman v. Nash Johnson & Sons' Farms, Inc.*,
   537 S.E.2d 248 (N.C. Ct. App. 2000) ................................................................... 12, 17

*RLM Commc'ns, Inc. v. Tuschen*,
   2015 WL 1268283 (E.D.N.C. Mar. 19, 2015) ............................................................. 8

*RLM Commc'ns, Inc. v. Tuschen*,
   66 F. Supp. 3d 681 (E.D.N.C. 2014), *aff'd*, 831 F.3d 190 (4th Cir. 2016)................. 14

*Silicon Knights, Inc. v. Epic Games, Inc.*,
   917 F. Supp. 2d 503 (E.D.N.C. 2012) *aff'd* 551 F. App'x 646 (4th Cir.
   2014) ............................................................................................................................. 9

*Sunamerica Fin. Corp. v. Bonham*,
   328 N.C. 254 (1991) ............................................................................................... 8, 14

*Thompson v. Thompson*,
   328 S.E.2d 288 (N.C. 1985) ...................................................................................... 10

*W&W Partners, Inc. v. Ferrell Land Co., LLC*,
   2019 WL 8108276 (N.C. Super. Dec. 6, 2019) .......................................................... 15

*Woodcock v. Cumberland Cnty. Hosp. Sys., Inc.*,
   2021 WL 7179458 (N.C. Super. June 17, 2021) ........................................................ 10

## Statutes

N.C. Gen. Stat. § 78C-88 et seq ................................................................................ *passim*

N.C. Gen. Stat. § 6-21.5 .............................................................................................. *passim*

N.C. Gen. Stat. § 66-154 ............................................................................................. 2, 13

N.C. Gen. Stat. § 75-16.1 ........................................................................................ 2, 8, 15

# I.  PRELIMINARY STATEMENT

On July 18, 2022, this Court granted Plaintiff Zion Williamson's motion for summary judgment dismissing all eleven of Defendants Prime Sports Marketing, LLC's and Gina Ford's (collectively, "Prime Sports") counterclaims. Williamson now respectfully seeks a portion of the attorneys' fees that he incurred defending against them after this Court invalidated the underlying contract. At that point, the remaining claims lacked any basis and should have been dropped, but Prime Sports persisted in litigating them and thus pointlessly inflated Williamson's costs.

The core dispute in this case centered on whether the marketing agreement between Prime Sports and Williamson (the "Agreement") was void because of Prime Sports' violations of the North Carolina Uniform Athlete Agents Act (the "UAAA"). In an order dated January 20, 2021, the Court declared the Agreement void as a matter of law. ECF 49 at 2 (the "January 2021 Order"). The January 2021 Order foreclosed Prime Sports' attempt to recover money they allegedly would have earned under that illegal contract and should have ended this litigation.

Prime Sports, however, continued litigating for an additional eighteen months, asserting eleven counterclaims—valued, they threatened, at more than $100 million— despite clear notice that the claims were frivolous. On February 2, 2021, Williamson's counsel, Jeffrey S. Klein, sent Prime Sports' counsel a letter outlining in detail why each of Prime Sports' counterclaims lacked legal merit and presented no justiciable issue (the "Klein Letter"). Prime Sports ignored the admonition and instead engaged in a wasteful

effort to resuscitate their contract claim, muddying the docket with four repetitive motions, all of which essentially asked this Court to reconsider the January 2021 Order. And Prime Sports simultaneously sought to use its frivolous tort and statutory claims as alternative paths to recover earnings under the contract this Court had already declared void for violating public policy. The Court denied each of Prime Sports' attempts, culminating in this Court's July 18, 2022 Order granting summary judgment in favor of Williamson as to all of Prime Sports' counterclaims.

Thus, Williamson pointlessly incurred significant legal fees defending against Prime Sports' unfounded counterclaims and repetitive, procedurally improper motion practice. For these reasons, Williamson respectfully seeks recovery of a portion of the attorneys' fees that he incurred from the day after the Klein Letter was sent (February 3, 2021) through summary judgment briefing. Williamson moves under three separate statutes. He is entitled to recovery of his attorneys' fees because there was a "complete absence of a justiciable issue of either law or fact" with respect to each of Prime Sports' counterclaims. *See* N.C. Gen. Stat. § 6-21.5. He is further entitled to recovery of those fees as the prevailing party with respect to Prime Sports' trade secrets claim that was brought in bad faith, *see* N.C. Gen. Stat. § 66-154(d), and with respect to Prime Sports' frivolous and malicious unfair trade practices claims, *see* N.C. Gen. Stat. § 75-16.1. Accordingly, the Court should grant Williamson's motion and enter a fee award of $1,491,162.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. *Williamson Seeks To Enforce His Rights Under the UAAA*

After meeting Gina Ford while he was playing basketball as a student-athlete at Duke University, Williamson signed the Agreement on April 20, 2019. (*See* ECF 14-2 at 8; ECF 49 at 19.) Ford was not a registered athlete-agent in North Carolina as required by the UAAA, and the Agreement did not contain statutorily required warnings. ECF 49 at 17, 19. After Williamson terminated the Agreement, he filed this Action seeking a declaration that the Agreement was void.

