IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No.: 1:19-cv-00593-LCB-JLW

ZION WILLIAMSON,

    Plaintiff,

v.

PRIME SPORTS MARKETING, LLC and GINA FORD,

    Defendants.

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ..................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. Prime Sports Misrepresents and Misstates the Record and This Court's Orders ..................................................................................................... 2

        1. This Court's Orders Are Final, and Consideration of Attorneys' Fees Is Appropriate Now ................................................. 3

        2. This Court's Orders Demonstrate That There Was No Legal or Evidentiary Support for Prime Sports' Counterclaims ................. 6

        3. Prime Sports Misrepresents the Klein Letter, Which Identified Deficiencies That Went Far Beyond the Void Contract ........................................................................................... 6

    B. The Attorneys' Hours That Williamson Seeks To Recover Are Reasonable ................................................................................................... 7

    C. The Rates at Which Williamson Seeks To Recover Are Reasonable .......... 9

III. CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Binotti v. Duke Univ.*,
 2021 WL 5366877 (M.D.N.C. Aug. 30, 2021) ...................................................... 9, 10

*Design Res. Inc. v. Leather Indus. of Am.*,
 2016 WL 5477611 (M.D.N.C. Sept. 29, 2016) ........................................................... 8

*Fisher-Borne v. Smith*,
 2018 WL 3581705 (M.D.N.C. July 25, 2018) ............................................................ 9

*Ford v. Cardinal Innovations Healthcare Sols.*,
 2022 WL 558376 (M.D.N.C. Jan. 21, 2022) ............................................................ 10

*Green Tree Fin. Corp.-Alabama v. Randolph*,
 531 U.S. 79 (2000) ...................................................................................................... 2

*Madey v. Duke Univ.*,
 2002 WL 1284303 (M.D.N.C. Apr. 29, 2002) ........................................................... 2

*Mays v. Harris*,
 523 F.2d 1258 (4th Cir. 1975) .................................................................................... 3

*Norman v. Nash Johnson & Sons' Farms, Inc.*,
 537 S.E.2d 248 (N.C. Ct. App. 2000) ......................................................................... 5

*Sunamerica Fin. Corp. v. Bonham*,
 328 N.C. 254 (1991) ................................................................................................... 6

*Thompson v. Thompson*,
 328 S.E.2d 288 (N.C. 1985) ....................................................................................... 5

**Statutes**

N.C. Gen. Stat. § 6-21.5 .................................................................................................... 5

N.C. Gen. Stat. § 75-16.1 .................................................................................................. 5

## I. PRELIMINARY STATEMENT

Prime Sports' response to Williamson's motion seeking attorneys' fees confirms that Prime Sports persisted in wasteful litigation of claims that did not contain any justiciable issue. Prime Sports did not (and cannot) point the Court to any place in the record that demonstrates the factual or legal basis for their claims, and instead resorts to mischaracterizing this Court's orders, the Klein Letter, and their own evidence in an effort to distract from, rather than respond to, the actual record in the case.[1] Prime Sports seems to believe that its "respectful[] disagree[ment]" with this Court's rulings is sufficient to prove that there was a good faith basis for their claims, but the record is clear—Prime Sports brought and litigated claims that had no basis in law or in fact.

Advancing no response on the merits, Prime Sports then argues that the hours and rates at which Williamson seeks to recover are unreasonable. But Williamson seeks reimbursement of only a portion of the hours that were spent in defense of Prime Sports' counterclaims, at rates charged by other attorneys within the Middle District of North Carolina. And Prime Sports' arguments, which lack any evidentiary support, ignore that it was they who multiplied the scope and cost of this litigation through duplicative briefing and needless discovery. Applicable law warrants recovery here, particularly in light of the number of counterclaims asserted, the absence of any justiciable issue, the voluminous (and unnecessary) motion practice and discovery initiated by Prime Sports, and their demand of more than $100 million in damages.

---

[1] Capitalized terms not defined herein refer to terms defined in Williamson's Motion for Attorneys' Fees.

## II. ARGUMENT

Prime Sports mischaracterizes the record, applicable case law, and this Court's orders in a futile attempt to suggest that there was a basis for their claims. But there was no such basis, and Prime Sports' wasteful litigation after this Court's January 2021 Order justifies the hours Williamson's attorneys devoted to defending against those claims.

