# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ZION WILLIAMSON, )
)
Plaintiff, )
)
v. ) 1:19CV593
)
PRIME SPORTS MARKETING, LLC, )
and GINA FORD, )
)
Defendants. )
)

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, Senior District Judge.

Before the Court is Plaintiff's Motion for Attorney's Fees made pursuant to (1) N.C. Gen. Stat. § 6-21.5; (2) N.C. Gen. Stat. § 66-154(d); and (3) N.C. Gen. Stat. § 75-16.1 against Defendants. (ECF No. 194 at 1.) For the reasons stated herein, Plaintiff's motion will be granted in part and denied in part.

## I.  FACTUAL BACKGROUND

Plaintiff, Zion Williamson, was a student and basketball player at Duke University during the 2018-2019 school year. (ECF Nos. 14 ¶ 15; 32, Answer ¶ 15.) As recognized by the Fourth Circuit "[w]hen he enrolled at Duke University, Zion Williamson was one of the most prominent young stars in basketball. As a freshman on the Duke men's basketball team, Williamson was named Atlantic Coast Conference (ACC) Player of the Year and led Duke to the ACC Championship. At the end of his first season, Williamson entered the NBA draft, where he was selected by the New Orleans Pelicans as the number one overall pick."

*Williamson v. Prime Sports Marketing*, 101 F.4th 302, 306 (4th Cir. 2024). Williamson's talent generated interest from agents wanting to represent him as well as fans.

Defendant Prime Sports Marketing LLC, is a Florida sports marketing agency formed on April 1, 2018. (ECF Nos. 14 ¶ 16; 32, Answer ¶ 16.) Defendant Ford is the President and CEO of Prime Sports and appears to be its sole or primary employee. (ECF No. 150-2 ¶¶ 1, 7.)

On April 20, 2019, Defendants entered into an agreement to represent Plaintiff, while he was still a freshman student at Duke, (ECF No. 150-3 at 9, (the "Agreement").) According to the terms of the Agreement, Defendants would "identify[ ] branding and endorsement opportunities" and "exclusively oversee all marketing opportunities brought before" Plaintiff. (*Id.* ¶¶ 1, 1.1.) Also, in April and May of 2019, Plaintiff was contacted by representatives of Creative Artists Agency, LLC ("CAA"), a competing agency. (ECF Nos. 32, Counterclaims ¶ 73; 33 ¶ 73.) On May 31, 2019, Plaintiff emailed Defendants to terminate the Agreement the parties had previously signed. (ECF No. 104-2.) Plaintiff then signed a representation agreement with CAA the same day. (ECF No. 104-12.)

## II.    PROCEDURAL HISTORY

Plaintiff initiated this action on June 13, 2019. (ECF No. 1.) As amended, his Complaint alleged that: (1) the Agreement is unenforceable under North Carolina's Uniform Athlete Agent Act ("UAAA"), N.C. Gen. Stat. § 78C-85, et seq.; (2) Defendants violated North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, et seq.; and (3) Defendants fraudulently induced him to sign the Agreement. (ECF No. 14 ¶¶ 54–77.) Plaintiff's Complaint sought declaratory and injunctive relief as well as monetary damages and attorney's fees. (*Id.* at 22–24.) Specifically, Plaintiff requested that the Court

2

declare that the Agreement was void and unenforceable and that Defendants be enjoined from holding themselves out as his representative, among other things. (*Id.* at 22–24.)

On September 12, 2019, Defendants filed a Motion to Dismiss Plaintiff's Complaint, and on April 24, 2020, this Court denied Defendants' motion, (*see* ECF No. 31). After their Motion to Dismiss was denied, on May 8, 2020, Defendants filed their Answer alleging an assortment of counterclaims, in contract and tort, seeking to recoup payment for the work they performed on Plaintiff's behalf. (ECF No. 32.) Defendants' counterclaims included breach of contract (Count I), fraud (Count II), civil conspiracy (Count III), unjust enrichment (Count IV), misappropriation of trade secrets in violation of North Carolina's Trade Secrets Protection Act ("TSPA"), N.C. Gen. Stat. § 66-152, et. seq. (Count V), conversion (Count VI), breach of implied duty of good faith and fair dealing, (Count VII), violation of the UDTPA (Count X); and Defendants additionally sought declaratory relief (Count VIII), injunctive relief (Count IX), and punitive damages in excess of 100 million dollars (Count XI). (*Id.* ¶¶ 101–296.)

Thereafter, on May 20, 2020, Plaintiff moved for Partial Judgment on the Pleadings on his declaratory judgment claim. (ECF No. 34.) On January 20, 2021, this Court granted Plaintiff's motion. (ECF No. 49 at 20.) This Court concluded and declared, among other things, that the Agreement was void as a matter of law because Plaintiff was a "Student Athlete" under the Uniform Athlete Agents Act ("UAAA"), and neither Defendants nor the Agreement complied with the UAAA's requirements for student athletic agents and agency agreements. (*Id.* at 13–20.)

After this Court entered Judgement for Plaintiff, Defendants then filed four related motions seeking to amend, reconsider or vacate this Court's judgment which this Court found

3

"all appear[ed] to seek the same or related relief." (ECF No. 83 at 1.) Specifically, Defendants filed: (1) a Motion to Alter or Amend the Court's Order granting Plaintiff's Motion for Partial Judgment on the Pleadings, on February 17, 2021, (ECF No. 51); (2) a Motion for Leave to Amend Answer, Affirmative Defenses and Counterclaims, on February 17, 2021, (ECF No. 53); (3) a Motion to Substitute Proposed Amended Answer, Amended Affirmative Defenses and Amended Counterclaims in Pending Motion for Leave to Amend, on May 11, 2021, (ECF No. 65); and (4) a Notice of Motion to Vacate the Courts Order Granting Partial Judgment on the Pleadings, on May 20, 2021, (ECF No. 69). On September 15, 2021, the Court denied all four motions. (ECF No. 83.)