### B. *Prime Sports Responds with Baseless Counterclaims*

On September 12, 2019, Prime Sports moved to dismiss, principally arguing that there was no diversity jurisdiction because neither party was a citizen of the forum state. ECF 19 at 9-15. On April 24, 2020, this Court held that Prime Sports' "novel theory of diversity jurisdiction is not the law[,]" and rejected the remainder of their motion. ECF 31 at 4, 9. Prime Sports then filed a 132-page Answer and Counterclaims, asserting eleven causes of action and seeking damages of more than $100 million. ECF 32. Most of the counterclaims sought damages purportedly owed under the Agreement, and the remainder related to Prime Sports' alleged trade secrets – a hard copy Marketing Plan and several "Partnership Summaries." *Id.* ¶¶ 145, 151–53.

### C. *The Court Declares the Agreement Void*

On May 20, 2020, Williamson filed a motion for partial judgment on the pleadings seeking a declaration that the Agreement was void based on Prime Sports' admissions

– 3 –

that the parties met while Williamson was playing college basketball at Duke, that Ford was not a registered athlete agent in North Carolina, and that the Agreement did not contain the required notice provision. ECF 34.

After that motion was fully submitted, Prime Sports filed a motion to supplement their opposition, seeking to insert "newly discovered evidence" from an individual alleged to have bribed Williamson while he was a student at Duke, which Prime Sports argued affected Williamson's status as a "student-athlete" under the UAAA. ECF 43 at 1-2, 6. Williamson's counsel advised Prime Sports that the so-called "evidence" was fraudulent, ECF 46 at 7-12; ECF 47-2, yet Prime Sports submitted and failed to withdraw the papers even after their "source" publicly stated the allegations were not true.[1]

On January 20, 2021, the Court granted Williamson's motion for partial judgment on the pleadings and declared the Agreement void as a matter of law. ECF 49. The Court held that the undisputed facts established that Williamson was a "student-athlete" under the UAAA because he was "engaged in" playing college basketball at Duke when he met Prime Sports. *Id.* at 17. The Court also found that Prime Sports had failed to register as an athlete agent in North Carolina, and the Agreement itself failed to comply with the UAAA. *Id.* at 17-18. The Court denied Prime Sports' motion to supplement their opposition as a "backdoor amendment to their pleadings" that, even if true, would not have any bearing on the Court's decision because none of the "evidence" contradicted the

---

[1] *See* Tyler Conway, *Slavko Duric Talks Zion Williamson Lawsuit; Says He Was Conned by Imposter*, Bleacher Report, July 14, 2020, https://bleacherreport.com/articles/2900140-slavko-duric-talks-zion-williamson-lawsuit-says-he-was-conned-by-imposter.

indisputable fact that Williamson was engaged in playing college basketball when he met Prime Sports. *Id.* at 6-7.

### D. Williamson Notifies Prime Sports that the Counterclaims Are Meritless

Following the January 2021 Order, Williamson's counsel sent the Klein Letter to Prime Sports' counsel, emphasizing that Prime Sports had "no good faith basis to maintain" counterclaims that "depend[ed] on the existence of contractual obligations or a valid and bona fide business relationship." Wester Decl. Ex. A at 2. The Klein Letter explained that the UAAA prohibits an agent from recovering anything from an athlete in connection with an illegal contract. Specifically, if an agent fails to comply with the UAAA's registration requirement, *see* N.C. Gen. Stat. Ann. § 78C-88(a), any resulting contract "is void, and the athlete agent shall return any consideration received under the contract." *Id.* § 78C-88(d). Moreover, if an agent fails to comply with the UAAA's notice requirements, *see id.* § 78C-94(c), the contract is voidable and "the student-athlete is not required to pay any consideration under the contract." *Id.* § 78C-94(d). Accordingly, Prime Sports could not recover money it allegedly would have earned under that contract because the Agreement was void under the UAAA.

The Klein Letter also outlined how Prime Sports' other counterclaims—most of which were premised on Prime Sports' purported "trade secrets"—had no basis in law or in fact. As the Klein letter explained, the purported "trade secrets" (i) did not have any independent commercial value, (ii) were generally known and readily ascertainable, (iii) were not maintained as confidential—and indeed had already been filed publicly in the

– 5 –

related Florida action by Prime Sports, (iv) could be replicated in a matter of minutes by any individual conducting a Google search, and (v) contained no substantive (much less confidential) information. Wester Decl. Ex. A at 2-3. In other words, by at least the date of the Klein Letter, February 2, 2021, Prime Sports was aware that there was a "complete absence of a justiciable issue of either law or fact." N.C. Gen. Stat. § 6-21.5. Prime Sports' counsel failed to respond to the Klein Letter.