### A. *Prime Sports Misrepresents and Misstates the Record and This Court's Orders.*

#### 1. This Court's Orders Are Final, and Consideration of Attorneys' Fees Is Appropriate Now.

Prime Sports contends (at 7-8) that its pending appeal means that this Court's orders are not final and, therefore, Williamson is not "the prevailing party." That is flatly incorrect. An order is final when it "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 86 (2000). Here, the Court entered final judgment on August 16, 2022. ECF 90. That Prime Sports has filed notice of its intent to appeal the Court's orders makes no difference to finality or the timeline for considering an attorneys' fees motion. In fact, as this Court has held, "prompt filing deadlines for motions relating to fees 'affords an opportunity for the court to resolve fee disputes shortly . . . [and] enables the court . . . to make its ruling on a fee request in time for any appellate review of a dispute over fees to proceed at the same time as review on the merits of the case.'" *Madey v. Duke Univ.*, 2002 WL 1284303, at *3-4 (M.D.N.C. Apr. 29, 2002) (citing Fed. R. Civ. P. 54 advisory committee's note (1993 amendments)).

Moreover, that Prime Sports "respectfully disagrees" with this Court's orders is entirely irrelevant. A District Court's orders "require[e] obedience" unless and until vacated. *Mays v. Harris*, 523 F.2d 1258, 1259-60 (4th Cir. 1975). As the Fourth Circuit has observed, " [t]o permit one who has been adjudged . . . to disregard [that ruling], however vulnerable . . . is to allow him to judge his own case. That he may not do." *Id.* This Court's orders are binding now, and there is no basis to disregard a final ruling based on a future appeal.

### 2. This Court's Orders Demonstrate That There Was No Legal or Evidentiary Support for Prime Sports' Counterclaims.

Prime Sports also repeatedly asserts that their claims were "factually and legally supported," but this conclusory statement ignores the contrary rulings of this Court. Prime Sports' opposition brief fails even to address their breach of contract, breach of the implied covenant of good faith and fair dealing, civil conspiracy, injunctive relief, and declaratory judgment counterclaims, effectively conceding that each of those five claims were baseless.

In an attempt to justify their misappropriation counterclaim—the acknowledged focus of their counterclaims—Prime Sports asserts (at 16-17) only that there was "substantial evidence" in support. But Prime Sports fails to explain what "substantial evidence" they refer to, how the claim was justiciable, and why they persisted in litigating it when they never had a protectable trade secret in the first place. On February 2, 2021—nearly a year-and-a-half before the Court's summary judgment ruling— Williamson's attorneys advised Prime Sports that the information contained in what

– 3 –

Case 1:19-cv-00593-LCB-JLW    Document 202    Filed 11/02/22    Page 6 of 15

Williamson understood to be Prime Sports' purported trade secrets "could be replicated in a matter of minutes by any individual conducting a Google search" and thus could not be "a trade secret." Wester Dec. (ECF 195), Ex. A. In the July 2022 Order, this Court reached the same conclusion with clarity, holding that the purported trade secrets were "both generally known and readily ascertainable[.]" July 2022 Order at 13. Indeed, the Court found that the lists of companies or brands Prime Sports identified "could . . . be readily ascertained by watching the commercials during any televised NBA game," and further found that "initial offers," like those on which Prime Sports relied, are not trade secrets under North Carolina law. *Id.* at 15. In other words, Prime Sports should have known, prior to even filing their counterclaims, that they had no protectable trade secret under North Carolina law: Prime Sports would have known at the time the counterclaims were filed what their purported trade secrets were, whether they had been kept secret, and whether those trade secrets derived any independent value. Prime Sports, therefore, had all of the information necessary to determine whether there was a justiciable basis to bring their claim and to pursue it through summary judgment.

Prime Sports' only conclusory defense to its Unfair and Deceptive Trade Practices Act, fraud, conversion, and unjust enrichment counterclaims is that they "presented good faith allegations and factual evidence." Opp. at 17. But this Court's July 2022 Order found the opposite. Specifically, this Court determined that Prime Sports offered no "theory for their UDTPA claim or any specific evidence in the record to support such a claim." July 2022 Order at 17. Prime Sports' concession in their response that the Unfair

– 4 –

and Deceptive Trade Practices Act claim is nothing more than a duplicative attempt at recovery under a misappropriation theory also concedes that the claim was frivolous, and justifies an award of fees under N.C. Gen. Stat. § 75-16.1.

The remaining claims fare no better. With respect to their conversion claim, the Court cited the principle that intangible property cannot be the subject of a conversion claim, *Norman v. Nash Johnson & Sons' Farms, Inc.*, 537 S.E.2d 248, 264 (N.C. Ct. App. 2000), which was a matter of established case law long before the parties briefed summary judgment. Furthermore, North Carolina law is clear that "if there can be no recovery on an express contract because of its repugnance to public policy, there can be no recovery on quantum meruit." *Thompson v. Thompson*, 328 S.E.2d 288, 290 (N.C. 1985).[2] And finally, this Court found that Prime Sports' allegations of fraud were contradicted by Gina Ford's own testimony and, therefore, lacked any supporting evidence. July 2022 Order at 7-8. Prime Sports fails to refute even one of these findings in their Opposition, effectively conceding that the evidence available to Prime Sports at or before the date of the Klein Letter, in combination with governing North Carolina law, put Prime Sports on notice that there was no basis on which they could litigate their claims.