Following the Court's Order denying all four of Defendants' motions, on October 15, 2021, Defendants filed another Motion entitled "Notice of Motion to Certify Judgment on the Pleadings, Order for Appeal, and to Stay Proceedings." (ECF No. 86.) In this motion, Defendants were seeking to certify two of this Court's Orders for an interlocutory appeal, (ECF Nos. 49; 83), and seeking to stay the proceedings pending Appeal. (*Id.* at 1.) Before this motion was addressed, the parties proceeded to discovery on Defendants counterclaims after which the parties, on February 11, 2022, each filed motions for summary judgment on the counterclaims. (ECF Nos. 102, 119.)[1]

On July 18, 2022, the Court denied Defendants' Motion to Certify Judgment on the Pleadings, Order for Appeal, and to Stay Proceedings," (ECF No. 177 at 25.) The Court on that same date ruled on the parties cross motions for summary judgment related to Defendants' counterclaims. (ECF Nos. 102; 119; 177.) Specifically, the Court granted

---

[1] A Joint Stipulation of Dismissal was filed related to Plaintiff's claims for the North Carolina Unfair and Deceptive Trade Practices Act claim and Plaintiff's claim of fraudulent inducement, (ECF No. 188).

4

Plaintiff's Motion for Summary Judgment and denied Defendants' Motion for Summary Judgment. (ECF No. 177 at 24–25.)

Following the Court's entry of Final Judgment, (ECF No. 190), on September 7, 2022, Defendants appealed this case to the Fourth Circuit Court of Appeals. (ECF No. 191.) On May 6, 2024, the Fourth Circuit affirmed this Court's Order voiding the contract and granting summary judgment in favor of Plaintiff on each of Defendants' contract and tort counterclaims. *Williamson*, 101 F.4th at 316. On September 14, 2022, Plaintiff filed the instant Motion for Attorney's Fees. (ECF No. 194.)

## III.   STATUTORY BASIS FOR ATTORNEYS' FEES

The Plaintiff is seeking attorney fees pursuant to three separate North Carolina statutes; therefore, this Court will address each statute separately to determine its applicability to this case.

### A.   N.C. Gen. Stat. § 6-21.5

The first statute Plaintiff seeks his attorney's fees under is N.C. Gen. Stat. § 6-21.5 which awards attorney fees in nonjusticiable cases. (ECF No. 196 at 7.) "Under North Carolina law, a successful litigant may not recover attorney's fees, whether as costs or as an item of damages, unless such recovery is expressly authorized by statute." *Silicon Knights, Inc. v. Epic Games, Inc.*, 917 F. Supp.2d 503, 516 (E.D.N.C. Nov. 1, 2012) (internal quotations omitted) (citation omitted), *aff'd* 551 F. App'x 646 (4th Cir. 2014) (per curium) (unpublished). The statute Plaintiff requests attorney fees under provides in relevant part:

> In any civil action, special proceeding, or estate or trust proceeding, the court, upon motion of the prevailing party, may award a reasonable attorney's fee to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading.

N.C. Gen. Stat. § 6-21.5. "Section 6-21.5 was enacted to discourage frivolous legal action." *Westchester Surplus Lines Ins. Co. v. Clancy & Theys Const. Co.*, 5:12-CV-636-BR, 2015 WL 7015725, at *1 (E.D.N.C. Nov. 12, 2015) (citations omitted) (internal quotation marks omitted). Whether to award attorney's fees under this statute rests in the trial courts discretion. *Lashchkewitsch v. Am. Nat'l Life Inc. Co.*, 5:15-CV-21-D, 2017 U.S. Dist. LEXIS 185321, at * 3 (E.D.N.C. July 27, 2017) (quoting *McLennan v. C.K. Josey, Jr.*, 785 S.E.2d 144, 148 (N.C. Ct. App. 2016)). Because Section 6-21.5 provides for an award of attorney's fees in derogation of the state's common law, the statute must be strictly construed. *Sunamerica Fin. Corp. v. Bonham*, 400 S.E.2d 435, 438, (N.C. 1991).

Awarding attorney's fees pursuant to N.C. Gen. Stat. § 6-21.5, requires that the court find (1) that the party seeking fees is a "prevailing party" and (2) "that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading." *Lashchkewitsch*, 2017 U.S. Dist. LEXIS 185321, at *3–4.

Regarding the first element, this Court finds that Plaintiff is the prevailing party on each of the claims and counterclaims prosecuted in this action as this Court found in favor of Plaintiff on his Partial Motion for Judgment on the Pleadings, and again on his Motion for Summary Judgment and against Defendant on its cross Motion for Summary Judgment on each of Defendants' affirmative defenses and counter-claims, with each of these rulings being affirmed by the Fourth Circuit. (ECF Nos. 49, 177); *Williamson*, 101 F.4th at 316; *see also Persis Nova Constr., Inc. v. Edwards*, 671 S.E.2d 23, 30 (N.C. Ct. App. 2009) ("a prevailing party . . . is a party who prevails on a claim or issue in an action, not a party who prevails in the action.") (emphasis omitted) (citation omitted).

Regarding the second element, a complete absence of a justiciable issue, "[i]n North Carolina, a justiciable issue is one that is 'real and present as opposed to imagined or fanciful'." *Credigy Receivables, Inc. v. Whittington*, 689 S.E.2d 889, 895 (N.C. Ct. App. 2010) (quoting *In re Williamson*, 373 S.E.2d 317, 325 (N.C. App. 1988)). "In order to find a complete absence of a justiciable issue it must conclusively appear that such issues are absent even giving the pleadings the indulgent treatment they receive on motions for summary judgment or motions to dismiss." *Sunamerica Fin. Corp. v. Bonham*, 400 S.E.2d 435, 437 (N.C. 1991) (citations omitted).