### E. Prime Sports Knowingly Files Procedurally Improper Motions To Reconsider, Alter, and Amend, and To Seek an Interlocutory Appeal

Rather than drop their remaining counterclaims, Prime Sports doubled down and, as this Court found, "knowingly and intentionally brought a procedurally improper motion" amidst a flurry of four motions, all essentially seeking to overturn the Court's January 2021 Order. ECF 83 at 4; *see* ECF 51, 53, 65, 69. These motions also attacked Williamson's and his family's integrity with unsubstantiated and irrelevant allegations regarding topics such as how the family paid for the homes they lived in or the cars they drove. *See, e.g.*, ECF 53 at 2.

On September 15, 2021, the Court denied the motions, finding them to be nothing more than "a fishing expedition into the backgrounds of Plaintiff, his parents, and his associates" and an attempt to "relitigate matters which have been addressed by the Court[.]" ECF 83 at 18. The Court also made clear that nothing alleged in any of the four motions changed the conclusions that (a) the undisputed facts established that Williamson was a student-athlete under the UAAA and (b) the Agreement was void. *Id.*

– 6 –

On October 15, 2021, Prime Sports sought permission to pursue an interlocutory appeal of the Court's order granting Williamson's motion for judgment on the pleadings and to stay proceedings until resolution of such appeal. ECF No. 86. Prime Sports' motion for a stay came nine months after entry of the order to be appealed and more than six months into the discovery process. Once again, Williamson's legal team was required to expend time and resources to respond to this untimely and meritless motion, which the Court denied in its July 18, 2022 order also addressing the parties' summary judgment briefings.

### F.    *Prime Sports Engages in Extensive Unnecessary Discovery*

Following the January 2021 Order, the parties embarked on ten months of discovery on Prime Sports' counterclaims—virtually all of which was propounded by Prime Sports. Prime Sports took five depositions (in contrast to Williamson's one) and sought extensive written discovery from Williamson and non-parties, including Williamson's parents and his new agency, Creative Artists Agency ("CAA").

### G.    *Prime Sports Moved for Summary Judgment Without Any Evidence, and Williamson Wins Summary Judgment as to All Counterclaims*

After the conclusion of discovery, the parties cross-moved for summary judgment. First, rather than file a brief in compliance with the Middle District's Local Rules, Prime Sports filed a separate, 71-page "Local Rule 56.1 Statement of Undisputed Material Facts," which, along with its separate memorandum of law were nearly <u>triple the word limit</u> allowed by the Court. This necessitated an expedited motion to strike by Williamson, which the Court granted. ECF 138.

Prime Sports then refiled their motion, and Williamson filed his opposition. The Court granted Williamson's motion, for summary judgment in full, entering judgment as to all of Prime Sports' counterclaims. ECF 177 at 2. The Court denied Prime Sports' motion, finding that Prime Sports had no evidence to support its counterclaims.[2]

## III. LEGAL STANDARD

Williamson is entitled to recover reasonable attorneys' fees in connection with the litigation of Prime Sports' counterclaims on several independent grounds.

First, North Carolina law provides that the Court "may award a reasonable attorneys' fee to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading." N.C. Gen. Stat. § 6-21.5 (emphasis added). A justiciable issue is one that is "real and present as opposed to imagined or fanciful." *Design Res., Inc. v. Leather Indus. of Am.*, 2016 WL 5477611, *14 (M.D.N.C. Sept. 29, 2016) (granting more than $500,000 in attorneys' fees to two defendants). A complete absence of a justiciable issue is found if "such issues are absent even giving the pleadings the indulgent treatment they receive on motions for summary judgment or to dismiss." *Coley v. Cowan*, 2019 WL 2004363, at *8 (N.C. App. 2019) (quoting *McLennan v. Josey*, 785 S.E.2d 144, 148 (N.C. App. 2016)).

A party bringing a claim has "a continuing duty to review the appropriateness of persisting in litigating a claim." *Sunamerica Fin. Corp. v. Bonham*, 328 N.C. 254, 258

---

[2] The Court also denied Prime Sports' motion to seal its summary judgment filings, because "Defendants do not identify any compelling interest at issue in their [motion to seal] briefing" and "do not explain in their motions what the sealed or redacted documents contain" as required by the Court's rules. *Id.* at 21.

(1991). Therefore, a court also may award attorneys' fees if "the losing party persisted in litigating the case after a point where he should reasonably have become aware that the pleading he filed no longer contained a justiciable issue." *Design Res.*, 2016 WL 5477611, at *14. "The purpose behind N.C. Gen. Stat. § 6-21.5 is to discourage frivolous legal action." *McLennan v. Josey*, 785 S.E.2d 144, 148 (N.C. App. 2016) (citation omitted).