---

[2] Prime Sports also misstates the applicable standard on an attorneys' fees award for conversion and unjust enrichment claims. Williamson seeks attorneys' fees because these claims were non-justiciable under N.C. Gen. Stat. § 6-21.5. The "frivolous and malicious" standard Prime Sports addresses (at 19-20) applies to an attorneys' fee awards under N.C. Gen. Stat. § 75-16.1.

### 3. Prime Sports Misrepresents the Klein Letter, Which Identified Deficiencies That Went Far Beyond the Void Contract

As a final attempted line of defense, Prime Sports argues (at 10) that the Klein Letter focused solely on the January 2021 Order's declaration that the contract was void and, therefore, "did not put Defendants on notice" that there was a complete absence of a justiciable issue of either law or facts relating to their remaining counterclaims. As a threshold matter, the burden was not on Williamson to put Prime Sports on notice that their claims lacked a justiciable issue. Rather, a party bringing a claim has "a continuing duty to review the appropriateness of persisting in litigating a claim." *Sunamerica Fin. Corp. v. Bonham*, 328 N.C. 254, 258 (1991).

But even so, Prime Sports also mischaracterizes the Klein Letter. In addition to emphasizing how this Court's January 2021 Order doomed Prime Sports' claims that sought recovery in connection with the contract, the Klein Letter explained that the "remaining claims largely rely on the premise that [Prime Sports'] so-called 'marketing plan' constitutes a trade secret." Wester Dec. (ECF 195), Ex. A at 2. Indeed, Prime Sports now concedes in their response brief (at 20) that "the defense of all of Defendants' remaining counterclaims is based upon the asserted defense to the single counterclaim of Plaintiff's misappropriation of Defendants' trade secrets." By that same logic, the Klein Letter spelled out clearly why all of Prime Sports' claims failed.

### B. The Attorneys' Hours That Williamson Seeks To Recover Are Reasonable

Having no arguments on the merits, Prime Sports resorts to contesting the hours and rates at which Williamson seeks to recover his attorneys' fees. Prime Sports' efforts

– 6 –

are nothing more than misdirection, because it was the wasteful conduct of Prime Sports that necessitated the expenditure of such hours. And the rates requested are in line with recent case law from this Court.

Prime Sports (at 20-21) now characterizes this case as a simple one, hinging entirely on their misappropriation counterclaim. But this belated argument is contrary to Prime Sports' own pleadings and chosen litigation tactics, which demanded robust response. Prime Sports filed eleven counterclaims, which were 132 pages long, excluding exhibits. *See* ECF 32. But Prime Sports does not explain why they brought so many counterclaims (and then sought discovery into each of those claims) if they were all duplicative of their misappropriation claim. Prime Sports also sought damages of $100 million, plus treble damages and punitive damages, as well as declaratory and injunctive relief. ECF 32 at 126-27. The end goal of the relief sought was to upend Williamson's ongoing business relationships with his agents and endorsed brands. Thus, the counterclaims as plead were extensive and came with significant financial risk for Williamson.

After the January 2021 Order, the case was over from Williamson's perspective. Everything that followed the Klein Letter was an effort by Prime Sports to litigate *their* non-justiciable counterclaims. It was Prime Sports who repeatedly questioned this Court's January 2021 Order in an attempt to save their counterclaims. *See, e.g.*, ECF Nos. 51, 53, 65, 69, 86. Prime Sports does not explain why they brought four motions that all effectively sought the same relief, including one that was "knowingly . . .

– 7 –

Case 1:19-cv-00593-LCB-JLW   Document 202   Filed 11/02/22   Page 10 of 15

procedurally improper." ECF 83 at 4. And Prime Sports does not explain why Williamson should not be entitled to the cost of vigorously defending against these tactics, which sought to vacate the principal relief that Williamson had sought (and won). Finally, all discovery was sought in connection with Prime Sports' counterclaims, as set forth in the Rule 26(f) Order negotiated by the parties and approved by the Court. *See* ECF 61. Prime Sports' attempt to parse out certain tasks, such as Williamson's attorneys' hours in connection with the motions to seal or the motion to strike Prime Sports' initial motion for summary judgment, rings hollow.[3]

Prime Sports now argues (at 8-9) that Williamson should have moved to dismiss if he believed that Prime Sports' claims lacked any justiciable issue. But the appropriate standard for determining whether attorneys' fees are justified is not whether *Williamson* could have moved to dismiss sooner but rather whether *Prime Sports* "persisted in litigating the case after a point where [Prime Sports] should reasonably have become aware that the pleading [] filed no longer contained a justiciable issue." *Design Res. Inc. v. Leather Indus. of Am.*, 2016 WL 5477611, at *14 (M.D.N.C. Sept. 29, 2016). Prime Sports, not Williamson, caused the litigation to proceed, pursued claims that had no justiciable basis, and forced the significant defense costs Williamson seeks here.