In analyzing this element, the trial court must determine whether: "(1) the pleadings contain a complete absence of a justiciable issue of either law or fact, . . . or (2) whether the losing party persisted in litigating the case after a point where he should reasonably have become aware that the pleading he filed no longer contained a justiciable issue." *Front Row Motorsports, Inc. v. DiSeveria*, 3:22-CV-00138-SCR, 2024 WL 3258828, at *5 (W.D.N.C June 28, 2024) (citations omitted). The presence or absence of justiciable issues is a question of law. *Id.* at *3 (quoting *Burleson*, COA23-187, 2024 WL 1163348, at *5 (N.C. Ct. App. 2024). Plaintiff argues that there is a complete absence of justiciable issue because once the Court declared the Agreement void there was an "utter absence of legal or factual support for [Defendants'] counterclaims." (ECF No. 196 at 15.) Defendants counter that their counterclaims "were separate from and independent of whether the parties' Agreement was void and whether Plaintiff was or was not a 'student athlete.'" (ECF No. 201 at 8.)

First, this Court finds that at the time Defendants filed their Answer on May 8, 2020, (ECF No. 32), asserting their counterclaims, there may have been justiciable issues of law or fact related to its counterclaims and affirmative defenses, or at the very least Defendants would

7

not have been on notice that their affirmative defenses and/or counterclaims were without merit. Moreover, the Answer was filed prior to the Court's Order declaring the Agreement between the parties void as a matter of law. *See Sunamerica*, 400 S.E.2d at 438 ("it is [] possible that a pleading which, when read alone sets forth a justiciable controversy, may, when read with a responsive pleading, no longer present a justiciable controversy."). However, in determining whether to grant attorney's fees under this statute, a "trial court may consider evidence developed *after* the pleadings have been filed." *Sunamerica*, 400 S.E.2d at 438.

Therefore, the question before the court is whether Defendants, here the losing party, persisted in litigating their case after a point where they should reasonably have become aware that the pleading filed, here the Answer, no longer contained a "justiciable issue." The Court finds that Defendants did so under the facts of this case.

Defendants should have first become aware that their claims, or at least certain of their claims, those specifically related to their breach of contract claim, no longer contained a justiciable issue once this Court ruled upon Plaintiff's motion for Judgment on the Pleadings and concluded that the Agreement between the parties was void as a matter of law. (ECF No. 49 at 20.) In its Order granting Plaintiff's motion for declaratory judgment, this Court analyzed Defendants' arguments that Plaintiff was not a student athlete. (*See id.*) As a result, this Court held that "Defendants' affirmative defenses and counter claims that Plaintiff was not a student-athlete "do not rely on material allegations of fact, rather the counterclaims are based on conclusions of law that fly in the face of their own pleadings as well as attachments to their pleadings." (*Id.* at 15.) Further, the Court found that Defendants *themselves* submitted pleadings and attachments that made repeated references to Plaintiff's engagement in collegiate athletics to such a degree that the Court concluded that Plaintiff engaging in an

8

intercollegiate sport "appears uncontested." (*Id.* at 14.) Therefore, at the very least, Defendants were put on notice that this Court found serious deficiencies in both the factual and legal bases for its claims. Nevertheless, it does not appear that Defendants reconsidered their litigation strategy or initiated a change of course despite having been placed on notice of the deficiencies in their claims.

Rather, Defendants filed four motions that sought to, among other things, alter or amend the Court's Order ruling the Agreement void, causing this Court to take a second look at Defendants' pleadings and additional arguments to support their claims. However, the Court nevertheless found that "Defendants pleaded only conclusory allegations, not supported by factual allegations specific to Plaintiff from which this Court could conclude that a genuine issue was raised." (ECF No. 83 at 9.) Additionally, the Court found that "[d]espite Defendants' many arguments, they still have not provided any relevant case law" to support their counter claims. (*Id.* at 12.)

After several months of discovery, the parties filed cross motions for summary judgment. This Court analyzed Defendants' counter claims and affirmative defenses and found that "each of Defendants' claims plead in their Answer fail as a matter of law." (ECF No. 177 at 18.) While the awarding of summary judgment alone does not provide a basis for awarding attorney's fees, it may be a factor. *See Sunamerica*, 400 S.E. 2d at 438 ("N.C. Gen. Stat. §6-21.5 provides in part that the entry of judgment pursuant to Rule 56 may be some evidence that an attorney's fee may be warranted.").

In ruling on summary judgment, this Court found that Defendants counter claims of breach of contract, unjust enrichment, breach of implied duty of good faith and fair dealing, declaratory judgment, and civil conspiracy failed as a matter of law. (*See* ECF No. 31 ¶¶ 101–

139, 187–203, 241–50, 251–62.)  The Court found that these claims failed as a matter of law because they all were dependent on the presence of a valid contract between the parties, and further that Defendants failed to provide any facts or law to support that the Agreement was valid.  (ECF No. 177 at 5–7, 17–18.)  As to their claims of conversion, and violation of unfair and deceptive trade secrets the Court found that Defendants provided no evidence to support those claims.  (*Id.* at 16, 17.)  In fact, the Court found that Defendants "do not offer . . . any specific evidence in the record to support such [claims], offering instead a single string citation to thirty-seven exhibits in their entirety without pin citations or explanatory parentheticals." (*Id.* at 17.)

Defendants counter claim of fraud, (ECF No. 32 ¶¶ 140–170), was also found by this Court to fail as a matter of law.  (ECF No. 177 at 9.)  To support this claim, Defendants argued at summary judgment that Plaintiff falsely omitted his discussions with the Creative Artists Agency and his plan to end his relationship with Defendants, inducing Defendants to provide him with their Plan and other benefits.  (ECF Nos. 142 at 18; 172 at 8.)  However, these arguments failed as a matter of law, because Plaintiff had no duty to disclose his communications with a third party.  Further, as recognized by this Court and later affirmed by the Fourth Circuit on appeal, "[t]hough parties negotiating at arm's length may have a duty to disclose some things, a party has no duty to disclose that he's negotiating with a third party in a commercial transaction." *Williamson*, 101 F.4th at 315.