Second, as the prevailing party on Prime Sports' counterclaim under the North Carolina Unfair and Deceptive Trade Practices Act, Williamson is entitled to attorneys' fees if Prime Sports "knew, or should have known, the action was frivolous and malicious." N.C. Gen. Stat. § 75-16.1. "[A] claim is frivolous if a proponent can present no rational argument based upon the evidence or law in support of it." *Fed. Point Yacht Club Ass'n, Inc. v. Moore*, 781 S.E.2d 351 (N.C. App. 2015) (citing *McKinnon v. CV Indus., Inc.*, 745 S.E.2d 343, 350 (2013)). "A claim is malicious if it is wrongful and done intentionally without just cause or excuse or as a result of ill will." *Id.*

Finally, Williamson is entitled to recover his attorneys' fees as the prevailing party under Prime Sports' North Carolina Trade Secrets Protection Act counterclaim if the Court finds that claim was brought in "bad faith." Bad faith "implies a false motive or a false purpose." *RLM Commc'ns, Inc. v. Tuschen*, 2015 WL 1268283, at *4 (E.D.N.C. Mar. 19, 2015). North Carolina courts often consider bad faith under the same standard used in Rule 11 sanctions cases, considering whether the claim lacked factual sufficiency, lacked legal sufficiency, or was filed for an improper purpose. *See Silicon Knights, Inc. v.*

*Epic Games, Inc.*, 917 F. Supp. 2d 503, 520 (E.D.N.C. 2012) *aff'd* 551 F. App'x 646 (4th Cir. 2014) (granting $2 million in attorneys' fees); *Velocity Sols., Inc. v. BSG, LLC*, 2015 NCBC 51, ¶¶ 41, 47 (N.C. Super. Ct. May 26. 2015).

## IV.   ARGUMENT

Williamson is entitled to recover $1,491,162 in attorneys' fees incurred after this Court declared the contract void, and in particular from the date of the Klein Letter through the Court's order granting summary judgment as to Prime Sports' counterclaims. Such an award is reasonable considering the utter absence of legal or factual support for Prime Sports' counterclaims after that point, the time expended litigating those counterclaims to successful conclusion, and Prime Sports' wasteful litigation practice.

### A.    *Williamson Is Entitled to Fees Because None of Prime Sports' Counterclaims Was Justiciable After This Court Declared the Contract Void in the January 2021 Order*

North Carolina law authorizes the recovery of attorneys' fees against a party who improperly persists in litigating a claim "when he takes 'further affirmative action in regard to the lawsuit [after] the time' he was put on notice of the nonjusticiable nature of his claims." *Laschkewitsch v. Am. Nat'l Life Ins. Co.*, 2017 U.S. Dist. LEXIS 185321, at *7-8 (E.D.N.C. July 27, 2017). Here, as this Court explained, Prime Sports lacked any basis to "seek to recoup payment [under the contract] through an assortment of counterclaims sounding in contract and tort." ECF 177 at 1. And Prime Sports was aware of this deficiency in its counterclaims at least a year and a half before the summary judgment ruling because of the Klein Letter's warnings. That Prime Sports persisted in

– 10 –

litigating while on notice that its claims were non-justiciable entitles Williamson to attorneys' fees. *Cf. Estate of Wilson v. Parrish*, 2018 WL 2267260, at *2 (N.C. Super. Jan. 30, 2018) (granting attorneys' fees where defense counsel sent a letter explaining the absence of any justiciable issue, and plaintiff's counsel persisted with the litigation).

1. *The Breach of Contract, Good Faith and Fair Dealing, and Unjust Enrichment Claims Were Frivolous at That Point*

Prime Sports had no basis to pursue claims for breach of contract or breach of the implied covenant following the January 2021 Order voiding the contract. *See Jackson v. Associated Scaffolders and Equip. Co., Inc*., 568 S.E.2d 666, 669 (N.C. Ct. App. 2002) (where the contract had been rendered "invalid…there can be no breach of contract"); *Michael Borovsky Goldsmith LLC v. Jewelers Mut. Ins. Co*., 359 F. Supp. 3d 306, 313 (E.D.N.C. 2019) ("[W]hen a court rejects a breach of contract claim, it likewise rejects any claim for breach of the covenant of good faith and fair dealing contained in the contract."). As the Court found, "[s]ince the Agreement is void under the UAAA, these claims fail as a matter of law[.]" ECF 177 at 5 (citation omitted).

Prime Sports' continued pursuit of its unjust enrichment claim was equally futile. Contracts in violation of the UAAA are void as against public policy. N.C. Gen. Stat. §§ 78C-88(d), 78C-94(d). And North Carolina law is clear that "if there can be no recovery on an express contract because of its repugnance to public policy, there can be no recovery on quantum meruit." *Thompson v. Thompson*, 328 S.E.2d 288, 290 (N.C. 1985). Yet Prime Sports persisted in litigating this claim, and even moved for summary judgment in Prime Sports' favor.