---

[3] Prime Sports also suggests that their error in filing a separate "Local Rule 56.1 Statement" should be excused because the practice is in line with that of other courts in which Prime Sports' counsel has litigated. But Prime Sports is tasked with knowing and following the rules of this Court.

### C. The Rates at Which Williamson Seeks To Recover Are Reasonable

The attorneys' fees rates sought in the Motion are reasonable and in line with local practice. As set forth in the Wester Declaration, the discounted rates sought in Williamson's motion are within the local practice for similar cases. Wester Dec. (ECF 195) at 7-9. As a threshold matter, Prime Sports presents no evidence of their own regarding what they believe to be reasonable rates. Rather, in opposing Williamson's discounted attorneys' rates, Prime Sports gestures to cases providing for recovery at lower rates. But these cases are inapposite and largely address circumstances in which the court granted the requested rate, not cases in which the court opined on the range of reasonable attorneys' fees that may be appropriate in the Middle District of North Carolina. For example, in *Fisher-Borne v. Smith*, 2018 WL 3581705, at *12-16 (M.D.N.C. July 25, 2018), the party seeking attorneys' fees (whose counsel was based in New York) selected an hourly rate that was commensurate with their local counsel's rate, as Williamson did here. That selection was unchallenged, and the court's approval of a requested rate certainly does not stand for the proposition that any higher rate would be inappropriate under different circumstances.

Many of Prime Sports' cases also are several years old and ignore the fact that attorney billable rates typically increase each year. Recent decisions cited by Williamson demonstrate that "an hourly market rate of between $560 and $700 for the primary partners on the case [and] between $395 and $535 for the primary associates…are in line with hourly rates approved by courts as reasonable." *Binotti v. Duke Univ.*, 2021 WL

– 9 –

5366877, at *4 (M.D.N.C. Aug. 30, 2021).[4] Most recently, in *Ford v. Cardinal Innovations Healthcare Sols.,* this Court approved a $576 average blended rate. 2022 WL 558376, at *5 (M.D.N.C. Jan. 21, 2022). Here, the average blended attorney fee rate sought by Williamson is $556.25, as he seeks to recover for three of his attorneys at $475/hour and for one attorney at $800/hour. Moreover, given that Williamson's attorneys with lower rates accounted for most of the time sought in this motion, the effective rate—calculated by dividing the total amount of fees sought by the number of hours worked—results in an even lower rate of $497.58. That average blended rate is therefore reasonable and in line with recent decisions from this Court.

### III. CONCLUSION

For the foregoing reasons, Williamson requests that the Court enter an order awarding attorneys' fees in the amount of $1,490,946.75.[5]

---

[4] Mr. Barringer and Mr. Klein are partner-level attorneys at their respective firms. Wester Dec. (ECF 195) at 3-4. Ms. Richards and Mr. Schreiber are associates. *Id.* at 5.

[5] Williamson's Motion for Attorneys' Fees inadvertently listed $1,491,162 as the amount of attorneys' fees sought. That number is incorrect and was based on an earlier version of Exhibit B. The number set forth here and in Exhibit B, attached to Williamson's Motion, is correct.

Dated: November 2, 2022

/s/ John R. Wester
John R. Wester
N.C. Bar No. 4660
jwester@robinsonbradshaw.com

Robert E. Harrington
N.C. Bar No. 26967
rharrington@robinsonbradshaw.com

Fitz E. Barringer
N.C. Bar No. 42679
fbarringer@robinsonbradshaw.com

ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone:   (704) 377-2536
Facsimile:   (704) 378-4000

Jeffrey S. Klein*
jklein@cgr-law.com

Nora Niedzielski-Eichner*
nniedzie@cgr-law.com

CLARICK GUERON REISBAUM LLC
220 Fifth Avenue, 14th Floor
New York, New York 10001
Telephone:   (646) 398-5071

Lauren E. Richards*
lrichards@loeb.com

LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154
Telephone:   (212) 407-4000

Zachary D. Tripp*
zack.tripp@weil.com

WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, D.C. 20036
Telephone:   (202) 682-7220

Zachary A. Schreiber*
zach.schreiber@weil.com

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:   (212) 310-8739

* Local Rule 83.1(d) Special Appearance

*Attorneys for Plaintiff/Counter-Defendant*

– 11 –

# CERTIFICATION OF WORD COUNT

I hereby certify that this brief complies with Local Rule 7.3(d) and that this brief does not exceed 3,125 words.

/s/ John R. Wester
John R. Wester

15548869