Lastly, Defendants' counter claim of misappropriation of trade secrets, (ECF No. 32 ¶¶ 204–221,) failed as a matter of law because "Defendants' allegations of trade secrets in their Answer are general and sweeping."  (ECF No. 177 at 11.)  At summary judgment Defendants attempted to narrow their allegations; however, this Court found that Defendants alleged trade

10

secrets did not qualify as such under the statutory definition. (*Id.*) Additionally, the Fourth Circuit in affirming this Court's Order stated that Defendants "compilation of endorsement offers, is too nebulous to qualify for trade secret protection." *Williamson*, 101 F.4th at 315 (internal quotations omitted) (citation omitted).

Therefore, it is clear to this Court that Defendants failed in their continuing obligation to evaluate the appropriateness of persisting in litigating their claims "after a point where [they] should reasonably have become aware that the pleading [Defendants] filed no longer contained a justiciable issue." *See Laschkewitsch*, 2017 U.S. Dist. LEXIS 185321, at 7 (finding that a party opposing a motion for summary judgment and filing their own motion for summary judgment "on [their] own baseless claims" is the party persisting in litigating after the point they should reasonably have become aware that their claims no longer presented a justiciable issue).

Accordingly, the Court finds that Plaintiff may be awarded reasonable attorney's fees pursuant to N.C. Gen. Stat. § 6-21.5.

### B.    N.C. Gen. Stat. § 66-154(d)

The second statute that Plaintiff's seek attorney's fees under is, N.C. Gen. Stat. § 66-154(d) which states "[i]f a claim of misappropriation is made in bad faith or if willful and malicious misappropriation exists, the court may award reasonable attorneys' fees to the prevailing party." § 66-154(d).  "'Bad faith cannot be defined with mathematical precision,' but '[c]ertainly it implies a false motive or a false purpose.'" *RLM Commc'ns, Inc. v. Tuschen*, No. 5:14-CV-250-FL, 2015 WL 1268283, at * 4 (E.D.N.C.  Mar. 19, 2015) (quoting *Bundy v. Com. Credit Co.*, 202 S.E. 676 (N.C. 1932).

Plaintiff asserts that Defendants misappropriation of trade secrets claim was made in bad faith because it was "an effort to circumvent this Court's ruling invalidating the contract by nonetheless recovering their alleged earnings under that void contract." (ECF No. 196 at 21.) This Court declines to find that Defendants made this claim in "bad faith" without more than broad assertions by Plaintiff about Defendant's motives. Therefore, this Court concludes that attorney's fees under §66-154(d) are not warranted.

### C. N.C. Gen. Stat. § 75-16.1

Lastly, Plaintiff seeks attorney fees under N.C. Gen. Stat. §75-16.1. (ECF No. 196 at 22.) North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §75-1.1 et seq., permits a court, in its discretion, to allow a reasonable attorney's fee when a "party instituting a [§75-1.1] action knew, or should have known, the action was frivolous and malicious." N.C. Gen. Stat. § 75-16.1(2). "To prevail on a motion for attorney's fees under § 75-16.1, the moving party must (1) be the prevailing party and (2) prove that the non-moving party knew or should have known the §75-1.1 action was frivolous and malicious." *MB Realty Grp., Inc. v. Gaston Cnty Brd. Of Educ.*, No. 3:17-cv-00427-FDW-DCK, 2019 WL 2724554, at * 2 (W.D.N.C. June 28, 2019) (quoting *Lincoln v. Bueche*, 601 S.E.2d 237, 244 (N.C. Ct. App. 2004).

"A claim is malicious if it is wrongful and done intentionally without just cause or excuse or as a result of ill will." *Tuschen*, 2015 WL 1268283, at *3 (quoting *McKinnon v. CV Indus.*, 745 S.E.2d 343, 350 (N.C. Ct. App. 2016) (internal quotations omitted). Plaintiff provides this Court with no argument or evidence that Defendants' unfair and deceptive trade practices act claim was malicious. (*See* ECF Nos. 196 at 22; 202 at 7–8.) Therefore, this Court

12

declines to find that Defendants "knew or should have known that the [claim] was frivolous *and* malicious." *MB Realty Grp., Inc.*, 2019 WL 2724554, at * 2 (emphasis added).

Accordingly, attorney's fees are not warranted under this statute.

## IV. REASONABLENESS OF PLAINTIFF'S REQUESTED ATTORNEY'S FEES

This Court having determined that Plaintiff can pursue his claim for attorney's fees under N.C. Gen. Stat. § 6-21.5, the Court will now determine whether Plaintiff's requested fees are reasonable.

To calculate attorney's fees, a district court "must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). "The fee applicant bears the burden of proving the reasonableness of the hours expended and the requested hourly rates, which generally requires submission of the attorney's own affidavit and timesheets as well as 'satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which [the attorney] seeks an award.'" *Prison Legal News v. Stolle*, 129 F. Supp.3d 390, 396 (E.D. Va. 2017) (quoting *Grison v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008).

To determine what constitutes a reasonable number of hours and rate, district courts should be guided by the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the

13

professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson*, 560 F.3d at 243–44 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978) (additional citations omitted). A court then "subtract[s] fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.* Finally, the Court "awards some percentage of the remaining amount, depending on the degree of success." *Id.*

As earlier stated, Plaintiff is seeking $1,490,946.75 in attorney's fees. (ECF Nos. 194; 196 at 28.) In support of this motion, Plaintiff submitted a declaration and 146 pages of time records totaling 2,996.4 hours spent on the case generated by four of the attorneys working on this litigation. (ECF No. 195-2 at 146.) The declaration states the fees they are requesting were generated over a 15-month period from February 3, 2021, to May 4, 2022. (Id. ¶ 5.) The declaration further states that the declarant and several other attorneys at Robinson Bradshaw, CGR, and Weil, also assisted with Plaintiff's representation in this case, but Plaintiff is not seeking attorney's fees for these additional attorneys. (ECF No. 195 ¶ 12.)