– 11 –

Williamson incurred significant attorneys' fees litigating these claims through discovery, numerous motions to reconsider, and summary judgment. *Cf. Woodcock v. Cumberland Cnty. Hosp. Sys., Inc.*, 2021 WL 7179458, at *6-7 (N.C. Super. June 17, 2021) (awarding more than $600,000 in attorneys' fees where the plaintiff lacked standing and knew they had no basis for the claim).

### 2. *Prime Sports Knew the Fraud Claim Was Utterly Baseless but Persisted in Litigating It*

Prime Sports' continued litigation of their fraud counterclaim was even more egregious. First, Ford's deposition testimony directly contradicted the allegations of fraud set forth in Prime Sports' pleadings. *See* ECF 177 at 7-8. Prime Sports alleged that Williamson told Ford that he "wanted a written marketing plan to 'establish and/or facilitate a direct working relationship' between" Prime Sports and Creative Artists Agency ("CAA"), but Williamson "actually intended to give the plan to CAA" and cut Prime Sports out of the deal. ECF 177 at 7-8. But "[t]his alleged false statement was not borne out by Defendant Ford's own testimony," ECF 177 at 8, because Ford testified instead that Williamson requested a written marketing plan to check her work and establish that she was building a "global brand and not just…endorsement deals." ECF No. 104-34 at 63:22–64:2.

Prime Sports' unsupported fraud claim thus required the parties to engage in fruitless discovery on allegations Prime Sports knew to be false all along. That conduct alone justifies an award of attorneys' fees in Williamson's favor. *Cf. James W. Wilkins, Jr. v. Lester Jones*, 2006 WL 4130751, ¶¶ 5, 13 (N.C. Super. Mar. 16, 2006) (awarding

– 12 –

attorneys' fees where the plaintiff's deposition testimony "confirmed that he had no evidentiary basis for his claims" yet "persisted in pursuing litigation after facing insurmountable defenses…as well as a self-acknowledged total lack of any evidence, direct or circumstantial, supporting the claims"); *Burton Constr. Cleanup & Landscaping, Inc. v. Outlawed Diesel Performance, LLC*, 261 N.C. App. 317, 322 (2018) (stating that "[f]rivolous action in a lawsuit can occur at any stage of the proceeding and whenever it occurs is subject to the legislative ban" of Section 6-21.5, and affirming grant of attorneys' fees where plaintiff admitted on cross-examination that he lied in an affidavit in support of summary judgment).

Second, having developed no evidence in support of its (false) allegations, Prime Sports attempted to concoct a brand new theory at the summary judgment stage. This resulted in Williamson incurring additional legal expenses to brief two separate (and equally baseless) fraud theories in response to Prime Sports' summary judgment motion. And Prime Sports knew or should have known all along that its fraud allegations were non-justiciable even before discovery occurred, because Ford's own deposition testimony contradicted the allegations in Prime Sports' pleadings. *See Brooks v. Giesey*, 432 S.E.2d 339, 345 (1993) (affirming award of attorneys' fees where "there was never any factual or legal basis for finding defendants liable"); *Laschkewitsch v. Am. Nat'l Life Ins. Co.*, 2017 U.S. Dist. LEXIS 185321, at *7-8 (E.D.N.C. July 27, 2017) (awarding attorneys' fees in part because the party "had to know that his complaint . . . contained only

imagined or fanciful issues" yet opposed the defendants' motion for summary judgment and moved for summary judgment "on his own baseless claims").

### 3. *The Conversion Claim Was Always Wholly Unfounded*

Prime Sports also should have known that they had no justiciable claim for conversion. North Carolina law is clear that intangible property, "such as business opportunities and expectancy interests," cannot be the subject of a conversion claim. *Norman v. Nash Johnson & Sons' Farms, Inc.*, 537 S.E.2d 248, 264 (N.C. App. 2000). Prime Sports never even argued to the contrary in its summary judgment motion, effectively conceding the absence of a justiciable issue on the conversion claim. Williamson is entitled to his fees in defending against this claim.

### 4. *Prime Sports' Trade Secrets Claim Was Similarly Baseless and Was Brought in Bad Faith*

Prime Sports never had a protectable trade secret. Instead, as this Court held, Prime Sports' misappropriation claim simply "repackage[d] their breach of contract and unjust enrichment claims." ECF 177 at 12. North Carolina law provides two independent bases for Williamson's recovery of his attorneys' fees in connection with this claim.