In examining this request, this Court must consider only the factors that are applicable "is under no obligation to go through the inquiry of those factors that do not fit." *In re A.H. Robins Co., Inc.*, 86 F.3d 364, 376 (4th Cir. 1996). Given the size of the attorney's fees requested here, the Court will analyze the applicable factors to aid its determination of a reasonable fee in this case.

    1.    <u>Time and Labor Expended</u>

Plaintiff in his declaration states that during the relevant period, Plaintiff's attorneys responded to twelve motions filed by Defendants. The motions are as follows: Motion to Alter or Amend the Court's Order granting Plaintiff's Motion for Partial Judgment on the Pleadings, (ECF No. 51); Motion for Leave to Amend Answer, Affirmative Defenses and

14

Counterclaims, (ECF No. 53); Motion to Substitute Proposed Amended Answer, Amended Affirmative Defenses and Amended Counterclaims in Pending Motion for Leave to Amend, (ECF No. 65); Notice of Motion to Vacate the Courts Order Granting Partial Judgment on the Pleadings, (ECF No. 69); Motion for Certification of Interlocutory Appeal and Request to Stay, (ECF No. 86); Motion for Summary Judgment, (ECF No. 119); and six Motions to Seal, (ECF Nos. 113; 139; 147; 157; 168; 171).

In addition to responding to those motions, Plaintiff's attorneys also filed their own motions including: a Motion to Strike, (ECF No. 129); Motion to Expedite Consideration of Plaintiff's Motion to Strike, (ECF No. 130); and a Motion for Summary Judgment, (ECF No. 102).

Further, Plaintiff's attorney states that they expended considerable hours responding to Defendants written discovery requests (including discovery demanded from Plaintiff, Plaintiff's mother, Plaintiff's stepfather, the Creative Artists Agency, and three members of Plaintiff's team at the Creative Artists Agency), 21 interrogatories, 54 requests for documents, "numerous" third party subpoenas, and five depositions taken by Defendants. (ECF No. 196 at 26.)

First, the Court concludes that period of time for which Plaintiff seeks reimbursement of attorney fees is consistent with this Court's determination of the time period in which Defendant were, or should have been reasonably aware, that their claims were seriously deficient and lacked justiciability; specifically, that Defendants' affirmative defenses and counterclaims were not supported the facts or the law. Notwithstanding, the Court also finds that while a considerable number of motions were filed by Defendants, a number of the motions were exceedingly redundant and involved many of the same issues not requiring

15

substantial additional research or analysis. Therefore, while the docket contains numerous motions, the Court does find the amount of time and labor expended by Plaintiff's counsel appears to be excessive, even given the statements that certain work performed was not billed.

2. The novelty and difficulty of the questions raised

This Court finds that this case did not involve novel or particularly complex issues of facts or law. The central issue before the Court was whether Williamson was a student athlete under the North Carolina Uniform Athlete Agents Act. While this specific issue had not been addressed by the courts prior to the action, its resolution involved only statutory interpretation which is a fairly common issue. In addition, the state and tort law claims defendant asserts as its counterclaims or affirmative defenses likewise are neither complex or difficult nor are they novel.

3. The skill required to properly perform the legal services rendered

The Court finds that the claims outlined above do not require special skill to perform the legal services rendered.

4. Attorney's opportunity costs in pressing the instant litigation

The declaration submitted along with Plaintiff's motion reflects that cases like these are common for the attorneys who worked on the case. (*See* ECF 195 at 4 (stating that one of Plaintiff's attorneys, Jeffrey S. Klein, "has represented many prominent athletes and coaches from across the United States, as well as professional players associations in multiple sports.").) While these statements regarding Mr. Klein may be true, it does not speak to whether Mr. Klein's significant experience, expertise, and knowledge are required, necessary, or reasonable for the type of action before the Court which the Court has found to be neither complex nor novel.

16

5. <u>Customary fee for like work</u>

A fee applicant is obligated to show that the requested hourly rates are consistent with the prevailing market rate in a particular community for the type of work that is being sought. The applicant bears the burden of establishing the reasonableness of the hourly rates being requested. *Design Resources, Inc. v. Leather Industries of America*, 2016 WL 5477611, at \*9 (M.D.N.C.) The only attestation this Court has that Plaintiff's attorney's fees are reasonable is the declaration of one of the attorneys on Plaintiff's case, John Wester. Mr. Wester is a partner of 40 years at Robinson, Bradshaw, & Hinson, P.A. ("Robinson Bradshaw"). (ECF No. 195 ¶ 1.) Mr. Wester has worked on this case since the beginning; however, the hours he spent on the case are not being requested in this motion. (*Id.* ¶ 4–5.)

Plaintiff's counsel provides no affidavits of "other" local lawyers who can attest to the reasonableness of their rates. *See Design Res., Inc.*, No. 2016 WL 5477611, at \*13 (explaining that the correct manner of proving reasonable hours and rates is with affidavits of local lawyers who are familiar with the skill of the fee applicants and with the type of work in the relevant community).

In his declaration, Mr. Wester states that based on his experience and personal knowledge of the "market rates in the Charlotte and Winston-Salem communities for lawyers of comparable skill, experience, and reputation as the . . . attorneys involved in this matter, [his] opinion is that the hourly rates sought in this case are comfortably within the range of reasonable hourly rates in the Charlotte and Winston-Salem markets." (*Id.* ¶ 17.) However, this is not the question to be answered. The question is whether the requested hourly rates are consistent with the market rates in the relevant community for the *type* of work for which

17

the award is sought.  *See McAfee*, 738 F.3d at 91.  The Court will now determine whether the rates offered by Plaintiff in his motion are reasonable.