First, under § 6-21.5, Williamson is entitled to his fees because Prime Sports persisted in litigating their claims when they knew that the purported trade secrets fell far short of the requirements under North Carolina law. As set forth in the Klein Letter, the hard copy Marketing Plan and series of "Partnership Summaries" terms sheets contained no valuable commercial information, could easily be replicated, and were not kept secret. Yet Prime Sports engaged in extensive discovery of Williamson and others to determine

– 14 –

whether Williamson had acquired and provided these marketing materials to CAA. As with their fraud claim, Prime Sports then pivoted at summary judgment to assert that their "trade secrets" included different concepts, such as the idea that Williamson should market himself as "the first Zion" rather than "the next LeBron," or that Williamson should evaluate each potential opportunity with the common synergy concept of "1+1=3" in mind. ECF 177 at 12-3. Again, these new allegations caused Williamson to incur additional legal fees to brief multiple theories at summary judgment.

Second, Prime Sports' pursuit of their trade secret claim went beyond pursuing a non-justiciable claim. The frivolous nature of their allegations, and their last-ditch attempt to manufacture new trade secrets claims at summary judgment, confirm that Prime Sports advanced the counterclaim in bad faith. N.C. Gen. Stat. § 66-154(d). Bad faith requires a finding that a pleading: "(1) lacked factual sufficiency, (2) lacked legal sufficiency, or (3) was filed for an improper purpose." *Velocity Sols.*, 2015 NCBC 51 ¶ 41. All three prongs are met here. A party seeking trade secret protection generally has the ability before discovery to show why their own materials are trade secrets. Prime Sports had no such argument—much less evidence. In fact, as this Court recognized, Prime Sports could not even articulate what their trade secrets were. ECF 177 at 11.

Prime Sports also would have known, prior to even filing the counterclaims, that their purported trade secrets were "both generally known and readily ascertainable[.]" *Id.* at 13. And that lists of companies or brands "that could . . . be readily ascertained by watching the commercials during any televised NBA game" or "initial offers" are not

trade secrets under North Carolina law. *Id.* at 15; *RLM Commc'ns, Inc. v. Tuschen*, 66 F. Supp. 3d 681, 700 (E.D.N.C. 2014) ("a nebulous, potential, business opportunity, not yet realized" is not a trade secret), *aff'd*, 831 F.3d 190 (4th Cir. 2016).

Lacking factual and legal sufficiency, the trade secrets claims were instead an effort to circumvent this Court's ruling invalidating the contract by nonetheless recovering their alleged earnings under that void contract. Even if Prime Sports "believed it had a basis for these claims at the time they were brought…certainly it discovered that they were meritless at some point"—in particular, after this Court voided the contract— and their "persistence in pressing these claims through discovery and depositions…amounts to a bad faith prosecution of the claims and justifies an award of attorney fees." *Furniture Distribs., Inc. v. Software Support-PMW, Inc.*, 2014 WL 421913, *2 (W.D.N.C. Feb. 4, 2014); *Cf. Sunamerica Fin. Corp. v. Bonham*, 328 N.C. 254, 259 (1991) (awarding attorneys' fees where the party's "frivolous litigation constitutes a reckless waste of judicial resources as well as time and money of the prevailing litigants") (quoting *Whitten v. Progressive Cas. Ins. Co.*, 410 So. 2d 501, 505 (Fla. 1982)).

### 5. *The Unfair and Deceptive Trade Practices Claim Was Unfounded, Frivolous, and Malicious*

Finally, Prime Sports' baseless claim under the North Carolina UDTPA also provides Williamson two independent bases for recovery of his attorneys' fees. The claim was virtually identical to the breach of contract and fraud claims which, as set forth above, did not present a justiciable controversy. And as this Court found, Prime Sports

– 16 –

offered no "theory for their UDTPA claim or any specific evidence in the record to support such a claim, offering instead a single string citation to thirty-seven exhibits in their entirety without pin citations or explanatory parentheticals." ECF 177 at 17. This justifies an award of fees under N.C. Gen. Stat. § 6-21.5.

In addition, the UDTPA also provides that the Court may award attorneys' fees because Prime Sports "knew, or should have known, the action was frivolous and malicious." N.C. Gen. Stat. § 75-16.1(2). The claim was frivolous because it was identical to meritless breach of contract and fraud claims, and because even after extensive discovery Prime Sports presented no argument or evidence to support its claim. Yet Prime Sports "persisted in forcing [Williamson] to defend against a claim [Prime Sports] knew was frivolous, stonewalled discovery, and filed a myriad of meritless motions"—a clear basis for attorneys' fees under Section 75-16.1. *Laschkewitsch v. Legal & Gen. Am. Inc.*, 2017 WL 4976442, *2 (E.D.N.C. Nov. 1, 2017) (awarding $150,000 in attorneys' fees as to the UDTPA claim alone); *Cf. W&W Partners, Inc. v. Ferrell Land Co., LLC*, 2019 WL 8108276, at *6 (N.C. Super. Dec. 6, 2019) (awarding attorneys' fees under both N.C. Gen. Stat. § 75-16.1 and N.C. Gen. Stat. § 6-21.5 where "Defendants repeatedly advised Plaintiffs…that the UDTPA claim was frivolous, and the dispute was simply over the parties' competing interpretations of [the contract at issue]").