a.  The Attorneys, their Experience and Hourly Rate Requested

In his declaration, Mr. Wester gives a brief description of the background of each of the attorneys for which fees are being sought, the number of hours each of the attorneys have worked, as well as the hourly rates that are being sought in this motion.  Mr. Wester includes the following chart:

| Attorney | Hours | Hourly Rate |
|---|---|---|
| Fitz E. Barringer | 419.2 | $475 |
| Jeffrey S. Klein | 717.9 | $800 |
| Lauren E. Richards | 868.6 | $475 |
| Zachary A. Schreiber | 990.7 | $475 |

(ECF No. 195 ¶ 13.)  Fitz E. Barringer is a partner at Robinson Bradshaw and is a partner of Mr. Wester the declarant.  (*Id.* ¶ 7.)  Mr. Barringer has practiced law at Robinson Bradshaw since September of 2012 and had only recently became a partner in January of 2020 when this case was ongoing.  (*Id.*)  Mr. Barringer was "involved in virtually all aspects of this action including developing [Plaintiff's] legal strategy, pleadings, and motions; communicating with opposing counsel regarding discovery disputes; and taking the lead on procedural and local practice issues in this case." (*Id.*)

Jeffrey S. Klein, is described as "one of the nation's leading sports and employment lawyers." (*Id.* ¶ 8.)  Mr. Klein practiced at the law firm Weil, Gotshal & Manges LLP ("Weil") in New York City, at the outset of this litigation.  (*Id.* ¶ 2.)  For over 40 years Mr. Klein has

18

represented many prominent athletes and coaches.  (*Id.* ¶ 8.)  Plaintiff's attorneys do not summarize the work Mr. Klein performed.  (*See id.*)

Lauren E. Richards is an associate at Loeb & Loeb LLP in New York City.[2]  (*Id.* ¶¶ 2, 10.)  She has worked closely with Mr. Klein for the past 5 years on sports representation and contract disputes.  (*Id.* at 10.)  Ms. Richards was the lead associate on this case and worked closely with Mr. Klein, Mr. Barringer, and Mr. Wester from the outset of the litigation.  (*Id.*)  Ms. Richards was the "principal author of the initial drafts of many of [Plaintiff's] pleadings, motions, and briefs; actively participated with Mr. Klein in taking and defending each of the depositions in this case; and was instrumental in developing [Plaintiff's] legal strategy in this case."  (*Id.*)

Lastly, Zachary A. Schreiber is an associate at Weil.[3]  (*Id.* ¶ 11.)  Mr. Schreiber played a leading role in the review and production of Mr. Williamson's documents, third-party discovery, and motions practice, including the summary judgment motions.  (*Id.*)

In calculating their attorney's fees, Mr. Wester states that they excluded fees charged for his work and various other attorneys and paralegals.  (*Id.* ¶ 14.)  He also states that the figures are "reduced hourly rates."  (*Id.* ¶ 15.)  Wester states that Mr. Klein's actual hourly rate for this matter averaged $1,115.98, Mr. Barringer's averaged between $475–$500, Ms. Richards averaged $825.15, and Mr. Schreiber averaged $800.66.  (*Id.*)

b.      The Requested Rates are Not Reasonable

This Court does not find that the hourly rates offered by Plaintiff for the above attorneys are reasonable for a case such as the one before the Court.  In the Fourth Circuit, to verify prevailing market rates courts should look for evidence such as "affidavits of *other* local

---

[2] Plaintiff provides no information to this Court on how long Ms. Richards has been practicing law.  (*See id.*)
[3] Plaintiff provides no information to this Court on how long Mr. Schreiber has been practicing law.  (*See id.*)

19

lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Equifax Info. Servs.*, 560 F.3d at 245 (finding that Plaintiff submitting affidavits of her own attorney's rates, did not meet the burden required to prove the prevailing market rates of attorneys in the Eastern District of Virginia). Mr. Wester's declaration is the only attorney affidavit that Plaintiff has provided to this Court to demonstrate that the requested fees are reasonable. While the court acknowledges that Mr. Wester is a distinguished member of the legal community, because of his involvement in this case as well as the involvement of his partner and the firm, the court is unable to rely exclusively on his opinion in determining a reasonable market rate for the attorneys in this case.

Further, this Court finds that it is not reasonable for associates, though they are from New York, to request attorney's fees at the same rate as a partner. Mr. Wester's declaration did not provide enough information for this Court to "meaningfully evaluate the experience of the associates," and determine whether the rate was reasonable here in North Carolina. *In re Hatteras Fin., Inc., S'holder Litig.*, 286 F. Supp. 3d 727, 737 (M.D.N.C. Dec. 19, 2017). The Court has no information on how long the associates on the case, Ms. Richards and Mr. Schrieber, have been associates, and have little information on how long they have worked in this field for this Court to even begin to evaluate why they should be granted an hourly rate equal to the partner on the case. The court does not find that these fees are reasonable.

Lastly, Mr. Klein's hourly rate far exceeds this Court's expectation of a reasonable rate in this district, and for the type of case before the Court. While the Court does acknowledge Mr. Klein's level of expertise in sports and employment law, and while Mr. Klein's rates may be reasonable elsewhere, it is not reasonable in this community for the nature of this case.

20

"Rates charged by attorneys in other cities, [] may be considered when the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally, and the party choosing the attorney from elsewhere acted reasonable in making the choice." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994) (internal quotations omitted) (citation omitted).

As this Court has stated, this case is not complex, and North Carolina has a wealth of attorneys that would have been able to litigate a case such as this one that is based primarily on the interpretation of a North Carolina statute. Plaintiff's choice in choosing an attorney from another city does not lead this Court to find the rate requested is reasonable, especially given the lack of complexity of the issues involved in the case. Further, Plaintiff's failure to provide any affidavits from local attorneys independent of this litigation to support Mr. Klein's requested rate while offering the North Carolina partner the rate of $475 appears inconsistent. It appears that Mr. Klein was chosen not for the type of work that is required in this case, but rather for his prominence in the sports and legal community. That is not to say that Mr. Klein did not provide valuable service to his client as reflected in the positive outcome of the case. While Plaintiff has the right to choose his own attorney to represent him, this court does not deem it reasonable that all of the costs associated with Mr. Klein's representation choice should be borne by the losing party. Therefore, the Court will find that a more reasonable rate for Mr. Klein for work of this type in the Winston Charlotte market would be $525 per hour.