6. *Prime Sports' Remaining Claims Had No Basis Because the Underlying Claims Were Frivolous*

Prime Sports also brought claims for civil conspiracy and various remedies, such as injunctive and declaratory relief and punitive damages. These claims pointlessly

– 17 –

duplicated the other claims in the case and thus added needless litigation burdens. As this Court found, a claim of civil conspiracy "is a dependent claim that can be maintained only in conjunction with an 'underlying claim for unlawful conduct.'" ECF 177 at 17. And Prime Sports "offered no evidence of unlawful conduct." *Id.* at 18. Similarly, "since each of [Prime Sports'] underlying claims fail as a matter of law," their requests for various types of remedy were equally without merit.

## B.     *Williamson's Requested Fees Are Reasonable*

Williamson seeks to recover only a portion of the attorneys' fees that he incurred after the Klein Letter. Courts in the Fourth Circuit use the "lodestar" method to assess the reasonableness of attorneys' fees. *See McAfee v. Bozcar*, 738 F.3d 81, 88 (4th Cir. 2013). Under the lodestar method, the court assesses whether the number of hours expended and the hourly rate are reasonable. *Id.* In order to determine what is reasonable, courts in the Fourth Circuit consider the twelve "*Johnson* Factors:"

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases."

*Id.* at 88 n.5; *Design Res.,* 2016 WL 5477611at *7 (*citing Johnson v. Georgia Highway Express Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)). A district court need consider only those factors that are applicable to the present fee determination and "is under no

– 18 –

obligation to go through the inquiry of those factors that do not fit." *In re A.H. Robins Co., Inc.,* 86 F.3d 364, 376 (4th Cir. 1996). The "most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006).

Here, Williamson seeks to recover only for the time spent by a core group of the attorneys who worked on this case, has applied an overall reduction of 10%, and reduced the hourly rates at which he seeks recovery. Both the number of hours and the hourly rate are reasonable in light of Prime Sports' Complaint seeking in excess of $100 million (plus punitive damages and injunctive relief), the extensive and inefficient litigation driven by Prime Sports, and Williamson's complete victory.

### 1. *The Number of Hours Expended Is Reasonable*

Williamson seeks recovery of a portion of the fees incurred between the Klein Letter and May 9, 2022, the date on which the parties' cross-motions for summary judgment were fully submitted. As set forth in the contemporaneous billing records, attached as Exhibit B to the Declaration of John Wester, Williamson's attorneys have spent a significant but reasonable number of hours successfully litigating Prime Sports' counterclaims during that time. Williamson seeks recovery of 2,996.7 hours, totaling $1,491,162, which amount represents the time spent by a primary team of four attorneys. Williamson does not seek to recover for the work of any paralegals, administrative staff such as those responsible for document processing and production, attorneys who assisted on an *ad hoc* basis, or other experienced litigators on Williamson's legal team.

Williamson also has eliminated time entries for work not directly tied to the resolution of Prime Sports' counterclaims and applied an overall reduction of 10% to account for any potential overlap between work by different attorneys. The contemporaneous billing records attached to the Wester Declaration provide evidence of the nature of the work performed and the number of hours worked, expressly identifying the attorney providing the service and, the date services were performed. *See* Wester Decl., Ex. B.

Approximately 3,000 hours amounts to an average of only 50 hours per month per primary attorney on the team during this active 15-month stretch of the case. During the time between the Klein Letter and the parties' submission of their summary judgment papers, Williamson's counsel was required to do the following:

- Oppose Prime Sports' four procedurally improper, repetitive motions to amend, vacate, and supplement, all of which effectively sought reconsideration of the January 2021 Order, ECF 51, 53, 65, and 69;

- Respond to Prime Sports' belated motion for certification of an interlocutory appeal and request to stay, ECF 86;

- Move to strike Prime Sports' initial summary judgment motion because, as the Court later concurred, it significantly exceeded the Court's word limits, ECF 129 and 130;

- Respond to Prime Sports' second motion for summary judgment, which Prime Sports filed despite having no evidence in support of their claims and despite Ford's own testimony flatly contradicting the fraud claim;

- Defend against Prime Sports' extensive and voluminous written discovery practice, including written discovery demanded from Williamson, Williamson's mother and stepfather, CAA, and three members of Williamson's team at CAA. Although Williamson sought a targeted set of materials from Defendants, Defendants' discovery was unconstrained. Defendants propounded 21 interrogatories, 54 requests for documents, and numerous third-party subpoenas, and Williamson, his parents, and agents served written responses and produced more than 2,400 documents and communications.

- Prepare for and defend five depositions taken by Prime Sports (most of which took the full seven hours), in comparison to Williamson's counsel's conduct of one deposition.

The Court granted summary judgment in Williamson's favor on all of Prime Sports' counterclaims and denied each of Prime Sports' frivolous motions. Thus, Williamson's counsel achieved a complete win for Williamson, and the most critical factor in determining the reasonableness of a fee award "is the degree of success obtained." *Doe v. Chao*, 435 F.3d at 506.