While Plaintiff provides no independent affidavits, Plaintiff does cite two cases that he argues demonstrate that the hourly rate requested is reasonable. (ECF No. 195 at 27–28.) However, neither of the cases are similar to the claims in the instant case, both were resolved

21

in settlement agreements, unlike in this case, and neither detail the experience of the attorneys. *See Binotti v. Duke Univ.*, 1:20-CV-470, 2021 WL 5366877, at *4 (M.D.N.C. Aug. 30, 2021); *Ford v. Cardinal Innovations Healthcare Sols.*, 1:20-cv-736, 2022 WL 558376, at * 5 (M.D.N.C Jan. 21, 2022).

In addition, as earlier stated, nor does the Court find that the rates requested for the associates working on this case to be reasonable. For each of the associates, Plaintiff is requesting an hourly rate of $475 an hour. Based on this Court's experience, a reasonable rate for associates is the range of $250-$275 an hour.

Therefore, this Court finds that the hourly rates in this case are not reasonable for North Carolina, and an hourly rate of $250-$275 for each associate and $475-$525 for each partner is more in line with a reasonable fee for this case, which is at its core, a contract dispute.

      6.      <u>Attorney's expectations at the outset of the litigation</u>

Plaintiff provided no information regarding this factor, and the Court finds that this factor is not applicable in this case.

      7.      <u>Time limitations imposed by the client or circumstances</u>

Plaintiff provided no information regarding this factor, and the Court finds that this factor is not applicable in this case.

      8.      <u>Amount in controversy and the results obtained</u>

Mr. Wester in his declaration states that "the attorney time spent on this case was reasonable and appropriate . . . in light of the substantial damages sought, which totaled in excess of $100 million, plus punitive damages and injunctive relief." (ECF No. 195 ¶ 19.) However, this Court disagrees. While it is true that Defendants requested treble damages and punitive damages in the amount of $100 million dollars each, it was clear from the early stages of this litigation that Defendants were not able to provide any basis for their claims that would

22

generate such amounts.  In fact, it was Plaintiff that argued that there was no factual or legal basis for any of Defendant counterclaims.  Moreover, Plaintiff's attorneys knew early on that Defendants' claims were meritless as they sent Defendants a letter immediately after this Court found the Agreement to be void.  (ECF No. 195 ¶ 21.)  Defendants provided no evidence at any point in this case that their claimed recovery could conceivably rise to the level of the damage requested, and therefore Plaintiff's staffing and allocating time toward this case based on Defendants' damages figure is not persuasive to this Court.

Nevertheless, the Court does find that Plaintiff's attorneys obtained a favorable result for Plaintiff.  The Supreme Court has stated that the degree of success obtained is the most important factor in determining the reasonableness of a fee.  *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).  This Court found that the contested Agreement was void and found in favor of Plaintiff on all of Defendants counterclaims.

         9.     <u>The experience, reputation, and ability of the attorney</u>

The Court addressed this factor in its analysis of the fifth factor.

       10.    <u>Undesirability of the case within the legal community in which the suit arose</u>

Plaintiff provided no evidence of this factor.  However, the Court does not find that this factor impacts its determination of a reasonable fee under the circumstances of this case.

       11.    <u>The nature and length of the professional relationship between attorney and client</u>

Mr. Wester stated in his declaration that Plaintiff retained Mr. Klein to represent him in this matter.  (ECF No. 195 ¶ 9.)  Mr. Klein then contacted Mr. Wester and they both assembled the legal team that worked on the case.  (*Id.*)  Beyond this, the Court has no information on the nature and length of Plaintiff's relationship with his attorneys.

23

12. <u>Attorney's fee hours awarded in similar cases</u>

While Plaintiff has cited a number of cases with large attorney fee awards, none of the cases appear to come close to the facts of this case.

Having now analyzed the twelve factors, the Court finds that factors 1, 2, 3 and 5 are most relevant to a determination of whether the number of hours and the hourly rates for which Plaintiff seeks attorney's fees are reasonable. In addition, the Court has reviewed the 146 pages of time records submitted to the court. The Court as a result finds that a significant number of the hours billed are not reasonable and must be reduced as duplicative entries, block billing, and the substantial amount of time billed for attorney's communications amongst each other.

First, many of Plaintiff's time entries are duplicative and certain tasks were overstaffed. District courts "should exclude from this initial fee calculation hours that were not reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citations omitted) (internal citations omitted). The entries reflect that for each of the documents prepared in this case, each of the four attorneys has billed time for its drafting or editing.

For example, in drafting Plaintiff's Responses in Opposition to Defendants' four similar motions to alter or amend, Plaintiff's attorneys billed around 235-hours collectively and each of the four attorney's billed hours toward the drafting or editing of the responses. (*See* ECF No. 195-2 at 3–11.) The issues Defendants raised in those four motions were repetitive and the Court finds that the number of hours spent is substantial due to duplicative billing and having each attorney work on each document. *See Spell v. McDaniel*, 852 F.2d 762, (4th Cir. 1988) ("[W]e have also been sensitive to the need to avoid use of multiple counsel for tasks where such use is not justified by the contributions of each attorney."))

24

Further, for work done on the cross motions for summary judgment, Plaintiff's attorneys billed in excess of 762.2 hours collectively.  (*See* ECF No. 195-2.)  Similar to the other briefs in the case, a substantial number of hours were billed for drafting on the motions for summary judgment, and each of the attorney's worked on the briefs.  The Court does not find that these hours are reasonable given that the motions were regarding Defendants counterclaims, most of which failed as a matter of law based on this Court ruling the Agreement void.