2. *The Hourly Rate at Which Williamson Seeks To Recover Is Reasonable*

The rates at which Williamson has calculated his requested attorneys' fees are reasonable and consistent with prevailing market rates for complex litigation in the Middle District of North Carolina. Wester Decl. ¶¶ 15-18. Williamson required counsel with substantive expertise in the sports industry, extensive complex litigation experience,

– 21 –

and knowledge of the UAAA. The attorneys who worked on this litigation, led by Jeffrey Klein, are skilled litigators who work at the unique intersection of sports law and employment litigation. Wester Decl. ¶¶ 8-11. And Williamson's experienced counsel secured the best possible result—a complete win for Williamson without the need for trial.

For the time period covered, Williamson is requesting reimbursement at rates of $800/hour for Mr. Klein, the lead legal counsel and strategist in the case, and $475/hour for Ms. Richards, Mr. Schreiber, and Mr. Barringer. These rates are substantially lower than the rate at which the non-North Carolina attorneys billed during the time period in question, representing an approximate 35% discount from the rates Williamson paid for his attorneys' time.[3] These rates are well within the range of rates charged by major law firms with offices in North Carolina that would be equipped for this type of case. Wester Decl. ¶¶ 15-18. And other North Carolina courts have agreed that rates in this amount are reasonable. Recently, Judge Eagles found that "an hourly market rate of between $560 and $700 for the primary partners on the case [and] between $395 and $535 for the primary associates…are in line with hourly rates approved by courts as reasonable." *Binotti v. Duke Univ.*, 2021 WL 5366877, at *4 (M.D.N.C. Aug. 30, 2021); *see also*

---

[3] As outlined in the Wester Declaration, these four attorneys are Jeffrey Klein, Lauren Richards, Zach Schreiber, and Fitz Barringer. Williamson seeks recovery of Mr. Klein's time at the hourly rate of $800, reduced from his average hourly rate of $1,115.98 during the time period in question; Ms. Richards's time at the hourly rate of $475, reduced from her average hourly rate of $825.15; Mr. Schreiber's time at the hourly rate of $475, reduced from his average hourly rate of $800.66; and Mr. Barringer's time at the hourly rate of $475, which is the lower of the two hourly rates at which Mr. Barringer's time has been billed.

*Ford v. Cardinal Innovations Healthcare Sols.*, 2022 WL 558376, at \*5 (M.D.N.C. Jan. 21, 2022) (approving a $576 average blended rate as reasonable where "rates for similarly experienced attorneys in the Middle District of North Carolina are from $400-$600 or more per hour").

Thus, both the number of hours expended and the rates at which Williamson seeks to recover are reasonable under North Carolina law. The essential goal in awarding attorneys' fees "is to do rough justice, not achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorneys' time." *Fox v. Vice*, 563 U.S. 826, 838 (2011). One of the purposes of awarding attorneys' fees is to deter frivolous litigation. An award here would serve the dual purpose of allowing Williamson to recover fees unnecessarily incurred while also making clear that a party cannot violate the UAAA and then continue to attack the student athlete's character and litigate claims that have no merit. Williamson's request for a portion of the fees that he incurred is reasonable, especially considering Prime Sports' repeated decisions to pursue meritless paths in this case and Williamson's counsel's decisive victory.

## V.    CONCLUSION

For the foregoing reasons, Williamson requests that the Court enter an order awarding attorneys' fees in the amount of $1,491,162.

Dated: September 14, 2022

/s/ John R. Wester

John R. Wester
N.C. Bar No. 4660
jwester@robinsonbradshaw.com

Robert E. Harrington
N.C. Bar No. 26967
rharrington@robinsonbradshaw.com

Fitz E. Barringer
N.C. Bar No. 42679
fbarringer@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone:    (704) 377-2536
Facsimile:     (704) 378-4000

Jeffrey S. Klein*
jklein@cgr-law.com

Nora Niedzielski-Eichner*
nniedzie@cgr-law.com

CLARICK GUERON REISBAUM LLC
220 Fifth Avenue, 14th Floor
New York, New York 10001
Telephone:    (646) 398-5071

Lauren E. Richards*
lrichards@loeb.com

LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154
Telephone:    (212) 407-4000

Zachary D. Tripp*
zack.tripp@weil.com

WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, D.C. 20036
Telephone:    (202) 682-7220

Zachary A. Schreiber*
zach.schreiber@weil.com

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:    (212) 310-8739

* Local Rule 83.1(d) Special Appearance

*Attorneys for Plaintiff/Counter-Defendant*

– 24 –

## CERTIFICATION OF WORD COUNT

I hereby certify that this brief complies with Local Rule 7.3(d) and that this brief does not exceed 6,250 words.

/s/ John R. Wester
John R. Wester