Therefore, for the reasons outlined above, this Court finds that it is necessary to reduce Plaintiff's hours to account for the duplicative nature of the time entries and the overstaffing of attorneys on tasks.  *See Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 76–77 (4th Cir. 1995) ("Properly reducing allowable hours because of over staffing of attorneys . . . falls soundly within the district court's proper discretion in determining an attorney's fee award.").  As the Court finds that a significant number of duplicative entries occur in the time entries of the two associates, the Court will reduce each of their hours by thirty percent each.  *See Doe v. Kidd*, 656 F. App'x 643, 656 (4th Cir. 2016); *Crump v. United States Dept. of Navy by and through Mabus*, 2:13cv707, 2017 WL 1158244, at * 14 (E.D.Va. Mar. 27, 2017); *Wyatt v. Owens*, 7:14-cv-492, 2018 WL 10613184, at *10 (W.D. Va. Jan 23, 2018).

Additionally, this Court finds that a reduction is necessary in this case to account for block billing.  "Inadequate documentation includes the practice of grouping, or 'lumping,' several tasks together under a single entry, without specifying the amount of time spent on each particular task."  *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006).  "Courts in this circuit have routinely held that "block billing" does not provide the court with a sufficient

25

breakdown to support an attorneys' fee request." *Wyatt v. Owens*, 7:14-cv-492, 2018 WL 10613184, at *10 (W.D. Va. 2018).

For example, on January 25, 2022, Mr. Barringer billed 4.4 hours for the time entry: "[r]espond to Mr. Schreiber's inquiry re confidential documents; reviewing Mr. Brown's deposition; confer with JR Wester re Defendants' video compilation concept; research video compilation concept; respond to Mr. Klein's inquiry re video compilation concept." (ECF No. 195-2 at 115.) On January 27, 2022, Mr. Barringer billed 6 hours for the time entry, "[r]espond to Z. Schreiber's inquiry re attorney affidavit; draft motion to increase word limits; draft proposed order re motion to increase word limits; correspond with Z. Schreiber and L. Richards re motion to increase word limits; draft correspondence to J. Klein re motion to increase word limits; review draft of Summary Judgment brief; correspond with opposing counsel re motion to extend word limits." (*Id.* at 116.)

This method of lumping together of time entries is a proper basis for reducing a fee award as it "prevent[s] an accurate determination of the reasonableness of the time expended in a case." *Guidry*, 422 F.Supp.2d at 294. While the Court is not obligated to sift through 146 pages of time entries, the Court does find that the bulk of block billing appears to occur on Mr. Barringer's time entries. (*See e.g., id.* at 16, 18, 75, 88, 118, 121, 123,125, 127.) Therefore, the Court will reduce Mr. Barringer's hours by thirty percent to account for the block billing. *See Wyatt*, 2018 WL 10613184, at *11 (collecting cases).

Lastly, the Court finds that a reduction is necessary to account for the substantial amount of time billed for the attorney's communications amongst each other. The Court notes that a substantial number of hours billed for this occur under Mr. Klein. (*See* ECF No. 195-2 at 30, 39, 42, 60, 125, 126.); *see Spell*, 852 F.2d at 768 (finding it necessary to reduce hours

26

attorney's hours by 70% to account for, among other things, duplication, overstaffing, and overkill that appeared in a fee petition where six attorneys who represented Plaintiff on appeal, billed hours the attorney's spent discussing the issues amongst themselves and extensive conferences regarding these issues).

Additionally, Mr. Klein is the only attorney that Plaintiff's counsel did not provide this Court with a summary of what he worked on in the case. Plaintiff's counsel states that Mr. Klein is "one of the nation's leading sports and employment lawyers," but the time entries reflect Mr. Klein billing close to the amount of time an associate on the case billed, and almost twice the amount of time that the other partner involved billed. (ECF No. 195 ¶¶ 8, 13.) Therefore, due to his entries reflecting substantial hours communicating with the other attorneys, and the lack of information before the Court on his role in the case, the Court does not find his hours to be reasonable and will reduce Mr. Klein's time by fifty percent.

## V. CONCLUSION

Based on the above discussion, this Court concludes that Plaintiff is entitled to attorney fees under N.C. Gen. Stat. § 6-21.5. However, because the Court concludes that Plaintiff has not established that the requested rates and hours are reasonable, the Court declines to grant Plaintiff's request of $1,490,946.75. Rather the Court concludes that reasonable rates in this case are $525 per hour for Mr. Klein, $475 an hour for Mr. Barringer and $275 an hour for Ms. Richards and Mr. Schreiber, respectively. In addition, the Court concludes that a reduction in hours are necessary as follows: Mr. Barringer's hours will be reduced by thirty percent to account for block billing; Ms. Richards and Mr. Schreiber's hours will be reduced by thirty percent to account for duplicative time entries; and, Mr. Klein's hours will be reduced

by fifty percent to account for his time entries largely reflecting communications amongst the attorneys. These reductions are reflected in the chart below:

| Attorney | Hours | Hourly Rate | Total |
|---|---|---|---|
| Fitz E. Barringer | 293.44 | $475 | $139,384.00 |
| Jeffrey S. Klein | 358.95 | $525 | $188,448.75 |
| Lauren E. Richards | 608.02 | $275 | $167,205.50 |
| Zachary A. Schreiber | 693.49 | $275 | $190,709.75 |
| | | | $685,748.00 |

Accordingly, the Court awards Plaintiff attorney's fees in the amount of $685,748.00 for the time covered by this motion. While this reduction is far less than that requested, it is based on what the Court deems as reasonable in terms of the hours spent and the hourly rates that are reasonable.

For the reasons stated herein, the Court enters the following:

### ORDER

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion for Attorney's Fees, (ECF No. 194), is **GRANTED**, in part, in that Defendants shall pay attorneys' fees to Plaintiff's counsel in the amount of $685,748.00. Plaintiff's counsel shall submit to the Court within 14 days of the entry of this Order a stipulation by Plaintiffs' counsel outlining to whom and in what amounts these funds shall be distributed.

This, the 30th day of March 2026.

/s/ Loretta C. Biggs
Senior United States District Judge

28